**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT THOMAS, on behalf of Himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LENNOX INTERNATIONAL, INC.,<br><br>               Defendant. | CASE NO.:<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Robert Thomas, individually on behalf of himself and others similarly situated, brings this Class Action Complaint against Defendant Lennox International, Inc., ("Lennox") and in support alleges as follows:

## NATURE OF THIS ACTION

1. Lennox is a large manufacturer of heating, ventilation, and air conditioning products for residential use in the United States. Defendant manufactures and sells consumer central air conditioning units under its own trade name (hereinafter the "Lennox ACs").

2. Air conditioners, including Lennox ACs, contain a component known as an evaporator coil, which is an essential component to the system. Inside the evaporator coil, refrigerant (a.k.a. Freon) absorbs heat from the air passing over a tube and acts as a heat exchange, thereby cooling the home's air.

3.      This diagram depicts a standard AC unit setup:



http://www.howstuffworks.com/how-to-maintain-an-air-conditioner.htm

4.      Air conditioner manufacturers such as Lennox have traditionally manufactured evaporator coils using copper tubing.  However, copper coils are uniquely vulnerable to a type of degradation known as "formicary corrosion."  Exhibit A.

5.      Formicary corrosion is caused by a chemical reaction between molecules known as volatile organic compounds and the copper tubes, and results in microscopic tunnels within the tubing which causes the coil to leak refrigerant.  Id.

6.      Volatile organic compounds are a large group of carbon-based chemicals that are given off from a host of common household products and activities.  For example, volatile organic compounds are given off by composite wood furniture and flooring, carpeting, cleaning and disinfecting products, air fresheners, cosmetics, and numerous other consumer products.  Id.

7.      Formicary corrosion is a particularly insidious defect in an evaporator coil because the resultant leakage is difficult to detect, and usually results in consumers being forced to repeatedly refill their air conditioners with Freon, often at significant cost, which only works to mask the defect for a period of time, until the leak is detected and the coil needs to be

replaced.

8.     Air conditioner manufacturers have long recognized copper coils' unique vulnerability to formicary corrosion as changes in housing and consumer behavior made formicary corrosion more prevalent and recognizable. Exhibit B. For example, modern houses are typically made more energy efficient by improved sealing of windows and doors, which results in less heated/cooled air escaping the home. A natural and foreseeable result of this increase in energy efficiency is that volatile organic compounds tend to accumulate in the home's air.

9.     A number of HVAC contractors have publicly expressed concern over the increasing incidence of formicary corrosion in air conditioning units. Exhibit C.

10.     There are reasonable design and manufacturing techniques available to air conditioner manufacturers to lessen or even prevent incidence of formicary corrosion. For example, evaporator coils can be manufactured from aluminum, which is not susceptible to formicary corrosion, or copper coils can be coated with a polymer sealant or tin plating. Other air conditioner manufacturers utilize these types of techniques and as a result have virtually eliminated the incidence of formicary corrosion in their air conditioners. Exhibit D.

11.     Despite being aware of the susceptibility of copper coils to formicary corrosion, the increasing incidence of formicary corrosion, and the available remedies at its disposal, Lennox continued to design and manufacture its ACs using copper evaporator coils (referred to herein as "Lennox Coils" or "Coils"), Lennox continues to fix failed Coils with similarly defective Coils and Lennox has failed to take any of the known steps that are available to reduce the susceptibility of the copper in the Lennox Coils to formicary corrosion.

12.     Lennox Coils are defective because they are manufactured with materials that,

within the industry, are well known to be prone to formicary corrosion, which makes the Lennox Coils unreasonably susceptible to premature rupture and refrigerant leaks under normal use and conditions.

13.     Lennox has not informed its customers of the Lennox ACs susceptibility to formicary corrosion.  Lennox knew, or reasonably should have known, that the Coils in its air conditioners were unreasonably susceptible to formicary corrosion and thus defective, but has failed or refused to inform consumers or initiate other similar action.

14.     Lennox has not informed its customers of the causes of formicary corrosion, even when replacing failed Coils, which would allow customers to make an informed decision about their risks.

15.     When a defective coil leaks to the point that it eliminates the Lennox AC's ability to provide cold air within the warranty period, Lennox's standard practice is to replace the Freon in the unit, not the defective coil.  Such a remedy, however, is only temporary and stop-gap in nature, and does not address the inherent defect in the Lennox AC.  Once a consumer's warranty is expired, they are left with a defective product that requires a new evaporator coil, but no remedy offered by Lennox.

16.     Even if Lennox replaces the defective coil in a Lennox AC within the warranty period, the replacement coil is equally susceptible to formicary corrosion and likely to prematurely rupture and leak refrigerant under normal use.

17.     Because the remedies Lennox provides fail to address the inherent defect in the Lennox ACs, Lennox's warranties fail in their essential purpose.

**THE PARTIES**

18.     Plaintiff Robert Thomas ("Plaintiff" or "Thomas") at all relevant times hereto, has

4

been a citizen and resident of DuPage County, Illinois. Plaintiff owns a Lennox AC which had a Coil that failed, which Plaintiff paid to replace.

19.     Defendant Lennox International, Inc. is a Delaware corporation with its corporate headquarters located at 2140 Lake Park Blvd., Richardson, Texas 75080.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs and at least one Class member is a citizen of a state different from Defendants.

21.     Lennox transacts business in Illinois, advertises and markets its products in Illinois, disseminates the afore-described representations and deceptions throughout Illinois, and derives substantial income from the sale of products in Illinois.

22.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Additionally, venue is appropriate for the claims arising out of Illinois' Consumer Fraud Act because the statute applies to any company engaging in any of the activities regulated by the Act within the State of Illinois.

## CLASS ALLEGATIONS

23.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4) on behalf of the following nationwide consumer classes (the "Classes"):

> All persons residing in the United States who purchased a Lennox AC containing a Lennox Coil, primarily for personal, family, or household purposes.
>
> All persons residing in the United States who purchased a Lennox AC containing a Lennox Coil, primarily for personal, family, or household purposes, and who paid to replace a Lennox AC evaporator coil.

24.    Plaintiff also seeks to represent a subclass defined as all members of the Classes who reside in Illinois ("the Illinois Subclasses").

25.    Subject to additional information obtained through further investigation and discovery, the foregoing Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the Classes is any entity in which Defendants had a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns, and successors.

26.    Members of the Classes are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiff, it is believed that the Class is comprised of thousands of members geographically disbursed throughout the United States and that the Illinois Subclass is comprised of at least hundreds of members geographically disbursed throughout the state of Illinois. The Class and Subclass, however, are readily identifiable from information and records in the possession of Lennox.

27.    Common questions of law and fact exist as to all members of the Classes. The

critical questions of law and fact common to the Classes that will materially advance the litigation is whether the Coils in Lennox ACs are inherently defective, whether they are not of a good and merchantable quality and/or do not perform according to the reasonable expectations of consumers and whether Lennox deceived consumers under the common law and statutory consumer protection laws identified in the pleadings. The resolution of these common questions of law and fact will, in turn, drive the resolution of the litigation.

28.      Additional common legal and factual questions that will also drive the resolution of the litigation include, but are not limited to:

a)  Whether Lennox ACs are defectively designed or manufactured;

b)  Whether Lennox Coils (*i.e.*, made of copper) are defectively designed and/or manufactured;

c)  Whether Lennox knew or reasonably should have known about the defects prior to distributing them to Plaintiff and Classes;

d)  Whether Lennox concealed from or failed to disclose to Plaintiff and Classes the defect;

e)  Whether Lennox breached express warranties relating to Lennox ACs;

f)  Whether Lennox breached the implied warranty of merchantability under applicable state law;

g)  Whether Lennox breached the implied warranty of fitness under applicable state law for a particular purpose;

h)  Whether the terms of Lennox's written warranties relating to Lennox ACs were unconscionable or failed their essential purpose;

i)  Whether Lennox was unjustly enriched by receiving monies in exchange for air conditioners that were defective;

j)  Whether Lennox should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of defective Lennox ACs and Coils, including replacement Coils;

k) Whether Plaintiff and Classes are entitled to damages, including compensatory, exemplary, and statutory damages; and

l) Whether Lennox should be enjoined from selling and marketing the defective Lennox ACs.

29. Plaintiff's claims are typical of the members of the Classes as all such claims arise out of Lennox's conduct in designing, manufacturing, warranting, marketing and selling the defective Lennox ACs and Lennox's conduct in concealing the defect in Lennox Coils from Plaintiff and Classes.

30. Plaintiff will fairly and adequately protect the interests of the Classes because Plaintiff has no interests antagonistic to, or in conflict with, the Classes that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation including but not limited to consumer class actions involving, *inter alia*, breach of warranties, product liability and design defects.

31. The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of all Class members. Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and expense of individual prosecution of these claims against a large corporate defendant like Lennox, especially in comparison with the maximum individual recovery to which each Class member would be entitled. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. It also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Lennox's liability.

## FACTS SPECIFIC TO PLAINTIFF

32.　　In January 2009, Plaintiff purchased a Lennox Merit Series 13ACX air conditioner, containing model number C33-36C-2-4 coil from Golden Seal Heating & Air ("Golden Seal") in Saint Charles, Illinois, an authorized Lennox dealer.

33.　　Plaintiff was not told, nor did Lennox disclose, that Lennox ACs contained Lennox Coils that were defective, because they were unreasonably susceptible to formicary corrosion and failure, which would cause the air conditioning units to cease cooling or leak.

34.　　In April, 2009, the air conditioner was installed in Plaintiff's home, and at that time he was given for the first time a document titled "Lennox Quality Care Program Equipment Limited Warranty" (the "Lennox Warranty").  Exhibit E.

35.　　In May 2011, Plaintiff's Lennox AC ceased cooling.  A Golden Seal service technician replaced the Freon, but did not diagnose the problem.

36.　　On or about May 2012, Plaintiff's Lennox AC again ceased cooling.  A Golden Seal service technician again replaced the Freon, but did not diagnose the problem.

37.　　In August 2013, Plaintiff's Lennox AC again ceased cooling.  A Golden Seal service technician could not recharge it with Freon, and diagnosed the problem as a leaking coil. On information and belief, Plaintiff's Coil failed due to formicary corrosion.

38.　　Plaintiff notified Lennox of the problems with the evaporator coil shortly after the problem was identified.  Lennox refused to cover the cost of labor, and covered only the cost of replacing the Lennox Coil.

39.　　As a result, Plaintiff paid approximately $400 for diagnostics and labor to replace his failed Lennox Coil.

40.　　Plaintiff did not and could not reasonably have discovered the defects at the time

9

of purchase or delivery, nor known of the omitted material information regarding the defective coil in the Lennox ACs.

41.     As a matter of practice, when a Coil fails due to formicary corrosion, Lennox requires its authorized dealers/service technicians to obtain the failed Coil from the AC owner and return it to Lennox as part of its warranty protocol; otherwise Lennox will not credit the dealer/technician for the work done.  In this way, Lennox maintains exclusive control over all evidence relating to the (defective) failed Coils, failure rates and in particular root cause analysis of copper Coil failures.

42.     Plaintiff purchased a Lennox AC rather than other available AC products.  Had Plaintiff known that Lennox ACs contained defective Coils, Plaintiff would not have purchased Lennox ACs.

## FACTS COMMON TO THE CLASS/CLAIMS

43.     Upon information and belief, Defendants have sold, directly or indirectly (through dealers and other retailer outlets), thousands of Lennox ACs containing copper-made Coils, in the state of Illinois, to homeowners, developers, contractors or subcontractors.

44.     According to Lennox's website, there are more than 160 authorized dealers of the Lennox ACs within 100 miles of Naperville, Illinois.[1]

45.     Upon information and belief, Lennox designed, manufactured, marketed, advertised, warranted and sold, through a distributor, the Lennox ACs to Plaintiff and Classes and their builders, contractors, subcontractors or agents.  Lennox ACs were installed on Class members' structures.

46.     Lennox Coils are defective because they are unreasonably susceptible to

---

[1] http://www.lennox.com/locate/default.asp (last visited October 21, 2013)

formicary corrosion and break prematurely during normal use, resulting in the failure to prevent the leakage of refrigerant.

47.     Lennox expressly and impliedly warranted, via its user manuals, website, brochures, specifications, or models that Lennox ACs are fit for the ordinary purpose in which such goods are used.

48.     On its website, Lennox represented:

> For more than a hundred years, Lennox has set the standard for home comfort with innovative heating, cooling and indoor air quality products. We stand behind those products with industry-leading warranty coverage designed to protect your investment and ensure your peace of mind.[2]

49.     Lennox states in its brochure that "Every component in the 13ACX is designed for exception durability and easy maintenance year after year. Every unit is built solid inside and out and thoroughly tested before leaving the factory. And once it's installed, Lennox' industry-leading warranty coverage adds another layer of protection for your investment." Exhibit F.

50.     Lennox continues to make false representations about the quality and fitness of the Lennox ACs including, but not limited to:

> Reliable performance, ideal comfort and money-saving energy efficiency all come together in one perfect packet in the Merit Series 13ACX air conditioner. Its dependable scroll compressor and high-efficiency outdoor coil work together to keep your home comfortable and your energy costs under control.

Exhibit F.

51.     The bargaining power between Plaintiff and Class members and Illinois Subclass members on the one hand and Lennox on the other hand was grossly unequal and any limitations on the warranty are substantially one-sided, making such limitations unconscionable.

52.     Contrary to its representations, the Lennox ACs are not of a merchantable quality,

---

[2] http://www.lennox.com/support/warranty.asp (last visited October 21, 2013)

not fit for their intended use, and are defective.

53. The representations made by Lennox were false or misleading and Lennox knew or should have known at the time they made them that they were false or misleading.

54. All air conditioners use refrigerant (a.k.a. Freon) in a closed-loop system designed to take advantage of a physical law known as phase conversion to provide cool air. When liquid is converted into gas, the process results in the absorption of heat. Refrigerants are substances that change phase at relatively low temperatures.

55. All air conditioners contain the following three major components: a compressor, a condenser, and an evaporator. In central air conditioners used for household purposes, the compressor and the condenser are located outside a consumer's house. The compressor compresses the refrigerant into high pressure gas which then travels to the condenser where it is cooled into high pressure liquid.

56. The evaporator for central air conditioners is usually located within the consumer's house and includes of a series of coils known as "evaporator coils." The liquid refrigerant is fed into the evaporator coils where it experiences a pressure drop that results in the refrigerant converting from liquid to gas. This phase conversion absorbs heat from the hot indoor air circulated over the evaporator coils by a fan, which cools the air. The cool air is then blown through the house via ducts.

57. Like all central air conditioners used for residential purposes, the Lennox ACs at issue contain evaporator coils. However, Lennox evaporator coils render the Lennox ACs unfit for their ordinary purpose because they are unreasonably susceptible to formicary corrosion, resulting in the loss of refrigerant due to leakage, which reduces and ultimately eliminates the Lennox ACs' ability to provide cold air.

58.    The defective Lennox Coils render the Lennox ACs unfit for the ordinary purpose for which they are used because the loss of refrigerant reduces and/or eliminates the Lennox ACs' ability to provide cool air.

59.    The defective coils in the Lennox ACs caused Plaintiff the Class to suffer damages, including, but not limited to, the difference in value of the Lennox ACs as warranted and the Lennox ACs they received with defective Coils, loss of use of their Lennox ACs, labor costs, repair costs, and replacement refrigerant costs.   The defective evaporator coils were the direct, proximate, and foreseeable cause of damages incurred by Plaintiff and Class members .

60.    Had the Lennox ACs been properly manufactured or free from design defects, Plaintiff and the Classes would not have suffered the damages complained of herein.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

61.    Plaintiff is within the applicable statute of limitations for the claims presented because Plaintiff did not discover the defect, and could not reasonably have discovered the defect until approximately August 2013.  Further, Lennox and its agents affirmatively misrepresented the root cause of the problem by claiming that the ACs needed refills of Freon, rather than disclosing that the Coils were defective because they were made of copper and unreasonably susceptible to formicary corrosion, and that the Coils had failed due to formicary corrosion. Plaintiff also asserts that this action has been filed within all applicable time frames from the date of initial installation of the Air Conditioners.

62.    Lennox is estopped from relying on any statutes of limitation by virtue of its acts of fraudulent concealment, which include its concealment from Plaintiff and Classes that its Lennox ACs were defective, while continuing to market the Lennox ACs as suitable for ordinary use, and by its affirmative misrepresentations as set forth above.

63.     Although Lennox was aware that Lennox Coils were defective, it took no steps to warn Plaintiff and Classes of the defect.  Rather Lennox continued to sell its defective Coils to Plaintiff and Classes and continues to "fix" and replace failed Coils with similarly defective Coils.

64.     The defects in the design or manufacture of the Lennox ACs were not detectible to Plaintiff or members of the Class and Illinois Subclass until they manifested themselves when the defective evaporator coils cracked and caused the Lennox ACs to stop cooling.

### THE PURPORTED WARRANTY LIMITATIONS ARE VOID AND INVALID

65.     Lennox provides the Lennox Warranty to purchasers of Lennox ACs subsequent to the time of purchase.  A Lennox warranty is attached as Exhibit E.

66.     The Lennox Warranty purports to disclaim certain warranties and damages, stating

> "Lennox makes no express warranties other than the warranty specified above.  All implied warranties, including the implied warranties of merchantability and fitness for a particular purpose, are excluded to the extent legally permissible.  Should such exclusion or limitation of the warranty be unenforceable, such implied warranties are in any event limited to a period of one (1) year.  Liability for incidental and consequential damages is excluded.

Id.

67.     Lennox also expressly purports to limit its warranty such that "Lennox will not pay labor involved in diagnostic calls, or in removing, repairing, servicing, or replacing parts. Such costs may be covered by a separate warranty provided by the installing contractor." Id.

68.     The above warranty limitations fail their essential purpose because the Lennox ACs contained defective coils that were defective at the time plaintiff and members of the class acquired their Lennox ACs.

69.     The above warranty limitations also fail of the essential purpose because no

remedies offered by Lennox give purchasers of Lennox ACs the benefit of their bargain, *i.e.* a merchantable air conditioner.

70.     The limitation of damages is ineffective because the Lennox ACs are sold to consumers with Coils that are unreasonably susceptible to formicary corrosion, which none of Lennox's limited remedies sufficiently address.  The Lennox Warranty fails in its essential purpose, and Plaintiff and Classes are entitled to a remedy pursuant to 810 ILCS 5/2-719 under the Uniform Commercial Code.

71.     The purported disclaimer of warranties is also ineffective because Lennox does not provide the Lennox Warranty to purchasers of Lennox ACs before or at the time of purchase. Consumers only learn of such purported disclaimers at the time of installation of their Lennox AC, and such limitations cannot be considered to be a part of the bargain.

## COUNT I
### Express Warranty
### (On Behalf of Plaintiff, the Class, and Illinois Subclass)

72.     Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

73.     Plaintiff brings this claim on behalf of the Class, or, in the alternative on behalf of the Illinois Subclass.

74.     Lennox expressly warranted via its user manuals, website, brochures, specifications, and/or models that the Lennox ACs are fit for the ordinary purpose in which such goods are used.

75.     Lennox's express warranties were part of the basis of the bargain between Lennox and Plaintiff and members of the Classes.

76.      Lennox breached its express warranties because the Lennox ACs were not fit for

the ordinary purpose in which they are used and because they were not free from defects in materials and workmanship that affect performance under normal use and maintenance. Specifically, the Lennox ACs are defective because the Coils are unreasonably susceptible to formicary corrosion and failure, and thus improperly or prematurely crack and break under normal use, rendering them unfit for their ordinary purpose.  Lennox also breached its express warranty by refusing to repair the Lennox ACs and/or by "fixing" failed Coils with similarly defective replacement Coils (*i.e.*, made of copper).

77.     Plaintiff and members of the Classes relied upon the representation or warranty that they would be supplied Lennox ACs and Coils, and/or replacement Coils, free of defects.

78.     Plaintiff and members of the Classes notified Lennox of the breach.

79.     Plaintiff and members of the Classes sustained injuries and damages as a result of the breach because (a) they paid a price premium due to the misrepresentations and omissions of material fact in the packaging, marketing, advertising on the Lennox ACs; (b) the Lennox ACs did not have the attributes or value promised, and/or (c) they paid out of pocket to replace a failed Coil, which was replaced with a similarly defective Lennox Coil.

80.     The limitations on Lennox's express warranty are unconscionable or fail in their essential purpose.

81.     Plaintiff and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by Illinois, as well as all other applicable remedies.

## COUNT II
### Implied Warranty of Merchantability
### (On Behalf of Plaintiff, the Class and Illinois Subclass)

82.     Plaintiff re-alleges and incorporates each and every allegation set forth above as if

fully written herein.

83.     Plaintiff brings this claim on behalf of the Class, or, in the alternative on behalf of the Illinois Subclass.

84.     Lennox is a merchant who sold air conditioning units to Plaintiff and the Classes for residential use.

85.     A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

86.     Lennox's implied warranty that the Lennox ACs were merchantable was part of the basis of the bargain between Lennox and Plaintiff and members of the Classes.

87.     Lennox breached the implied warranty of merchantability because the Lennox ACs were not of merchantable quality or fit for their ordinary and intended use and because they contained a defect at the time of their sale that resulted in, and continues to result in, leaking of Freon and failure of the product, when used in a normal, foreseeable and customary way.

88.     The defects at issue are latent defects.  Plaintiff and members of the Classes could not have known about their Lennox ACs' propensity for failure.

89.     Plaintiff and members of the Classes notified Lennox of the breach.

90.     Plaintiff and members of the Classes sustained injuries and damages as a result of the breach.

91.     The exclusions and/or limitations on Lennox's implied warranties are unconscionable and/or fail their essential purpose.

92.     As a direct and proximate result of Lennox's breach of the implied warranty of merchantability, Plaintiff and members of the Classes have suffered damages in amount to be

determined at trial including direct monetary losses incurred by Plaintiff and members of the Classes in connection with attempted repair of the Lennox ACs and/or the price premium paid for the Lennox ACs, or such further damage to be proven at trial.

93.     Plaintiff and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by Illinois, as well as all other applicable remedies.

**COUNT III**
**Implied Warranty of Fitness for a Particular Purpose**
**(On Behalf of Plaintiff, the Class and Illinois Subclass)**

94.     Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

95.     Plaintiff brings this claim on behalf of the Class, or, in the alternative on behalf of the Illinois Subclass.

96.     Lennox sold and promoted the Lennox ACs, which it placed into the stream of commerce.  Lennox knew or had reason to know of the specific use, *i.e.*, home cooling, for which the Lennox ACs were purchased, and it impliedly warranted that the Lennox ACs were fit for such use.

97.     Plaintiff and Class members reasonably relied upon the expertise, skill, judgment and knowledge of Lennox and upon its implied warranty that the Lennox ACs were fit for the purpose and use of cooling homes.

98.     Through the conduct alleged herein, Lennox has breached the implied warranty of fitness for a particular purpose.  The defectively designed Lennox ACs were not fit for the particular purpose for which they were purchased by Plaintiff and Class Members to perform. The Plaintiff and Classes purchased the Lennox ACs for a particular purpose of being able to

cool their homes. Lennox knew that the Plaintiff and Class Members were purchasing the Lennox ACs for this purpose and marketed the products for this particular purpose.

99.     Plaintiff and Class Members relied on Lennox's misrepresentations by purchasing the Lennox ACs.

100.    Lennox knew or had reason to know that Plaintiff and Class members were influenced to purchase the Lennox ACs through Lennox's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

101.    The Lennox ACs were not fit for their particular intended use because the design or manufacturing defects alleged herein render them incapable of properly providing cool air to Plaintiff and Class members' homes as they contain defective evaporator Coils which are unreasonably susceptible to formicary corrosion, which causes them to crack and break under normal use.

102.    Lennox's actions, as complained of herein, breached their implied warranty that the Lennox ACs were fit for such use, in violation of Uniform Commercial Code §2-315 and the common law of Illinois, as well as the common law and statutory laws of others states.

103.    Moreover, the limitations on Lennox's implied warranties are unconscionable and/or fail their essential purpose.

104.    Plaintiff and Class members have incurred damages as described herein as a direct result of the failure of Lennox to honor its implied warranty. In particular, Plaintiff and Class members would not have purchased the Lennox ACs had they known the truth about the defects; nor would they have suffered the collateral effects and damages associated with these defects.

<u>COUNT IV</u>
**Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1, *et seq.***
**(On behalf of Plaintiff and Illinois Subclass)**

105. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

106. Plaintiff asserts this claim individually and on behalf of the Illinois Subclass members.

107. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*, prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

108. Throughout the Class Period, Defendants conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Lennox ACs.

109. 815 ILCS. 505/1(b) of the Illinois Consumer Fraud and Deceptive Business Practices Act defines the term "merchandise" to include Lennox ACs.

110. 815 ILCS. 505/1(c) of the Illinois Consumer Fraud and Deceptive Practices defines the term "person" to include Defendant.

111. 815 ILCS 505/1(e) of the Illinois Consumer Fraud and Deceptive Practices Act defines the term "consumer" to include Plaintiff and the other Illinois Subclass members.

112. Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to, Defendants' sale of defective Lennox ACs.

20

113. Defendants intended for Plaintiff and Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

114. Plaintiff and the Subclass were exposed to such misrepresentations and were deceived.

115. Defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiff and Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Lennox ACs and/or Defendant's failure to disclose the defects of said products, an/or paid to replace defective Coils,

116. Indeed, their purchases are of significantly diminished value because the Lennox AC's do not perform their sole function without the need for costly repair.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff, the Class and Illinois Subclass)**

117. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

118. Plaintiff brings this claim on behalf of the Class, or, in the alternative on behalf of the Illinois Subclass.

119. Plaintiff and members of the Classes conferred a benefit upon Lennox. Namely, Plaintiff and Class members paid money for ownership of their Lennox ACs.

120. Lennox retained that benefit.

121. Lennox retained that benefit under circumstances that make it inequitable for Lennox to retain it without paying the value thereof. Specifically, Lennox retained that benefit

despite the fact that the Lennox ACs contained defective Coils.

122.     Plaintiff purchased the Lennox ACs from a Lennox's agent, in part, because of Lennox's advertisements, marketing and product claims, and a result, a relationship between the parties has been created even though Plaintiffs did not purchase Lennox ACs directly from Lennox.

123.     As set forth above, Lennox misrepresented the relevant Lennox ACs as free from design defect through it marketing, advertising, product packaging, and print publications specifically designed to entice Plaintiff, Class Members, builders, contractor and others to buy Lennox ACs.

124.     Because Lennox's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Lennox must pay restitution to Plaintiff and class members for its unjust enrichment, as ordered by the Court.

## COUNT VI
### Fraudulent Concealment
### (On behalf of Plaintiff, the Class and Illinois Subclass)

126.     Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

127.     Lennox knew or should have known that the Coils were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lennox nor the reasonable expectations of ordinary consumers.

128.     Lennox fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Coils are defective.

129.     Lennox had exclusive knowledge of the defective nature of the Coils at the time

of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

130.     Lennox had the capacity to, and did, deceive Plaintiff and Class members into believing that they were purchasing Coils free from defects.

131.     Lennox undertook active and ongoing steps to conceal the defect. Plaintiff is aware of nothing in Lennox advertising, publicity or marketing materials that disclosed the truth about the defect, despite Lennox's awareness of the problem.

132.     The facts concealed and/or not disclosed by Lennox to Plaintiff and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Coils.

133.     Lennox intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

134.     Plaintiff and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of, or replacements using, the Coils.

135.     Plaintiff and Class members suffered a loss of money in an amount to be proven at trial as a result of Lennox's fraudulent concealment and nondisclosure because: (a) they would not have purchased the ACs on the same terms if the true facts concerning the defective Coils had been known; (b) they paid a price premium due to they would be free from defects; and (c) the ACs did not perform as promised.  Plaintiff also would have initiated this suit earlier had the defect been disclosed to him.

136.     By reason of the foregoing, Plaintiff and the Class members suffered, and

continue to suffer, financial damage and injury.

## COUNT VII
### Declaratory Relief, 28 U.S.C. § 2201
### (On Behalf of Plaintiff, the Class and Illinois Subclass)

137.  Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

138.  Plaintiff brings this claim on behalf of the Class, or, in the alternative on behalf of the Illinois Subclass pursuant to 28 U.S.C. § 2201.

139.  There is an actual controversy between Plaintiff and the classes on one hand, and Lennox on the other regarding the marketing and sale of the Lennox ACs.

140.  Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

141.  Lennox marketed and sold, and continues to market and sell, Lennox ACs with defective Coils, while concealing this defect from consumers.

142.  Lennox has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2). Plaintiff seeks declaratory relief, ruling that:

    a.    Lennox ACs containing copper Coils are defective because they are unreasonably susceptible to formicary corrosion;

    b.    certain provisions of Lennox's warranty are void as unconscionable;

    c.    Lennox must notify AC owners of the defect;

    d.    the durational limitations on the warranty are removed;

    e.    Lennox will reassess all prior warranty claims and pay the full cost of

repairs and damages;

f.    Lennox will pay the cost of inspection to determine whether any Class Member's Coils need replacement; an d

g.    any limitation of damages or disclaimer or warranty by Lennox with regard to Lennox Coils are void.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and others similarly situated, seeks judgment against Defendant as follows:

A.  For an order certifying the Class and/or Illinois Subclass and/or issue class(es) under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class and Subclass members;

B.  For an order finding in favor of the Plaintiff and the Class(es) on all counts asserted herein;

C.  For an order awarding damages in an amount to be determined by the Court or jury;

D.  For prejudgment interest on all amounts awarded;

E.  For an order of restitution and all other forms of injunctive and/or equitable relief;

F.  For an order awarding Plaintiff and Class reasonable attorneys' fees and expenses and costs of suit; and

G.  For an order awarding Plaintiff and Class(es) their reasonable attorneys' fees, and

H.  For all further relief, as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: October 29, 2013                    Respectfully submitted,


**ROBERT THOMAS,**
**Class Representative Plaintiff**

 /s/ Jeffrey A. Leon
Jeffrey A. Leon
Jeff@complexlitgroup.com
Jamie E. Weiss
Jamie@complexlitgroup.com
Zachary Jacobs
Zachary@Complexlitgroup.com
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, Illinois 60035
Phone: (847) 433-4500


Jonathan Shub
JShub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300


Richard J. Burke
Rich@Complexlitgroup.com
**COMPLEX LITIGATION GROUP LLC**
1010 Market Street, Suite 1340
St. Louis, MO 63101

Attorneys for Plaintiff
and Proposed Classes