**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT THOMAS, SCOTT PATRICK HARRIS, MICHAEL BELL, SANDRA PALUMBO, FRANK KARBARZ, and THOMAS DAVIS on behalf of Themselves and all others similarly situated, | CASE NO.: 1:13-cv-07747 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | |
| LENNOX INDUSTRIES, INC., | |
| Defendant. | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis individually on behalf of themselves and others similarly situated bring this Amended Class Action Complaint against Defendant Lennox Industries, Inc. ("Lennox") and in support allege as follows:

**NATURE OF THIS ACTION**

1.      Lennox is a large manufacturer of heating, ventilation, and air conditioning products for residential use in the United States.  Defendant manufactures and sells consumer central air conditioning units under its own trade name (hereinafter the "Lennox ACs").

2.      Air conditioners, including Lennox ACs, contain a component known as an evaporator coil, which is an essential component to the system.  Inside the evaporator coil, refrigerant (such as Freon, Puron, etc.) absorbs heat from the air passing over a tube and acts as a heat exchange, thereby cooling the home's air.

3.      This diagram depicts a standard AC unit setup:



http://www.howstuffworks.com/how-to-maintain-an-air-conditioner.htm

4.      Air conditioner manufacturers such as Lennox have traditionally manufactured evaporator coils using copper tubing.  However, copper coils are uniquely vulnerable to a type of degradation known as "formicary corrosion."  Exhibit A.

5.      Formicary corrosion is caused by a chemical reaction between molecules known as volatile organic compounds and the copper tubes, and results in microscopic tunnels within the tubing which causes the coil to leak refrigerant.  Id.

6.      Volatile organic compounds are a large group of carbon-based chemicals that are given off from a host of common household products and activities.  For example, volatile organic compounds are given off by composite wood furniture and flooring, carpeting, cleaning and disinfecting products, air fresheners, cosmetics, and numerous other consumer products.  Id.

7.      Formicary corrosion is a particularly insidious defect in an evaporator coil because the resultant leakage is difficult to detect, and usually results in consumers being forced to repeatedly refill their air conditioners with refrigerant, often at significant cost, which only works to mask the defect for a period of time, until the Coil fails.

8.     Air conditioner manufacturers have begun to recognize copper coils' unique vulnerability to formicary corrosion as changes in housing and consumer behavior made formicary corrosion more prevalent and recognizable.  Exhibit B.  For example, modern houses are typically made more energy efficient by improved sealing of windows and doors, which results in less heated/cooled air escaping the home.  A natural and foreseeable result of this increase in energy efficiency is that volatile organic compounds tend to accumulate in the home's air.

9.     A number of HVAC contractors have publicly expressed concern over the increasing incidence of formicary corrosion in air conditioning units.  Exhibit C.

10.     There are reasonable design and manufacturing techniques available to air conditioner manufacturers to lessen or even prevent incidence of formicary corrosion.  For example, evaporator coils can be manufactured from aluminum, which is not susceptible to formicary corrosion, or copper coils can be coated with a polymer sealant or tin plating.  Other air condition manufacturers utilize these types of techniques and as a result have virtually eliminated the incidence of formicary corrosion in their air conditioners.  Exhibit D.

11.     Despite being aware of the susceptibility of copper coils to formicary corrosion, the increasing incidence of formicary corrosion, and the available remedies at its disposal, Lennox continued to design and manufacture its ACs using copper evaporator coils (referred to herein as "Lennox Coils" or "Coils"), Lennox continues to fix failed Coils with similarly defective Coils and Lennox has failed to take any of the known steps that are available to reduce the susceptibility of the copper in the Lennox Coils to formicary corrosion.

12.     Lennox Coils are defective because they are manufactured with materials that, within the industry, are well known to be prone to formicary corrosion, which makes the Lennox

Coils unreasonably susceptible to premature rupture and refrigerant leaks under normal use and conditions.

13.     Lennox has not informed its customers of the Lennox ACs susceptibility to formicary corrosion.  Lennox knew, or reasonably should have known, that the Coils in its air conditioners were unreasonably susceptible to formicary corrosion and thus defective, but has failed or refused to inform consumers or initiate other similar action.

14.     Lennox has not informed its customers of the causes of formicary corrosion, even when replacing failed Coils, which would allow customers to make an informed decision about their risks.

15.     When a defective coil leaks to the point that it eliminates the Lennox AC's ability to provide cold air within the warranty period, Lennox's standard practice is to replace the refrigerant in the unit, not the defective coil.  Such a remedy, however, is only temporary and stop-gap in nature, and does not address the inherent defect in the Lennox AC.  Once a consumer's warranty is expired, they are left with a defective product that requires a new evaporator coil, but no remedy offered by Lennox.

16.     Even if Lennox replaces the defective coil in a Lennox AC within the warranty period, the replacement coil is equally susceptible to formicary corrosion and likely to prematurely rupture and leak refrigerant under normal use.

17.     As Lennox has known of the Lennox ACs' defects and has failed to timely honor its express and implied warranties, the warranty has failed of its essential purpose, and the limitations therein are null and void. Further, the limitations contained in the limited warranty are not conspicuous.

4

18.     Despite knowing of the defects in the Lennox ACs, Lennox has not notified all purchasers, builders, and/or homeowners with the Lennox ACs of the defect nor provided uniform relief.

19.     Plaintiffs and Class Members have not received the value for which they or their builder bargained when the Lennox ACs were purchased. There is a difference in value between the Lennox ACs as warranted and the Lennox ACs containing the defect.

## THE PARTIES

20.     Plaintiff Robert Thomas ("Plaintiff Thomas") at all relevant times hereto, has been a citizen and resident of DuPage County, Illinois.  Plaintiff owns a Lennox AC which had a Coil that failed, which Plaintiff paid to replace.

21.     Plaintiff Scott Patrick Harris ("Plaintiff Harris") at all relevant times hereto, has been a citizen and resident of South Carolina.  Plaintiff Harris owns a Lennox AC which had a Coil that failed, which Plaintiff Harris paid to replace.

22.     Plaintiff Michael Bell ("Plaintiff Bell") at all relevant times hereto, has been a citizen and resident of Pennsylvania.  Plaintiff Bell owns a Lennox AC which had a Coil that failed, which Plaintiff Bell paid to replace.

23.     Plaintiff Sandra Palumbo ("Plaintiff Palumbo") at all relevant times hereto, has been a citizen and resident of Florida.  Plaintiff Palumbo owns a Lennox AC which had a Coil that failed, which Plaintiff Palumbo paid to replace.

24.     Plaintiff Frank Karbarz ("Plaintiff Karbarz") at all relevant times hereto, has been a citizen and resident of Texas.  Plaintiff Karbarz owns a Lennox AC which had a Coil that failed, which Plaintiff Karbarz paid to replace.

25.     Plaintiff Thomas Davis ("Plaintiff Davis") at all relevant times hereto, has been a citizen and resident of California.  Plaintiff Davis owns a Lennox AC which had a Coil that failed, which Plaintiff Davis paid to replace.

26.     Defendant Lennox Industries, Inc. is a Delaware corporation with its corporate headquarters located at 2140 Lake Park Blvd., Richardson, Texas 75080.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs and at least one Class member is a citizen of a state different from Defendants.

28.     Lennox transacts business in Illinois, advertises and markets its products in Illinois, disseminates the afore-described representations and deceptions throughout Illinois, and derives substantial income from the sale of products in Illinois.

29.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Additionally, venue is appropriate for the claims arising out of Illinois' Consumer Fraud Act because the statute applies to any company engaging in any of the activities regulated by the Act within the State of Illinois.

## CLASS ALLEGATIONS

30.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4) on behalf of the following nationwide consumer classes (the "Classes"):

> All persons residing in the United States who purchased a Lennox AC containing a Lennox Coil, primarily for personal, family, or household purposes.

> All persons residing in the United States who purchased a Lennox AC containing a Lennox Coil, primarily for personal, family, or household purposes, and who paid to replace a Lennox AC evaporator coil.

31.    Plaintiff Thomas also seeks to represent subclasses defined as all members of the Classes who reside in Illinois ("the Illinois Subclasses").

32.    Plaintiff Harris also seeks to represent subclasses defined as all members of the Classes who reside in South Carolina ("the South Carolina Subclasses").

33.    Plaintiff Bell also seeks to represent subclasses defined as all members of the Classes who reside in Pennsylvania ("the Pennsylvania Subclasses").

34.    Plaintiff Palumbo also seeks to represent subclasses defined as all members of the Classes who reside in Florida ("the Florida Subclasses").

35.    Plaintiff Karbarz also seeks to represent subclasses defined as all members of the Classes who reside in Texas ("the Texas Subclasses")

36.    Plaintiff Davis also seeks to represent subclasses defined as all members of the Classes who reside in California ("the California Subclasses") (collectively, with the above, the "Subclasses").

37.    Subject to additional information obtained through further investigation and discovery, the foregoing Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the Classes is any entity in which Defendants had a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns, and successors.

38.     Members of the Classes are so numerous that joinder is impracticable.  While the exact number of Class members is unknown to Plaintiffs, it is believed that the Classes are comprised of thousands of members geographically disbursed throughout the United States and that the Subclasses are comprised of at least hundreds of members geographically disbursed throughout each state.  The Classes and Subclasses, however, are readily identifiable from information and records in the possession of Lennox.

39.     Common questions of law and fact exist as to all members of the Classes.  The critical questions of law and fact common to the Classes that will materially advance the litigation is whether the Coils in Lennox ACs are inherently defective, whether they are not of a good and merchantable quality and/or do not perform according to the reasonable expectations of consumers and whether Lennox deceived consumers under the common law and statutory consumer protection laws identified in the pleadings.  The resolution of these common questions of law and fact will, in turn, drive the resolution of the litigation.

40.     Additional common legal and factual questions that will also drive the resolution of the litigation include, but are not limited to:

a)  Whether Lennox ACs are defectively designed or manufactured;

b)  Whether Lennox Coils (*i.e*., made of copper) are defectively designed and/or manufactured;

c)  Whether Lennox knew or reasonably should have known about the defects prior to distributing them to Plaintiffs and Classes;

d)  Whether Lennox concealed from or failed to disclose to Plaintiffs and Classes the defect;

e)  Whether Lennox breached express warranties relating to Lennox ACs;

f)  Whether Lennox breached the implied warranty of merchantability under applicable state law;

g) Whether Lennox breached the implied warranty of fitness under applicable state law for a particular purpose;

h) Whether the terms of Lennox's written warranties relating to Lennox ACs were unconscionable or failed their essential purpose;

i) Whether Lennox was unjustly enriched by receiving monies in exchange for air conditioners that were defective;

j) Whether Lennox should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of defective Lennox ACs and Coils, including replacement Coils;

k) Whether Plaintiffs and Classes are entitled to damages, including compensatory, exemplary, and statutory damages; and

l) Whether Lennox should be enjoined from selling and marketing the defective Lennox ACs.

41.     Plaintiffs' claims are typical of the members of the Classes as all such claims arise out of Lennox's conduct in designing, manufacturing, warranting, marketing and selling the defective Lennox ACs and Lennox's conduct in concealing the defect in Lennox Coils from Plaintiffs and Classes.

42.     Plaintiffs will fairly and adequately protect the interests of the Classes because Plaintiffs have no interests antagonistic to, or in conflict with, the Classes that Plaintiffs seeks to represent.   Furthermore, Plaintiffs has retained counsel experienced and competent in the prosecution of complex class action litigation including but not limited to consumer class actions involving, *inter alia*, breach of warranties, product liability and design defects.

43.     The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of all Class members.  Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and expense of individual prosecution of these claims against a large corporate defendant like Lennox, especially in comparison with the maximum individual recovery to which each Class

member would be entitled. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. It also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Lennox's liability.

## FACTS SPECIFIC TO PLAINTIFFS

44. Plaintiffs were not told, nor did Lennox disclose, that Lennox ACs contained Lennox Coils that were defective, because they were unreasonably susceptible to formicary corrosion and failure, which would cause the air conditioning units to cease cooling or leak.

45. Plaintiffs did not and could not reasonably have discovered the defects at the time of purchase or delivery, nor known of the omitted material information regarding the defective coil in the Lennox ACs.

46. As a matter of practice, when a Coil fails due to formicary corrosion, Lennox requires its authorized dealers/service technicians to obtain the failed Coil from the AC owner and return it to Lennox as part of its warranty protocol; otherwise Lennox will not credit the dealer/technician for the work done. In this way, Lennox maintains exclusive control over all evidence relating to the (defective) failed Coils, failure rates and in particular root cause analysis of copper Coil failures

47. Plaintiffs purchased Lennox ACs rather than other available AC products. Had Plaintiffs known that Lennox ACs contained defective Coils, Plaintiffs would not have purchased Lennox ACs.

**Thomas**

48.     In January 2009, Plaintiff Thomas purchased a Lennox Merit Series 13ACX air conditioner, containing model number C33-36C-2-4 coil from Golden Seal Heating & Air ("Golden Seal") in Saint Charles, Illinois, an authorized Lennox dealer.

49.     Plaintiff Thomas was not told, nor did Lennox disclose, that Lennox ACs contained Lennox Coils that were defective, because they were unreasonably susceptible to formicary corrosion and failure, which would cause the air conditioning units to cease cooling or leak.

50.     In April, 2009, the air conditioner was installed in Plaintiff Thomas' home, and at that time he was given for the first time a document titled "Lennox Quality Care Program Equipment Limited Warranty" (the "Lennox Warranty"). Exhibit E.

51.     In May 2011, Plaintiff Thomas' Lennox AC ceased cooling. A Golden Seal service technician replaced the refrigerant, but did not diagnose the problem.

52.     On or about May 2012, Plaintiff Thomas' Lennox AC again ceased cooling. A Golden Seal service technician again replaced the refrigerant, but did not diagnose the problem.

53.     In August 2013, Plaintiff Thomas' Lennox AC again ceased cooling. A Golden Seal service technician could not recharge it with refrigerant, and diagnosed the problem as a leaking coil. On information and belief, Plaintiff Thomas' Coil failed due to formicary corrosion.

54.     Plaintiff Thomas notified Lennox of the problems with the evaporator coil shortly after the problem was identified. Lennox refused to cover the cost of labor, and covered only the cost of replacing the Lennox Coil.

55.     As a result, Plaintiff Thomas paid approximately $400 for diagnostics and labor to replace his failed Lennox Coil.

**Harris**

56.     In June 2008, Plaintiff Harris purchased a new home which included two Lennox air conditioners, containing model number cx3436-1-6f-2 Coils.

57.     Plaintiff Harris did not receive any warranty documents at the time of purchase.

58.     In August 2011, one of Plaintiff Harris' Lennox AC ceased cooling. A technician from Brother Heat and Air, a licensed Lennox dealer and installer, replaced the refrigerant at a cost of $877, but did not diagnose the problem.

59.     In July 2012, Plaintiff Harris' same Lennox AC again ceased cooling. A service technician from Dan King's One Hour Air Conditioning replaced the refrigerant at a cost of $138, but did not diagnose the problem.

60.     On or about September 5, 2012, Plaintiff Harris' same Lennox AC again ceased cooling. A service technician from Dan King's One Hour Air Conditioning replaced the refrigerant at a cost of $399, but did not diagnose the problem.

61.     On or about September 21, 2012, Plaintiff Harris' same Lennox AC again ceased cooling. A service technician from Dan King's One Hour Air Conditioning diagnosed the problem as a leaking coil. On information and belief, Plaintiff Harris' Coil failed due to formicary corrosion.

62.     Lennox refused to cover the cost of labor, and covered only the cost of replacing the Lennox Coil.

63.     As a result, Plaintiff Harris paid approximately $900 for diagnostics and labor to replace his failed Lennox Coil.

**Bell**

64.     In February 2012, Plaintiff Bell purchased a Lennox XP16 Elite Series heat pump / air conditioner, containing model number CBX32MV-048-230-6 coil from Peters Associates in Philadelphia, Pennsylvania, an authorized Lennox dealer.

65.     In February, 2012, the air conditioner was installed in Plaintiff Bell's home, and at that time he was given for the first time a copy of the Lennox Warranty.

66.     On or about July 23, 2013, Plaintiff Bell's Lennox AC ceased cooling.  A Peters Associates service technician replaced the refrigerant, but did not diagnose the problem.

67.     On or about July 26, 2013, a Peters Associates service technician replaced the refrigerant, and diagnosed the problem as a leaking Coil.

68.     On information and belief, Plaintiff Thomas' Coil failed due to formicary corrosion.

69.     Lennox refused to cover the cost of labor, and covered only the cost of replacing the Lennox Coil.

70.     As a result, Plaintiff Bell paid approximately $717 for diagnostics and labor to replace his failed Lennox Coil.

**Palumbo**

71.     In December 2008, Plaintiff Palumbo purchased a Lennox 14HPX Heat Pump air conditioner, containing model number CBX26UH-042-230-1 Coil.

72.     Plaintiff Palumbo's Lennox AC was installed in January 2009 as part of her new home construction.

73.     On or about July 2010, Plaintiff Palumbo's Lennox AC ceased cooling.  In September, 2010, a service technician from Marlin James, Inc. diagnosed the problem as a

leaking coil and replaced the refrigerant at a cost of $390.00.  On or about June 2011, Marlin James, Inc. replaced the coil in Plaintiff Palumbo's Lennox AC.  Lennox covered the part and labor in this instance.

74.     On or about July 2012, Plaintiff Palumbo's Lennox AC again ceased cooling. Marlin James, Inc. again replaced the coil in Plaintiff Palumbo's Lennox AC.  Lennox covered the part and labor in this instance.

75.     On or about September 2013, Plaintiff Palumbo's Lennox AC again ceased cooling.  A service technician from One Hour Air performed a leak check at a cost of $655.00 and found a leak in the coil.  The technician replaced the refrigerant at a cost of $196.00

76.     Lennox informed Plaintiff Palumbo that it will not cover the labor for the replacement of the newest Coil, which is estimated to be approximately $400.00.

77.     On information and belief, Plaintiff Palumbo's Coils failed due to formicary corrosion.

**Karbarz**

78.     In April 2007, Plaintiff Karbarz purchased and installed a Lennox 14ACX Merit Series air conditioner, containing model number CBX26UH-18-230-01 Coil from Air Team, LTD.

79.     On or about June 2009, Plaintiff Karbarz's Lennox AC ceased cooling and was diagnosed with a leaking coil.

80.     Plaintiff Karbarz paid $517 in labor to replace the failed coil.

81.     On or about May 2013, Plaintiff Karbarz's Lennox AC again ceased cooling.

82.     Plaintiff Karbarz paid $179 to replace the refrigerant in his Lennox AC.

14

83.     On or about September, 2013, Plaintiff Karbarz's Lennox AC again ceased cooling.

84.     Plaintiff Karbarz paid $2,260 for a new air handler which contained a new coil.

85.     On information and belief, Plaintiff Karbarz's Coils failed due to formicary corrosion.

### Davis

86.     In August, 2010, Plaintiff Davis purchased two Lennox Signature Collection 15 GCSX units containing Lennox Coils from Palm Desert Heating & Air Conditioning, who also installed the units.

87.     Plaintiff Davis first saw a copy of the Lennox Warranty at the time of purchase.

88.     In June 2013, one of Plaintiff Davis's Lennox ACs ceased cooling.  In August 2014, a service technician from Palm Desert Heating & Air Conditioning diagnosed the problem as a leaking coil and refilled the unit with refrigerant.  Plaintiff Davis paid $65.00 for the service call.

89.     On August 16, 2013, Plaintiff Davis contacted Lennox, who denied there was a problem with the coil.

90.     On September 26, 2013, Breeze Air Conditioning replaced the Lennox Coil at a cost of $2,200.00.

91.      On information and belief, Plaintiff Davis's Coil failed due to formicary corrosion.

## FACTS COMMON TO THE CLASS/CLAIMS

92.     Upon information and belief, Defendants have sold, directly or indirectly (through dealers and other retailer outlets), thousands of Lennox ACs containing copper-made Coils, in the states of Illinois, South Carolina, Pennsylvania, Florida, Texas, and California to homeowners, developers, contractors or subcontractors.

93.     According to Lennox's website, there are hundreds of authorized dealers of the Lennox ACs within 100 miles of Plaintiffs' homes.[1]

94.     Upon information and belief, Lennox designed, manufactured, marketed, advertised, warranted and sold, through distributors, the Lennox ACs to Plaintiffs and Classes and their builders, contractors, subcontractors or agents.  Lennox ACs were installed on Class members' structures.

95.     Lennox Coils are defective because they are unreasonably susceptible to formicary corrosion and break prematurely during normal use, resulting in the failure to prevent the leakage of refrigerant.

96.     Lennox expressly and impliedly warranted, via its user manuals, website, brochures, specifications, or models that Lennox ACs are fit for the ordinary purpose in which such goods are used.

97.     On its website, Lennox represented:

> For more than a hundred years, Lennox has set the standard for home comfort with innovative heating, cooling and indoor air quality products. We stand behind those products with industry-leading warranty coverage designed to protect your investment and ensure your peace of mind.[2]

---

[1] http://www.lennox.com/locate/default.asp (last visited December 16, 2013)
[2] http://www.lennox.com/support/warranty.asp (last visited October 21,  2013)

98.     Lennox states in its brochure that "Every component in the 13ACX is designed for exception durability and easy maintenance year after year.  Every unit is built solid inside and out and thoroughly tested before leaving the factory.  And once it's installed, Lennox' industry-leading warranty coverage adds another layer of protection for your investment."  Exhibit F.

99.     Lennox continues to make false representations about the quality and fitness of the Lennox ACs including, but not limited to:

> Reliable performance, ideal comfort and money-saving energy efficiency all come together in one perfect packet in the Merit Series 13ACX air conditioner.  Its dependable scroll compressor and high-efficiency outdoor coil work together to keep your home comfortable and your energy costs under control.

Exhibit F.

100.    The bargaining power between Plaintiffs and Class members on the one hand and Lennox on the other hand was grossly unequal and any limitations on the warranty are substantially one-sided, making such limitations unconscionable.

101.    Contrary to its representations, the Lennox ACs are not of a merchantable quality, not fit for their intended use, and are defective.

102.    The representations made by Lennox were false or misleading and Lennox knew or should have known at the time they made them that they were false or misleading.

103.    All air conditioners use refrigerant in a closed-loop system designed to take advantage of a physical law known as phase conversion to provide cool air.  When liquid is converted into gas, the process results in the absorption of heat.  Refrigerants are substances that change phase at relatively low temperatures.

104.    All air conditioners contain the following three major components:  a compressor, a condenser, and an evaporator.  In central air conditioners used for household purposes, the compressor and the condenser are located outside a consumer's house.  The compressor

compresses the refrigerant into high pressure gas which then travels to the condenser where it is cooled into high pressure liquid.

105. The evaporator for central air conditioners is usually located within the consumer's house and includes of a series of coils known as "evaporator coils." The liquid refrigerant is fed into the evaporator coils where it experiences a pressure drop that results in the refrigerant converting from liquid to gas. This phase conversion absorbs heat from the hot indoor air circulated over the evaporator coils by a fan, which cools the air. The cool air is then blown through the house via ducts.

106. Like all central air conditioners used for residential purposes, the Lennox ACs at issue contain evaporator coils. However, Lennox evaporator coils render the Lennox ACs unfit for their ordinary purpose because they are unreasonably susceptible to formicary corrosion, resulting in the loss of refrigerant due to leakage, which reduces and ultimately eliminates the Lennox ACs' ability to provide cold air.

107. The defective Lennox Coils render the Lennox ACs unfit for the ordinary purpose for which they are used because the loss of refrigerant reduces and/or eliminates the Lennox ACs' ability to provide cool air.

108. The defective coils in the Lennox ACs caused Plaintiffs the Class to suffer damages, including, but not limited to, the difference in value of the Lennox ACs as warranted and the Lennox ACs they received with defective Coils, loss of use of their Lennox ACs, labor costs, repair costs, and replacement refrigerant costs. The defective evaporator coils were the direct, proximate, and foreseeable cause of damages incurred by Plaintiffs and Class members .

109. Had the Lennox ACs been properly manufactured or free from design defects, Plaintiffs and the Classes would not have suffered the damages complained of herein.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

110.    Plaintiffs are within the applicable statute of limitations for the claims presented because Plaintiffs did not discover the defect, and could not reasonably have discovered the defect until approximately August 2013. Further, Lennox and its agents affirmatively misrepresented the root cause of the problem by claiming that the ACs needed refills of Refrigerant, rather than disclosing that the Coils were defective because they were made of copper and unreasonably susceptible to formicary corrosion, and that the Coils had failed due to formicary corrosion. Plaintiffs also assert that this action has been filed within all applicable time frames from the date of initial installation of the Air Conditioners.

111.    Lennox is estopped from relying on any statutes of limitation by virtue of its acts of fraudulent concealment, which include its concealment from Plaintiffs and Classes that its Lennox ACs were defective, while continuing to market the Lennox ACs as suitable for ordinary use, and by its affirmative misrepresentations as set forth above.

112.    Although Lennox was aware that Lennox Coils were defective, it took no steps to warn Plaintiffs and Classes of the defect. Rather Lennox continued to sell its defective Coils to Plaintiffs and Classes and continues to "fix" and replace failed Coils with similarly defective Coils.

113.    The defects in the design or manufacture of the Lennox ACs were not detectible to Plaintiffs or members of the Classes until they manifested themselves when the defective evaporator coils cracked and caused the Lennox ACs to stop cooling.

## THE PURPORTED WARRANTY LIMITATIONS ARE VOID AND INVALID

114.    Lennox provides the Lennox Warranty to purchasers of Lennox ACs subsequent to the time of purchase. A Lennox warranty is attached as Exhibit E.

115.    The Lennox Warranty purports to disclaim and exclude certain warranties and damages, stating:

> "Lennox makes no express warranties other than the warranty specified above. All implied warranties, including the implied warranties of merchantability and fitness for a particular purpose, are excluded to the extent legally permissible. Should such exclusion or limitation of the warranty be unenforceable, such implied warranties are in any event limited to a period of one (1) year. Liability for incidental and consequential damages is excluded.

Id.

116.    Lennox also expressly purports to limit its warranty such that "Lennox will not pay labor involved in diagnostic calls, or in removing, repairing, servicing, or replacing parts. Such costs may be covered by a separate warranty provided by the installing contractor. Id.

117.    The above warranty limitations and exclusions fail their essential purpose because the Lennox ACs contained coils that were defective at the time Plaintiffs and members of the class acquired their Lennox ACs.

118.    The above warranty limitations also fail of the essential purpose because no remedies offered by Lennox give purchasers of Lennox ACs the benefit of their bargain, *i.e.* a merchantable air conditioner.

119.    The limitation of damages is ineffective because the Lennox ACs are sold to consumers with Coils that are unreasonably susceptible to formicary corrosion, which none of Lennox's limited remedies sufficiently address. The Lennox Warranty fails its essential purpose, and Plaintiffs and Classes are entitled to a remedy under the Uniform Commercial Code.

120.    The purported disclaimer of warranties is also ineffective because Lennox does not provide the Lennox Warranty to purchasers of Lennox ACs before or at the time of purchase. Consumers only learn of such purported disclaimers at the time of installation of their Lennox AC, and such limitations cannot be considered to be a part of the bargain.

## COUNT I
### Express Warranty
### (On Behalf of Plaintiffs, the Classes, and Subclasses)

121.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

122.    Plaintiffs bring this claim on behalf of the Class, or, in the alternative on behalf of the Subclasses.

123.    Lennox expressly warranted via its user manuals, website, brochures, specifications, and/or models that the Lennox ACs are fit for the ordinary purpose in which such goods are used.

124.    Lennox's express warranties were part of the basis of the bargain between Lennox and Plaintiffs and members of the Classes.

125.     Lennox breached its express warranties because the Lennox ACs were not fit for the ordinary purpose in which they are used and because they were not free from defects in materials and workmanship that affect performance under normal use and maintenance. Specifically, the Lennox ACs are defective because the Coils are unreasonably susceptible to formicary corrosion and failure, and thus improperly or prematurely crack and break under normal use, rendering them unfit for their ordinary purpose.  Lennox also breached its express warranty by refusing to repair the Lennox ACs and/or by "fixing" failed Coils with similarly defective replacement Coils (*i.e*., made of copper).

126.    Plaintiffs and members of the Classes relied upon the representation or warranty that they would be supplied Lennox ACs and Coils, and/or replacement Coils, free of defects.

127.    Plaintiffs and members of the Classes notified Lennox of the breach.

128.    Plaintiffs and members of the Classes sustained injuries and damages as a result of the breach because (a) they paid a price premium due to the misrepresentations and omissions of material fact in the packaging, marketing, advertising on the Lennox ACs; (b) the Lennox ACs did not have the attributes or value promised, and/or (c) they paid out of pocket to replace a failed Coil, which was replaced with a similarly defective Lennox Coil.

129.    The limitations on Lennox's express warranty are unconscionable or fail in their essential purpose.

130.    Plaintiffs and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by Plaintiffs' various states, as well as all other applicable remedies.

### COUNT II
**Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs, the Classes and Subclasses)**

131.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

132.    Plaintiffs bring this claim on behalf of the Class, or, in the alternative on behalf of the Subclasses.

133.    Lennox is a merchant who sold air conditioning units to Plaintiffs and the Classes for residential use.

134.    A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

135.    Lennox's implied warranty that the Lennox ACs were merchantable was part of the basis of the bargain between Lennox and Plaintiffs and members of the Classes.

136.    Lennox breached the implied warranty of merchantability because the Lennox ACs were not of merchantable quality or fit for their ordinary and intended use and because they contained a defect at the time of their sale that resulted in, and continues to result in, leaking of Refrigerant and failure of the product, when used in a normal, foreseeable and customary way.

137.    The defects at issue are latent defects.  Plaintiffs and members of the Classes could not have known about their Lennox ACs' propensity for failure.

138.    Plaintiffs and members of the Classes notified Lennox of the breach.

139.    Plaintiffs and members of the Classes sustained injuries and damages as a result of the breach.

140.    The exclusions and/or limitations on Lennox's implied warranties are unconscionable and/or fail their essential purpose.

141.    As a direct and proximate result of Lennox's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have suffered damages in amount to be determined at trial including direct monetary losses incurred by Plaintiffs and members of the Classes in connection with attempted repair of the Lennox ACs and/or the price premium paid for the Lennox ACs, or such further damage to be proven at trial.

142.    Plaintiffs and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by Plaintiffs' various states, as well as all other applicable remedies.

**COUNT III**
**Implied Warranty of Fitness for a Particular Purpose**
**(On Behalf of Plaintiffs, the Classes and Subclasses)**

143.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

144. Plaintiffs bring this claim on behalf of the Classes, or, in the alternative on behalf of the Subclasses.

145. Lennox sold and promoted the Lennox ACs, which it placed into the stream of commerce. Lennox knew or had reason to know of the specific use, *i.e.*, home cooling, for which the Lennox ACs were purchased, and it impliedly warranted that the Lennox ACs were fit for such use.

146. Plaintiffs and Class members reasonably relied upon the expertise, skill, judgment and knowledge of Lennox and upon its implied warranty that the Lennox ACs were fit for the purpose and use of cooling homes.

147. Through the conduct alleged herein, Lennox has breached the implied warranty of fitness for a particular purpose. The defectively designed Lennox ACs were not fit for the particular purpose for which they were purchased by Plaintiffs and Class Members to perform. The Plaintiffs and Classes purchased the Lennox ACs for a particular purpose of being able to cool their homes. Lennox knew that the Plaintiffs and Class Members were purchasing the Lennox ACs for this purpose and marketed the products for this particular purpose.

148. Plaintiffs and Class Members relied on Lennox's misrepresentations by purchasing the Lennox ACs.

149. Lennox knew or had reason to know that Plaintiffs and Class members were influenced to purchase the Lennox ACs through Lennox's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

150. The Lennox ACs were not fit for their particular intended use because the design or manufacturing defects alleged herein render them incapable of properly providing cool air to Plaintiffs and Class members' homes as they contain defective evaporator Coils which are

24

unreasonably susceptible to formicary corrosion, which causes them to crack and break under normal use.

151.    Lennox's actions, as complained of herein, breached their implied warranty that the Lennox ACs were fit for such use, in violation of Uniform Commercial Code §2-315 and the common law of Illinois, as well as the common law and statutory laws of others states.

152.    Moreover, the limitations on Lennox's implied warranties are unconscionable and/or fail their essential purpose.

153.    Plaintiffs and Class members have incurred damages as described herein as a direct result of the failure of Lennox to honor its implied warranty.  In particular, Plaintiffs and Class  members would not have purchased the Lennox ACs had they known the truth about the defects; nor would they have suffered the collateral effects and damages associated with these defects.

## COUNT IV
**Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1,** *et seq.*
**(On behalf of Plaintiff Thomas and Illinois Subclasses)**

154.    Plaintiff Thomas re-alleges and incorporates each and every allegation set forth above as if fully written herein.

155.    Plaintiff Thomas asserts this claim individually and on behalf of the Illinois Subclasses.

156.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*, prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

157.    Throughout the Class Period, Defendant conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Lennox ACs.

158.    815 ILCS. 505/1(b) of the Illinois Consumer Fraud and Deceptive Business Practices Act defines the term "merchandise" to include Lennox ACs.

159.    815 ILCS. 505/1(c) of the Illinois Consumer Fraud and Deceptive Practices defines the term "person" to include Defendant.

160.    815 ILCS 505/1(e) of the Illinois Consumer Fraud and Deceptive Practices Act defines the term "consumer" to include Plaintiffs and the other Illinois Subclass members.

161.    Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to, Defendants' sale of defective Lennox ACs.

162.    Defendant intended for Plaintiffs and Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

163.    Plaintiffs and the Subclass were exposed to such misrepresentations and were deceived.

164.    Defendant' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiffs and Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Lennox ACs and/or Defendant's failure to disclose the defects of said products, and/or paid to replace defective Coils.

165.    Indeed, their purchases are of significantly diminished value because the Lennox AC's do not perform their sole function without the need for costly repair.

**COUNT V**
**South Carolina Unfair Trade Practices Act,**
**S.C. Code Ann. § 39-5-20 *et seq.***
**(On behalf of Plaintiff Harris and South Carolina Subclasses)**

166.     Plaintiff Harris re-alleges and incorporates each and every allegation set forth above as if fully written herein.

167.    Plaintiff Harris asserts this claim individually and on behalf of the South Carolina Subclasses.

168.    The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20 *et seq.* prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.Code Ann. § 39–5–20.

169.    Throughout the Class Period, Defendant conducted "trade" and "commerce" within the meaning of S.C.Code Ann. § 39–5–20 by its advertising, offering for sale, and sale of Lennox ACs.

170.    Defendant's acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the South Carolina Unfair Trade Practices Act, including but not limited to, Defendants' sale of defective Lennox ACs.

171.    Defendant's unfair and deceptive acts and practices, alleged herein, have adversely affected the public interest.

172.    Defendants intended for Plaintiff Harris and South Carolina Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

173.     Plaintiffs and the South Carolina Subclass were exposed to such misrepresentations and were deceived.

174.     Defendant's violation of the South Carolina Unfair Trade Practices Act caused Plaintiff Harris and the South Carolina Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Lennox ACs and/or Defendant's failure to disclose the defects of said products, and/or paid to replace defective Coils.

175.     Plaintiff Harris' and the South Carolina Subclass' purchases are of significantly diminished value because the Lennox AC's do not perform their sole function without the need for costly repair.

## COUNT VI
**Pennsylvania Unfair Trade Practices and Consumer Protection Law,**
**73 Pa. Stat. Ann. § 201-1, *et seq.***
**(On behalf of Plaintiff Bell and South Carolina Subclasses)**

176.     Plaintiff Bell re-alleges and incorporates each and every allegation set forth above as if fully written herein.

177.     Plaintiff Bell asserts this claim individually and on behalf of the Pennsylvania Subclasses.

178.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. Sec. 201-1 *et seq.* (PUTPCP), prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  73 Pa. Stat. Ann. § 201-3 (West).

179.     Throughout the Class Period, Defendants conducted "trade" and "commerce" within the meaning of PUTPCP by its advertising, offering for sale, and sale of Lennox ACs.

180.    Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the PUTPCP, including but not limited to, Defendant's sale of defective Lennox ACs.

181.    Defendant intended for Plaintiffs and the Pennsylvania Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

182.    Plaintiffs and the Subclass were exposed to such misrepresentations and were deceived.

183.    Defendants' violation of the PUTPCA caused Plaintiff Bell and the Pennsylvania Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Lennox ACs and/or Defendant's failure to disclose the defects of said products, an/or paid to replace defective Coils,

184.    Plaintiff Bell and the Pennsylvania Subclass' purchases are of significantly diminished value because the Lennox AC's do not perform their sole function without the need for costly repair.

## COUNT VII
### Florida Deceptive and Unfair Trade Practices Act,
### Fla. Stat. §§ 501.201-501.23
### (On behalf of Plaintiff Palumbo and Florida Subclasses)

185.    Plaintiff Palumbo re-alleges and incorporates each and every allegation set forth above as if fully written herein.

186.    Plaintiff Palumbo asserts this claim individually and on behalf of the Florida Subclasses.

187.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.23 *et seq.*, ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...."  Fla. Stat. § 501.204(1) (2001)

188.    Defendant's acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the FDUTPA, including but not limited to, Defendant's misrepresentations and omissions in the sale of defective Lennox ACs.

189.    Defendant intended for Plaintiffs and Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

190.    Plaintiff Palumbo and the Florida Subclasses were exposed to such omissions and misrepresentations and were deceived.

191.    Defendant's violation of the FDUTPA caused Plaintiff Palumbo and Florida Subclasses to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Lennox ACs and/or Defendant's failure to disclose the defects of said products, and/or paid to replace defective Coils.

192.    Plaintiff Palumbo and the Florida Subclasses' Lennox AC's are of significantly diminished value because the Lennox AC's do not perform their sole function without the need for costly repair.

## COUNT VIII

### Texas Deceptive Trade Practices-Consumer Protection Act,
### Tex. Bus. & Com. Code Ann. § 17.46
### (On behalf of Plaintiff Karbarz and Texas Subclasses)

193.    Plaintiff Karbarz re-alleges and incorporates each and every allegation set forth above as if fully written herein.

194.    Plaintiff Karbarz asserts this claim individually and on behalf of the Texas Subclasses.

195.    The Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*, ("TDTPCPA") declares unlawful "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce…" Tex. Bus. & Com. Code Ann. § 17.46 (West)

196.    Defendant's acts and practices, alleged herein, constitute false, misleading, and/or deceptive business practices in violation of the TDTPCPA, including but not limited to, Defendant's misrepresentations and omissions in the sale of defective Lennox ACs.

197.    Defendant intended for Plaintiffs and Subclass members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

198.    Plaintiff Karbarz and the Texas Subclasses were exposed to such omissions and misrepresentations and were deceived.

199.    Defendant's violation of the TDTPCPA caused Plaintiff Karbarz and Texas Subclasses to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Lennox ACs and/or Defendant's failure to disclose the defects of said products, and/or paid to replace defective Coils.

200.     Plaintiff Karbarz and the Texas Subclasses' Lennox AC's are of significantly diminished value because the Lennox AC's do not perform their sole function without the need for costly repair.

## COUNT IX
### Unfair and Unlawful Practices
### (Cal. Bus. & Prof. Code § 17200 *et seq*)
### (On behalf of Plaintiff Davis and California Subclasses)

201.     Plaintiff Davis repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

202.     Plaintiff Davis brings this claim individually and on behalf of the California Subclasses

203.     Plaintiff Davis brings this statutory claim pursuant to Cal. Bus & Prof. Code § 17200, which prohibits unfair competition and the type of deceptive representations made by Lennox regarding the Lennox ACs.

204.     Under Cal. Bus. & Prof. Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

205.     Lennox has engaged in unfair, unlawful, and fraudulent business acts or practices as set forth above.

206.     **Unfair.** Lennox's conduct constitutes an unfair business act or practice because Lennox's practices have caused and are likely to cause substantial injury to Plaintiff Davis and the California Subclasses, which injury is not reasonably avoidable as alleged herein, and is not outweighed by any countervailing benefits to consumers.

207.    **Unlawful.** Lennox's acts and practices are unlawful because they violate (1) Cal. Bus. & Prof. Code § 17500 *et seq*, and (2) the Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq*.

208.    Lennox fraudulent representations and omissions about the Lennox ACs are an act or practice in the conduct of trade or commerce.

209.    These representations and omissions impact the public interest.

210.    Lennox's representations and omissions about the Lennox ACs are deceptive, unfair and fraudulent because Lennox knew, or should have known, the statements were misrepresentations of the Lennox ACs' actual capabilities.

211.    Plaintiff and members of the Class suffered economic injury as a direct and proximate result of Lennox's conduct, including but not limited to, the price paid for the purchase of a compatible phone to replace the class member's Galaxy SII.

212.    Lennox committed deceptive acts or practices within the meaning of the above statute by engaging in the acts and practices alleged herein.

213.    Plaintiff Davis seeks an order of this Court awarding restitution, injunctive relief, and all other relief allowed under § 17200, *et seq*, plus attorneys' fees, and costs.

### COUNT X
**False Advertising**
**(Cal. Bus. & Prof Code § 17500 *et seq*)**
**(On behalf of Plaintiff Davis and California Subclasses)**

214.    Plaintiff Davis repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

215.    Plaintiff Davis brings this claim individually and on behalf of the California Subclasses

216.    Lennox is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

217.   Lennox falsely advertised the performance, uses, benefits, characteristics, quality, grade and standard of the Lennox ACs.

218.   Lennox's misrepresentations and omissions as described above were likely to and did in fact deceive Plaintiff Davis and members of the California Subclasses.

219.   Plaintiff Davis relied upon Lennox's material misrepresentations and omissions to his detriment in that she would not have paid the same price for an air conditioner which was uniquely susceptible to formicary corrosion and would require additional refrigerant and coil replacement.

220.   The above-described false and misleading advertising conducted by Lennox continues to the time of this filing and represents an ongoing threat to the general public.

221.   Lennox has been unjustly enriched as a result of the above-described conduct.

222.   Plaintiff Davis seeks an order of this Court pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535 (a) Requiring Lennox to immediately cease the unlawful, unfair, and/or fraudulent business acts and/or practices and false and misleading advertising described herein; (b) enjoining Lennox from continuing to misrepresent and qualities of its Lennox ACs; (c) requiring Lennox to replace any Lennox Coils with coils which are not subject to formicary corrosion; and (d) providing full restitution and damages to Plaintiff Davis and any member of the California Subclasses, plus interest, costs, and attorneys' fees.

**COUNT XI**
**Unfair or Deceptive Acts or Practices**
**(Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.)**
**(On behalf of Plaintiff Davis and California Subclasses)**

223.     Plaintiff Davis repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

224.     Plaintiff Davis brings this claim individually and on behalf of the California Subclasses based on Lennox's breach of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*.

225.     Plaintiff was a "consumer" as that term is defined in Cal. Civ. Code § 1761(d) at all times relevant to the Complaint.

226.     The Lennox ACs purchased by Plaintiff Davis and the California Subclasses constituted "goods" as that term is defined in Cal. Civ. Code § 1761 (a) at all times relevant to the Amended Complaint.

227.     Lennox constituted a "person" as that term is defined in Cal, Civ. Code § 1761(c) at all times relevant to the Amended Complaint.

228.     Plaintiff Davis the California Subclasses' purchase of the Lennox ACs constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e) at all times relevant to the Amended Complaint.

229.     Lennox provided "services" to Plaintiff and the class within the meaning of Cal. Civ. Code § 1761(b).

230.     The CLRA provides, inter alia, "[the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

subsection (a)(5) [r]epresenting that goods… have… characteristics, uses, benefits…which they do not have;…subsection (a)(7) [r]epresenting that goods…are of a particular standard, quality or grade…if they are of another;…and subsection of (a)(9) [a]dvertising goods …with intent not to sell them as advertised. Cal. Civ. Code §§ 1770(a)(5), (7) and (9).

231.  Lennox violated the CLRA because it makes uniform written representations that regarding the characteristics, uses, benefits, standards, and quality of the Lennox ACs that represent the Lennox ACs have standards, qualities, or grades which they do not have. Lennox made these representations with intent to sell the Lennox ACs without the qualities it had represented.

232.  Lennox did not disclose that Lennox ACs contain coils uniquely susceptible to formicary corrosion.

233.  The information Lennox misrepresents, conceals, and/or does not disclose to consumers is material in that a reasonable consumer would have considered them important in deciding whether to purchase, or whether to pay the stated price for, a Lennox AC.

234.  Plaintiff Davis reasonably and justifiably acted or relied to his detriment upon the undisclosed facts as evidenced by her purchase of the Lennox AC. Had Plaintiff Davis known of the material omissions described above, she would not have purchased a Lennox AC, or only agreed to pay less for it.

235.  Plaintiff Davis seeks an order of this Court pursuant to Cal. Civ. Code § 1780 (a)(2) enjoining Lennox's conduct described above, and  requiring Lennox to

replace the Lennox Coils with coils not susceptible to formicary corrosion, plus attorneys' fees and costs.

236.     Plaintiff Davis has notified Lennox in writing of its particular violations of Cal. Civ. Code § 1770 pursuant to Cal Civ. Code § 1782 and made a demand for corrective action. By agreement, Plaintiff sent this notice to Defendant by electronic mail care of Defendant's counsel.  See Exhibit G.  Accordingly, Plaintiff reserves the right to seek damages for violation of Cal. Civ. Code § 1770 pursuant to Cal Civ. Code § 1780(a) upon expiration of the 30 day requirement found in Cal Civ. Code § 1782.

**COUNT XII**
**Unjust Enrichment**
**(On Behalf of Plaintiffs, the Classes and the Subclasses)**

237.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

238.     Plaintiffs bring this claim on behalf of the Classes or, in the alternative on behalf of the various state Subclasses.

239.     Plaintiffs and members of the Classes conferred a benefit upon Lennox.  Namely, Plaintiffs and Class members paid money for ownership of their Lennox ACs.

240.     Lennox retained that benefit.

241.     Lennox retained that benefit under circumstances that make it inequitable for Lennox to retain it without paying the value thereof.  Specifically, Lennox retained that benefit despite the fact that the Lennox ACs contained defective Coils.

242.     Plaintiffs purchased the Lennox ACs from a Lennox's agent, in part, because of Lennox's advertisements, marketing and product claims, and a result, a relationship between the

parties has been created even though Plaintiffs did not purchase Lennox ACs directly from Lennox.

243.    As set forth above, Lennox misrepresented the relevant Lennox ACs as free from design defect through it marketing, advertising, product packaging, and print publications specifically designed to entice Plaintiffs, Class Members, builders, contractor and others to buy Lennox ACs.

244.    Because Lennox's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Lennox must pay restitution to Plaintiffs and class members for its unjust enrichment, as ordered by the Court.


## COUNT XIII
### Fraudulent Concealment
### (On behalf of Plaintiffs, the Classes and Subclasses)

245.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

246.    Plaintiffs bring this claim on behalf of the Classes or, in the alternative on behalf of the various state Subclasses.

247.    Lennox knew or should have known that the Coils were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lennox nor the reasonable expectations of ordinary consumers.

248.    Lennox fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Coils are defective.

249.     Lennox had exclusive knowledge of the defective nature of the Coils at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

250.     Lennox had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Coils free from defects.

251.     Lennox undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Lennox advertising, publicity or marketing materials that disclosed the truth about the defect, despite Lennox's awareness of the problem.

252.     The facts concealed and/or not disclosed by Lennox to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Coils.

253.     Lennox intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

254.     Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of, or replacements using, the Coils.

255.     Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Lennox's fraudulent concealment and nondisclosure because: (a) they would not have purchased the ACs on the same terms if the true facts concerning the defective Coils had been known; (b) they paid a price premium due to they would be free from defects; and (c) the ACs did not perform as promised.  Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

256.     By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT XIV
### Declaratory Relief, 28 U.S.C. § 2201
### (On Behalf of Plaintiffs, the Classes and Subclasses)

257.     Plaintiffs repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

258.     Plaintiffs brings this claim on behalf of the Classes, or, in the alternative on behalf of the Subclasses pursuant to 28 U.S.C. § 2201.

259.     There is an actual controversy between Plaintiffs and the classes on one hand, and Lennox on the other regarding the marketing and sale of the Lennox ACs.

260.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

261.     Lennox marketed and sold, and continues to market and sell, Lennox ACs with defective Coils, while concealing this defect from consumers.

262.     Lennox has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2). Plaintiffs seeks declaratory relief, ruling that:

      a.     Lennox ACs containing copper Coils are defective because they are unreasonably susceptible to formicary corrosion;

      b.     certain provisions of Lennox's warranty are void as unconscionable;

    c.        Lennox must notify AC owners of the defect;

    d.        the durational limitations on the warranty are removed;

    e.        Lennox will reassess all prior warranty claims and pay the full cost of repairs and damages;

    f.        Lennox will pay the cost of inspection to determine whether any Class Member's Coils need replacement; an d

    g.        any limitation of damages or disclaimer or warranty by Lennox with regard to Lennox Coils are void.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and others similarly situated, seeks judgment against Defendant as follows:

A.      For an order certifying the Classes and/or Subclasses and/or issue class(es) under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representative and his attorneys as Class Counsel to represent the Class and Subclass members;

B.      For an order finding in favor of the Plaintiffs and the Classes on all counts asserted herein;

C.      For an order awarding damages in an amount to be determined by the Court or jury;

D.      For prejudgment interest on all amounts awarded;

E.      For an order of restitution and all other forms of injunctive and/or equitable relief;

F.      For an order awarding Plaintiffs and Classes reasonable attorneys' fees and expenses and costs of suit; and

G.      For all further relief, as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: January 9, 2014                      Respectfully submitted,

_____
Jeffrey A. Leon
Jeff@complexlitgroup.com
Jamie E. Weiss
Jamie@complexlitgroup.com
Zachary Jacobs
Zachary@Complexlitgroup.com
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, Illinois 60035
Phone: (847) 433-4500

Jonathan Shub
JShub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300

Richard J. Burke
Rich@Complexlitgroup.com
**COMPLEX LITIGATION GROUP LLC**
1010 Market Street, Suite 1340
St. Louis, MO 63101

Attorneys for Plaintiffs
and Proposed Classes