**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT THOMAS, SCOTT PATRICK HARRIS, MICHAEL BELL, SANDRA PALUMBO, FRANK KARBARZ, and THOMAS DAVIS on behalf of Themselves and all others similarly situated, | CASE NO.: 1:13-cv-07747 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | |
| LENNOX INDUSTRIES INC., | |
| Defendant. | |

**<u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>**

1076905

## TABLE OF CONTENTS

Preamble .................................................................................................................1

I.    BACKGROUND OF THE SETTLEMENT....................................................1

II.    CLASS BENEFITS OF THE SETTLEMENT .............................................3

III.  DEFENDANT'S DENIALS OF WRONGDOING AND LIABILITY .......................4

IV.  TERMS OF THE SETTLEMENT AGREEMENT ........................................4

    A. Exhibits ...................................................................................................5

    B. Definitions ..............................................................................................5

    C. Settlement Consideration ...................................................................20

    D. Settlement Procedure .........................................................................32

    E. Notice Plan ...........................................................................................34

    F. Claims Administration Plan ...............................................................36

    G. Objecting to the Settlement................................................................45

    H. Opting Out of the Settlement Class ...................................................48

    I. Releases.................................................................................................49

    J. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination ....50

    K. Attorneys' Fees and Expenses and Costs..........................................54

    L. Confirmatory Discovery .....................................................................58

    M. Miscellaneous Provisions ..................................................................58

i

*Preamble*

This Stipulation and Agreement of Settlement (collectively, including the Exhibits, the "Settlement Agreement"), dated as of June 26, 2015, states the definitive terms of the settlement and resolution of *Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis on behalf of Themselves and all others similarly situated, v. Lennox Industries Inc.*, Case No. 1:13-CV-07747, pending in the United States District Court for the Northern District of Illinois, Eastern Division (the "Action").

This Settlement Agreement is entered into by and between  (i) Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis (collectively, the "Plaintiffs"), individually and on behalf of any class of consumers they represent in the Action, on the one hand, and (ii) Lennox Industries Inc. ("Lennox" or "Defendant"), on the other hand (individually, each of Plaintiffs and Lennox is referred to in this Settlement Agreement as a "Party," and, collectively, Plaintiffs and Lennox are referred to in this Settlement Agreement as the "Parties").

All capitalized terms used in this Settlement Agreement have the meanings specified in the definitions provided in Section IV.B of this Settlement Agreement.

## I.      BACKGROUND OF THE SETTLEMENT

A. On October 29, 2013, Robert Thomas on behalf of himself, a putative nationwide class, and a putative subclass of Illinois purchasers filed a class action complaint in the Action against Lennox International Inc.

B. On January 14, 2014, Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis on behalf of themselves and all others

1

similarly situated, filed an amended class action complaint in the Action against Lennox Industries Inc. The amended complaint added five additional named plaintiffs, each of which sought to represent an additional putative subclass of purchasers from their respective home states, namely California, Florida, Pennsylvania, South Carolina, and Texas. The amended complaint also substituted defendant Lennox Industries Inc. for defendant Lennox International Inc.

C. On March 28, 2014, Lennox filed its answer to the amended class action complaint and denied all the material allegations asserted by Plaintiffs.

D. The Parties entered into a Non-Use Agreement dated April 3, 2014, pursuant to which they have engaged in settlement discussions and have made informal disclosures to facilitate those settlement discussions.

E. By Order dated April 23, 2014, pursuant to Fed. R. Civ. P. 23(g) the Court appointed Jonathan Shub of Kohn, Swift & Graf, P.C. (formerly of Seeger Weiss LLP) and Jeffery Leon of Quantum Legal LLC (formerly Complex Litigation Group) as Interim Class Counsel on behalf of the putative classes alleged in the Complaint.

F. Since March 2014, the Parties have engaged in settlement discussions, including in-person settlement negotiation sessions on April 3, 2014 and October 13, 2014, in-person mediation sessions on May 16, 2014, June 3, 2014, and August 26, 2014, before the Honorable Richard Neville (the "First Mediator"), and an in-person mediation session on December 22, 2014, before the Honorable Edward Infante (the "Second Mediator").

2

G. On January 7, 2015 Defendant circulated a nonbinding Term Sheet (the "Term Sheet") that provided the framework for the Settlement based on the mediation sessions between the Parties with the intention that the Parties would negotiate in good faith and execute a settlement agreement that would embody the terms set forth in the Term Sheet and such other and consistent terms as are agreed upon.

H. Based upon the proceedings and information exchanged to date, the Parties recognize the tremendous time and expense that would be incurred by further litigation of the Action and the uncertainties inherent in any such litigation, and the Parties have concluded that their interests would be best served by a settlement of the Action.

## II.    CLASS BENEFITS OF THE SETTLEMENT

The entry by the Plaintiffs into the Settlement is not an admission as to the lack of any merit of any claims asserted in the Action. However, Class Counsel recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Action against the Defendant through trial and through appeals. Class Counsel also has taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation. In addition, Class Counsel considered the fair and adequate Class Settlement Consideration conferred to the Settlement Class through the Settlement. Based upon their evaluation, both Plaintiffs and Class Counsel have determined that the Settlement set forth in this Settlement Agreement is fair, reasonable and adequate, and in the best interests of the Plaintiffs and the Settlement Class.

III.    **DEFENDANT'S DENIALS OF WRONGDOING AND LIABILITY**

Defendant denies all allegations of wrongdoing, fault, liability or damage to Plaintiffs and the Settlement Class, denies that it committed any violation of law or rule of equity, denies that it acted improperly in any way, believes that it acted properly at all times, and believes that the Action has no merit. Defendant further vigorously denies that the requirements for a litigation class action are met in the Action and contends that a litigation class action should not be certified or maintained. Defendant does not oppose certification of a settlement class only for purposes of the Settlement as provided in this Settlement Agreement. Defendant wishes to settle the Action on the terms and conditions stated in this Settlement Agreement solely to eliminate the uncertainties, burden and expense of further litigation and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability or damage to Plaintiffs and the Settlement Class. Nothing in this Settlement Agreement should be construed as an admission by Defendant of any wrongdoing, fault, liability, or damages whatsoever.

IV.    **TERMS OF THE SETTLEMENT AGREEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned, on behalf of Plaintiffs, the Settlement Class, and the Defendant that, subject to all necessary court approvals, the Action and the Released Claims will be finally and fully compromised, settled and released, and the Action will be dismissed with prejudice, upon and subject to the terms and conditions of this Settlement Agreement, as follows.

4

1076905

## A. **Exhibits**

1. The Exhibits to this Settlement Agreement are material and integral parts of this Settlement Agreement and will be incorporated by reference as though fully set forth in this Settlement Agreement.

2. The following is a listing of all the Exhibits to this Settlement Agreement.

| | |
|---|---|
| Exhibit A: | Notice Plan |
| Exhibit A-1: | Long-Form Notice |
| Exhibit A-2: | Summary Notice |
| Exhibit A-3: | Postcard Notice |
| Exhibit A-4: | Dealer Notice |
| Exhibit A-5: | Internet Banners |
| Exhibit B: | Claims Administration Plan |
| Exhibit B-1a: | Claim Form |
| Exhibit B-1b: | Request for Benefits Form |
| Exhibit B-2a: | Rejection Notice for Claim Form |
| Exhibit B-2b: | Rejection Notice for Request for Benefits Form |
| Exhibit B-3a: | Request for Additional Information for Claims |
| Exhibit B-3b: | Request for Additional Information for Request for Benefits |
| Exhibit B-4: | Script for Toll-Free Number |
| Exhibit B-5: | Certificate for Expanded Warranty and Reimbursement Program |
| Exhibit B-6: | Service Rebate Certificate |
| Exhibit C: | Proposed Preliminary Approval Order |
| Exhibit D: | Proposed Final Judgment and Order of Dismissal |
| Exhibit E: | Disclosure |

## B. **Definitions**

In this Settlement Agreement the following terms have the meanings specified below:

1. "Action" has the meaning set forth in the preamble of this Settlement Agreement.

2. "Allied" means Allied Air Enterprises LLC, a wholly owned subsidiary of Defendant.

5

3.  "Application for Fee and Expense Award" means the application to be filed by Class Counsel in this Action for attorneys' fees and costs incurred by them in prosecuting this Action, negotiating this Settlement, and monitoring the Settlement during the Settlement administration process.

4.  "Authorized Claimants" means those Settlement Class Members that properly and timely file a valid Claim Form in the Action and otherwise meet all of the applicable requirements of the Claims Administration Plan and this Settlement Agreement.

5.  "Certificate" has the meaning set forth in Section IV.C.1.c of this Settlement Agreement, and is intended solely to provide Authorized Claimants with information concerning the benefits to which they are or may become entitled under this Settlement Agreement and the process by which they may request those benefits.  Nothing in this Settlement Agreement shall be construed so as to require an Authorized Claimant to be in physical possession of a Certificate to be entitled to receive any benefit to which such Authorized Claimant is otherwise entitled pursuant to the terms of this Settlement Agreement.

6.  "Claim Form" means the form for Settlement Class Members to submit claims for the purpose of requesting Class Settlement Consideration as part of the claims process in the Action, a copy of which is attached as Exhibit B-1a to this Settlement Agreement.

7.  "Claims Period" means that period of time beginning as of the dissemination of notice to the Settlement Class in the Action and ending for each Settlement

6

Class Member on the later of (i) 11:59 p.m. of the 60th day after the Final Approval Hearing in the Action; or (ii) 11:59 p.m. of the 60th day after the Settlement Class Member's Original Coil is replaced by installation of a Replacement Coil.

8. "Claims Administration Plan" means the plan for the claims administration process for the Settlement. The Parties contemplate that the "Claims Administration Plan" will be the plan described in Section IV.F and in Exhibit B to this Settlement Agreement. The Parties further contemplate, however, that the plan set forth in Exhibit B may be modified (i) by the Court or (ii) by the Parties jointly without the need for Court approval, provided that any such changes are consistent with the general intent of the other provisions of this Settlement Agreement.

9. "Class Action Fairness Act" means the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), effective February 18, 2005.

10. "Class Counsel" means Jonathan Shub and the law firm of Kohn, Swift & Graf, P.C.; Jeff Leon and the law firm of Quantum Legal Group, LLC (collectively "Co-Lead Counsel"); and Scott George of the law firm of Seeger Weiss LLP.

11. "Class Settlement Consideration" means the appropriate relief for each Authorized Claimant described in Section IV.C of this Settlement Agreement, which Defendant will make available to Authorized Claimants pursuant to the Claims Administration Plan.

7

12. "Coil" means a Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (separately, as part of an air handler, or as part of a packaged unit) covered by an Original Warranty.

13. "Court" means the United States District Court for the Northern District of Illinois, Eastern Division, in which the Action is pending.

14. "Defendant" has the meaning set forth in the preamble of this Settlement Agreement.

15. "Defendant's Counsel" means McKool Smith, P.C. and Winston & Strawn LLP.

16. "Effective Date" means the date on which the Final Judgment and Order of Dismissal become Final.

17. "Expanded Warranty and Reimbursement Program" has the meaning set forth in Section IV.C.1.b of this Settlement Agreement.

18. "Fee and Expense Award" means all attorneys' fees, expenses and costs, if any, that are awarded by the Court in the Action and the service award, if any, to be paid to the class representatives.

19. "Final" means the status of the Final Judgment and Order of Dismissal in the Action as of one business day after the last of all the following conditions are met: (i) the occurrence of all the events and conditions in Section IV.J.3.a through c of this Settlement Agreement; (ii) the expiration of the time for filing or noticing any appeal of such Final Judgment and Order of Dismissal; and (iii) if there is an appeal or appeals, the completion, in a manner that affirms and leaves in place such Final Judgment and Order of Dismissal without any

8

material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand). Provided that the foregoing conditions are met, the Final Judgment and Order of Dismissal will be "Final," notwithstanding any possibility of relief under the provisions of Rule 60 of the Federal Rules of Civil Procedure.

20. "Final Approval Date" means the date the Final Judgment and Order of Dismissal is entered by the Court in the Action.

21. "Final Approval Hearing" means the hearing at which the Court in the Action will consider the motion for final approval of the Settlement and for final judgment and Class Counsel's Application for Fee and Expense Award. The Parties anticipate that the date and time of the Final Approval Hearing will be set by the Court in the Preliminary Approval Order defined below.

22. "Final Judgment and Order of Dismissal" means the order and final judgment entered by the Court in the Action that is consistent with and approves in all material respects the terms of the Settlement and this Settlement Agreement. Exhibit D to this Settlement Agreement is a copy of the proposed form of Final Judgment and Order of Dismissal to be submitted to the Court by the Parties.

23. "First Mediator" has the meaning set forth in Section I.F of this Settlement Agreement.

9

24. "First Phase" means the phase of the claims process that will be administered by the Settlement Administrator. The First Phase is limited to assessing and processing (i) any and all claims to become an Authorized Claimant submitted by 11:59 p.m. of the 60th day after the Final Approval Hearing in the Action, and (ii) any requests to obtain relief available to an Authorized Claimant under this Settlement submitted as of that same time and date.

25. "First Replacement Coil" has the meaning set forth in Section IV.C.2.b.i of this Settlement Agreement.

26. "Injunction Order" means the order stating that: (a) all proceedings in the Action will be stayed, other than proceedings in furtherance of the Settlement; and (b) all Settlement Class Members and all Persons acting or purporting to act on behalf of any Settlement Class Member(s), who do not timely and properly opt-out from the Settlement Class in accordance with the court-ordered procedures, will be enjoined under applicable law, including but not limited to the All Writs Act, 28 U.S.C. 1651, the Anti-Injunction Act, 28 U.S.C. 2283, and Federal Rule of Civil Procedure 65, from commencing or prosecuting any action, suit, proceeding, claim, or cause of action (except those based on personal injury), in any jurisdiction, court or forum against a Released Party relating to or arising out of the subject matter of the Action. Pursuant to Section IV.D.3 of this Settlement Agreement, such an order is to be included in both the proposed Preliminary Approval Order and the proposed Final Judgment and Order of Dismissal.

10

27. "Maximum Amount" means the maximum amount of $1,250,000 in attorneys' fees and expenses that Class Counsel may seek in the Action, as more fully described in Section IV.K. The Maximum Amount also includes the service award, if any, to be paid to the class representatives.

28. "Notice Plan" means the process of providing notice to the Settlement Class and all costs associated with that process. The Parties contemplate that the "Notice Plan" will be the plan described in Section IV.E and attached as Exhibit A to this Settlement Agreement. The Parties further contemplate, however, that the plan set forth in Exhibit A may be modified (i) by the Court or (ii) if approved by the Court, (a) by the Notice Expert or (b) by the Parties jointly.

29. "Notice Expert" means the Person chosen by the Parties and approved by the Court as the class notice expert. The Notice Expert will administer notice in accordance with the Notice Plan, the Parties' agreement, or as required by the Court. The Notice Expert (and any successor(s)) will be unrelated to, and independent of, the Defendant. The Parties have agreed that they will jointly move the Court to appoint Kurtzman Carson Consultants LLC as the Notice Expert.

30. "Original Coil" means an uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (separately, as part of an air handler, or as part of a packaged unit) purchased new, within the time period covered by the Settlement Class, covered by an Original Warranty, and installed in its original installation site.

11

31. "Original Warranty" means the manufacturer's limited warranty or manufacturer's extended limited warranty provided by Lennox or Allied that applies to an uncoated copper tube Coil from the date of the original unit installation. Other than as expressly provided in this Settlement Agreement, the respective rights and obligations of any party to the Original Warranty remain unchanged.

32. "Parties" and "Party" have the meanings set forth in the preamble of this Settlement Agreement.

33. "Parties' Counsel" means Class Counsel and Defendant's Counsel, collectively.

34. "Personal Injury Claim(s)" means any claims, causes of action, lawsuits, actions, administrative proceedings, or demands for personal injury, including any available remedies, which relate to the Coils at issue in the Action.

35. "Persons" includes, without limitation, natural persons, firms, corporations, businesses, limited liability companies, partnerships, and all other entities.

36. "Plaintiffs" has the meaning set forth in the preamble to this Settlement Agreement.

37. "Preliminary Approval Date" means the date the Preliminary Approval Order is entered by the Court in the Action.

38. "Preliminary Approval Order" means the preliminary approval order to be entered by the Court in the Action that is consistent with and preliminarily approves in all material respects the terms of the Settlement and this Settlement

12

Agreement. Exhibit C to this Settlement Agreement is a copy of the proposed form of Preliminary Approval Order to be submitted to the Court by the Parties.

39. "Provision Time" means the time at which Defendant will provide the Class Settlement Consideration to Authorized Claimants, which in all events shall be: (i) after the Effective Date (except with respect to coated copper tube Replacement Coils and aluminum tube Replacement Coils provided under the Replacement Coil Warranty as set forth in Section IV.C.2.e) and (ii) at such time thereafter specified by the Claims Administration Plan and the Certificate.

40. "Rejection Notice" means the written notice provided by the Settlement Administrator during the First Phase of the claims process, or Lennox during the Second Phase of the claims process, under supervision of the Parties' Counsel, to each claimant whose Claim Form or Request for Benefits Form they propose to reject in whole or in part, which notice informs the claimant of the proposed rejection, sets forth the reasons for such rejection and provides notice of any right of review. A copy of the form for a Rejection Notice for Claim Form is attached as Exhibit B-2a to this Settlement Agreement. A copy of the form for a Rejection Notice for Request for Benefits Form is attached as Exhibit B-2b to this Settlement Agreement.

41. "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, expert or consulting fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees,

13

matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (defined below), whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule, which are based upon, arise out of, or involve, directly or indirectly, any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were alleged, asserted, set forth, claimed or at issue, or that could have been alleged, asserted, set forth, claimed or at issue, in the Action, relating to Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coils originally purchased during the Settlement Class period or any of the allegations in the Action, by any or all Plaintiffs or any or all Settlement Class Members (or any of the Plaintiffs' or Settlement Class Members' present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, insurers, directors, managing directors, officers, partners, principals, members, attorneys, advisors, and any other representatives of any of these Persons and entities),

14

against the Released Parties. The Released Claims also include all claims, known or unknown, based upon or arising out of the defense, settlement, or resolution of the Action. Provided, however, that the Released Claims will not include (a) the right to enforce the Settlement and this Settlement Agreement; or (b) Personal Injury Claims.

42. "Released Parties" means: (i) the Defendant; (ii) the Defendant's respective past or present parents, subsidiaries, divisions, affiliates, associates, predecessors and successors, and its and their officers, directors, managing directors, controlling shareholders, partners, principals, members, employers, employees, agents, consultants, advisors, insurers and attorneys; (iii) any Person, firm, trust, corporation, officer, director or other individual or entity in which Defendant has a controlling interest; (iv) retailers, distributors, dealers, and other entities and Persons who place any Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand products within the stream of commerce; and (v) the legal representatives, heirs, successors in interest or assigns of any of the foregoing.

43. "Replacement Coil" means an evaporator coil installed to replace an Original Coil or another Replacement Coil pursuant to an Original Warranty or in accordance with the terms of the Expanded Warranty and Reimbursement Program as set forth in Section IV.C.

44. "Replacement Coil Warranty" has the meaning set forth in Section IV.C.2.b.ii.

15

45.  "Request for Benefits Form" means the form for Authorized Claimants to submit a request for benefits under the Expanded Warranty and Reimbursement Program that the Authorized Claimant becomes eligible for after submission and approval of the Authorized Claimant's Claim Form, a copy of which is attached as Exhibit B-1b to this Settlement Agreement.  Only Authorized Claimants may submit a Request for Benefits Form.

46.  "Second Mediator" has the meaning set forth in Section I.F of this Settlement Agreement.

47.  "Second Phase" means the phase of the claims process that will be administered by Lennox.  The Second Phase is limited to assessing and processing (i) any and all claims to become an Authorized Claimant submitted after the closing of the First Phase (11:59 p.m. of the 60th day after the Final Approval Hearing in the Action), and (ii) requests to obtain relief available to an Authorized Claimant under this Settlement submitted after the closing of the First Phase.

48.  "Second Replacement" has the meaning set forth in Section IV.C.2.d.

49.  "Second Replacement Coil" has the meaning set forth in Section IV.C.2.b.iii.

50.  "Service Rebate" has the meaning set forth in Section IV.C.2.a.

51.  "Service Rebate Certificate" is the document, substantially in the form attached as Exhibit B-6 to this Settlement Agreement, which will be sent to Authorized Claimants pursuant to Section IV.C.2.a and which will reflect the date the Service Rebate is issued.

52.  "Settlement" means the settlement described in this Settlement Agreement.

16

53. "Settlement Administrator" means the Person chosen by the Parties and approved by the Court to administer the Settlement and the First Phase of the claims process. The Second Phase of the claims process will be administered by Lennox with quarterly reporting of denied claims to Co-Lead Counsel. The Settlement Administrator, and thereafter Lennox, will administer claims in accordance with the Claims Administration Plan, the Parties' agreement, or as required by the Court. The Settlement Administrator must be unrelated to, and independent of, the Defendant. The Parties have agreed that they will jointly move the Court to appoint Kurtzman Carson Consultants LLC as the Settlement Administrator.

54. "Settlement Agreement" has the meaning set forth in the preamble to this Settlement Agreement.

55. "Settlement Class" means:

(a) subject to the exclusions listed in subsection (b) below, all Persons who are residents of the United States and who purchased on or after October 29, 2007 through the Preliminary Approval Date at least one uncoated copper tube Original Coil (separately, as part of an air handler, or as part of a packaged unit), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.

(b) Excluded from this Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; (2)

17

the lawyers in this Action and any members of their immediate families; (3) the First Mediator and the Second Mediator and any member of their immediate families; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

56. "Settlement Class Member" is each Person who falls within the meaning set forth in Section IV.B.55 above.

57. "Settlement Website" has the meaning set forth in Section IV.E.2.c.

58. "Supplemental Agreement" means the side letter agreement that states the number of opt outs from the Settlement that will trigger Defendant's right to terminate or withdraw from this Settlement Agreement pursuant to Section IV.J.1.a of this Settlement Agreement. The Supplemental Agreement is executed by the Parties contemporaneously with this Settlement Agreement and is incorporated into this Settlement Agreement by reference. The Supplemental Agreement will not be filed with the Court unless and until a dispute arises between the Plaintiffs and Defendant concerning its application or interpretation or the Court orders its disclosure, at which time it shall be presented to the Court in camera and filed and maintained with the Court under seal.

59. "Term Sheet" has the meaning set forth in Section I.G above.

18

60.   "Unknown Claims" as used in the definition of Released Claims means claims that Plaintiffs, any or all Settlement Class Members, and any or all other Persons and entities whose claims are being released, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties and the Released Claims, or might affect his, her or its decision to object or not to object to the Settlement.  Upon the Effective Date, Plaintiffs, the Settlement Class, and all other Persons and entities whose claims are being released, will be deemed to have, and will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to §1542 of the California Civil Code, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiffs, on behalf of the Settlement Class, acknowledge that the Settlement Class Members may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention, on behalf of the Settlement Class, to fully, finally and forever settle

19

1076905

and release the Released Claims, including Unknown Claims, as that term is defined above.

**C.** **Settlement Consideration**

1.  Each Settlement Class Member is eligible for coverage under the Expanded Warranty and Reimbursement Program, defined below in Section IV.C.1.b.  In order for a Settlement Class Member to receive any benefits under the Expanded Warranty and Reimbursement Program, the Settlement Class Member must be an Authorized Claimant by virtue of having submitted a timely and valid Claim Form within the Claims Period.

    a.  As provided in Section IV.B.7, above, the Claims Period begins as of the dissemination of notice to the Settlement Class in the Action and ends for each Settlement Class Member on the later of (i) 11:59 p.m. of the 60th day after the Final Approval Hearing in the Action; or (ii) 11:59 p.m. of the 60th day after the Settlement Class Member's Original Coil is replaced by installation of a Replacement Coil.

    b.  Each Authorized Claimant will receive the benefits, rights, and protections, subject to the conditions, limitations, and exclusions, described in this Section IV.C and the Claims Administration Plan (the "Expanded Warranty and Reimbursement Program").  As described in this Section IV.C, the Expanded Warranty and Reimbursement Program consists of a rebate program, a Replacement Coil Warranty, and a reimbursement program.

20

c.  As further described in the Claims Administration Plan, each Authorized Claimant will receive a certificate (the "Certificate"), substantially in the form attached as Exhibit B-5 to this Settlement Agreement, describing and explaining the benefits and rights to which the Authorized Claimant is or may become entitled under the Expanded Warranty and Reimbursement Program and providing instructions about when and how the Authorized Claimant can exercise rights to redeem and obtain benefits under the Expanded Warranty and Reimbursement Program.

d.  To become an Authorized Claimant, a Settlement Class Member must submit a timely and valid Claim Form. A Settlement Class Member need only submit a Claim Form once for any claims based on any particular Original Coil purchased by the Settlement Class Member. Submission of the Claim Form also serves as a request for benefits that the Settlement Class Member may be eligible to receive as of the time the Settlement Class Member submits the Claim Form. If that claim is allowed so that the Settlement Class Member becomes an Authorized Claimant, the Authorized Claimant may submit Request for Benefits Forms to request benefits under the Expanded Warranty and Reimbursement Program that the Authorized Claimant becomes eligible for after submission of the Authorized Claimant's Claim Form.

2.  For each Authorized Claimant who replaced or replaces an Original Coil because of a Coil leak within five years after installation of the Original Coil,

21

Lennox will provide the following relief as applicable under the Expanded Warranty and Reimbursement Program:

a. <u>$75 Service Rebate</u>. Each Authorized Claimant who replaced or replaces the Original Coil because of a Coil leak within five years after installation of the Original Coil will be eligible to receive a one-time $75 service rebate valid for one year from the date the Service Rebate Certificate is sent to the Authorized Claimant (which is deemed to be the date issued) for service, including routine maintenance required under the Original Warranty, performed after the date the rebate is issued, on the Replacement Coil or Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand HVAC (heating, ventilation or air conditioning) products installed in the same residence as the Replacement Coil (the "Service Rebate"). Service must be provided by an independent Lennox dealer listed at www.lennox.com. If the Authorized Claimant replaced the Original Coil as of the time he or she submits the Claim Form, the Authorized Claimant must fill out the applicable section of the Claim Form to request the Service Rebate be issued. If the Authorized Claimant has not replaced the Original Coil as of the time he or she submits the Claim Form, in order to request that the Service Rebate be issued the Authorized Claimant must submit a Request for Benefits Form within 60 days of the date the Original Coil is replaced. To redeem the Service Rebate, the Settlement Class Member must provide proof of having

22

received the service and the date the service was received by submitting (1) a valid itemized invoice or receipt, or (2) other competent evidence establishing under the preponderance of the evidence standard the fact that service was provided and when. Proof must be submitted as specified in the Claims Administration Plan and the Certificate within 60 days of the date of the service against which the Authorized Claimant seeks to apply the Service Rebate.

b.   <u>Coil Replacements After the Preliminary Approval Date</u>. If an Authorized Claimant has *not* replaced the Original Coil on or before the Preliminary Approval Date:

   i.   <u>First Coil Replacement</u>. The Authorized Claimant will be eligible to receive a Replacement Coil at no charge for the Replacement Coil itself upon a leak requiring replacement of the Original Coil only under and in accordance with the terms of the Original Warranty (the "First Replacement Coil"). If the First Replacement Coil is installed more than one year but equal to or less than five years after the date of installation of the Original Coil, the Authorized Claimant may become eligible for retroactive reimbursement for labor and refrigerant for installation of that First Replacement Coil in the circumstances described below in Section IV.C.2.d.

   ii.   <u>Additional Coverage for Replacement Coil</u>. Each Authorized Claimant, who received or receives, pursuant to the Original

23

Warranty, an uncoated copper tube Replacement Coil as the First Replacement Coil, is eligible for a five-year part and labor warranty on that particular First Replacement Coil (the "Replacement Coil Warranty"). Settlement Class Members who received or receive a coated copper tube Replacement Coil or aluminum tube Replacement Coil as the First Replacement Coil are *not* eligible for the Replacement Coil Warranty. The Replacement Coil Warranty will be in effect until the earlier to occur of the date that is five years after the date of the First Replacement Coil installation or the date on which the Authorized Claimant receives a coated copper tube Replacement Coil or aluminum tube Replacement Coil. The Replacement Coil Warranty applies only to the First Replacement Coil and is not transferrable to Coils in other air conditioning or heat pump systems.

iii.  Replacement Coil Leak. If the First Replacement Coil covered by the Replacement Coil Warranty leaks and requires replacement within the five-year Replacement Coil Warranty period, the Authorized Claimant will be eligible to receive a coated copper tube Replacement Coil or aluminum tube Replacement Coil (as determined by Lennox) (the "Second Replacement Coil") at no charge for the Second Replacement Coil itself. The Authorized Claimant must notify Lennox as specified in the Claims Administration Plan and the Certificate so that Lennox can arrange for the provision of the Second

24

Replacement Coil in accordance with this Section. The Authorized Claimant will also be eligible to receive reimbursement for the actual costs of labor and refrigerant to install the Second Replacement Coil up to a maximum of $550, if the Authorized Claimant provides proof of the amount charged and the amount paid for labor and refrigerant related to the installation of the Second Replacement Coil by submitting (1) a valid itemized invoice or receipt with proof of payment, or (2) other competent evidence establishing under the preponderance of the evidence standard the amount actually charged and the amount actually paid. Proof of the amount charged and payment must be submitted as specified in the Claims Administration Plan and the Certificate within 60 days of the date the coated copper tube Replacement Coil or aluminum tube Replacement Coil is installed. The Authorized Claimant must use an independent Lennox dealer listed at www.lennox.com for the installation of the Second Replacement Coil.

c.    <u>Original Coil Replacements On or Before the Preliminary Approval Date</u>. If an Authorized Claimant replaced the Original Coil or any Replacement Coils because of a Coil leak on or before the Preliminary Approval Date:

i.    <u>First Coil Replacement</u>. If the Authorized Claimant replaced the Original Coil for the first time more than one year but equal to or less than five years after the date of installation of the Original Coil, under

25

and in accordance with the Original Warranty, the Authorized Claimant may be or become eligible for retroactive reimbursement for labor and refrigerant for the installation of the First Replacement Coil in the circumstances described below in Section IV.C.2.d.

ii.   Subsequent Coil Replacement(s).   If the Authorized Claimant replaced a Replacement Coil with an uncoated copper tube Replacement Coil once or more than one time on or before the Preliminary Approval Date, the Authorized Claimant will be eligible to receive reimbursement for the actual costs of labor and refrigerant to replace the Replacement Coil or Replacement Coils for the completed replacements that occurred after installation of the First Replacement Coil and on or before the Preliminary Approval Date up to a maximum of $550 per replacement, if the Authorized Claimant provides proof of the amount charged and the amount paid for labor and refrigerant related to the installation of the subsequent Replacement Coils by submitting (1) a valid itemized invoice or receipt with proof of payment, or (2) other competent evidence establishing under the preponderance of the evidence standard the amount actually charged and the amount actually paid.  Proof of the amount charged and payment must be submitted as specified in the Claims Administration Plan within the Claims Period by the

26

Settlement Class Member with his or her timely and valid Claim
Form.

iii.    <u>Additional Coverage for Most Recent Replacement Coil</u>.    If the
Authorized Claimant replaced one or more Coils with an uncoated
copper tube Replacement Coil on or before the Preliminary Approval
Date, the Authorized Claimant is eligible for the Replacement Coil
Warranty on the most recent Replacement Coil only.    Settlement
Class Members who received a coated copper tube Replacement Coil
or aluminum tube Replacement Coil are *not* eligible for the
Replacement Coil Warranty.  The Replacement Coil Warranty will be
in effect until the earlier to occur of the date that is five years after the
date of the installation of the most recent Replacement Coil or the
date on which the Authorized Claimant receives a coated copper tube
Replacement Coil or aluminum tube Replacement Coil.    The
Replacement Coil Warranty applies only to the most recent
Replacement Coil and is not transferrable to Coils in other air
conditioning or heat pump systems.

iv.    <u>Replacement Coil Leak After the Preliminary Approval Date</u>.  If an
Authorized Claimant described in Section IV.C.2. has a Replacement
Coil installed that is covered by the Replacement Coil Warranty and
that Replacement Coil leaks and requires replacement after the
Preliminary Approval Date and within the five-year Replacement Coil

27

Warranty period, the Authorized Claimant will be eligible to receive a coated copper tube Replacement Coil or aluminum tube Replacement Coil (as determined by Lennox) at no charge for the Replacement Coil itself. The Authorized Claimant must notify Lennox as specified in the Claims Administration Plan and the Certificate so that Lennox can arrange for the provision of the Replacement Coil in accordance with this Section. The Authorized Claimant will also be eligible to receive reimbursement for the actual costs of labor and refrigerant to replace the Coil up to a maximum of $550, if the Authorized Claimant provides proof of the amount charged and the amount paid for labor and refrigerant related to the installation of the coated copper tube Replacement Coil or aluminum tube Replacement Coil by submitting (1) a valid itemized invoice or receipt with proof of payment, or (2) other competent evidence establishing under the preponderance of the evidence standard the amount actually charged and the amount actually paid. Proof of the amount charged and payment must be submitted as specified in the Claims Administration Plan and the Certificate within 60 days of the date the coated copper tube Replacement Coil or aluminum tube Replacement Coil is installed. The Authorized Claimant must use an independent Lennox dealer listed at www.lennox.com for the Coil replacement.

28

d. <u>Retroactive Reimbursement for First Coil Replacement</u>. As referenced in sections IV.C.2.b.i and IV.C.2.c.i above, if an Authorized Claimant replaced an Original Coil for the first time more than one year after the date of installation of the Original Coil and received an uncoated copper tube Replacement Coil, and if that Replacement Coil is replaced (the "Second Replacement"), the Authorized Claimant will be eligible for reimbursement, up to a maximum of $550, for the actual costs of labor and refrigerant for the replacement of the Original Coil, if the Authorized Claimant provides (a) proof of the date the First Replacement Coil was installed, and (b) proof of the amount charged and the amount paid for labor and refrigerant related to the Original Coil replacement by submitting (1) a valid itemized invoice or receipt with proof of payment, or (2) presentation of other competent evidence establishing under the preponderance of the evidence standard the amount actually charged and the amount actually paid. Proof of the amount charged and payment must be submitted as specified in the Claims Administration Plan and the Certificate. In particular, proof must be submitted either (i) with the Settlement Class Member's timely and valid Claim Form if the Second Replacement has occurred as of the date the Claim Form is submitted, or (ii) if the Second Replacement had not occurred as of the date the Claim Form is submitted, then by the later of (x) 60 days after the Second Replacement, or (y) 60 days after the date the Certificate was issued to the

29

Authorized Claimant as indicated on the Certificate sent to that Authorized Claimant. If the Second Replacement occurs after the Effective Date, such replacement must be made according to the terms of the Replacement Coil Warranty for the Authorized Claimant to be eligible for the retroactive reimbursement described in this Section IV.C.2.d.

e. Provision Time of coated copper tube Replacement Coil and aluminum tube Replacement Coil. Defendant will provide the benefits described above in Sections IV.C.2.b through d to Authorized Claimants only after the Effective Date with one exception. If (i) an Authorized Claimant becomes eligible for a coated copper tube Replacement Coil or aluminum tube Replacement Coil pursuant to Section IV.C.2.b.iii or Section IV.C.2.c.iv during the period beginning the day after the Preliminary Approval Date and ending on the Effective Date, and (ii) the Authorized Claimant follows the instructions as specified in the Claims Administration Plan and the Certificate to request a coated copper tube Replacement Coil or aluminum tube Replacement Coil, then Lennox will provide such Replacement Coil itself at that time. All other benefits, including reimbursement related to the installation of such Replacement Coil, will not be provided until after the Effective Date. Until a Settlement Class Member becomes an Authorized Claimant, Settlement Class Members described in Section IV.C.2.b or Section IV.C.2.c who have one or more Replacement Coils replaced during the period beginning the day after the

30

Preliminary Approval Date and ending on the Effective Date will be treated as a Settlement Class Member with multiple Coil replacements on or before Preliminary Approval as set forth above in Section IV.C.2.c.ii and, upon their becoming an Authorized Claimant, the Replacement Coil Warranty will be deemed to cover only the most recent uncoated copper tube Replacement Coil as set forth above in Section IV.C.2.c.iii.

    f.    <u>Duration and Exclusions</u>.  In all circumstances, once an Authorized Claimant receives a coated copper tube Replacement Coil or aluminum tube Replacement Coil, the Replacement Coil Warranty ends (although the Original Warranty provided with the Original Coil will continue according to its terms, unless it expires on or before the time the coated copper tube Replacement Coil or aluminum tube Replacement Coil is installed).

3.    <u>Disclosures</u>.  Lennox will prepare and publish on its website information about the remote risk of formicary corrosion under certain conditions.  The disclosure will be substantially in the form and substance as set forth in Exhibit E to this Settlement Agreement.  However, Defendant will not be required to publish the disclosure before the Effective Date or revise, reprint, or supplement any product literature that is printed on or before the Effective Date.

4.    <u>Adequate Consideration</u>.  Plaintiffs and Plaintiff's Counsel agree that the relief set forth in Sections IV.C.2 through 3 above is adequate consideration for the Settlement.

5.      Pursuant to the Settlement procedure set forth in Section IV.D below, Plaintiffs will dismiss with prejudice the Action and all the Released Claims.  Further, the Parties will use their best efforts and take all necessary steps to obtain and uphold such dismissal with prejudice of the Action.

6.      <u>No Other Relief</u>.  Under no circumstances shall Defendant be required to provide any relief or bear any costs or expenses other than as expressly set forth in this Settlement Agreement.

## D.  **Settlement Procedure**

1.      On or before June 26, 2015, the Plaintiffs will submit to the Court in the Action an agreed motion for preliminary approval of the Settlement, along with a proposed Preliminary Approval Order substantially in the form attached as Exhibit C to the Settlement Agreement.  The Court has scheduled a hearing on the motion for preliminary approval on July 9, 2015 at 1:45 p.m.  The Parties agree that they may jointly request an extension of these dates for good cause.

2.      After entry of the Preliminary Approval Order, dissemination of notice to the Settlement Class (as described in Section IV.E below), and the expiration of the time for Settlement Class Members to opt out of the Settlement Class, Class Counsel will submit to the Court in the Action a motion for entry of judgment and order of dismissal, along with the proposed Final Judgment and Order of Dismissal substantially in the form attached as Exhibit D to this Settlement Agreement.  The Parties anticipate that the Court will schedule the Final Approval Hearing on a date specified in the Preliminary Approval Order at

32

which it will consider the motion for entry of judgment and order of dismissal and Class Counsel's Application for Fee and Expense Award.

3.    Both the proposed Preliminary Approval Order and the proposed Final Judgment and Order of Dismissal filed in the Court in the Action will contain an Injunction Order.  The Parties believe that the Injunction Order is necessary to protect and effectuate the Settlement contemplated by this Settlement Agreement, and the Parties agree that the Court has the authority to effectuate such an injunction, and that such injunction will aid the Court's jurisdiction to protect its orders and judgments, including the Preliminary Approval Order and the Final Judgment and Order of Dismissal.  In the event that the Court in the Action does not enter the Injunction Order as part of the Preliminary Approval Order or Final Judgment and Order of Dismissal, such ruling will not preclude the Defendant from seeking a stay or injunction of any other case in any court where such case is pending, and Class Counsel agrees that they will support, cooperate with and, if requested, assist with such motions.

4.    The Parties agree to recommend and use their best efforts to: (a) obtain approval of this Settlement Agreement and the Settlement contemplated hereby; and (b) have the Court in the Action enter both the proposed Preliminary Approval Order and Final Judgment and Order of Dismissal attached as Exhibits C and D to this Settlement Agreement.

5.    In the event that the Court in the Action does not enter the proposed Preliminary Approval Order or Final Judgment and Order of Dismissal reflected in Exhibits

33

C and D to this Settlement Agreement solely because it finds that the Notice Plan and notices set forth in Exhibits A, A-1, A-2, A-3, A-4, and A-5 to this Settlement Agreement are insufficient to comport with due process, the Parties will jointly cooperate to amend the Notice Plan and notices to cure any such defects so that they comport with due process, and again seek approval from the Court.

**E.  Notice Plan**

1.  As part of or concurrently with the filing of the motion for preliminary approval of the Settlement in the Action, Plaintiffs and Defendant will jointly move the Court to appoint Kurtzman Carson Consultants LLC as the Notice Expert for the Settlement Class, who will administer the Notice Plan in accordance with the Parties' agreement or as required by the Court.

2.  In connection with the motion for preliminary approval referenced in Section IV.D.1 above, the Parties will jointly move the Court to order notice to the Settlement Class in a manner that is consistent with the Notice Plan as recommended by the Notice Expert and that is mutually acceptable to the Parties, which will include, but not necessarily be limited to the following:

    a.  direct U.S. first class mail notice, substantially in the form of the postcard notice attached as Exhibit A-3 to this Settlement Agreement, to all Persons that Defendant and Plaintiffs have identified as falling within the definition of the Settlement Class and for which postal addresses may reasonably be obtained;

34

b.   notice by publication as detailed in the Notice Plan;

c.   online notice that will include a dedicated website address (the "Settlement Website");

d.   notice to independent Lennox dealers, substantially in the form attached as Exhibit A-4 to this Settlement Agreement;

e.   during the Claims Period, Lennox's website shall contain information about the Settlement and a direct hyperlink to the Settlement Website;

f.   notification to the appropriate governmental officials pursuant to the Class Action Fairness Act;

g.   each notice will contain information directing recipients to the Settlement Website and an automated telephonic hotline maintained by the Settlement Administrator that will provide information concerning the Settlement, including, if desired, a copy of the long-form notice, substantially in the form attached as Exhibit A-1 to this Settlement Agreement, and other related Settlement documents.

3.   Notice of the Settlement will be given to the Settlement Class within 50 days of entry of the Court's Preliminary Approval Order, or as soon thereafter as practicable.  Pursuant to the Notice Plan, there will be five forms of notice, a long-form notice, a summary notice, a postcard notice, a dealer notice, and internet banners, which are attached as Exhibits A-1, A-2, A-3, A-4, and A-5 to this Settlement Agreement.

35

4.      Plaintiffs, in coordination with Defendant and the Notice Expert, will be responsible for providing notice, and the reasonable and necessary costs associated with notice for the Settlement will be paid for by Defendant.

5.      At least seven days before the Final Approval Hearing, the Parties' Counsel will have the Notice Expert file with the Court proof (by an appropriate affidavit or declaration) of providing the requisite notification to the Settlement Class.

**F.  Claims Administration Plan**

1.      The Claims Administration Plan, attached as Exhibit B to this Settlement Agreement, provides for a reasonable and customary claims process under the supervision of the Court in the Action.  The First Phase of the claims process will be administered by the Settlement Administrator appointed by the Court. Because the Extended Warranty and Reimbursement Program could remain in effect for up to 10 years for certain Settlement Class Members, the Second Phase of the claims process will be administered by Lennox.  The Settlement Administrator and Lennox will discharge their duties under the supervision of the Parties' Counsel and will be subject to the jurisdiction, supervision, direction and approval of the Court in the Action.  As part of or concurrently with the filing of the motion for preliminary approval of the Settlement in the Action, Plaintiffs and Defendant will jointly move the Court to appoint Kurtzman Carson Consultants LLC as the Settlement Administrator.  The reasonable and necessary costs for administration of the Settlement, including the processing of Claim Forms and Request for Benefits Forms and the reasonable and necessary

36

costs for the Settlement Administrator, will be paid for by the Defendant. However, Defendant is not responsible for any fees or costs, including attorney's fees, incurred by Plaintiffs, Settlement Class Members, Class Counsel, or any third parties in connection with objections to the Settlement, requests to opt out of the Settlement Class, or challenges to denials, in whole or in part, of any Claim Form or Request for Benefits Form under the Settlement.

2.  Pursuant to this Settlement Agreement and the Claims Administration Plan, a Settlement Class Member will be required to submit a completed Claim Form in order to become an Authorized Claimant and to request benefits that the Settlement Class Member may be eligible for as of the date that Settlement Class Member submits his or her Claim Form. The Claim Form will include instructions for the claim submission process. Each Authorized Claimant will receive a Certificate, substantially in the form attached as Exhibit B-5 to this Settlement Agreement, describing the Authorized Claimants' benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how the Authorized Claimant can exercise those rights to redeem and obtain benefits under the Expanded Warranty and Reimbursement Program. Authorized Claimants may submit Request for Benefits Forms to request benefits under the Expanded Warranty and Reimbursement Program that the Authorized Claimant becomes eligible for after submission of the Authorized Claimant's Claim Form.

37

a. Settlement Class Members will receive instructions regarding how to obtain a Claim Form and Request for Benefits Forms via notice pursuant to the Notice Plan. The Settlement Class will be able to obtain Claim Forms and Request for Benefits Forms by: (i) calling the automated toll-free number established for purposes of the Settlement to request a form; (ii) mailing a request for a Claim Form or Request for Benefits Form to the address established by the Settlement Administrator; or (iii) visiting the Settlement Website established by the Settlement Administrator and downloading the Claim Form or Request for Benefits Form.

b. Settlement Class Members may submit Claim Forms, and Authorized Claimants may submit Request for Benefits Forms, online through the Settlement Website or by mailing completed forms (together with all supporting material, if any) to the address provided by the Settlement Administrator. If a Claim Form or Request for Benefits Form is submitted online, any supporting material may either be attached to the online submission or mailed to the address provided.

3. Each Claim Form and Request for Benefits Form submitted during the First Phase of the claims process will be reviewed by the Settlement Administrator pursuant to the Claims Administration Plan and the Settlement Administrator will determine the extent, if any, to which each claim or request for benefits will be allowed, subject to challenge by the Parties pursuant to this Section IV.F.3 and the terms of the Claims Administration Plan, and subject to review pursuant

38

to Section IV.F.4 below. Each Claim Form and Request for Benefits Form submitted during the Second Phase of the claims process will be reviewed by Lennox pursuant to a process that is similar to the Claims Administration Plan and Lennox will determine the extent, if any, to which each claim or request for benefits will be allowed, subject to challenge by the Plaintiffs pursuant to this Section IV.F.3 and the terms of the Claims Administration Plan, and subject to review pursuant to Section IV.F.4 below. As reflected in the Claims Administration Plan and this Section IV.F.3, the Parties' Counsel have developed, with input from the Settlement Administrator, criteria by which: (a) the validity of claims and requests for benefits may be determined, which will include, without limitation, a determination of whether each claimant is a member of the Settlement Class and, in the case of a Request for Benefits Form, whether each claimant is an Authorized Claimant; and (b) a procedure by which claim and request for benefits submissions that do not satisfy the criteria for validity can be evaluated. For purposes of determining the extent, if any, to which a claim or request for benefits will be allowed, the following conditions will apply:

a.  Claim Forms must be submitted by no later than 11:59 p.m. of the last date of the Claims Period. Request for Benefits Forms must be submitted within the time frames specified in Section IV.C.2 above, the Claims Administration Plan, and the Certificate. In any given case, the particular deadline for submitting a Request for Benefits Form will vary depending

39

on the benefit(s) requested and the Authorized Claimant's circumstances. A Claim Form and a Request for Benefits Form will be deemed to have been submitted when mailed, if received with a legible postmark indicated on the envelope and if mailed by U.S. first class mail (or more expedient means) and addressed in accordance with the instructions on the respective form. In all other cases, the Claim Form and Request for Benefits Form will be deemed to have been submitted when actually received by the Settlement Administrator during the First Phase of the claims process, and by Lennox during the Second Phase of the claims process.

b.  Only Authorized Claimants may submit a Request for Benefits Form.

c.  Before rejecting a Claim Form or Request for Benefits Form, the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, as applicable, will communicate with the claimant in order to remedy any curable deficiencies in the form submitted. Settlement Class Members who submit claims or requests for benefits that only partially satisfy the criteria in the Claims Administration Plan will, as a general rule, be given notice of the deficiency and the opportunity to correct errors and omissions within 30 days from the date that the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, mails the notice of the deficiency, substantially in the form attached as Exhibits B-3a and B-3b to this Settlement Agreement,.

40

d.  In some cases, however, a claim or request for benefits that only partially satisfies the criteria in the Claims Administration Plan may be allowed without the need to cure the defect in the submission.  In the interest of achieving substantial justice, subject to the agreement of the Parties' Counsel, the Parties' Counsel may waive what they deem to be formal or technical defects in any Claim Forms or Request for Benefits Forms submitted.

e.  Conversely, the Parties contemplate that there may be situations in which a claim or request for benefits is deemed incurable, including without limitation cases where a claimant is not a member of the Settlement Class and, in the case of a Request for Benefits Form, where a claimant is not an Authorized Claimant.  In such cases the claimant will not be given the opportunity to resubmit his or her claim.

f.  The Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, may request such additional documentation as it deems necessary, and in so doing, may consult the Parties' Counsel.

g.  No decision regarding the validity of a claim or request for benefits will affect the enforceability of this Settlement Agreement, provide either of the Parties with the right to terminate the Settlement, impose an obligation on the Defendant or any other Released Parties to increase the consideration offered in connection with the Settlement, or affect or delay the binding

41

effect or finality of the Settlement, this Settlement Agreement, the Final Judgment and Order of Dismissal or the release of the Released Claims.

4.  The administrative determinations of the Settlement Administrator and Lennox accepting and rejecting claims and requests for benefits will be presented for review in the Action in accordance with the following procedure, which will be set forth in the Claims Administration Plan:

    a.  The Parties hereby consent to the review and final adjudication of any challenged claim and request for benefits by the Court.

    b.  During the First Phase of the claims process, the Settlement Administrator will advise in writing the Parties' Counsel as to their determinations accepting and rejecting claims and requests for benefits and, to the extent requested, will provide the Parties' Counsel with a list of rejected claims and requests for benefits.  During the Second Phase of the claims process, Lennox will advise in writing the Parties' Counsel as to their determinations rejecting claims and requests for benefits and, to the extent requested, will provide the Parties' Counsel with a list of rejected claims and requests for benefits.  The Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, will send Rejection Notices, substantially in the form attached as Exhibits B-2a and B-2b to this Settlement Agreement, to claimants in a timely fashion and will provide notice of the claimant's right to review in the Action.

42

c. Only Defendant will have the right to challenge the Settlement Administrator's approval of a claim or request for benefits. To make such a challenge, Defendant must, within 20 days after receiving written notice of the Settlement Administrator's decision, provide the Settlement Administrator a statement of the Defendant's grounds for contesting the decision, along with any supporting documentation.

d. Claimant and Class Counsel will have the right to challenge the Settlement Administrator's denial of a claim or request for benefits during the First Phase of the claims process, and Lennox's denial of a claim or request for benefits during the Second Phase of the claims process.

e. Any claimant who is the recipient of a Rejection Notice and who desires to challenge such rejection, must, within 30 days after the date of mailing of the Rejection Notice, serve upon the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, a statement of the claimant's grounds for contesting the rejection, along with any supporting documentation, and request review by the Court.

f. Once acceptance or rejection of a claim or request for benefits has been appropriately challenged as set forth immediately above, the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, will review its decision to determine if the dispute can be resolved. If a dispute concerning a claim or

43

request for benefits cannot be otherwise resolved by the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, the Parties' Counsel will promptly present the issue to the Court.

g.   All proceedings with respect to the administration, processing and determination of claims and requests for benefits, and all controversies relating thereto (including disputed questions of law and fact with respect to the validity of claims and requests for benefits), will be subject to the jurisdiction of the Court in the Action. Further, each claimant will be deemed to have submitted to the jurisdiction of the Court in the Action with respect to the claim or request for benefits submitted, and the claim or request for benefits will be subject to investigation and discovery under that Court's Rules, provided that such investigation and discovery will be limited to that claimant's status as a Settlement Class Member, that claimant's status, in the case of a Request for Benefits Form, as an Authorized Claimant, and the validity of the claim or request for benefits. No discovery will be allowed on the merits of the Action or Settlement in connection with the processing of the Claim Forms or Request for Benefits Forms.

h.   The Court's approval or rejection of the claims and requests for benefits will be deemed final and conclusive as to the Settlement Class Members.

44

5.    At the Provision Time, the Defendant will provide the appropriate Class Settlement Consideration to each Authorized Claimant in accordance with the Claims Administration Plan.

6.    All Settlement Class Members whose claims are not approved (including, without limitation, anyone who does not submit a Claim Form by the end of the Claims Period) will be barred from participating in the provision of Class Settlement Consideration, but in all other respects will be bound by all of the terms of this Settlement Agreement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for in this Settlement Agreement, and will be barred from bringing or prosecuting any action against the Released Parties concerning the Released Claims.

7.    Subject to Section IV.F.4 above, no Settlement Class Member will have any claim against the Plaintiffs, Defendant, the Released Parties, the Settlement Administrator, or any of their counsel, based on any portion of the claims process, including, but not limited to, decisions made by the Settlement Administrator or Lennox, the approval or rejection of a claim or request for benefits, or the provision of Settlement Consideration.

**G.  <u>Objecting to the Settlement</u>**

1.    Any Settlement Class Member will have the right to object to the fairness, reasonableness, or adequacy of the Settlement or to the Application for Fee and Expense Award, or to seek to intervene in the Action by sending written objections to the addresses of the Court and the Settlement Administrator listed

45

in the notices, postmarked no later than a deadline to be set by the Court, which deadline will be set forth in the notices. Each governmental entity given the notice required by the Class Action Fairness Act will have the rights and obligations provided under the Class Action Fairness Act.

2.  Objections must: (i) include proof that the objector is a Settlement Class Member; (ii) be signed by the objector; (iii) include the objector's full name, current mailing address and current daytime and evening telephone numbers; (iv) include a statement that the objector objects to the settlement in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.); (v) include the reasons the objector objects to the Settlement, along with all documents and other writings the objector wishes the Court to consider, and describe any and all evidence the objector may offer at the Final Approval Hearing, including but not limited to, the names and expected testimony of any witnesses; and (vi) otherwise comply with the requirements specified in the Claims Administration Plan.

3.  Within three business days after receipt, the Settlement Administrator shall provide to the Parties' Counsel copies of any written objections and any requests to intervene along with any accompanying materials.

4.  All objectors shall make themselves available to be deposed by Class Counsel and Defendant's Counsel in the county of the objector's residence within seven days of service of his or her timely written objection.

46

5.  Any papers not filed and served in the prescribed manner and time will not be considered at the Final Approval Hearing, and all objections not made in the prescribed manner and time shall be deemed waived. Any objections or requests to intervene by a Settlement Class Member must be exercised individually by that Settlement Class Member, not as or on behalf of a group, class, or subclass, except that such objections or requests may be submitted by a Settlement Class Member's attorney on an individual basis.

6.  Any Settlement Class Member that desires to appear in person at the Final Approval Hearing for the purpose of objecting to the Settlement or intervening in the Action must mail a written notice of intent to appear, in addition to and simultaneously with the written objections or intervention request described above, to the addresses of the Court and the Settlement Administrator listed in the notices, postmarked no later than a deadline to be set by the Court, which deadline will be set forth in the notices provided under the Notice Plan.

7.  Any responses to objections or motions to intervene must be filed with the Court and served upon Class Counsel and Defendant's Counsel on or before a date set by the Court that is no later than 14 days prior to the Final Approval Hearing.

8.  Within three business days after the Court-ordered deadline for the submission of objections, the Settlement Administrator will provide to the Parties' Counsel and the Court: (a) a listing of the objectors who made timely and valid objections; (b) a listing of any objectors who either are not validated to be Settlement Class Members or otherwise have failed to submit a valid objection

47

because they fail to meet any of the criteria specified in the Claims Administration Plan.

**H. Opting Out of the Settlement Class**

1. Any Settlement Class Member will have the right to opt out of (i.e. to be excluded from) the Settlement Class by sending a written request to the addresses listed in the notices provided under the Notice Plan, postmarked no later than a deadline to be set by the Court, which deadline will be set forth in the notices.

   a. Requests to opt-out must: (i) be signed by that Settlement Class Member; (ii) include that Settlement Class Member's full name, current mailing address and current daytime and evening telephone numbers; (iii) include a statement substantially similar to the following: "I request to be excluded from the Settlement Class in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.)"; and (iv) otherwise comply with the requirements specified in the Claims Administration Plan.

   b. No request to opt-out will be valid unless it substantially complies with all of the requirements as described above and in the Claims Administration Plan. If a timely and valid request to opt out is made by a Settlement Class Member, then that Person will no longer be a member of the Settlement Class.

48

    c.    The Parties and the Parties' Counsel will use such opt out information only for purposes of determining and establishing whether a Person has timely and properly opted out of the Settlement Class.

2.    All Settlement Class Members who have not opted out (whether or not an Authorized Claimant) will be bound by all determinations and judgments concerning the Settlement and Settlement Agreement.

3.    Within 14 days after the Court-ordered deadline for timely and properly opting out from the Settlement Class, but in no event later than seven calendar days before the Final Approval Hearing, the Parties' Counsel will have the Settlement Administrator provide to the Court and the Parties' Counsel the names and applicable addresses of the Settlement Class Members who have timely and properly opted out of the Settlement Class, as well as the total number of such Persons, which the Parties' Counsel will attach to the proposed Final Judgment and Order of Dismissal submitted to the Court in the Action.

## I. Releases

1.    Upon the Effective Date, the Plaintiffs and the Settlement Class will be deemed to have, and by operation of the Final Judgment and Order of Dismissal will have, fully, finally, and forever released, relinquished and discharged the Released Parties from all Released Claims.

2.    Upon the Effective Date, the Defendant and the other Released Parties will be deemed to have, and by operation of the Final Judgment and Order of Dismissal will have, fully, finally, and forever released, relinquished, and discharged

49

Plaintiffs, the Settlement Class and Class Counsel from all claims, known or unknown, based upon or arising out of the institution, prosecution, settlement or resolution of (i) the Action or (ii) the Released Claims.

3. For the avoidance of doubt, the Parties agree that the releases in Sections IV.I.1 and 2 shall not in any way impair or restrict the rights of the Parties to enforce the terms of the Settlement.

**J. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

1. Prior to the occurrence of the Effective Date, Defendant will have the right to terminate and withdraw from this Settlement Agreement under any one of the following circumstances: (a) the number of opt outs equals or exceeds a mutually agreed-upon number of eligible Settlement Class Members as more fully set forth in the Supplemental Agreement; (b) any of the Plaintiffs refuse to execute this Settlement Agreement; (c) claims related to the subject matter of the Action are commenced or prosecuted against any of the Released Parties and such claims are not dismissed with prejudice or stayed by the Preliminary Approval Order or Final Judgment and Order of Dismissal in contemplation of dismissal; (d) objections to the Settlement are sustained in whole or in part; (e) the Final Judgment and Order of Dismissal is modified in material part on or following appellate review; or (f) Class Counsel's Application for Fee and Expense Award or the Court's order of the Fee and Expense Award is in excess of the Maximum Amount.

2.  Before (and not during or after) the Preliminary Approval Hearing, Plaintiffs shall have the right to terminate this Settlement Agreement if the information provided in confirmatory discovery in Section IV.L below does not reasonably show the categories of information described in subsections a and b below. However, if Plaintiffs elect to terminate this Settlement Agreement, Plaintiffs and Class Counsel shall return all information provided as a part of confirmatory discovery described in section IV.L below, including copies thereof, and work product in any way relating thereto, and the Action will proceed in status quo ante as if such information had never been exchanged. Plaintiffs understand and agree that, should they terminate the Settlement Agreement, neither Plaintiffs nor Class Counsel will be entitled to later discover a copy of any privileged attorney work product information that was prepared in connection with confirmatory discovery or argue that Defendant has waived the attorney-client privilege or work product protection with respect to such information, and Plaintiffs and Class Counsel agree not to seek discovery of it, nor use it in any way in this or other litigation.

    a.  Backup data for Defendant's May 23, 2014 letter to Class Counsel or for updated figures as applicable.

    b.  Studies, if any, conducted by Lennox regarding formicary corrosion.

3.  The consummation of the Settlement is subject to and contingent upon the occurrence of each of the following conditions and events:

51

1076905

a.    The Parties' agreement as to the form of the proposed Preliminary Approval Order in the Action and the Court's entry of the Preliminary Approval Order substantially in the form submitted by the Parties (as reflected in Exhibit C to this Settlement Agreement), or as modified pursuant to an agreement by all Parties;

b.    The Parties' agreement as to the form of the proposed Final Judgment and Order of Dismissal in the Action, and the Court's entry of the Final Judgment and Order of Dismissal substantially in the form submitted by the Parties (as reflected in Exhibit D to this Settlement Agreement), or as modified pursuant to an agreement by all Parties;

c.    Defendant having not withdrawn from and terminated the Settlement pursuant to Section IV.J.1 above;

d.    The Final Judgment and Order of Dismissal becoming Final.

4.    If (i) the Settlement Agreement is terminated by Defendant pursuant to Section IV.J.1 above (ii) the Settlement Agreement is terminated by Plaintiff pursuant to Section IV.J.2 above, (iii) any specified condition to consummation of the Settlement set forth in Section IV.J.3 is not satisfied for any reason, (iv) the Settlement is disapproved, (v) the Court declines to enter the Final Judgment and Order of Dismissal in substantially the form attached as Exhibit D to this Settlement Agreement, (vi) said judgment is reversed, or (vii) the Effective Date otherwise does not occur, then, in any such event:

52

a. The Term Sheet (including any amendment(s)), this Settlement Agreement (including any amendment(s)), and all orders entered and releases delivered in connection with the Settlement, including without limitation the certification of the Action as a Settlement Class action, the Preliminary Approval Order, the Final Judgment and Order of Dismissal and the Fee and Expense Award, will be null and void and of no further force or effect, without prejudice to either Party, and may not be introduced as evidence , referred to, or used as the basis for any arguments or taking any position whatsoever in any actions or proceedings by any Person or entity, in any manner or for any purpose, including but not limited to claim preclusion (res judicata), issue preclusion (collateral estoppel) or judicial estoppel; and

b. Each Party will be restored to his or its respective position as of the date the Term Sheet was circulated as set forth in Section I.G of this Settlement Agreement and they will proceed in all respects as if the Term Sheet had not been circulated, this Settlement Agreement had not been entered into, and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action will be preserved without prejudice in any way.

c. In addition, the Released Parties shall retain all substantive and procedural rights and defenses, including but not limited to the right to take any action and take any position in opposition to certification of a litigation class action, which rights and defenses shall not be affected by the doctrines of

judicial estoppel, issue preclusion (collateral estoppel) or claim preclusion (res judicata), or any other doctrine, or waived, limited, or prejudiced in any way whatsoever by the Parties' efforts to obtain approval of the certification of a Settlement Class action, the Settlement and the Settlement Agreement.

**K. Attorneys' Fees and Expenses and Costs**

1. Prior to the Effective Date and by the deadline set by the Court in the Preliminary Approval Order, Class Counsel may file an Application for Fee and Expense Award, seeking no more than the Maximum Amount. Class Counsel shall file their Application for Fee and Expense Award at least seven days prior to the date for the filing of objections as set forth in Section IV.G above. To the extent the Court awards more than the Maximum Amount, Plaintiffs, the Settlement Class and Class Counsel will forego payment of the excess amount and only seek payment up to the Maximum Amount. Plaintiffs and Class Counsel will support any efforts by Defendant to oppose any other petition made in any jurisdiction for an award of attorneys' fees or reimbursement of expenses in connection with the Action. Neither any Plaintiff nor any Settlement Class Member will have any right to terminate or withdraw from the Settlement by reason of any order relating to fees and expenses.

2. Defendant retains the right to contest, and appeal from, any application for, or award of fees and expenses in an amount greater than the Maximum Amount.

54

3.  Subject to the terms of this Section IV.K and subject to approval by the Court in the Action of the Settlement provided for in this Settlement Agreement (including the provisions in this Settlement Agreement dealing with attorneys' fees, expenses and costs), Defendant will, within ten business days after the Effective Date, pay Co-Lead Counsel the amount of the Fee and Expense Award ordered prior to the Effective Date by the Court up to the Maximum Amount, notwithstanding the existence of any timely filed objections to the Fee and Expense Award or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof; provided, however, that in the event that the Fee and Expense Award is disapproved, reduced, reversed or otherwise modified, whether on appeal, further proceedings on remand, successful collateral attack or otherwise, then Class Counsel must, within ten business days after Class Counsel receives notice of any such disapproval, reduction, reversal or other modification, refund to Defendant the amount equal to the difference between the amount of the attorneys' fees and expenses awarded by the Court in the Fee and Expense Award on the one hand, and the amount of any attorneys' fees and expenses on the other hand that are ultimately and finally awarded on appeal, further proceedings on remand or otherwise, plus accrued interest on the difference amount calculated at the average of the daily T-bill rates from the date of payment of the Fee and Expense Award to the date of any such refund. Each of Class Counsel's law firms and their partners and/or shareholders, as a condition of receiving such fees and expenses, on behalf of itself and each

55

partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are jointly and severally liable to make the full amount of any such refund and are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this Section, and also agree that the Court may, upon notice to Class Counsel, summarily issue appropriate orders, including judgment and attachment orders, and make findings of, and impose sanctions for, contempt against each of the Class Counsel's firms and each of their partners, or any of them, should Class Counsel fail to timely refund such fees and expenses. It is expressly agreed by the Parties that this provision will survive both the Effective Date of the Settlement and the termination or cancellation of the Settlement.

4.  Plaintiff's Counsel agree that payment of the Fee and Expense Award to Kohn, Swift & Graf, P.C., as receiving agent for Class Counsel, via wire transfer or check sent via FedEx or other overnight delivery method, will discharge in full Defendant's obligations to pay attorneys' fees and expenses hereunder. Jonathan Shub, as a Co-Lead Counsel, will allocate the Fee and Expense Award amongst Class Counsel in accordance with any arrangements with Class Counsel or as ordered by the Court. Defendant and the Released Parties will have no responsibility for the allocation by Class Counsel of the Fee and Expense Award. Class Counsel further agree to indemnify and hold harmless Defendant from and against any causes of action, claims, attorneys' fees, or costs that might arise from: (a) a dispute regarding the fees and expenses,

56

including but not limited to any dispute regarding the allocation or division of the fees and expenses; or (b) a dispute between Class Counsel and third parties relating to the conduct of the litigation.

5. Class Counsel represent and warrant that they alone are responsible for the payment of any taxes relating to the Fee and Expense Award, and they will indemnify and hold harmless Defendant from and against any causes of action, claims, attorneys' fees, or costs that arise from their payment or non-payment of taxes relating thereto.

6. The Parties acknowledge that they did not negotiate with respect to attorneys' fees, expenses, or costs until agreement was reached regarding the substantive provisions of the Settlement, as described in the Term Sheet, and until the Second Mediator had advised the Parties that the settlement negotiations had progressed such that, under the principles and laws governing class action settlements, he was prepared to mediate negotiations relating to attorneys' fees and expenses.

7. Subject to Section IV.J.1.f above, the Parties agree and intend that the Settlement is not conditioned on any ruling on attorneys' fees and expenses, and that any such ruling by the Court, or any modification, alteration, or reversal, by the Court or on appeal, of any award of attorneys' fees and expenses, will not cancel, terminate, void, render ineffective, or in any way affect or delay the binding effect or finality of this Settlement Agreement, the release of the Released Claims, or the Final Judgment and Order of Dismissal.

57

Notwithstanding any other provision of this Settlement Agreement, no fees or expenses will be sought by or paid to Class Counsel in the absence of entry by the Court of a Final Judgment and Order of Dismissal which contains a release of the Released Claims.

8. With the exception of a service award which may be paid to the class representatives as ordered by the Court, Class Counsel warrants that no portion of any Fee and Expense Award will be paid to any Plaintiff or any Settlement Class Member. Defendant takes no position about whether such a service award is appropriate in this matter, and any such award is to be sought solely by Class Counsel from the Court. To the extent any service award is ordered to be paid, the service award will be paid from the Fee and Expense Award and shall be counted toward the Maximum Amount.

## L. **Confirmatory Discovery**

Lennox will provide Plaintiff with confirmatory discovery consisting of the following:

1. Backup data for Defendant's May 23, 2014 letter to Class Counsel or for updated figures as applicable.

2. One 30(b)(6) deposition to be conducted after receipt of backup data referenced in Section L.1.

3. Studies, if any, conducted by Lennox regarding formicary corrosion.

## M. **Miscellaneous Provisions**

1. The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to

58

effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement. Except as otherwise provided in this Settlement Agreement, each Party will bear his or its own costs.

2.    This Settlement Agreement, together with the Exhibits, other attachments and documents incorporated by reference, embodies the entire understanding and agreement between the Parties with respect to its subject matter and any and all prior understandings with respect to such subject matter, whether oral or written, are merged into this Settlement Agreement and replaced and superseded in their entirety by this Settlement Agreement.

3.    Plaintiffs and Plaintiffs' Counsel will not make, either directly or indirectly, public comment or statements of any kind about the Action or its resolution or the terms of the Settlement and Settlement Agreement, including but not limited to, on any websites, with the exception of any press release or other public comment previously approved and reviewed by the Parties related to securing final approval of the Settlement. Notwithstanding the foregoing, Class Counsel may, on their websites, quote directly from the Settlement notices provided to Settlement Class Members and may also include a link to the Settlement Website. Class Counsel also may communicate privately with Settlement Class Members about the Action and Settlement. Defendant may issue a press release regarding preliminary approval of the Settlement. In all events, the Parties shall not otherwise state or imply that the Settlement constitutes an admission of any

59

claim or defense alleged. Notwithstanding the foregoing, in light of Lennox International Inc.'s status as a public company, the Parties agree that Lennox International Inc. will be entitled to make any such factual public statements as it may in its good faith discretion determine is necessary or appropriate respecting the Settlement of the Action.

4. In all events, the Parties will refrain from any public accusations of wrongful, unethical, frivolous, bad faith or actionable conduct by either Party or attorney for a Party in connection with the Action and will not otherwise state or imply that the Settlement constitutes an admission of any claim or defense alleged.

5. The Parties represent and agree that the terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

6. The undersigned Class Counsel have the power and authority from all of the Plaintiffs and on behalf of the Settlement Class in the Action to enter into this Settlement Agreement. The signatories to this Settlement Agreement for the Defendant have management's approval and Lennox International Inc.'s senior management's approval to enter into this Settlement Agreement and to file a motion with the Court for approval of the Settlement.

7. The Parties covenant and agree that neither this Settlement Agreement, nor the fact or any terms of the Settlement, is evidence, or an admission or concession by any Party, any Released Party or any signatory to this Settlement Agreement,

of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings. The Settlement Agreement is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action or any wrongdoing by the Defendant or any damages or injury to any Settlement Class Member. Neither this Settlement Agreement, nor any of the terms and provisions of this Settlement Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statements in connection therewith: (a) will (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of the validity or infirmity of any defense, or of any damage to any Plaintiff or any Settlement Class Member; or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Action, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any Person; or (b) will otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever. Except in connection with consummating or enforcing this Settlement Agreement and/or

61

the Final Judgment and Order of Dismissal, including but not limited to defending any actions brought against Lennox by Settlement Class Members or other parties, Plaintiffs and Defendant shall not offer or attempt to offer the provisions of this Settlement Agreement and/or the Final Judgment and Order of Dismissal into evidence or use them in any manner or for any purpose, including but not limited to claim preclusion (res judicata), issue preclusion (collateral estoppel) or judicial estoppel, in this Action or any other actions or proceedings, whether civil, criminal, or administrative, and Plaintiffs and Defendant intend that the provisions of this Settlement Agreement and the Final Judgment and Order of Dismissal shall not be offered or received as evidence or used by any other Persons in any such actions or proceedings.

8. To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of documents or information will survive this Settlement Agreement.

9. The Parties agree to destroy or to return all discovery obtained from each other within 30 days after the Effective Date.

10. The waiver by any Party of any breach of this Settlement Agreement by any other Party will not be deemed a waiver of any other prior or subsequent breach of any provision of this Settlement Agreement by any other Party.

11. The interpretation and enforcement of this Settlement Agreement shall be governed by the laws of the State of Illinois without regard to its conflict of law or choice of law rules.

12. Should any disputes arise with respect to the terms or enforcement of this Settlement Agreement or the Settlement, the Parties will first seek a mediated resolution to those disputes with the Second Mediator.

13. The Settlement Agreement may be modified or amended only by written agreement of both Parties evidencing such modification or amendment.

14. The Settlement Agreement will be binding upon and will inure to the benefit of the Parties and the Settlement Class (and, in the case of the releases, all Released Parties) and the respective legal representatives, heirs, executors, administrators, transferees, successors and assigns of all such foregoing Persons and upon any corporation, partnership, or other entity into or with which any of the foregoing Persons may merge, consolidate or reorganize.

15. The Settlement Agreement may be executed on different dates and in any number of counterparts, each of which will be considered an original and all of which together will constitute one and the same Settlement Agreement. Delivery of an executed signature page counterpart to this Settlement Agreement via electronic transmission by e-mail (pdf or tiff format) or facsimile will be effective as if it was a delivery of a manually delivered, original, executed counterpart thereof.

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement Agreement and represents that the Party he/she represents has agreed to be bound by its terms.

AGREED TO AS OF June 26, 2015:


_____

Robert Thomas


_____

Scott Patrick Harris


_____

Michael Bell


_____

Sandra Palumbo


_____

Frank Karbarz


_____

Thomas Davis


_____

Jonathan Shub, Attorney for the Settlement Class

64

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement Agreement and represents that the Party he/she represents has agreed to be bound by its terms.

AGREED TO AS OF June 25, 2015:

_____
Robert Thomas

_____
Scott Patrick Harris

_____
Michael Bell

_____
Sandra Palumbo

_____
Frank Karbarz

_____
Thomas Davis

_____
Jonathan Shub, Attorney for the Settlement Class

64

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement Agreement and represents that the Party he/she represents has agreed to be bound by its terms.

AGREED TO AS OF June 25, 2015:


_____
Robert Thomas


_____
Scott Patrick Harris


_____
Michael Bell


_____
Sandra Palumbo


_____
Frank Karbarz


_____
Thomas Davis


_____
Jonathan Shub, Attorney for the Settlement Class

64

1076905

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement Agreement and represents that the Party he/she represents has agreed to be bound by its terms.

AGREED TO AS OF June 25, 2015:

_____
Robert Thomas

_____
Michael Bell

_____
Scott Patrick Harris

_____
Sandra Palumbo

_____
Frank Karbarz

_____
Thomas Davis

_____
Jonathan Shub, Attorney for the Settlement Class

64

1075905

IN WITNESS WHEREOF, each of the signatories has read and understood this

Settlement Agreement and represents that the Party he/she represents has agreed to be bound by

its terms.

AGREED TO AS OF June 25, 2015:

_____
Robert Thomas

_____
Scott Patrick Harris

_____
Michael Bell

_____
Sandra Palumbo

_____
Frank Karbarz

_____
Thomas Davis

_____
Jonathan Shub, Attorney for the Settlement Class

64

1076905

IN WITNESS WHEREOF, each of the signatories has read and understood this

Settlement Agreement and represents that the Party he/she represents has agreed to be bound by

its terms.

AGREED TO AS OF June 25, 2015:

_____

Robert Thomas


_____

Scott Patrick Harris


_____

Michael Bell


_____

Sandra Palumbo

_____

Frank Karbarz


_____

Thomas Davis


_____

Jonathan Shub, Attorney for the Settlement Class

64

1076905

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement Agreement and represents that the Party he/she represents has agreed to be bound by its terms.

AGREED TO AS OF June 25, 2015:

_____

Robert Thomas

_____

Scott Patrick Harris

_____

Michael Bell

_____

Sandra Palumbo

_____

Frank Karbarz

_____

Thomas Davis

_____

Jonathan Shub, Attorney for the Settlement Class

64

APPROVED AS TO FORM AS OF June 26, 2015:

COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS:

KOHN, SWIFT & GRAFT, P.C.                          QUANTUM LEGAL LLC

By: Jonathan Shub                                  By: Jeffrey A. Leon

SEEGER WEISS LLP

By: Scott George

COUNSEL FOR DEFENDANT

MCKOOL SMITH, P.C.

By: Eric B. Halper

WINSTON & STRAWN LLP

By: Norman K. Beck

66

_____

Jeffrey A. Leon, Attorney for the Settlement Class

_____

Scott George, Attorney for the Settlement Class

LENNOX INDUSTRIES INC.

By: _____

Its: _____  Vice President & General Manager

65

1076905

APPROVED AS TO FORM AS OF June 26, 2015:

COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS:

KOHN, SWIFT & GRAFT, P.C.                          QUANTUM LEGAL LLC


By: Jonathan Shub                          By: Jeffrey A. Leon


SEEGER WEISS LLP


By: Scott George


COUNSEL FOR DEFENDANT

MCKOOL SMITH, P.C.


By: Eric B. Halper


WINSTON & STRAWN LLP


By: Norman K. Beck

66

1076905

# Exhibit A



**Legal Notification Services**

_____

# Settlement Notice Plan

## *Thomas v. Lennox Industries Inc.*

## Case No. 1:13-cv-07747

United States District Court
Northern District of Illinois
Eastern Division

**Prepared: June 25, 2015**

© 2015 KCC LLC
Proprietary and Confidential

# Table of Contents

| | Page |
|---|---|
| Legal Notification Services | 3 |
| Our Experts | 4 |
| Relevant Case Experience | 5 |
| Expert Services | 7 |
| Media Terms | 8 |
| Media Resources | 9 |
| Program Overview | 10 |
| Notice Schedule | 12 |
| Target Analysis | 13 |
| Media Selection | 15 |
| Individual/Direct Notice | 16 |
| Consumer Magazines | 17 |
| Internet Banners | 18 |
| Response Mechanisms | 19 |
| Notice Design Strategies | 20 |
| Draft Forms of Notice | 21 |
| Conclusion | 22 |
| Legal Notice c.v. | 23 |

© 2015 KCC LLC
Proprietary and Confidential

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

## Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

### Gina Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 85 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

### Carla Peak

With over a decade of industry experience, Carla specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

© 2015 KCC LLC
Proprietary and Confidential

## Relevant Case Experience

Our experts have designed and implemented numerous notice programs targeting Home/Building product Class members, for example:

- *Cobb v. BSH Home Appliances Corp.*, No. 8:10-CV-0711 (C.D. Cal.)
  - Honorable David O. Carter (December 29, 2014): *The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

- *Roberts v. Electrolux Home Products, Inc.*, No. 8:12-CV-01644 (C.D. Cal.)
  - Honorable Cynthia A. Snyder (May 5, 2014): *The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

- *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, No. 11-MD-2247 (D. Minn.)
  - Judge Ann D. Montgomery (July 9, 2012): *The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;…*
  - June 29, 2012: *After the preliminary approval of the Settlement, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each…The California Objectors also take umbrage with the notice provided the class.*

© 2015 KCC LLC
Proprietary and Confidential

*Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

# Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television and the internet to meet due process requirements
- Develop press releases, broadcast public service announcements (PSAs), and a content-rich, case-specific website, as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

© 2015 KCC LLC
Proprietary and Confidential

# Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (e.g., from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (e.g., subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

## Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

**Alliance for Audited Media (AAM)**

AAM is a nonprofit organization that connects North America's leading media companies, advertisers and ad agencies. Founded in 1914 as the Audit Bureau of Circulations, the AAM is the preeminent source of cross-media verification and information services, providing standards, audit services and data critical to the advertising industry. The organization independently verifies print and digital circulation, mobile apps, website analytics, social media, technology platforms and audience information for newspapers, magazines and digital media companies in the U.S. and Canada.

**GfK Mediamark Research & Intelligence, LLC (MRI)**

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer™* is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

**Telmar**

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

© 2015 KCC LLC
Proprietary and Confidential

## Program Overview

**Objective**

To design a notice program that will effectively reach Settlement Class Members and capture their attention with notice communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Settlement Class Definition**

Settlement Class Members include all Persons who are residents of the United States and who purchased on or after October 29, 2007 through the Preliminary Approval Date at least one uncoated copper tube Original Coil[1] (separately, as part of an air handler, or as part of a packaged unit), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Excluded from this Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; (2) the lawyers in this Action and any members of their immediate families; (3) the First Mediator and the Second Mediator and any member of their immediate families; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

**Case Analysis**

The following known factors were considered when determining our recommendation:

1. Approximately 2.9 million units were sold.
2. It is our understanding that postal addresses are available for approximately 988,854 Settlement Class Members; however, the majority of Settlement Class Members are unknown consumers who must be reached through a consumer media campaign.
3. Settlement Class Members are located throughout the U.S., including large cities and rural areas.
4. Effective reach and notice content is vital to convey the importance of the information affecting Settlement Class Members' rights, as well as to withstand challenge and collateral review.

**Target Audience**

To verify the program's effectiveness among Settlement Class Members, MRI data was studied among adults in the United States who own a central air conditioner for climate control ("HVAC Consumers"), because this target group best represents the Settlement Class.

**Strategies**

The Notice Plan utilizes a combination of individual notice to known Settlement Class Members and paid notice in consumer magazines and on a variety of websites to reach the Class.

---

[1] "Original Coil" means an uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (separately, as part of an air handler, or as part of a packaged unit) purchased new, within the time period covered by the Settlement Class, covered by an Original Warranty, and installed in its original installation site.

© 2015 KCC LLC
Proprietary and Confidential

**Plan Delivery**

The Notice Plan will reach approximately 80.3% of likely Settlement Class Members, on average 1.5 times each.

**Notice Design**

The Notices will be designed to provide a clear, concise, plain language statement of Settlement Class Members' legal rights and options. To ease response, the toll-free number and website address will be provided in all printed notice documents and the case website will be accessible through a hyperlink in the internet banner notices. The ad units are adequately sized to attract attention to the notice:

- Half-page units in standard sized publications; and
- Standard leaderboard (728x90 pixels), medium rectangle (300x250 pixels), and wide skyscraper (160x600 pixels) banner notices.

## Notice Schedule

The notice schedule is based on preliminary approval by July 16, 2015, thereby allowing an exclusion and objection deadline of October 12, 2015 or later (approximately 30 days from the last notice appearance) and a final fairness hearing date sometime after.

| Notice Tactic | Issued | Week of 8/10/15 | Week of 8/17/15 | Week of 8/24/15 | Week of 8/31/15 | Week of 9/7/15 | Week of 9/14/15 |
|---|---|---|---|---|---|---|---|
| Individual Mailings | | ███ | | | | | |
| Consumer Magazines | | | | | | | |
|   *Cooking Light* | | | | | | 9/11 | |
|   *People* | | | 8/21 | | | | |
| Internet Banner Notices | Monthly | | | | | | |
| Settlement Website | Constant | ███████████████████████████ | | | | | |

Blocks indicate when readers first receive publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement.

# Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

## Demographic Highlights

Demographic highlights of HVAC Consumers include the following:

- 99.1% speak English most often;
- 92.9% have graduated from high school and 67.5% have attended college or beyond;
- 90.6% are 25 years of age or older, 74.4% are 35 years of age or older, and 56.4% are 45 years of age or older;
- 89.5% live in a household consisting of two or more people, 73.6% live in a household consisting of two to four people, and 54.3% live in a household consisting of three or more people;
- 86.4% are white;
- 84.4% live in a Metropolitan CBSA;[2]
- 84.1% own a home;
- 81.5% have a household income of $40,000 or more, 74.0% have a household income of $50,000 or more, and 66.1% have a household income of $60,000 or more;
- 72.3% own a home valued at $100,000 or more and 64.1% own a home valued between $100,000-$499,999;
- 70.9% live in County Size A or B;[3]
- 65.9% are married;
- 65.1% have lived at their current address for five or more years;
- 52.8% are employed full time; and
- 51.6% are women.

On average, HVAC Consumers:[4]

- are 48 years of age;
- have a household income of $93,797; and
- own a home valued at $251,097.

Also important is the fact that, compared to the general adult population, HVAC Consumers are:

- 43.8% more likely to have a household income of $150,000 or more, 40.1% more likely to have a

---

[2] The Office of Management and Budget defines metropolitan and micropolitan statistical areas (metro and micro areas) as geographic entities for use by Federal statistical agencies in collecting, tabulating, and publishing Federal statistics. The term "Core Based Statistical Area" (CBSA) is a collective term for both metro and micro areas. A metro area contains a core urban area of 50,000 or more population, and a micro area contains an urban core of at least 10,000 (but less than 50,000) population. Each metro or micro area consists of one or more counties and includes the counties containing the core urban area, as well as any adjacent counties that have a high degree of social and economic integration (as measured by commuting to work) with the urban core.

[3] Nielsen County Size classifications are based on Census household counts and metropolitan proximity. "A" counties are highly urbanized areas and belong to the 21 largest Metropolitan Statistical Areas. The combined A counties contain 40% of the United States households. "B" counties are counties not defined as A counties that have more than 85,000 households. The combined B counties contain 30% of United States households. "C" counties are counties not defined as A or B counties that have more than 20,000 households or are in Consolidated Metropolitan Areas or Metropolitan Statistical Areas with more than 20,000 households. The combined C counties contain 15% of United States households. "D" counties are all counties not classified as A, B or C counties. They are considered very rural. The combined D counties contain 15% of United States households.

[4] The average age for U.S. adults is 47, the average household income is $75,616, and the average home value is $241,338.

---

© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page 13 of 41

household income between $100,000-$149,999, and 32.4% more likely to have a household income between $75,000-$99,999;

- 35.0% more likely to own a home valued between $200,000-$499,999, 31.9% more likely to own a home valued between $100,000-$199,999, and 28.3% more likely to own a home valued at $500,000 or more;
- 32.8% more likely to work in management/business/finance operations and 27.7% more likely to work as a professional;
- 31.9% more likely to have graduated from college or beyond;
- 25.6% more likely to own a home;
- 23.5% more likely to live in the Midwest Census Region and 18.1% more likely to live in the South Census Region;
- 23.4% more likely to be married;
- 14.8% more likely to be 55-64 years of age, 5.5% more likely to be 35-44 years of age, and 4.5% more likely to be 65 years of age or older;
- 14.8% more likely to have lived at their current address for five or more years;
- 14.3% more likely to be white;
- 10.2% more likely to live in a household consisting of two people and 4.4% more likely to live in a household consisting of three or four people;
- 9.6% more likely to be employed full time;
- 8.2% more likely to live in County Size B; and
- 8.1% more likely to be working women.

*Source: 2014 MRI Doublebase Study*

© 2015 KCC LLC
Proprietary and Confidential

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Broad national coverage into the largest cities as well as the smallest towns throughout the nation;

- A large percentage of likely Settlement Class Members to be reached;

- A written summary of key information that may be easily referred to or passed on to others as a result of placements in well-read publications;

- A direct link to the case website through the internet banner notices; and

- Easy access to the notice documents through an established case website.

## Individual/Direct Notice

**Mailed Notice**

- Approximately 988,854 Postcard Notices will be mailed to the addresses of all known potential Settlement Class Members.

- Prior to mailing, the names and addresses will be:
    - Checked against the USPS National Change of Address (NCOA)[5] database;
    - Certified via the Coding Accuracy Support System (CASS);[6] and
    - Verified through Delivery Point Validation (DPV).[7]

- Postcard Notices returned as undeliverable will be re-mailed to any address available through postal service information; for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but is still during the period that the USPS returns the piece with the new address indicated.

- Any returned mailing that does not contain an expired forwarding order with a new address indicated may be researched through a third party look-up service, if applicable.

- It is our estimate that individual mailings alone will reach an estimated 32.7% of the Class.

---

[5] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[6] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[7] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

## Consumer Magazines

To build on the individual notice reach base, a Summary Notice will be placed in leading consumer magazines among HVAC Consumers.

| Consumer Magazine | Issuance | Notice Size | # of Insertions |
|---|---|---|---|
| *Cooking Light* | Monthly | Half page | 1 |
| *People* | Weekly | Half page | 1 |
| **TOTAL** | | | **2** |

The following provides details for each of the recommended consumer magazines:



- Circulation: 1,788,528
- Adult Audience: 11,131,000
- Monthly food and healthy lifestyle magazine, including contemporary coverage of entertaining, fitness, health, beauty, travel and shelter
- Reaches 5.9% of HVAC Consumers
- Readers are 25.4% more likely to be HVAC Consumers, as compared to the general adult population
- Extends reach among health-conscious, affluent, educated adults



- Circulation: 3,537,318
- Adult Audience: 42,726,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Reaches 19.2% of HVAC Consumers
- Readers are 5.6% more likely to be HVAC Consumers, as compared to the general adult population
- Provides a large number of pass along readers

Positioning will be sought opposite articles, cover stories, or editorial features with documented high readership. All placements will be tracked to ensure that they appear exactly as planned as well as meet our high standards in terms of quality and positioning.

## Internet Banners

Internet usage is heavy among HVAC Consumers. In fact, 89.3% of HVAC Consumers have access to the internet at home using a computer and 87.5% have looked at or used the internet in the last 30 days. Compared to the general adult population, HVAC Consumers are 8.9% more likely to have access to the internet from home using a computer and 7.7% more likely to have looked at or used the internet in the last 30 days. As a result, to further extend reach among the Class, we recommend purchasing 127 million *unique* internet impressions over a one-month period. The banners will be targeted to adults 25 years of age or older (Adults 25+), as well as those who show an interest in home and garden websites and DIY projects. Run of Network (RON) impressions will be geographically distributed based on sales data provided by Lennox. The banners will include an embedded link to the case website.

| Tactic | Target | # of Impressions |
|---|---|---|
| Run of Network | Adults 25+; Geo targeted based on % of sales | 119,000,000 |
| Custom Channel | Adults 25+; Home and Garden sites | 5,000,000 |
| Behavioral Targeting | Adult 25+; DIY | 3,000,000 |
| **TOTAL** | | **127,000,000** |

Sample RON sites may include:





















© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page 18 of 41

## Response Mechanisms

**Case Website**
- Will be an easy to remember domain
- Allows Settlement Class Members the ability to obtain additional information and documents including the Claim Form, Long-Form Notice, Summary Notice, Settlement Agreement, and any other information that the parties may agree to provide or that the Court may require
- Prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the internet banner notices

**Toll-Free Telephone Support**
- Provides a simple way for Settlement Class Members to obtain additional information about the settlement
- Allows Settlement Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Settlement Class Members to request to have more information mailed directly to them
- Prominently displayed in all printed notice materials

**Email Support**
- Provides a simple way for Settlement Class Members to obtain additional information about the settlement
- Allows Settlement Class Members the opportunity to ask the Settlement Administrator questions
- Included in all printed notice materials

.

© 2015 KCC LLC
Proprietary and Confidential

## Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov.

**Postcard and Publication Summary Notices**
- Bold headline captures attention and speaks directly to Settlement Class Members, alerting them that they should read the Notice and why it is important
- Prominent notice size promotes attention, readership, and comprehension
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number, case website and email address invite response, allowing Settlement Class Members the opportunity to obtain additional information

**Long-Form Notice**
- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Table of Contents and question and answer format allow Settlement Class Members to easily locate information
- Bold headline captures attention and speaks directly to Settlement Class Members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number, case website and email address invite response, allowing Settlement Class Members the opportunity to obtain additional information

**Internet Banner Notices**
- Simple rotating message alerts Settlement Class Members about the settlement
- An embedded link allows immediate access to the case website

## Draft Forms of Notice

**Exhibits A 1-5** contain the draft forms of the following notice documents:

- The **Long-Form Notice** that will be mailed to Settlement Class Members who call the toll-free number to request one, as well as made available at the website.

- The **Summary Notice** as it will appear in the publications identified in this Notice Plan.

- The **Postcard Notice** that will be mailed to all identifiable Settlement Class Members.

- The **Dealer Notice** that will be sent to independent Lennox dealers.

- The **Internet Banners** that will be posted on a variety of web properties.

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review



Legal Notification Services

_____

KCC's Legal Notification Services team provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been involved in more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some case examples our experts have been involved with include:

- *Shames v. The Hertz Corporation*, No. 3:07-cv-02174 (S.D. Cal.) A national antitrust settlement involving several million class members who rented vehicles from a variety of car rental companies.

- *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, No. 11-MD-2247 (D. Minn.) A national products liability settlement providing reimbursement, repair and replacement of affected plumbing components.

- *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.) Perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.) One of the largest U.S. and Canadian retail consumer security breach notice programs.

- *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 (W.D. Wash.), *Donnelly v. United Technologies Corp.* No. 06-CV-320045CP (Ont. S.C.J.) and *Wener v. United Technologies Corp.* 500-06-000425-088 (QC. Super. Ct.) Product liability class action settlements involving secondary heat exchangers in high efficiency gas furnaces, affecting class members throughout the U.S. and Canada.

- *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

© 2015 KCC LLC
Proprietary and Confidential

# Our Experts

### Gina M. Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has designed more than 85 judicially approved media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As a legal notice expert, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

### Carla A. Peak

With over a decade of industry experience, Carla A. Peak specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition

Following are some judicial comments recognizing the work of our expert(s):

**Honorable Lynn Adelman, *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* (Indirect Purchaser–Tong Yang Settlement)**, (May 29, 2015) No. 2:09-CV-00852 (E.D. Wis.):

> *The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 2–4, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of*

© 2015 KCC LLC
Proprietary and Confidential

*the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

**Honorable Mitchell D. Dembin,** *Lerma v. Schiff Nutrition International, Inc.*, (May 25, 2015) No. 11-CV-01056 (S.D. Cal.):

*The parties are to notify the Settlement Class in accordance with the Notice Program outlined in the Second Supplemental Declaration of Gina M. Intrepido-Bowden on Settlement Notice Program.*

**Honorable Lynn Adelman,** *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* **(Direct Purchaser–Gordon Settlement)**, (May 5, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla Peak ("Peak Decl.") at Exhibit 1 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members. The Notice Program set forth herein is substantially similar to the one set forth in the Court's April 24, 2015 Order regarding notice of the Tong Yang Settlement (ECF. No. 619) and combines the Notice for the Tong Yang Settlement with that of the Gordon Settlement into a comprehensive Notice Program. To the extent differences exist between the two, the Notice Program set forth and approved herein shall prevail over that found in the April 24, 2015 Order.*

**Honorable José L. Linares,** *Demmick v. Cellco Partnership*, (May 1, 2015) No. 2:06-CV-2163 (D. N.J.):

*The Notice Plan, which this Court has already approved, was timely and properly executed and that it provided the best notice practicable, as required by Federal Rule of Civil Procedure 23, and met the "desire to actually inform" due process communications standard of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)… The Court thus affirms its finding and conclusion in the November 19, 2014 Preliminary Approval Order that the notice in this case meets the requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States and/or any other applicable law. All objections submitted which make mention of notice have been considered and, in light of the above, overruled.*

**Honorable Lynn Adelman,** *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* **(Direct Purchaser–Tong Yang Settlement)**, (April 4, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla A. Peak ("Peak Decl.") as Exhibit 2 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members.*

**Honorable Rhonda A. Isiran Nishimura,** ***Charles v. Haskeo Homes, Inc.***, (February 24, 2015) No. 09-1-1932-08 (Cir. Ct. Hawaiʻi):

*The Court approves, as to form and content, the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice, and the Notice Plan that are attached as Exhibits 8-9 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak…The Court finds that the Hurricane Straps Class Notice, the Hurricane Straps Repose Subclass Notice, and the Notice Plan will fully and accurately inform the potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members of all material elements of the proposed Settlement, of their right to be excluded from the Hurricane Straps Class or Hurricane Straps Repose Subclass, and of each Hurricane Straps Class Member's or Hurricane Straps Repose Subclass Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice will (i) meet the requirements of the laws of the State of Hawaiʻi (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members.*

**Honorable Gary W.B. Chang,** ***Kai v. Haskeo Homes, Inc.***, (February 15, 2015) No. 09-1-2834-12 (Cir. Ct. Hawaiʻi):

*The Court approves, as to form and content, the PEX Class Notice and Notice Plan attached as Exhibit 10 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak. The Court finds that the PEX Class Notice and the Notice Plan will fully and accurately inform the potential PEX Class Members of all material elements of the proposed Settlement, of their right to be excluded from the PEX Class, and of each PEX Class Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the PEX Class Notice substantially in the manner and form set forth in this Order will (i) meet the requirements of the laws of the State of Hawaiʻi (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice*

© 2015 KCC LLC
Proprietary and Confidential

*practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Class Members.*

**Honorable David O. Carter,** *Cobb v. BSH Home Appliances Corp.*, (December 29, 2014) No. 8:10-CV-0711 (C.D. Cal.):

> *The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

**Honorable José L. Linares,** *Demmick v. Cellco Partnership*, (November 19, 2014) No. 2:06-CV-2163 (D. N.J.):

> *The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*
> *The Court further finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as to not be bound by the Settlement Agreement.*

**Honorable Christina A. Snyder,** *Roberts v. Electrolux Home Products, Inc.*, (September 11, 2014) No. 8:12-CV-01644 (C.D. Cal.):

> *The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan…The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's*

© 2015 KCC LLC
Proprietary and Confidential

*request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement…Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects…Any objections to the notice provided to the Class are hereby overruled.*

**Honorable David O. Carter,** ***Cobb v. BSH Home Appliances Corp.***, (August 25, 2014) No. 8:10-CV-0711 (C.D. Cal.):

*…the Court also finding that the proposed notice plan and forms of notice are the best notice practicable under the circumstances and satisfy all requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(b)(2); and for good cause shown,*
*IT IS HEREBY ORDERED that Plaintiffs' Motion to Amend the Illinois Class Definition is GRANTED; and it is further ORDERED that Plaintiffs' Motion for Approval of Notice Plan and Proposed Forms of Notice is GRANTED.*

**Judge Gregory A. Presnell,** ***Poertner v. The Gillette Co. and The Procter & Gamble Co.***, (August 21, 2014) No. 6:12-CV-00803 (M.D. Fla.):

*This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. See Id. The Court thus reaffirms its findings that the Notice given to the Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.*

**Honorable Curtis L. Collier,** ***In re: Skelaxin (Metaxalone) Antitrust Litigation***, (August 5, 2014) No. 1:12-md-02343 (E.D. Tenn.):

*The proposed form of Notice to End-Payor Settlement Class Members of the pendency and proposed settlement of this action ("Settlement Notice") set forth in the Notice Plan and Declaration of Carla Peak and the proposed method of dissemination of the Settlement Notice ("Notice Plan")—first to Third-Party Payors and then to Consumers—satisfy the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, are otherwise fair and reasonable, and therefore are approved.*

**Honorable Christina A. Snyder,** ***Roberts v. Electrolux Home Products, Inc.***, (May 5, 2014) No. 8:12-CV-01644 (C.D. Cal.):

*The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

**Honorable Jose L. Linares,** *In re Hypodermic Products Antitrust Litigation,* (March 17, 2014) MDL No. 1730, No. 2:05-CV-01602 (D. N.J.):

*The Class Notice provides a description of the Indirect Purchaser Class, the procedural status of the litigation, a brief description of the plan of allocation, the court approval process for the proposed Settlement, and the significant terms of the Settlement. The Class Notice also fully informed members of the Indirect Purchaser Class of their rights with respect to the Settlement, including the right to opt out of, object to the Settlement, or otherwise be heard as to the resonableness and fairness of the Settlement. The Class Notice also informed members of the Indirect Purchaser Class of their right to object to Indirect Purchaser Plaintiffs' Lead Counsel's application for an award of attorneys' fees, an award of incentive fees, and reimbursement of expenses from the Settlement Fund.…The Class Notice met the statutory requirements of notice under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.*

**Honorable William E. Smith,** *Cappalli v. BJ's Wholesale Club, Inc.,* (December 12, 2013) No. 1:10-CV-00407 (D. R.I.):

*The Court finds that the form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of these proceedings of the proposed Settlement, and of the terms set forth in the Stipulation and first Joint Addendum, and the notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process, and all other applicable laws.*

**Judge Gregory A. Presnell,** *Poertner v. The Gillette Co. and The Procter & Gamble Co.,* (November 5, 2013) No. 6:12-CV-00803 (M.D. Fla.):

*The proposed Class Notice and Claim Form are approved as to form and content. The Court finds that the content of the Class Notice and the Claim Form satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and due process and accordingly approves them…The Court finds that compliance with the Notice Plan is the best practicable notice under the circumstances and constitutes due and sufficient notice*

© 2015 KCC LLC
Proprietary and Confidential

*of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.*

**Honorable Jose L. Linares,** *In re Hypodermic Products Antitrust Litigation*, (November 4, 2013) No. 2:05-CV-01602 (D. N.J.):

> *Upon reviewing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan and the Declarations of Karin E. Fisch, Esq. and Carla A. Peak and the documents attached thereto, it is hereby ORDERED, ADJUDGED AND DECREED as follows:…Proposed forms of Notice are attached hereto as Exhibit A. The Court finds that the form fairly and adequately: (i) describes the terms and effect of the Settlement Agreement and of the Settlement; (ii) notifies the Indirect Purchaser Class concerning the proposed plan of allocation and distribution; (iii) notifies the Indirect Purchaser Plaintiffs' Lead Counsel will seek attorneys' fees not to exceed one-third of the Settlement Fund, reimbursement of expenses and incentive fees; (iv) gives notice to the Indirect Purchaser Class of the time and place of the Fairness Hearing; and (v) describes how the recipients of the Notice may submit a claim, exclude themselves from the Settlement or object to any of the relief requested.*

**Judge Marilyn L. Huff,** *Beck-Ellman v. Kaz USA, Inc.*, (June 11, 2013) No. 3:10-cv-02134 (S. D. Cal.):

> *The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order. The Publication Notice was designed to provide potential class members with information about the Settlement and their rights, in easy-to-comprehend language… The Notice Plan was specially developed to cause class members to see the Publication Notice or see an advertisement that directed them to the Settlement Website. KCC identified that the class members belong to a demographic group known as "Pain Relief Users." The Heating Pads are considered a Pain Relief product. The publications that KCC's Notice Plan used are publications and websites whose viewers and readers include a high percentage of Pain Relief product users…The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.*

**Judge Tom A. Lucas,** *Stroud v. eMachines, Inc.*, (March 27, 2013) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

> *The Notices met the requirements of Okla. Stat. tit. 12 section 2023(C), due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto. All objections are stricken. Alternatively, considered on their merits, all objections are overruled.*

**Judge Marilyn L. Huff,** *Beck-Ellman v. Kaz USA, Inc.* (January 7, 2013) No. 3:10-cv-02134 (S. D. Cal.):

> *The proposed Class Notice, Publication Notice, and Settlement Website*

© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page 30 of 41

*are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances… Notice is written in easy and clear language, and provides all needed information, including: (I) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their rights to opt-out or object; (5) an explanation that any claims against Kaz that could have been litigated in this action will be released if the Class member does not opt out; (6) the names of Class Counsel and information regarding attorneys' fees; (7) the fairness hearing date and procedure for appearing; and (8) the Settlement Website and a toll free number where additional information, including Spanish translations of all forms, can be obtained. After review of the proposed notice and Settlement Agreement, the Court concludes that the Publication Notice and Settlement Website are adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.*

**Judge Tom A. Lucas, *Stroud v. eMachines, Inc.***, (December 21, 2012) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

*The Plan of Notice in the Settlement Agreement as well as the content of the Claim Form, Class Notice, Post-Card Notice, and Summary Notice of Settlement is hereby approved in all respects. The Court finds that the Plan of Notice and the contents of the Class Notice, Post-Card Notice and Summary Notice of Settlement and the manner of their dissemination described in the Settlement Agreement is the best practicable notice under the circumstances and is reasonably calculated, under the circumstances, to apprise Putative Class Members of the pendency of this action, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Certified Settlement Class and, therefore, the Plan of Notice, the Class Notice, Post-Card Notice and Summary Notice of Settlement are approved in all respects. The Court further finds that the Class Notice, Post-Card Notice and Summary Notice of Settlement are reasonable, that they constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and that they meet the requirements of due process.*

**Honorable Michael M. Anello, *Shames v. The Hertz Corporation***, (November 5, 2012) No. 3:07-cv-02174 (S.D. Cal.):

*…the Court is satisfied that the parties and the class administrator made reasonable efforts to reach class members. Class members who did not receive individualized notice still had opportunity for notice by publication, email, or both…The Court is satisfied that the redundancies in the parties' class notice procedure—mailing, e-mailing, and publication—reasonably ensured the widest possible dissemination of the notice…The Court OVERRULES all objections to the class settlement…*

**Judge Ann D. Montgomery, *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (July 9, 2012) No. 11-MD-2247 (D. Minn.):

© 2015 KCC LLC
Proprietary and Confidential

*The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;…*

**Judge Ann D. Montgomery, *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (June 29, 2012) No. 11-MD-2247 (D. Minn.):

*After the preliminary approval of the Settlement, the parties carried out the notice
program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each…The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

**Honorable Michael M. Anello, *Shames v. The Hertz Corporation***, (May 22, 2012) No. 3:07-cv-02174 (S.D. Cal.):

*The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"), and finds that the e-mailing or mailing and distribution of the Notice and publishing of the Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.*

**Judge Anthony Powell, *Molina v. Intrust Bank, N.A.***, (May 21, 2012) No. 10-CV-3686 (18th J.D. Ct., Kan.):

*The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these*

© 2015 KCC LLC
Proprietary and Confidential

> proceeding to all persons entitled to such notice, and said notice fully satisfied the requirements of K.S.A. § 60-223 and due process.

**Judge Ronald L. Bauer,** *Blue Cross of California Website Securities Litigation*, (April 5, 2012) No. JCCP 4647 (Super. Ct. Cal.):

> The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Person entitled to such notice, and said notice satisfied the requirements of California Rules of Court, Rule 3,766(e) and (f), and due process.

**Judge Ann D. Montgomery,** *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (January 18, 2012) No. 11-MD-2247 (D. Minn.):

> The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.

**Judge Jeffrey Goering,** *Molina v. Intrust Bank, N.A.*, (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

> The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.

**Judge Charles E. Atwell,** *Allen v. UMB Bank, N.A.*, (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms

© 2015 KCC LLC
Proprietary and Confidential

*and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell,** ***Allen v. UMB Bank, N.A.***, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

*The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel,** ***Ko v. Natura Pet Products, Inc.***, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):

*The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann,** ***Billieson v. City of New Orleans***, (May 27, 2011) No. 94-19231 (Civ. D. Ct. La.):

*The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak… IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson,** ***In re Department of Veterans Affairs (VA) Data Theft Litig.***, (February 11, 2009) MDL No. 1796 (D.C.):

*The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.*

**Judge Louis J. Farina,** ***Soders v. General Motors Corp.***, (December 19, 2008) No. CI-00-04255 (C.P. Pa.):

*The Court has considered the proposed forms of Notice to Class*

> members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.

**Judge Robert W. Gettleman,** *In Re Trans Union Corp.*, (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.

**Judge William G. Young,** *In re TJX Companies*, (September 2, 2008) MDL No. 1838 (D. Mass.):

> …as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge David De Alba,** *Ford Explorer Cases*, (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> [T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.

**Judge Kirk D. Johnson,** *Hunsucker v. American Standard Ins. Co. of Wisconsin*, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

> Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class

© 2015 KCC LLC
Proprietary and Confidential

*in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.*

# Speaking Engagements

*Ethics in Legal Notification*, accredited CLE Program, Carla Peak & Patrick Ivie, presented in Philadelphia at Class Action Preservation Project (November 2014); Carla Peak & Robert DeWitte, presented in Philadelphia at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. (August 2014); Gina Intrepido-Bowden & Patrick Ivie, presented in Utah at The St. Regis Deer Valley Resort (March 2014); Gina Intrepido-Bowden, Carla Peak & Steven Weisbrot, presented in New York at Morgan Lewis & Bockius (December 2012).

*Big Shoulders and High Standards. Can Plaintiffs Scale the Third Circuit's New Ascertainability Wall?* AMERICAN BAR ASSOCIATION 18th Annual National Institute on Class Actions, Gina Intrepido-Bowden presenter/panelist (October 2014).

*The Ethics of Class Action Settlements,* CHICAGO BAR ASSOCIATION, Class Litigation Committee, Carla Peak presenter/panelist (June 2014).

*Pitfalls of Class Action Notice and Settlement Administration,* accredited CLE Program, Carla Peak and Robert DeWitte, presented in Miami at Harke Clasby & Bushman LLP (March 2014); PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013, Gina Intrepido-Bowden and Robert DeWitte presenters/panelists (July 2013).

*Designing a Settlement and Notice Program to Minimize Scrutiny and Objections,* AMERICAN CONFERENCE INSTITUTE (ACI), 16th National Conference on Consumer Finance Class Actions & Litigation, Gina Intrepido-Bowden presenter/panelist (July 2013).

*The Fundamentals of Settlement Administration* accredited CLE Program, Carla Peak and Steven Weisbrot, presented in Philadelphia at DLA Piper LLP (August 2013); Carla Peak and Robert DeWitte, presented in Illinois at Locke Lord LLP and broadcast to offices in California, Georgia, New York, Texas and London (April 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Skadden, Arps, Slate, Meagher & Flom LLP and Wexler Wallace LLP (January 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Hinshaw & Culbertson LLP (October 2012); Gina Intrepido-Bowden and Rob Taylor-Manning, presented in Pennsylvania at Spector Roseman Kodroff & Willis, P.C. (December 2011).

*Class Action Settlement Administration Tips & Pitfalls on the Path to Approval* accredited CLE Program, Carla Peak, Gina Intrepido-Bowden & Robert DeWitte, presented in Illinois at Jenner & Block and broadcast to offices in Washington DC, New York and California (October 2012).

*Perspectives from Class Action Claims Administrators: Innovations in Notification*, CLE INTERNATIONAL, 8th Annual Class Actions Conference, Gina Intrepido-Bowden, presenter/panelist (May 2012).

*Innovations in Notification*, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar, Carla Peak, presenter (May 2012).

*Ethical Considerations in Canadian Class Actions*, accredited CLE Program, Gina Intrepido-Bowden and Robert Taylor-Manning, presented in Canada at Rochon Genova,

© 2015 KCC LLC
Proprietary and Confidential

LLP (April 2012).

*Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium, Gina Intrepido-Bowden, presenter/panelist (October 2011).

*Legal Notice Ethics*, accredited CLE Program, Gina Intrepido-Bowden, Carla Peak & Elizabeth Grande, presented in New York at Cohen Milstein Sellers & Toll PLLC and Milberg LLP (May 2010), in Illinois at Miller Law LLC (May 2010), in Pennsylvania at Berger & Montague, P.C., Anapol Schwartz, Lundy Law, and Dechert LLP, which was broadcast to offices in California, New Jersey, New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010), and in Minnesota at Heins Mills & Olson, P.L.C., Lockridge Grindal Nauen P.L.L.P., and Chestnut Cambronne (January 2011).

*Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, accredited CLE Program, Brian Christensen, Gina Intrepido & Richard Simmons, presented to Kansas Bar Association (March 2009).

# Articles

Carla Peak and Steven Weisbrot. *How to Design Your Notice to Minimize Professional Objectors,* Class Action Lawsuit Defense: Class Action Defense News, Developments and Commentary provided by BakerHostetler ([www.classactionlawsuitdefense.com](www.classactionlawsuitdefense.com)) (July 20, 2012).

Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011).

John B. Isbister, Todd B. Hilsee & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

# Legal Notice Case Examples

Following is a list of cases in which our expert(s) have been involved in the design and

© 2015 KCC LLC
Proprietary and Confidential

implementation of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp. (Extended Viewing Fees)* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |

| | |
|---|---|
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., 1:03-md-01539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., 1:04-md-01653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |

| | |
|---|---|
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |
| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Associates, Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of Veterans Affairs (VA) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 3:08-md-1998 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| *Ko v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvarez v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn, MDL No. 2247 |
| *Shames v. The Hertz Corporation* | S.D. Cal., No. 07cv2174-MMA |
| *Stroud v. eMachines, Inc.* | D. Ct. Cleveland Cnty, Okla., No. CJ-2003-968-L |
| *Holman v. Experian Information Solutions, Inc.* | N.D. Cal., No. 4:11cv00180 |
| *Beck-Ellman v. Kaz USA Inc.* | S.D. Cal., No. 10-cv-2134 |
| *Lee v. Stonebridge Life Insurance Company* | N.D. Cal., No. 3:11-cv-00043 |
| *Steinfeld v. Discover Financial Services* | N.D. Cal., No. 3:12-cv-01118 |

© 2015 KCC LLC
Proprietary and Confidential

| | |
|---|---|
| *Cappalli v. BJ's Wholesale Club, Inc.* | D. R.I., No. 1:10-cv-00407 |
| *Poertner v. The Gillette Co. and The Procter & Gamble Co.* | M.D. Fla., No. 6:12-cv-00803 |
| *In re Hypodermic Products Antitrust Litigation* | D. N.J., No. 2:05-cv-01602 |
| *McCrary v. The Elations Company, LLC* | C.D. Cal., No. 13-cv-00242 |
| *Lerma v. Schiff Nutrition International, Inc.* | S.D. Cal., No. 3:11-cv-01056 |
| *Charles v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2697-11 |
| *Kai v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2834-12 |
| *Roberts v. Electrolux Home Products, Inc.* | C.D. Cal., No. 8:12-cv-01644 |
| *Demereckis v. BSH Home Appliances Corporation* (Certification) | C.D. Cal., No. 8:10-cv-00711 |
| *In re Skelaxin (Metaxalone) Antitrust Litigation* | E.D. Ten., MDL 2343, No. 1:12-cv-194 |
| *Demmick v. Cellco Partnership d/b/a Verizon Wireless* | D. Ct. N.J., No. 06-cv-2163 |
| *Cobb v. BSH Home Appliances Corporation* | C.D. Cal., No. 8:10-cv-00711 |
| *Fond du Lac Bumper Exchange Inc. v. Jui Li Enterprise Co. Ltd.* | E.D. Wis., No. 2:09-cv-00852 |

Following is a list of cases in which our expert(s) were involved with a critique of the notice program and/or notices:

| | |
|---|---|
| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J., No. 02-CV-235958CP/No. 02-CV-238276 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |
| *Clark v. Pfizer, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx Office and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |
| *In re Vitamin C Antitrust Litigation* | E.D. N.Y., No. 1:06-md-1738 |

# Exhibit A-1

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

# If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.

*A federal Court authorized this Notice. It is not a solicitation from a lawyer.*

- A Settlement has been reached with Lennox Industries Inc. ("Lennox") in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or a heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

- You may be included in the Settlement Class if you are a United States resident who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty ("Original Coils"), for your personal, your family, or your household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States ("Settlement Class Members"). Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning packaged unit or heat pump packaged unit ("Packaged Unit").

- Your rights are affected whether you act or don't act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way you can get benefits from the Settlement. If you submit a Claim Form, you will give up the right to sue Lennox in a separate lawsuit about the claims this Settlement resolves. |
| **ASK TO BE EXCLUDED** | If you decide to exclude yourself, you will keep the right to sue Lennox in a separate lawsuit about the claims this Settlement resolves, but you give up the right to get the benefits that this Settlement provides. This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Lennox related to the legal claims in this case. |
| **OBJECT TO THE SETTLEMENT** | If you do not exclude yourself from the Settlement, you may object to it by writing to the Court with the reasons why you don't like it. |
| **GO TO A HEARING** | You may object to the Settlement and ask the Court for permission to speak at the fairness hearing about your objection. |
| **DO NOTHING** | If you are a Settlement Class Member, you are automatically part of the Settlement. If you do nothing, you will not get the benefits that this Settlement provides and you will give up the right to sue, continue to sue, or be part of another lawsuit against Lennox about the legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

Exhibit A-1: Page 1 of 9

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .PAGE 3

    1.  Why was this Notice issued?
    2.  What is this lawsuit about?
    3.  What is a class action?
    4.  Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3

    5.  How do I know whether I am part of the Settlement?
    6.  How do I know if I am a Settlement Class Member?
    7.  Are there exceptions to being included?
    8.  What if I am still not sure whether I am part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4

    9.  What does the Settlement provide?
    10. How do I know if I am eligible for Settlement benefits?
    11. What benefits am I eligible for under the Expanded Warranty and Reimbursement Program?
    12. Tell me more about the Replacement Coil Warranty.
    13. Does the Settlement provide any other benefits?

**HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM** . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6

    14. How do I get benefits?
    15. When would I get the Settlement benefits?
    16. I am an Authorized Claimant, how do I redeem and obtain Settlement benefits?
    17. What rights am I giving up to get benefits and stay in the Settlement Class?
    18. What are the Released Claims?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7

    19. How do I get out of the Settlement?
    20. If I exclude myself, can I still get benefits from this Settlement?
    21. If I do not exclude myself, can I sue Lennox for the same claims later?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 8

    22. Do I have a lawyer in this case?
    23. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 8

    24. How do I tell the Court that I do not like the Settlement?
    25. What is the difference between objecting to the Settlement and asking to be excluded from it?

**THE COURT'S FINAL APPROVAL HEARING.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 9

    26. When and where will the Court decide whether to approve the Settlement?
    27. Do I have to come to the hearing?
    28. May I speak at the hearing?

**IF YOU DO NOTHING.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 9

    29. What happens if I do nothing at all?

**GETTING MORE INFORMATION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .PAGE 9

    30. How do I get more information?

## BASIC INFORMATION

**1. Why was this Notice issued?**

A federal Court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, and who can get them.

Judge Sara L. Ellis of the United States District Court for the Northern District of Illinois, Eastern Division, is overseeing this class action. The case is known as *Thomas v. Lennox Industries Inc.*, Case No. 1:13-cv-07747. The people who filed this lawsuit are called the "Plaintiffs" and the company they sued, Lennox Industries Inc. ("Lennox"), is called the "Defendant."

**2. What is this lawsuit about?**

The Plaintiffs claim that Lennox manufactures and sells air conditioning systems and heat pump systems, including air handlers and Packaged Units, ("Lennox ACs" or "ACs") containing defective evaporator coils that corrode and leak refrigerant. They claim that the evaporator coils, which are made using copper tubing, are susceptible to formicary corrosion (caused by a chemical reaction requiring certain volatile organic compounds, water, heat, and the copper tubes) that causes microscopic tunnels to form within the tubing and the coils to leak refrigerant. They further claim that Lennox: (1) knew or should have known about the defective evaporator coils; (2) should have informed its customers about the defective evaporator coils; (3) should have manufactured its ACs with evaporator coils made with coated copper or aluminum tubing; and (4) should have replaced the defective evaporator coils rather than the refrigerant in the unit when the coils leaked.

Lennox denies all of the claims and allegations made in the lawsuit and denies that it acted improperly.

**3. What is a class action?**

In a class action, one or more people called Plaintiffs or Class Representatives (in this case, Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis) sue on behalf of other people who have similar claims. The people included in the class action are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**4. Why is there a Settlement?**

The Court did not decide in favor of the Plaintiffs or Lennox. Instead, both sides agreed to a Settlement. This way, they avoid the cost and burden of further litigation and a trial and the people affected can get benefits. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

**5. How do I know whether I am part of the Settlement?**

The Settlement Class includes all United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil, covered by an Original Warranty, for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.

Original Coils may have been purchased separately, as part of an air handler, or they may have been included as part of a Packaged Unit.

**6. How do I know if I am a Settlement Class Member?**

To confirm that you are a Settlement Class Member you may want to review the manufacturer's limited warranty or manufacturer's extended limited warranty that was provided by Lennox or Allied Air Enterprises LLC when you purchased the AC to confirm that the coil was covered by the Original Warranty. You may also want to look at your purchase or installation receipt to confirm that your AC was purchased between October 29, 2007 and [insert Preliminary Approval Date] and is one of the brands listed above.

The picture below illustrates where the evaporator coil typically is located inside the AC, although configurations vary depending on the structure and location of your home and where the AC is placed inside your home.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

3



Outside the House        Inside the House

### 7. Are there exceptions to being included?

Yes. The Settlement excludes: (1) the judge assigned to this case and any member of her immediate family; (2) the lawyers involved in this case and any members of their immediate families; (3) the Honorable Richard Neville and any member of his immediate family, and the Honorable Edward Infante and any member of his immediate family; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

### 8. What if I am still not sure whether I am part of the Settlement?

If you are not sure whether you are included, call 1-___-___-____, go to www._____.com, send an email to _____@_____.com or write to one of the lawyers listed in Question 22 below.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

### 9. What does the Settlement provide?

The Settlement provides an Expanded Warranty and Reimbursement Program to Settlement Class Members that submit a timely and valid Claim Form. The Expanded Warranty and Reimbursement Program includes: (1) a one-time $75 service rebate; (2) an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; (3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and (4) up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement. Expanded Warranty and Reimbursement Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

### 10. How do I know if I am eligible for Settlement benefits?

All Settlement Class Members are eligible for coverage under an Expanded Warranty and Reimbursement Program. To receive any benefits the Settlement Class Member must be an Authorized Claimant, which means they have submitted a timely and valid Claim Form. The deadlines for submission of Claim Forms vary by circumstance, and are explained below. Each Authorized Claimant will receive a certificate (the "Certificate") describing the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits.

### 11. What benefits am I eligible for under the Expanded Warranty and Reimbursement Program?

For each Authorized Claimant who replaced or replaces an Original Coil because of a coil leak within five years after installation of the Original Coil, the Authorized Claimant will receive the following benefits as applicable under the Expanded Warranty and Reimbursement Program:

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

4

- **$75 Service Rebate.** If you replace or have previously replaced your Original Coil due to a coil leak within five years of installation of the Original Coil, you can receive a one-time $75 Service Rebate for service, including routine maintenance, performed after the date the rebate is issued on the Replacement Coil (the evaporator coil that was installed to replace your Original Coil) or on any Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand HVAC products installed in the same residence as the Replacement Coil. Timely and valid submission of proof of replacement of your Original Coil is required before the Service Rebate Certificate will be issued. The Service Rebate will be available for one year from the date the Rebate Certificate is issued. **To redeem this rebate once it has been issued, you must provide proof of service and the date the service was received within 60 days of the date the service was performed.** On timely receipt of valid proof of service, Lennox will send the Claimant a check for $75.

- **Coil Replacements AFTER [insert the Preliminary Approval Date].** If you did <u>not</u> replace the Original Coil by [insert the Preliminary Approval Date] and subsequently experienced or experience a leak that required or requires a coil replacement:

  - o **First Coil Replacement.** You will be eligible to receive a Replacement Coil at no charge for the Replacement Coil itself as part of the Original Warranty ("First Replacement Coil"). If the First Replacement Coil is installed more than one year but equal to or less than five years after the Original Coil was installed, you may also become eligible for retroactive reimbursement for labor and refrigerant for installation of that First Replacement Coil if that First Replacement Coil is later replaced (*see* Retroactive Reimbursement for First Coil Replacement below).

  - o **Additional Coverage for Replacement Coil.** If you received or receive an uncoated copper tube evaporator coil as the First Replacement Coil, you will be eligible for a five-year part and labor warranty on that coil (the "Replacement Coil Warranty"). This Replacement Coil Warranty is in addition to, and may provide coverage for a longer period of time than, your Original Warranty. **To be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form and you must follow the instructions in the Certificate that will be sent to you.**

  - o **Replacement Coil Leak.** If the Replacement Coil that is covered by the Replacement Coil Warranty leaks and requires replacement within the five-year Replacement Coil Warranty period, you will be eligible to receive a coated copper or aluminum tube Replacement Coil (as determined by Lennox) at no charge for the Second Replacement Coil itself <u>and</u> up to $550 as reimbursement for the costs of labor and refrigerant to install the Second Replacement Coil. **You must notify Lennox as specified in the Certificate to arrange for provision of the coated copper or aluminum tube Replacement Coil.** Reimbursement will be made only if you use an independent Lennox dealer to install the Replacement Coil <u>and</u> you provide an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant. Independent Lennox dealers are listed at <u>www.lennox.com</u>. **To receive reimbursement, proof of payment must be submitted online or postmarked no later than 60 days after the installation of the coated copper or aluminum tube Replacement Coil.** You may also be eligible for retroactive reimbursement for installation of the First Replacement Coil (*see* Retroactive Reimbursement for First Coil Replacement below).

- **Original Coil Replacements ON OR BEFORE [insert the Preliminary Approval Date].** If you previously replaced the Original Coil due to a coil leak within five years of its installation (and under the Original Warranty) on or before [insert the Preliminary Approval Date]:

  - o **First Coil Replacement.** If you replaced the Original Coil for the first time more than one year but equal to or less than five years after the Original Coil was installed, you may be or become eligible for retroactive reimbursement for labor and refrigerant for installation of that First Replacement Coil if that First Replacement Coil was or is replaced (*see* Retroactive Reimbursement for First Coil Replacement below).

  - o **Subsequent Coil Replacements.** If you replaced a Replacement Coil with an uncoated copper tube Replacement Coil once or more than once, you will be eligible to receive up to $550 as reimbursement for the costs of labor and refrigerant incurred for <u>each</u> coil replacement that occurred after installation of the First Replacement Coil and on or before [insert the Preliminary Approval Date]. **To be reimbursed you must submit a timely and valid Claim Form that includes an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant.**

  - o **Additional Coverage for Most Recent Replacement Coil.** If you replaced an Original Coil or a Replacement Coil with an uncoated copper tube Replacement Coil on or before [insert the Preliminary Approval Date], you will be eligible for the five-year Replacement Coil Warranty on the most recent

Replacement Coil. The Replacement Coil Warranty is retroactive and covers the previously installed Replacement Coil for five years from the date it was installed. **To be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form <u>and</u> follow the instructions in the Certificate that will be sent to you.**

o **Replacement Coil Leak after [insert the Preliminary Approval Date].** If the Replacement Coil that is covered by the Replacement Coil Warranty leaks and requires replacement after [insert the Preliminary Approval Date] and within the five-year Replacement Coil Warranty period, you will be eligible to receive a coated copper or aluminum tube Replacement Coil (as determined by Lennox) at no charge for the Replacement Coil itself <u>and</u> up to $550 as reimbursement for the costs of labor and refrigerant to install the coated copper or aluminum tube Replacement Coil. **You must notify Lennox as specified in the Certificate to arrange for provision of the coated copper or aluminum tube Replacement Coil.** Reimbursement made only if you use an independent Lennox dealer to install the Replacement Coil <u>and</u> you provide an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant. Independent Lennox dealers are listed at <u>www.lennox.com</u>. **To receive reimbursement proof of payment must be submitted online or postmarked no later than 60 days after the installation of the coated copper or aluminum tube Replacement Coil.** You may also be eligible for retroactive reimbursement for installation of the First Replacement Coil (*see* Retroactive Reimbursement for First Coil Replacement below).

- **Retroactive Reimbursement for First Coil Replacement.** If you replaced the Original Coil for the first time over a year after the date the Original Coil was installed and received an uncoated copper tube Replacement Coil that is later replaced, you will be eligible for reimbursement up to $550 for the costs of labor and refrigerant for the replacement of the Original Coil. Reimbursement will only be made if you provide an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant to replace the Original Coil. If the second coil replacement occurs after the Settlement becomes final, the second replacement must be made under the Replacement Coil Warranty for you to be eligible for this retroactive reimbursement for installation of your First Replacement Coil.

## 12. Tell me more about the Replacement Coil Warranty.

The Replacement Coil Warranty will be in effect for five years after the date of installation of the Replacement Coil covered by the Replacement Coil Warranty, or until you receive a coated copper or aluminum tube Replacement Coil, whichever occurs first. Although the five-year Replacement Coil Warranty may be retroactive to a previous installation date, in order to be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form and you must follow the instructions in the Certificate that will be sent to you. The Replacement Coil Warranty only applies to the covered Replacement Coil. It is not transferrable to other coils, other ACs, or heat pump systems. You are not eligible for the Replacement Coil Warranty if you receive a coated copper or aluminum tube Replacement Coil.

## 13. Does the Settlement provide any other benefits?

Yes, Lennox has also agreed to prepare and disseminate information about the possible risk that formicary corrosion may occur in uncoated copper tube evaporator coils under certain conditions.

# HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

## 14. How do I get benefits?

**You must complete and submit a Claim Form by the later of Month \_\_, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil** to obtain coverage under the Expanded Warranty and Reimbursement Program and to request benefits for which you may be eligible as of the date you submit your Claim Form. Follow all of the Claim Form instructions and include the required supporting documentation. Once your Claim Form has been processed and approved, you will be sent a Certificate explaining the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits. **To redeem and obtain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms**, as explained in the Certificate, with information and supporting documentation that were not already included in the Claim Form. Claim Forms and Request for Benefits Forms may be accessed and submitted online or downloaded for printing and submission via U.S. Mail at www._____.com. Claim Forms and Request for Benefits Forms are also available by calling 1-\_\_\_-\_\_\_-\_\_\_\_ or by writing to *Thomas v. Lennox Industries Inc.* Settlement Administrator, PO Box \_\_\_\_\_, City, ST \_\_\_\_\_-\_\_\_\_.

QUESTIONS? CALL 1-\_\_\_-\_\_\_-\_\_\_\_ TOLL-FREE OR VISIT **www._____.com**

### 15. When would I get the Settlement benefits?

The Court will hold a hearing at __:_0 _.m. on Month __, 2015 to decide whether to grant final approval of the Settlement. If the Court approves the Settlement, there may be appeals.  It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them.  Settlement benefits will be provided to Authorized Claimants as soon as possible, if and when approval of the Settlement becomes final.  There is one exception.  If you have become an Authorized Claimant by submitting a timely and valid Claim Form, and you become eligible for a coated copper tube or aluminum tube Replacement Coil under the Expanded Warranty and Reimbursement Program before approval of the Settlement has become final, and you notify Lennox as specified in the Certificate, Lennox will provide the Replacement Coil at that time, even though approval of the Settlement has not become final.

### 16. I am an Authorized Claimant, how do I redeem and obtain the Settlement benefits?

To redeem and obtain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms, as explained in the Certificate, with information and supporting documentation that were not already included in the Claim Form.  More information on when and how to submit a Claim Form and Request for Benefits Forms is provided above.

### 17. What rights am I giving up to get benefits and stay in the Settlement Class?

Unless you exclude yourself, you are staying in the Settlement Class.  If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you.  You won't be able to sue, continue to sue, or be part of any other lawsuit against Lennox and related parties about the legal issues in this case, but you will be able to submit a Claim Form to receive benefits from this Settlement.  The specific rights you are giving up are called Released Claims.

### 18. What are the Released Claims?

Generally, if and when the Settlement Agreement becomes final, Settlement Class Members will permanently release Lennox and all related people (such as retailers, distributors, and dealers) from all manner of claims (except personal injury claims) which are based upon, arise out of, or involve any matters relating to Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coils originally purchased during the Settlement Class period or any of the allegations in this lawsuit.

Definitions 41 and 42 of Section IV.B of the Settlement Agreement, available at www._____.com, describe the specific claims and parties you will be releasing, so read it carefully.  If you have any questions you can talk to the law firms listed in Question 22 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Lennox about the legal claims in this case, and you do not want to receive benefits from this Settlement, you must take steps to get out of the Settlement.  This is called excluding yourself, or opting out of the Settlement.

### 19. How do I get out of the Settlement?

To be excluded from the Settlement Class, you must mail a written request for exclusion to the Settlement Administrator. Your request for exclusion must include:  (1) your full name, current mailing address and current day and evening phone numbers; (2) the name of this case, *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747; (3) a statement such as "I request to be excluded from the Settlement Class in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.); and (4) your signature.  Your request for exclusion must be mailed to the Settlement Administrator at the address below and underscore{postmarked} no later than **Month __, 2015**:

*Thomas v. Lennox Industries Inc.,* Settlement Administrator
P.O. Box ____
City, ST _____-____

### 20. If I exclude myself, can I still get benefits from this Settlement?

No.  If you exclude yourself, you are telling the Court that you don't want to be part of the Settlement Class in this Settlement.  You can only get benefits if you stay in the Settlement Class and submit a timely and valid Claim Form.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

7

**21. If I do not exclude myself, can I sue Lennox for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue Lennox and other Released Parties for the claims that this Settlement resolves. You must exclude yourself from *this* lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Lennox about the legal issues in this case.

# THE LAWYERS REPRESENTING YOU

**22. Do I have a lawyer in this case?**

Yes. Judge Sara L. Ellis has appointed a number of lawyers to represent you and all other Settlement Class Members as "Class Counsel." They include:

| | |
|---|---|
| Jonathan Shub<br>Neil Glazer<br>Kohn Swift & Graf, P.C.<br>One South Broad Street, Suite 2100<br>Philadelphia, Pennsylvania 19107 | Jeff Leon<br>Quantum Legal Group, LLC<br>513 Central Avenue, Suite 300<br>Highland Park, Illinois 60035 |

These lawyers and their firms are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**23. How will the lawyers be paid?**

Class Counsel will ask the Court for up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each of the Class Representatives. If approved, all of these amounts, as well as the costs associated with administering the Settlement, will be paid separately by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

The application for an award of attorneys' fees and reimbursement of costs and expenses and for service awards will be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 no later than Month __, 2015. It will also be available at www._____.com.

# OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the Settlement or any part of it.

**24. How do I tell the Court that I do not like the Settlement?**

If you are a Settlement Class Member, you can object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via First Class U.S. Mail saying that you object to the Settlement of *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.). Your objection must also include: (1) your full name; (2) your current mailing address; (3) your current day and evening telephone number; (4) proof that you are a Settlement Class Member; (5) the reasons why you object to the Settlement, including any documents you would like the Court to consider and any evidence you may present at the Final Approval Hearing (*see* Question 26); and (6) your signature. Mail your objection to the Clerk of the Court and the Settlement Administrator underlined postmarked on or before **Month __, 2015**.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the United States District Court for the<br>Northern District of Illinois, Eastern Division<br>Everett McKinley Dirksen United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 | *Thomas v. Lennox Industries Inc.,*<br>Settlement Administrator<br>P.O. Box ____<br>City, ST _____-____ |

If you object, you may be deposed by Class Counsel and Defense Counsel in the county of your residence.

**25. What is the difference between objecting to the Settlement and asking to be excluded from it?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class (do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you cannot object because the Settlement no longer affects you.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

### 26. When and where will the Court decide to approve the Settlement?

The Court will hold a Final Approval Hearing at __:_0 _.m. on ____day, Month __, 2015 at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. It will also consider whether to approve Class Counsel's application for an award of attorneys' fees, costs and expenses, as well as the Class Representatives' service awards. If there are objections, the Court will consider them. Judge Sara L. Ellis will listen to people who have asked to speak at the hearing (*see* Question 28 below). After the hearing, the Court will decide whether to approve the Settlement.

### 27. Do I have to come to the hearing?

No. Class Counsel will answer any questions Judge Sara L. Ellis may have. However, you are welcome to come to the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time and include the information set forth above (*see* Question 24), the Court will consider it. You may also pay your own lawyer to attend, but that is not necessary.

### 28. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file a written notice with the Court saying that it is your "Notice of Intent to Appear at the Final Approval Hearing in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.)." You must include your full name, current mailing address, current day and evening telephone number, and your signature. If you plan to have your own attorney speak for you at the hearing, you must also include the name, address, and telephone number of the attorney who will appear. Your written notice must be mailed to the Clerk of the Court and the Settlement Administrator postmarked on or before **Month __, 2015**.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the United States District Court for the Northern District of Illinois, Eastern Division Everett McKinley Dirksen United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | *Thomas v. Lennox Industries Inc.,* Settlement Administrator P.O. Box ____ City, ST _____-____ |

## IF YOU DO NOTHING

### 29. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in Question 18, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lennox and the other Released Parties about the legal issues in this case. In addition, if you do not file a valid Claim Form within the applicable time periods described above you will not receive any of the benefits that this Settlement provides.

## GETTING MORE INFORMATION

### 30. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www._____.com, by calling 1-___-___-____, or by writing to the Settlement Administrator *Thomas v. Lennox Industries Inc.*, Settlement Administrator P.O. Box ____, City, ST _____-____, or by sending an email to _____@_____.com.

# Exhibit A-2

LEGAL NOTICE

# If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.

A Settlement has been reached with Lennox Industries Inc. ("Lennox") in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

**Who's included?** United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty ("Original Coil"), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning or heat pump packaged unit.

**What does the Settlement provide?** The Settlement provides an Expanded Warranty and Reimbursement Program (the "Program") to Settlement Class Members that submit a timely and valid Claim Form.  The Program includes: (1) a one-time $75 service rebate; (2) an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; (3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and (4) up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement.  Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

**How do I get Settlement benefits?** You must submit a Claim Form by the later of **Month __, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil** to obtain coverage under the Program and to request benefits for which you may be eligible as of the date you submit your Claim Form. Follow all of the Claim Form instructions and include the required documentation. If your Claim Form is approved, you will be sent a Certificate explaining the benefits and rights under the Program, and instructions about when and how to redeem these benefits. To redeem benefits for which you may first become eligible after submission of your Claim Form, you must submit Request for Benefits Forms with information and supporting documentation that were not already included with the Claim Form. Claim Forms and Request for Benefits Forms may be accessed and submitted online or downloaded for submission via U.S. Mail at www._____.com. Claim Forms and Request for Benefits Forms are also available by calling 1-____-___-____ or by writing to Thomas v. Lennox Industries Inc., Settlement Administrator, PO Box _____, City, ST ____-____.

**Who represents me?** The Court has appointed Kohn Swift & Graf, P.C., Quantum Legal Group, LLC, and Seeger Weiss LLP as Class Counsel. You do not have to pay Class Counsel or anyone else to participate. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Your other options.** If you are in the Settlement Class and you do nothing, your rights will be affected and you won't get any Settlement benefits. If you don't want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **Month 00, 2015**. Unless you exclude yourself, you won't be able to sue or continue to sue Lennox for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the Settlement, you may object to the Settlement or give notice of intent for you or your own lawyer to appear at the final approval hearing—at your own expense—but you don't have to. Objections and notices of intent to appear are due by **Month 00, 2015**.

**The Final Approval Hearing.** The Court will hold a hearing on **Month 00, 2015** to consider whether to approve the Settlement, and a request of up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each Class Representative (Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis). If approved, these amounts, and the costs of administering the Settlement, will be paid by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

**Want More Information?** Call 1-____-___-____, go to www._____. com, write to Thomas v. Lennox Industries Inc., Settlement Administrator, P.O. Box _____, City, ST _____-____, or email ____@_____.com.

**1-___-___-____          www._____.com**

# Exhibit A-3

LEGAL NOTICE

**If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, your rights may be affected and you could get benefits from a class action settlement.**

1-___-___-____
www._____.com
_____@_____.com

**Thomas v. Lennox Industries Inc.**
**Settlement Administrator**
P.O. Box xxxx
City, ST xxxxx-xxxx

First-Class
Mail
US Postage
Paid
Permit #

«Barcode»
Postal Service: Please do not mark barcode

Claim #: LXT -«ClaimID» «MailRec»

«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «ST» «Zip»
«Country»

LXT

A Settlement has been reached with Lennox Industries Inc. ("Lennox") in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

**Who's included?** Warranty records show that you are likely included. Specifically, the Settlement Class includes all United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty ("Original Coil"), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning or heat pump packaged unit.

**What does the Settlement provide?** The Settlement provides an Expanded Warranty and Reimbursement Program (the "Program") to Settlement Class Members that submit a timely and valid Claim Form. The Program includes: (1) a one-time $75 service rebate; (2) an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; (3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and (4) up to $550 as reimbursement for labor and refrigerant charges for each subsequent uncoated copper tube coil replacement after the first replacement. Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

**How do I get Settlement benefits?** You must submit a Claim Form by the later of **Month __, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil** to obtain coverage under the Program and to request benefits for which you may be eligible as of the date you submit your Claim Form. Follow all of the Claim Form instructions and include the required documentation. If your Claim Form is approved, you will be sent a Certificate explaining the benefits and rights under the Program, and instructions about when and how to redeem these benefits. To redeem benefits for which you may first become eligible after submission of your Claim Form, you must submit Request for Benefits Forms with information and supporting documentation that were not already included with the Claim Form. Claim Forms and Request for Benefits Forms may be accessed and submitted online or downloaded for submission via U.S. Mail at www._____.com. Claim Forms and Request for Benefits Forms are also available by calling 1-___-___-____ or by writing to Thomas v. Lennox Industries Inc., Settlement Administrator, PO Box _____, City, ST _____-____.

**Who represents me?** The Court has appointed Kohn Swift & Graf, P.C., Quantum Legal Group, LLC, and Seeger Weiss LLP as Class Counsel. You do not have to pay Class Counsel or anyone else to participate. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Your other options.** If you are in the Settlement Class and you do nothing, your rights will be affected and you won't get any Settlement benefits. If you don't want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **Month 00, 2015**. Unless you exclude yourself, you won't be able to sue or continue to sue Lennox for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the Settlement, you may object to the Settlement or give notice of intent for you or your own lawyer to appear at the final approval hearing—at your own expense—but you don't have to. Objections and notices of intent to appear are due by **Month 00, 2015.**

**The Final Approval Hearing.** The Court will hold a hearing on **Month 00, 2015** to consider whether to approve the Settlement, and a request of up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each Class Representative (Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis). If approved, these amounts, and the costs of administering the Settlement, will be paid by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

# Exhibit A-4

## **Dealer Notice**

As you may be aware, Lennox Industries Inc. has agreed to settle a class action lawsuit about whether it manufactured and sold defective evaporator coils.  Some of your customers may be entitled to benefits if the settlement is approved.

The lawsuit claims that the evaporator coils made using copper tubing are defective because they are susceptible to formicary corrosion (the result of a chemical reaction requiring copper, water, and organic acids).  Lennox denies all of the claims and allegations made in the lawsuit.  Lennox maintains that the occurrence of formicary corrosion is rare, and when it does occur, it is typically the result of concentrations of various chemicals found and used in homes, including construction materials and household cleaners.  No one has found that Lennox has done anything wrong.  However, Lennox opted to settle the lawsuit to avoid further expense, burden and business distraction.

The parties to the lawsuit have jointly sought court approval of the settlement.  On [Month] XX, 2015, the Court preliminarily approved the settlement.  The parties now will notify potential settlement class members of their rights under the settlement.  These rights include the right to make a claim, object to the settlement, or opt out of the settlement.  Notice will be made through a variety of methods, including direct mail to potential settlement class members whose names and addresses are known to Lennox, publication in magazines, and banners on websites.

Generally, with some exceptions, the settlement class includes United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by a manufacturer's limited warranty ("Original Coils"), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.  Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning packaged unit or heat pump packaged unit.

The Court will hold a final hearing on [Month] XX, 2015, to consider whether to finally approve the settlement.  If it is approved, the settlement provides an Expanded Warranty and Reimbursement Program to settlement class members who submit a timely and valid claim form. The Expanded Warranty and Reimbursement Program includes:

(1) a one-time $75 service rebate;
(2) an aluminum tube or coated copper tube replacement coil after the first replacement;
(3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and
(4) up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement.

Expanded Warranty and Reimbursement Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual settlement class members.

If a consumer contacts you regarding the settlement, please refer them to (XXX) XXX-XXXX or www.XXXXXXX.com, where more detailed information about the settlement is available. It is important that consumers receive information through the Court-approved processes, so please do not refer consumers directly to Lennox.

We are pleased that this matter is nearing resolution. If you have any questions, please contact [ADD].

# Exhibit A-5

## <u>Internet Banners</u>

1. Leaderboard—728 x 90 pixel

If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.  www.SettlementWebsite.com

2. Medium Rectangle—300 x 250 pixel

If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.



www.SettlementWebsite.com

3. Wide Skyscraper—160 x 600 pixel

If you own a
Lennox,
Aire-Flo,
Armstrong Air,
AirEase,
Concord, or
Ducane brand
residential air
conditioning
or heat pump
system,
you could get
benefits from
a class action
settlement.

**Learn More »**

www.SettlementWebsite.com

# Exhibit B

<u>**Claims Administration Plan**</u>

As Settlement Administrator, Kurtzman Carson Consultants LLC ("KCC") anticipates that claims administration for the Settlement relating to Lennox central air conditioning or heat pump system evaporator coils will occur in six phases: (i) initial project setup; (ii) Settlement Class notification; (iii) correspondence with the Settlement Class; (iv) claim processing and validation; (v) final reporting; and (vi) provision of benefits. A description of the primary tasks for each of these phases is set forth below. In addition, KCC anticipates performing such other tasks as are necessary in its professional judgment.

**I.**     <u>**Phase One: Initial Project Setup**</u>

KCC will confer with the Parties' Counsel to set up the framework for administering the claims process. This phase includes: (a) establishing a post office box for receipt of correspondence; (b) establishing automated telephone support, including the telephone number to be included in the notices distributed to the Settlement Class; (c) setting up a claims database to monitor and track claims; and (d) creating a website that, once live after preliminary approval, the Settlement Class may visit for more information or to file a claim.

    A. <u>Post Office Box</u>: Obtain a Post Office box from which KCC, on a daily basis, will collect mail, including:

        1. General Claimant Correspondence
            a) Opt-Outs
            b) Objections
            c) Address Changes
            d) Miscellaneous
        2. Claim Forms
        3. Request for Benefits Forms
        4. Undeliverable Mail

    KCC will process correspondence, completed Claim Forms, completed Request for Benefits Forms and undeliverable mail pursuant to the procedures identified in the phases set forth below. To the extent this Claims Administration Plan does not provide KCC with sufficient guidance regarding such processing, KCC will respond to or otherwise process such mail in its best professional judgment after consulting with the Parties' Counsel.

    B. <u>Automated Telephone Support</u>: Obtain a toll-free number to be printed in Notices.

1

1.  *Setup*:  Design a telephone support system, routing procedures and pre-recorded messages based on Court-approved Settlement documents that will be revised throughout the administrative process as necessary.  The phone support will allow callers who call in to obtain the following:
    a)  General information about the lawsuit;
    b)  Information about the options for Settlement Class Members;
    c)  The ability to request a Long-Form Notice and a Claim Form;
    d)  The ability to request a Request for Benefits Form;
    e)  The ability to listen to a list of frequently asked questions.

2.  The telephone system will not be manned live.  Instead, it will, in accordance with generally-accepted claims administration procedures, provide message-only information including scripted responses to FAQ's and project updates and announcements as required.  The script for the telephone system is attached as Exhibit B-4.

3.  *Implementation*:  Set up messages, test system, and implement telephone support.  KCC, prior to implementation, will allow the Parties to review the content and will obtain approval before pushing live.

C.  <u>Claimant Database</u>:  Compile a database of name and address information of claimants who will receive the Postcard Notice.  Tasks include:

1.  Obtain database records from Lennox Industries Inc.;
2.  KCC will analyze the data to identify and resolve any issues related to data inconsistencies;
3.  KCC will identify and remove any duplicative records;
4.  Run all records through the NCOA (National Change of Address) database; and
5.  Compile claimant mailing database list.

D.  <u>Website</u>:

1.  Design to include:
    a)  General information (Home page);
    b)  Important Dates and Deadlines (Home page);
    c)  Settlement Class Notice page;
    d)  Settlement Documents page;
    e)  Frequently Asked Question page; and
    f)  Claim Filing page and Request for Benefits Filing page.

2

           (1) Printable Claim Form and printable Request for Benefits Form

               (a) Settlement Class Members can enter their mailing information and print out a customized Claim Form or a customized Request for Benefits Form that they can mail to the Settlement Administrator with supporting documentation.

           (2) Online Claim Form and online Request for Benefits Form

               (a) This functionality will allow Settlement Class Members to upload supporting documentation; and

               (b) Settlement Class Members who choose to file their Claim Form online or their Request for Benefits Form online may also mail in their supporting documentation. The mailing address will be provided.

2.  Implement, Maintain and Report on Website:
   a) Estimate expected high volume of visitors to website and incorporate appropriate capacity;
   b) Incorporate appropriate security levels;
   c) Build and test website;
   d) Provide website in secure environment to client for testing and approval;
   e) Publish website for general public access ("go live");
   f) Monitor daily traffic and performance; and
   g) Report statistics.

## II.    **Phase Two:  Settlement Class Notification**

Prior to the filing of the Motion for Preliminary Approval of Settlement, KCC will work to develop its Notice Plan to ensure the accuracy of all information that is distributed to the Settlement Class relating to the Claims Administration Plan.  If the Court preliminarily approves the Settlement, KCC will then implement those parts of the Notice Plan with which it is to have involvement, including: (a) direct notice; (b) internet banners; (c) the dedicated, informational website; (d) toll-free telephone support; and (e) consumer magazines.

A. Direct Notice: Implement plan to provide direct mail notice to potential Settlement Class Members.

1. *Mail Notice:* Mail Postcard Notice *via* First-Class Mail to Persons contained on the mailing database list.
   a) Approximately 988,854 Postcard Notices will be mailed to the

3

addresses of all known potential Settlement Class Members.

    b) Prior to mailing, the names and addresses will be
        (1) Checked against the USPS National Change of Address (NCOA) database;
        (2) Certified via the Coding Accuracy Support System (CASS); and
        (3) Verified through Delivery Point Validation (DPV).

    c) Postcard Notices returned as undeliverable will be re-mailed to any address available through postal service information. For example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but is still during the period that the USPS returns the piece with the new address indicated.

    d) Any returned mailing that does not contain an expired forwarding order with a new address indicated may be researched through a third party look-up service, if applicable.

2. *Return Mail Processing*:  Process both undeliverable mail and otherwise returned mail pursuant to the procedures below:
    a) Sort undeliverable mail to identify pieces without postal forwarding address stickers and, for each piece without postal forwarding address sticker:
        (1) Update the database with receipt date;
        (2) Trace addresses through outside location firm and, if address is available, re-mail a Postcard Notice to Persons with located address and update the database with the re-mail information; and
        (3) If no additional address available through outside location firm, update the database and no further action required.

    b) For undeliverable mail with a forwarding address sticker:
        (1) Update the database with receipt date and new address obtained from postal forwarding sticker; and
        (2) Re-mail a Postcard Notice to Persons with forwarding addresses.

B. <u>Internet Banners</u>

1. Purchase approximately 127 million *unique* internet impressions over a one-month period.
2. The banners will be targeted to adults 25 years of age or older, as well as those who show an interest in home and garden websites and DIY projects.

4

Run of Network (RON) impressions will be distributed based on sales data.
3. The banners will include an embedded link to the Settlement website.

C. <u>Dedicated, Informational Website</u>

1. Provide an easy to remember domain.
2. Allow Settlement Class Members the ability to obtain additional information and documents including the Claim Form, Request for Benefits Form, Long-Form Notice, Summary Notice, Settlement Agreement, and any other information that the Parties may agree to provide or that the Court may require.
3. Prominently display website domain in all printed notice materials and make accessible through a hyperlink embedded in the internet banner notices.

D. <u>Toll-Free Telephone Support</u>

1. Provides a simple way for Settlement Class Members to obtain additional information about the Settlement.
2. Allows Settlement Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers.
3. Allows Settlement Class Members to request to have more information mailed directly to them.
4. Prominently display telephone number in all printed notice materials.

E. <u>Consumer Magazines</u>

1. Summary Notice will be placed in leading consumer magazines among HVAC Consumers in accordance with Notice Plan attached as Exhibit A to the Settlement Agreement.

**III.    Phase Three:  Correspondence with the Settlement Class**

Once Settlement Class Members begin receiving notice, KCC anticipates corresponding with the Settlement Class with regard to (a) requests for Long-Form Notice packets; (b) changes of address/name; (c) objections; (d) opt-outs; and (f) miscellaneous issues.

A. <u>Requests for Long-Form Notice</u>:  Respond to all requests for notice.  Tasks include:

1. Date-stamp and batch requests for notice;
2. Create record for requestor, or update existing database record with request

5

number, receipt date, and new address information, if applicable; and

3. Flag record to receive a Long-Form Notice packet.

B. <u>Changes of Address/Name</u>:  Update database with new information that is received related to the Settlement Class.  Tasks include:

1. Date-stamp and batch correspondence;
2. Verify that correspondent is a member of the Settlement Class;
3. Update database with new information; and
4. Provide updated data to the Parties' Counsel as appropriate.

C. <u>Objections</u>:  Confirm whether the objector is, in fact, a member of the Settlement Class, and submitted a valid objection.

1. Valid objections must:
   a) Include proof that the objector is a Settlement Class Member;
   b) Be signed by the objector;
   c) Include the objector's full name, current mailing address and current daytime and evening telephone numbers;
   d) Include a statement that the objector objects to the Settlement in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.); and
   e) Include the reasons the objector objects to the Settlement, along with all documents and other writings the objector wishes the Court to consider, and describe any and all evidence the objector may offer at the Final Approval Hearing, including but not limited to, the names and expected testimony of any witnesses.

2. All objections must be submitted to the Settlement Administrator and also to the Court at the addresses provided in the Long-Form Notice.

3. Within 3 business days after receipt, the Settlement Administrator shall provide to the Parties' Counsel copies of any written objections and any requests to intervene along with any accompanying materials.

4. Within 3 business days after the Court-ordered deadline for the submission of objections, the Settlement Administrator will provide to the Parties' Counsel and the Court: (a) a listing of the objectors who made timely and valid objections; (b) a listing of any objectors who either are not validated to be Settlement Class Members or otherwise have failed to submit a valid objection because they fail to meet any of the criteria specified in this Claims

6

Administration Plan or in the Settlement Agreement.

D. <u>Opt-Outs</u>: Evaluate and make sure the exclusion request is made by a Settlement Class Member and contains the criteria for validity outlined in the Settlement Agreement and this Claims Administration Plan. Substantial compliance with all criteria is required for the opt-out request to be valid.

1. Valid opt-out requests must:
   a) Be signed by that Settlement Class Member;
   b) Include that Settlement Class Member's full name, current mailing address and current daytime and evening telephone numbers; and
   c) Include a statement that says something similar to the following: "I request to be excluded from the Settlement Class in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.

2. All opt-out requests must be submitted to the Settlement Administrator at the address provided in the Long-Form Notice.

3. Opt-outs determined to be valid will be recorded in the database as opted-out of the Settlement Class. These records will be flagged to show the person is no longer a Settlement Class Member and is ineligible for any benefits.

4. Within 14 days after the Court-ordered deadline for timely and properly opting out from the Settlement Class, but in no event later than seven calendar days before the Final Approval Hearing, the Parties' Counsel will have the Settlement Administrator provide to the Court and the Parties' Counsel the names and applicable addresses of the Settlement Class Members who have timely and properly opted out of the Settlement Class, as well as the total number of such Persons.

E. <u>Miscellaneous Correspondence</u>: Process miscellaneous correspondence received from members of the Settlement Class. Tasks include:

1. Date-stamp and batch correspondence;
2. Review correspondence to determine if responses are required;
3. Respond to Settlement Class Member inquiries as necessary; and
4. Escalate items of importance to Parties when applicable.

IV. **Phase Four: Claim and Request for Benefits Processing and Validation**

To become an Authorized Claimant, a Settlement Class Member must submit a timely and valid Claim Form, attached as Exhibit B-1a. A Settlement Class Member need only submit a

7

Claim Form once for any claims based on any particular Original Coil purchased by the Settlement Class Member. Submission of the Claim Form also serves as a request for benefits that the Settlement Class Member may be eligible to receive as of the time the Settlement Class Member submits the Claim Form.

For each claim, KCC (1) will determine whether the Settlement Class member is an Authorized Claimant and therefore eligible for Settlement benefits; and (2) if and as applicable, will determine whether any information and supporting documentation for any benefit(s) provided as part of the claim qualifies the claimant to receive the benefit(s) for which they were provided.

Each Authorized Claimant will receive a certificate (the "Certificate"), substantially in the form attached as Exhibit B-5, describing the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how the Authorized Claimant can exercise rights to redeem and obtain those benefits. Each Authorized Claimant may request benefits for which he or she first becomes eligible after submission of the Claim Form (subject to benefit-specific filing deadlines), by filing a Request for Benefits Form, attached as Exhibit B-1b. An Authorized Claimant may file more than one Request for Benefits Form as appropriate for additional Settlement benefits for which the Authorized Claimant becomes eligible.

Once KCC begins receiving claims and requests for benefits in its role as Settlement Administrator, it will immediately begin to process and validate the claims and requests for benefits pursuant to the process and guidelines set forth below. KCC will process both inbound mailed and online claim and request for benefits submissions, validate the claim information, seek to resolve deficiencies with Claim Forms and Request for Benefits Forms (where applicable, as noted below), perform final claims validation, and send Rejection Notices.

A. <u>Inbound Claim Form Processing</u>: Number, batch, count, and conduct quality control review of Claim Forms and Request for Benefits Forms for data capture. Claims are considered to be timely filed if postmarked or received prior to the end of the Claims Period. ("Claims Period" means that period of time beginning as of the dissemination of notice to the Settlement Class in the Action and ending for each Settlement Class Member on the later of (i) 11:59 p.m. of the 60th day after the Final Approval Hearing in the Action; or (ii) 11:59 p.m. of the 60th day after the Settlement Class Member's Original Coil is replaced by installation of an uncoated copper tube Replacement Coil.). Request for Benefits Forms must be submitted within the time frames specified in Section IV.C.2 of the Settlement Agreement and in the Certificate for the Expanded Warranty and Reimbursement Program, substantially in the form

8

attached as Exhibit B-5. In any given case, the particular deadline for submitting a Request for Benefits Form will vary depending on the benefit(s) requested and the Authorized Claimant's circumstances.

B. <u>Online Claim Submission</u>: Receive and load information submitted by Settlement Class Members through the website. The website will include filing instructions for Settlement Class Members filing online.

C. <u>Data Capture of Hard Copy Claim Forms and Request for Benefits Forms</u>:

    1. Enter data from Claim Forms and Request for Benefits Forms;
    2. Key-verify data entered;
    3. Verify required fields and flag deficiencies; and
    4. Update database with claim information and initial claim status code.

D. <u>Data Integrity Review</u>: Perform quality control review of data capture, imaging process and loading of online claim and request for benefits data.

E. <u>Required Information</u>: To become an Authorized Claimant and request benefits for which the Settlement Class Member may be eligible as of that time, a Settlement Class Member will be required to complete and timely submit the Claim Form, which is attached as Exhibit B-1a. To request benefits under the Expanded Warranty and Reimbursement Program that the Authorized Claimant becomes eligible for after submission of the Claim Form, an Authorized Claimant will be required to complete and timely submit the Request for Benefits Form, which is attached as Exhibit B-1b.

F. <u>Confer with Parties' Counsel Regarding Technical Defects</u>: The Parties will have the right, upon agreement, to waive what they deem to be formal or technical defects in any Claim Form and any Request for Benefits Form submitted.

G. <u>Incomplete Information</u>: Mail requests for additional information to all claimants with curable claim deficiencies. Letters sent for deficiencies in Claim Forms will be substantially in the format shown in Exhibit B-3a. (Letters sent for deficiencies in Request for Benefits Forms will be substantially in the format shown in Exhibit B-3b.) Some claims may not be curable or may not contain enough information to send a letter for additional information (e.g. missing address information), in which case no such letter will be sent. To be deemed timely and accepted, a response from a Settlement Class Member must be submitted online or mailed and postmarked within 30 days of the date of the mailing of the original deficiency letter. A response in

9

compliance with this requirement will be considered timely regardless of whether it is received after the close of the Claims Period.

H. <u>Update Database:</u>  Update database as additional information is received from claimants.

I. <u>Problem Resolution</u>:  Resolve any remaining validation or eligibility issues (deceased claimants, divorced claimants, minor claimants, etc.).

J. <u>Final Validation Review</u>:  On a rolling basis, perform final validation review of claims and requests for benefits based on the required information for valid claims and requests for benefits referenced above and the conferences with the Parties' Counsel regarding formal or technical defects.

K. <u>Claim and Request for Benefits Rejection</u>:  Identify claimants that have failed to adequately meet the requirements for a valid claim or requests for benefits.  Mail Rejection Notice where the claimant has provided sufficient information to enable doing so (e.g. address).  Rejection Notices will include the procedure for a Settlement Class Member to challenge their rejection.  These notices for rejected claims will be substantially in the format shown in Exhibit B-2a.  (Notices for rejected requests for benefits will be substantially in the format shown in Exhibit B-2b.)  With respect to each batch of claims subject to final validation review, Rejection Notices will be mailed within 14 days after final validation.  KCC will work with the Parties to identify all possible reasons that a claim would be rejected.

L. <u>Reporting</u>:  Parties will receive regular reporting of claims (in a timeline to be agreed upon at a later date) by category of deficiency, reason for disqualification and valid claims.

M. <u>Review of Challenged Claims</u>:  As noted in the Settlement Agreement, the administrative determinations of the Settlement Administrator and Lennox accepting and rejecting claims will be presented for review in the Action in accordance with the following procedure:

    1. The Parties consent to the review and final adjudication of any challenged claim by the Court.

    2. During the First Phase of the claims process, the Settlement Administrator will advise in writing the Parties' Counsel as to their determinations accepting and rejecting claims and requests for benefits and, to the extent requested, will provide the Parties' Counsel with a list of rejected claims and requests for benefits.  During the Second Phase of the claims process, Lennox will advise

10

in writing the Parties' Counsel as to their determinations rejecting claims and requests for benefits and, to the extent requested, will provide the Parties' Counsel with a list of rejected claims and requests for benefits. The Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, will send Rejection Notices to claimants in a timely fashion and will provide notice of the claimant's right to review in the Action.

3. Only Defendant will have the right to challenge the Settlement Administrator's approval of a claim or request for benefits. To make such a challenge, Defendant must, within 20 days after receiving written notice of the Settlement Administrator's decision, provide the Settlement Administrator a statement of the Defendant's grounds for contesting the decision, along with any supporting documentation.

4. Claimant and Class Counsel will have the right to challenge the Settlement Administrator's denial of a claim or request for benefits during the First Phase of the claims process, and Lennox's denial of a claim or request for benefits during the Second Phase of the claims process.

5. Any claimant who is sent a Rejection Notice and who desires to challenge such rejection, must, within 30 days after the date of mailing of the Rejection Notice, serve upon the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, a statement of the claimant's grounds for contesting the rejection, along with any supporting documentation, and request review by the Court.

6. Once acceptance or rejection of a claim or request for benefits has been appropriately challenged as set forth immediately above, the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, will review its decision to determine if the dispute can be resolved. If a dispute concerning a claim cannot be otherwise resolved by the Settlement Administrator during the First Phase of the claims process, and Lennox during the Second Phase of the claims process, the Parties' Counsel will promptly present the issue to the Court.

7. All proceedings with respect to the administration, processing and determination of claims and requests for benefits, and all controversies relating thereto (including disputed questions of law and fact with respect to the validity of claims and requests for benefits), will be subject to the jurisdiction of the Court in the Action. Further, each claimant will be deemed to have submitted to the jurisdiction of the Court in the Action with respect to the claim or request for benefits submitted, and the claim or request for benefits will be subject to investigation and discovery under that Court's Rules, provided that such investigation and discovery will be limited to that

11

claimant's status as a Settlement Class Member, that claimant's status, in the case of a Request for Benefits Form, as an Authorized Claimant, and the validity of the claim or request for benefits.  No discovery will be allowed on the merits of the Action or Settlement in connection with the processing of the Claim Forms or Request for Benefits Forms.

8.  The Court's approval or rejection of the claims and requests for benefits will be deemed final and conclusive as to the Settlement Class Members.

## V.     Phase Five:  Final Reporting

Prior to the Final Approval Hearing, the Settlement Administrator will provide the Parties' Counsel with information and reporting necessary to obtain final approval of the Settlement.  Moreover, after final approval of the Settlement, the Settlement Administrator will continue to meet with the Parties' Counsel and provide information as necessary through 30 days after the close of the Claims Period.  The tasks include:

A.  Affidavits: Prepare and file all required affidavits, if any, with the Parties' counsel. Affidavits may include:

1.  Notification;
2.  Provision of benefits; and
3.  Final Report of Settlement Administrator.

B.  Reports:  Prepare weekly reports to the Parties' Counsel containing project statistics, updates regarding status of administrative procedures, and issues that require resolution from the Parties' Counsel.

C.  Meet/Conference Call:  Meet with the Parties' Counsel to review the status of the process, develop procedures, and resolve issues.

1.  Initial planning;
2.  Initial validation;
3.  Final validation;
4.  Pre-benefits provision; and
5.  Project wrap-up meeting.

12

**VI.**   **Phase Six:  Benefit Distribution**

At the time a claim is approved and the Settlement Class Member is qualified as an Authorized Claimant, the Settlement Administrator will complete and send to the Authorized Claimant a Certificate for the Expanded Warranty and Reimbursement Program, substantially in the form attached as Exhibit B-5.  The Settlement Administrator will fill out the section in the top portion of the first page of the Certificate from information provided in the Authorized Claimant's Submitted Claim Form.

The Settlement Administrator will provide the Parties' Counsel, upon request, with any information needed to allow them to provide benefits to Authorized Claimants, including a list of Authorized Claimants.

Lennox will provide all appropriate Settlement benefits to Authorized Claimants pursuant to the terms of the Settlement Agreement and as specified in the Certificate.

A.  Authorized Claimant List:  Provide Parties' Counsel with a file to include the list of information necessary for Defendant to provide the appropriate benefits to Authorized Claimants.  List to include the following data:

1.  Name;
2.  Address;
3.  Address of residence where Original Coil was installed;
4.  Model Number and Serial Number of Original Coil (or air handler or packaged unit containing coil);
5.  Model Number and Serial Number of most recent Replacement Coil (if purchased evaporator coil separately);
6.  Number of replacements
7.  Date on which the most recent uncoated copper tube Replacement Coil was installed;
8.  Benefit(s) Authorized Claimant is eligible to receive; and
9.  Other information deemed necessary for provision of benefits or as requested by the Defendant.

B.  Benefit Provision Schedule:  Lennox will provide the Settlement benefits, as applicable, to Authorized Claimants only after the Effective Date (i.e, when the Settlement becomes final in accordance with the Settlement Agreement) with one exception.  If an Authorized Claimant becomes eligible for a coated copper tube or aluminum tube Replacement Coil under the Expanded Warranty and Reimbursement

13

Program before approval of the Settlement has become final, and the Authorized Claimant notifies Lennox as specified in the Certificate, Lennox will provide such Replacement Coil at that time, even though approval of the Settlement has not become final.

14

# Exhibit B-1a



*Thomas v. Lennox Industries Inc.*
**Settlement Administrator**
P.O. Box #####
Providence, RI #####-####

# LXT

## «Barcode»

Claim #: LXT-«ClaimID»    «MailRec»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «ST»  «Zip»
«Country»

> **FILE YOUR CLAIM ONLINE AT**:
> **[Settlement URL]**
> **OR MAIL TO:**
> *Thomas v. Lennox Industries Inc.*
> **Settlement Administrator**
> **P.O. Box #####**
> **Providence, RI #####-####**

## CLAIM FORM INSTRUCTIONS

**Thomas v. Lennox Industries Inc.**
In the United States District Court for the Northern District of Illinois, Eastern Division
Case No. 1:13-cv-07747

Please read the full Notice (available at [Settlement URL]) carefully before filling out this Claim Form.

### I.    ARE YOU A SETTLEMENT CLASS MEMBER

For you to be eligible for benefits, you must be a member of the Settlement Class and file a valid Claim Form. You are a Settlement Class Member if:

You are a resident of the United States and purchased on or after October 29, 2007 through [Preliminary Approval Date] at least one new uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (separately, as part of an air handler, or as part of a packaged unit), covered by an Original Warranty ("Original Coil") for your personal, your family, or your household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.

You are not a Settlement Class Member, even if you meet the above criteria, if:

- You are the judge to whom this Action is assigned or any member of the judge's immediate family;
- You are one of the lawyers in this Action or a member of any of their immediate families;
- You are the First Mediator, the Honorable Richard Neville, or any member of his immediate family;
- You are the Second Mediator, the Honorable Edward Infante, or any member of his immediate family; or
- You are the government of, or a department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, or each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

### II.    GENERAL INSTRUCTIONS

Read all instructions below before filling out the Claim Form.

1. Type or print legibly all information in blue or black ink.
2. Answer all questions and provide all information and documents asked for on the Claim Form.
3. Sign and date the Claim Form under Part 4. **Your claim will not be processed if your Claim Form has not been signed and dated**.
4. Make a copy of your completed Claim Form for your records. Then either submit the form electronically at www.xxxxxxxx.com or sign the form and mail it to:

*Thomas v. Lennox Industries Inc.*
**Settlement Administrator**
P.O. Box #####
Providence, RI #####-####

5. You must complete a separate Claim Form for each Original Coil for which you are making a claim.
6. To be considered timely, your Claim Form must be submitted online or mailed and postmarked by the later of MM DD



YYYY or 60 days after your Original Coil is replaced by installation of a Replacement Coil. Failure to submit your claim by this deadline may result in the denial of your claim.

7.  No acknowledgement will be made as to the receipt of your claim, except as follows. You will receive a rejection letter if your claim is invalid; and you will receive a deficiency letter if your claim is deficient in ways that you can correct. If your claim is valid, you will be sent a Certificate (the "Certificate") for the Lennox Settlement Expanded Warranty and Reimbursement Program, which explains the terms and conditions of, and how you can receive the settlement benefits. If you want further confirmation that your claim was received, please send it via Certified Mail, return receipt requested.

8.  If you have questions about the Settlement, please visit the settlement website www.XXXXXXXXX.com, call toll free 1-___-___-____, send an email to _____@_____.com, or write to Thomas v. Lennox Industries Inc. Settlement Administrator, P.O. Box #####, Providence, RI #####-#### .

## III.    SETTLEMENT BENEFITS

All Settlement Class Members are eligible for coverage under an Expanded Warranty and Reimbursement Program. To receive any benefits the Settlement Class Member must be an Authorized Claimant, meaning you have submitted a timely and valid Claim Form. Each Authorized Claimant will receive a Certificate describing the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits.

For each Authorized Claimant who replaced or replaces an Original Coil because of a coil leak within five years after installation of the Original Coil, the Authorized Claimant will be eligible to receive the following benefits as applicable under the Expanded Warranty and Reimbursement Program

(1) $75 Service Rebate. If you replace or have previously replaced your Original Coil because of a Coil leak within five years after it was installed (the "First Replacement"), you are eligible for a one-time $75 Service Rebate for service, including routine maintenance, performed after the date the rebate is issued on the Replacement Coil (the evaporator coil that was installed to replace your Original Coil) or on any Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand HVAC products installed in the same residence as the Replacement Coil. Timely and valid submission of proof of replacement of your Original Coil is required before the Service Rebate Certificate will be issued. The Service Rebate will be available for one year from the date the Rebate Certificate is issued. To redeem the rebate once it has been issued, you must provide proof of service and the date the service was received within 60 days of the date the service was performed. On timely receipt of valid proof of service, Lennox will send the Claimant a check for $75.

   **AND**

(2) Replacement Coil Warranty.

   a.  If your First Replacement was/is an uncoated copper tube Replacement Coil, and was/is your only replacement, you will be eligible for a five-year part and labor warranty (the "Replacement Coil Warranty") covering the First Replacement Coil. If the First Replacement Coil is replaced within five years of being installed, after [Preliminary Approval Date] and pursuant to a claim made under the Replacement Coil Warranty, you will be eligible to receive a coated copper tube Replacement Coil or aluminum tube Replacement Coil (the "Second Replacement") at no charge for the Replacement Coil itself, and up to $550 for labor and refrigerant charges to install the Second Replacement Coil. You must notify Lennox as specified in the Certificate to arrange for provision of the coated copper or aluminum tube Replacement Coil. Reimbursement will be made only if you use an independent Lennox dealer listed at www.lennox.com and provide proof of the amount charged and the amount paid for labor and refrigerant related to the installation of the Second Replacement Coil. Proof must be submitted within 60 days of the installation of the coated copper or aluminum tube Replacement Coil.

   **OR**

   b.  If you had more than one replacement on or before [Preliminary Approval Date], each an uncoated copper tube Replacement Coil, you will be eligible for the Replacement Coil Warranty covering the most recent Replacement Coil. If the most recent Replacement Coil is replaced within five years of being installed, after [Preliminary Approval Date] and pursuant to a claim made under the Replacement Coil Warranty, you will be eligible to receive a coated copper tube Replacement Coil or aluminum tube Replacement Coil at no charge for the Replacement Coil itself, and up to $550 for labor and refrigerant charges to install the coated copper tube Replacement Coil or aluminum tube Replacement Coil. You must notify Lennox as specified in the Certificate to arrange for provision of the coated copper or aluminum tube Replacement Coil. Reimbursement will be made only if you use an independent Lennox dealer listed at www.lennox.com and provide proof of the amount charged and the amount paid for labor and refrigerant related to the installation of the coated copper or aluminum tube Replacement Coil. Proof must be submitted within 60 days of the installation of the coated copper or aluminum tube Replacement Coil.

   **AND**

(3) Reimbursement for Replacements after the First Replacement. If you had more than one replacement on or before [Preliminary Approval Date], for each uncoated copper tube Replacement Coil that is replaced, you will also be eligible to receive reimbursement for the costs of labor and refrigerant for the completed replacements that occurred after the First

Replacement and on or before [Preliminary Approval Date] up to $550 per replacement. To be reimbursed, you must provide proof of the amount charged and the amount paid for labor and refrigerant related to the installation of the subsequent Replacement Coils.

**AND**

(4) <u>Retroactive reimbursement for the First Replacement.</u>  If your First Replacement was made more than one year after installation of the Original Coil and was an uncoated copper tube Replacement Coil, and if that Replacement Coil is replaced, you will be eligible to receive reimbursement for the costs of labor and refrigerant for the First Replacement up to $550.  If the Replacement Coil is replaced after the Settlement becomes final, it must be made under the Replacement Coil Warranty to be eligible for the retroactive reimbursement.  To be reimbursed, you must provide proof of the amount charged and the amount paid for labor and refrigerant related to installation of the First Replacement Coil.

If you have replaced your Original Coil one or more times, you may be eligible for some or all of the benefits listed above.  Fill out all parts of the Claim Form.

If you have not replaced your Original Coil, you are not eligible to redeem and obtain benefits under the Expanded Warranty and Reimbursement Program at this time, but may be eligible to do so in the future.  Fill out only Parts 1, 2 and 4 of the Claim Form if submitting your Claim Form now.  Or, in the alternative, you can wait until you have replaced your Original Coil, then fill out all parts of the Claim Form, and submit the Claim Form by the later of MM DD YYYY or 60 days after your Original Coil is replaced by installation of a Replacement Coil.

To redeem and obtain certain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms with information and supporting documentation not included in the Claim Form.  To obtain a Request for Benefits Form, go to www.XXXXXXXXXXXXXXX.com or call XXX/XXX-XXXX.



| CLAIM FORM - PAGE 1 |
| --- |

«Barcode»

Claim #: LIT-«ClaimID»    «MailRec»

| PART 1:  CLAIMANT INFORMATION |
| --- |

Claimant Name: _____

Street Address: _____

City: _____ State: _____ Zip Code: ___ ___ ___ ___ ___

Daytime Phone Number:  (_____) _____ - _____

Evening Phone Number:  (_____) _____ - _____

Email: _____

Are you a U.S. resident? ☐ Yes ☐ No

| PART 2:  ORIGINAL COIL INFORMATION |
| --- |

(1) Date Original Coil was purchased:        ___ ___ / ___ ___ / ___ ___

(2) Date Original Coil was installed:        ___ ___ / ___ ___ / ___ ___

(3)  What brand is/was the Original Coil? ☐ Lennox  ☐ Aire-Flo  ☐ Armstrong Air  ☐ AirEase  ☐ Concord  ☐ Ducane ☐ Other (If Other, specify the brand: _____)

(4) Was the Original Coil installed in a residential dwelling in the United States for your personal, your family or your household purposes? ☐ Yes  ☐ No

(5) Provide address where Original Coil was installed if different from address provided in Part 1:

Street Address: _____

City: _____ State: _____ Zip Code: ___ ___ ___ ___ ___

(6) Model Number of Original Coil (or air handler or packaged unit containing coil): _____

(7) Serial Number of Original Coil (or air handler or packaged unit containing coil): _____

You must submit proof in the form of an invoice, receipt or other competent proof of: (a) the date the Original Coil was purchased; (b) the date the Original Coil was installed; and (c) what brand coil was purchased.



## CLAIM FORM  - PAGE 2

«Barcode»

Claim #: LIT-«ClaimID»    «MailRec»

## PART 3:  REPLACEMENT INFORMATION

**FILL OUT THIS PART 3 ONLY IF YOU HAVE REPLACED YOUR ORIGINAL COIL.**

(1) Did you replace the Original Coil under the Original Warranty because of a leak?  ☐ Yes  ☐ No

If yes, list the date the Replacement Coil was installed ("Replacement Date"): ___ ___ / ___ ___ / ___ ___

(2) If you answered yes to question (1), how long after the installation date indicated in Part 2 above was the replacement made?

☐ Less than or equal to one year
☐ More than one year but less than or equal to five years
☐ More than five years

(3) If you answered yes to question (1), did you replace the first Replacement Coil?  ☐ Yes  ☐ No

If yes, list the Replacement Date: ___ ___ / ___ ___ / ___ ___

(4) If you answered yes to question (3), did you replace the second Replacement Coil?  ☐ Yes  ☐ No

If yes, list the Replacement Date: ___ ___ / ___ ___ / ___ ___

(5) If you answered yes to question (4), for each additional Replacement Coil, list the Replacement Date:

_____

(6) Were one or more of the Replacement Coils described above an *aluminum* tube coil or a *coated copper* tube coil?  ☐ Yes  ☐ No  ☐ Don't Know

(7) If you answered yes to question (6), please state the Replacement Date for each Replacement Coil that was an aluminum tube coil or a coated copper tube coil:

_____

(8) If you purchased an evaporator coil separately, provide the model number and serial number of the most recent Replacement Coil:

Model Number of most recent Replacement Coil:  _____

Serial Number of most recent Replacement Coil:  _____

Exhibit B-1a: Page **5** of **6**



**CLAIM FORM - PAGE 3**

# «Barcode»

Claim #: LIT-«ClaimID»    «MailRec»

## PART 3:  REPLACEMENT INFORMATION CONTINUED

(9) If you purchased an evaporator coil as part of an air handler or as part of a packaged unit, provide the model number and serial number of the air handler or packaged unit containing the most recent Replacement Coil:

Model Number of air handler or packaged unit containing coil:  _____

Serial Number of air handler or packaged unit containing coil:  _____

For each Replacement Coil, you must submit: (a) proof of the date the Replacement Coil was installed; (b) proof of the amount charged for labor and refrigerant related to installation of the Replacement Coil by a valid itemized invoice or receipt (or other competent proof), and (c) proof of the amount paid for labor and refrigerant related to installation of the Replacement Coil by a cancelled check or credit card statement (or other competent proof).

## PART 4:  SIGNATURE

I declare under penalty of perjury under the laws of the United States that all information I provided in this Claim Form and, as applicable, in support of my claim is true to the best of my knowledge and belief and that, as applicable, all documents I submitted in support of my claim are valid and authentic.

Signature: _____  Date (mm/dd/yyyy):  ___ ___ / ___ ___ / ___ ___

Exhibit B-1a: Page **6** of **6**



# Exhibit B-2a

Thomas v. Lennox Industries Inc. Settlement Administrator
PO Box XXXX
City, ST XXXXX

# LXT-DEN

## «Barcode»

Claim #: LXT-**DEN**-«ClaimID»     «MailRec»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «ST»  «Zip»  «Country»

«MailDate»

**CLAIM FORM REJECTION NOTICE**

Re:     **Thomas v. Lennox Industries Inc.**

Dear «First1» «Last1»:

We have received your Claim Form in the Thomas v. Lennox Industries Inc. settlement.

After careful review of your claim, it has been denied for the following reason(s):

- REASON #1

- REASON #2

- REASON #3

- ETC.

Because your claim has been denied, you are not eligible to receive any benefits.

If you believe that you received this letter in error, you must provide a statement of your grounds for contesting the rejection of your claim along with any documentation to support your claim, and request a review of your claim by the Court within 30 days of the date on this letter.  Your submission should be mailed to the address at the top of this letter.

If you have questions regarding this letter, you may send an email to _____@_____.com.

Sincerely,

**Thomas v. Lennox Industries Inc. Settlement Administrator**

# Exhibit B-1b

## REQUEST FOR BENEFITS FORM

### IMPORTANT
**This Request for Benefits Form can be used <u>only if</u>:**
**(1)  You have completed and submitted a Claim Form that was not rejected;**
**(2)  You are an Authorized Claimant and received a Certificate for the Thomas v. Lennox Settlement Expanded Warranty and Reimbursement Program; and**
**(3)  You have replaced your Original Coil.**

This Request for Benefits Form may be used for any of the following purposes.  Check all that apply and fill out the applicable Parts of the Form as indicated.

☐ (1) Request issuance of $75 Service Rebate Certificate.  Fill out Parts 1, 2, 3, and 9.

☐ (2) Redeem $75 Service Rebate.  Fill out Parts 1, 2, 4, and 9.

☐ (3) Request installment of an aluminum or copper coated tube Replacement Coil under Replacement Coil Warranty.  Fill out Parts 1, 2, 5, and 9.

☐ (4) Request reimbursement for labor and refrigerant incurred in installing an aluminum tube or a copper coated tube Replacement Coil under Replacement Coil Warranty.  Fill out Parts 1, 2, 6, and 9.

☐ (5) Request reimbursement for labor and refrigerant incurred in replacing the Original Coil.  Fill out Parts 1, 2, and 7, and 9.

☐ (6) Request reimbursement for labor and refrigerant incurred in replacing coil with uncoated copper tube coil after replacement of the Original Coil and after submission of Claim Form.  Fill out Parts 1, 2, 8, and 9.

Read all instructions below before completing this form.

1.  Type or print legibly in blue or black ink.
2.  Sign and date Part 9.  **Your request will not be processed if your Request for Benefits Form has not been signed and dated.**
3.  Make and keep a copy of your completed form for your records.  Submit the form electronically at www.xxxxxxxx.com or sign and mail it to:

*Thomas v. Lennox Industries Inc.*
**Settlement Administrator**
P.O. Box #####
Providence, RI #####-####

4.  No acknowledgement will be made as to the receipt of your Requests for Benefits Form, except as follows.  You will receive a rejection letter if your request is invalid. You will receive a deficiency letter if your request is deficient in ways that you can correct.  If you want further confirmation that your request was received, please send it via Certified Mail, return receipt requested.
5.  If you have questions about the Settlement, please visit www.XXXXXXXXX.com, call toll free 1-___-___-____, or send an email to _____@_____.com.

## PART 1: CLAIMANT INFORMATION

**COMPLETE ENTIRE SECTION**.

Claimant Name: _____

Street Address: _____

City: _____ State: _____ Zip Code: ___ ___ ___ ___ ___

Daytime Phone Number:  (_____) _____ - _____

Evening Phone Number:  (_____) _____ - _____

In completing the remaining Parts of this Form, you only need to provide information and supporting documentation that (1) were not included in your Claim Form and (2) are necessary for the benefits you are now requesting.

## PART 2: REPLACEMENT INFORMATION

(1) Did you fill out Part 3 of your submitted Claim Form or Part 2 of a previously submitted Request for Benefits Form? ☐ Yes ☐ No

    If you answered yes to question (1), you do not need to complete this Part 2.

    If you answered no to question (1) and submitted your Claim Form *before* replacing your Original Coil, you must complete this Part 2 and provide the required supporting documentation.

(2) Did you replace the Original Coil under the Original Warranty because of a leak? ☐ Yes ☐ No.

    If yes, list the date the Replacement Coil was installed ("Replacement Date"): ___ ___ / ___ ___ / ___ ___

    If you answered No, **STOP**. Do not complete and submit this Form. You are not <u>yet</u> eligible for benefits.

(3) If you answered yes to question (2), how long after the installation date of your Original Coil (the date you provided in your submitted Claim Form) was the replacement made?

           ☐ Less than or equal to one year
           ☐ More than one year but less than or equal to five years
           ☐ More than five years

If you answered "More than five years," **STOP**. Do not complete and submit this Form. You are <u>not</u> eligible for benefits.

(4) If you answered yes to question (2), did you replace the first Replacement Coil? ☐ Yes ☐ No

    If yes, list the Replacement Date: ___ ___ / ___ ___ / ___ ___

(5) If you answered yes to question (4), did you replace the second Replacement Coil? ☐ Yes ☐ No

Exhibit B-1b: Page **2** of **5**

If yes, list the Replacement Date: ___ ___ / ___ ___ / ___ ___

(6) If you answered yes to question (5), for each additional Replacement Coil, list the Replacement Date:

_____

(7) Was one or more of the Replacement Coils described above an _aluminum_ tube coil or a _coated copper_ tube coil? ☐ Yes ☐ No ☐ Don't Know

(8) If you answered yes to question (7), please state the Replacement Date for each Replacement Coil that was an aluminum tube coil or a coated copper tube coil.

_____

(9) If you purchased an evaporator coil separately, provide the model number and serial number of the most recent Replacement Coil:

   Model Number of most recent Replacement Coil: _____

   Serial Number of most recent Replacement Coil: _____

(10) If you purchased an evaporator coil as part of an air handler or as part of a packaged unit, provide the model number and serial number of the air handler or packaged unit containing the most recent Replacement Coil:

   Model Number of air handler or packaged unit containing coil: _____

   Serial Number of air handler or packaged unit containing coil: _____

For each Replacement Coil, you must submit: (1) proof of the date the Replacement Coil was installed; (2) proof of the amount charged for labor and refrigerant related to installation of the Replacement Coil by a valid itemized invoice or receipt (or other competent proof); and (3) proof of the amount paid for labor and refrigerant related to installation of the Replacement Coil by a cancelled check or credit card statement (or other competent proof).

## PART 3:  ISSUSANCE OF THE $75 SERVICE REBATE CERTIFICATE

Are you requesting that Lennox issue the $75 Service Rebate Certificate?  ☐ Yes  ☐ No

If you answered yes, you must fill out Part 2 of this Request for Benefits Form and submit the supporting documentation required within 60 days of the date the Original Coil is replaced by installation of a Replacement Coil.  However, if you filled out Part 3 of your submitted Claim Form, you do not need to submit this Request for Benefits Form to request issuance of the $75 Service Rebate.

## PART 4:  REDEMPTION OF THE $75 SERVICE REBATE

(1) Are you requesting payment for service covered by the $75 service rebate?  ☐ Yes  ☐ No

(2) Name the independent Lennox dealer that performed the service: _____

If you answered yes to question (1), you must submit within 60 days of the date of the service this Request for Benefits Form along with proof of having received the service and the date the service was received by a valid

Exhibit B-1b: Page **3** of 5

itemized invoice or receipt (or other competent proof).

## PART 5: INSTALLATION OF AN ALUMINUM TUBE REPLACEMENT COIL OR A COATED COPPER TUBE REPLACEMENT COIL UNDER THE REPLACEMENT COIL WARRANTY

Are you requesting installation of an aluminum tube Replacement Coil or a coated copper tube Replacement Coil under the Replacement Coil Warranty? ☐ Yes ☐ No

If you answered yes, to arrange for that installation you must call Lennox at 1-XXX-XXX-XXXX. When you call, be prepared to provide the information requested in Part 2 of this Request for Benefits Form if this information was not previously submitted with your Claim Form or a prior Request for Benefits Form.

You also must fill out Part 2 of this Form and submit the supporting documentation required. If the information in Part 2 was previously submitted, you do not need to submit this Request for Benefits Form to request installation of an aluminum tube or coated copper tube Replacement Coil. Simply call Lennox at 1-XXX-XXX-XXXX.

## PART 6: REIMBURSEMENT OF LABOR AND REFRIGERANT COSTS INCURRED IN INSTALLING AN ALUMINUM TUBE REPLACEMENT COIL OR A COATED COPPER TUBE REPLACEMENT COIL UNDER THE REPLACEMENT COIL WARRANTY

(1) Are you requesting reimbursement of labor and refrigerant costs up to $550 incurred in installing an aluminum tube Replacement Coil or a coated copper tube Replacement Coil under the Replacement Coil Warranty? Yes ☐ No ☐

(2) Name the independent Lennox dealer that installed the aluminum tube or coated copper tube Replacement Coil: _____

If you answered yes to question (1), you must submit, within 60 days of the installation of the coated copper or aluminum tube Replacement Coil, this Request for Benefits Form along with: (1) proof of the date the aluminum tube Replacement Coil or coated copper tube Replacement Coil was installed; (2) proof of the amount charged for labor and refrigerant by a valid itemized invoice or receipt (or other competent proof); and (3) proof of the amount paid by a cancelled check or credit card statement (or other competent proof).

## PART 7: REIMBURSEMENT OF LABOR AND REFRIGERANT COSTS INCURRED IN REPLACING THE ORIGINAL COIL

(1) Are you requesting reimbursement of labor and refrigerant costs up to $550 incurred in replacing your Original Coil? Yes ☐ No ☐

(2) If you answered yes to question (1), have you replaced the first Replacement Coil? ☐ Yes ☐ No

If No, **STOP**. Do not complete this Part 7. You are not <u>yet</u> eligible for this benefit.

If YES, you must submit this Request for Benefits Form, by the later of (a) 60 days after the date the first Replacement Coil is replaced, or (b) 60 days after the date on the Certificate you received, along with: (1) proof of the date the *first Replacement Coil* was replaced; (2) proof of the amount charged for labor and refrigerant for the replacement of the *Original Coil* by a valid itemized invoice or receipt (or other competent proof); and (3) proof of the amount paid for the replacement of the *Original Coil* by a cancelled check or credit card statement (or other competent proof). If you have submitted some or all of this proof with your Claim Form or a previously submitted Request for Benefits Form, you do not need to resubmit it.

Exhibit B-1b: Page **4** of **5**

## PART 8: REIMBURSEMENT OF LABOR AND REFRIGERANT COSTS INCURRED IN REPLACING COIL WITH AN UNCOATED COPPER TUBE COIL AFTER REPLACEMENT OF THE ORIGINAL COIL AND AFTER SUBMISSION OF CLAIM FORM

(1) Are you requesting reimbursement of labor and refrigerant costs up to $550 incurred for a replacement with an uncoated copper tube coil that occurred after the first replacement?  Yes ☐  No ☐

(2) If you answered yes to question (1), did the replacement for which you seek reimbursement occur after you submitted your Claim Form?  ☐ Yes  ☐ No

If NO, **STOP**.  Do not complete this Part 8. The information and supporting documentation should have been submitted with your Claim Form and do not need to be resubmitted.

(3) If you answered yes to question (2), did the replacement for which you seek reimbursement occur before you received the Certificate indicating you are an Authorized Claimant?  Yes ☐  No ☐

If NO, **STOP**.  Do not complete this Part 8. You are <u>not</u> entitled to reimbursement for this replacement.

(4) If you answered yes to question (3), list the Replacement Date: ___ ___ / ___ ___ / ___ ___

(5) If you purchased an evaporator coil separately, provide the model number and serial number of the most recent Replacement Coil:

Model Number of most recent Replacement Coil:  _____

Serial Number of most recent Replacement Coil:  _____

(6) If you purchased an evaporator coil as part of an air handler or as part of a packaged unit, provide the model number and serial number of the air handler or packaged unit containing the most recent Replacement Coil:

Model Number of air handler or packaged unit containing coil:  _____

Serial Number of air handler or packaged unit containing coil:  _____

You must submit, within 60 days of the date on the Certificate you received, this Request for Benefits Form along with: (1) proof of the date the Replacement Coil was installed; (2) proof of the amount charged for labor and refrigerant related to installation of the Replacement Coil by a valid itemized invoice or receipt (or other competent proof); and (3) proof of the amount paid for labor and refrigerant related to installation of the Replacement Coil by a cancelled check or credit card statement (or other competent proof).

## PART 9:  SIGNATURE

I declare under penalty of perjury under the laws of the United States that all information I provided in this Request for Benefits Form and, as applicable, in support of my request for benefits is true to the best of my knowledge and belief and that, as applicable, all documents I submitted in support of my request for benefits are valid and authentic.

Signature: _____  Date (mm/dd/yyyy): ___ ___ / ___ ___ / ___ ___

# Exhibit B-2b

Thomas v. Lennox Industries Inc. Settlement Administrator
PO Box XXXX
City, ST XXXXX


# LXT-DEN


# «Barcode»

 Claim #: LXT-**DEN**-«ClaimID»     «MailRec»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «ST»  «Zip»  «Country»



«MailDate»

### REQUEST FOR BENEFITS REJECTION NOTICE

Re:     **Thomas v. Lennox Industries Inc.**

Dear «First1» «Last1»:

We have received your Request for Benefits Form in the Thomas v. Lennox Industries Inc. settlement.

After careful review of your request, it has been denied for the following reason(s):

- REASON #1
- REASON #2
- REASON #3
- ETC.

As a result, you are not eligible to receive [specify the benefit or benefits requested that are being denied].

If you believe that you received this letter in error, you must provide a statement of your grounds for contesting the rejection of your request for benefits along with any documentation to support your request for benefits and request a review of your request for benefits by the Court within 30 days of the date on this letter.  Your submission should be mailed to the address at the top of this letter.

If you have questions regarding this letter, you may send an email to _____@_____.com.

Sincerely,

**Thomas v. Lennox Industries Inc. Settlement Administrator**

# Exhibit B-3a

Thomas v. Lennox Industries Inc. Settlement Administrator
PO Box XXXX
City, ST XXXXX

# LXT-DEF

«Barcode»

Claim #: LXT-**DEF**-«ClaimID»    «MailRec»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «St»  «Zip»  «Country»

Address Changes (if any):

_____
Address

_____, _____ _____
City                                          State        Zip

**NOTICE OF DEFICIENT CLAIM FORM**

«MailDate»

Dear «First1» «Last1»:

**We have received your Claim Form in the Thomas v. Lennox Industries Inc. case.**

1.  Your Claim Form was missing required information. Processing has been delayed and is currently on hold until we receive the following information:

_____

_____

_____

2.  You must sign and date the certification below, and return this letter, along with the information requested, to the Settlement Administrator no later than **«DueDate»**.  Letters and the information they request may be submitted online at www.xxxxxxxx.com or mailed to the address on the top of this letter.  If you do not complete this letter, provide the requested information or submit it on time, your claim will be denied.

If you have questions regarding this letter, you may send an email to _____@_____.com.

I declare under penalty of perjury under the laws of the United States that all information I provided in this Notice of Deficient Claim Form and, as applicable, in support of my claim is true to the best of my knowledge and belief and that, as applicable, all documents I submitted in support of my claim are valid and authentic.

Signature: _____ Date (mm/dd/yyyy):  __ __ / __ __ / __ __ __ __

Sincerely,

**Thomas v. Lennox Industries Inc. Settlement Administrator**

# Exhibit B-3b

Thomas v. Lennox Industries Inc. Settlement Administrator
PO Box XXXX
City, ST XXXXX

# LXT-DEF

## «Barcode»

Claim #: LXT-**DEF**-«ClaimID»   «MailRec»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «St»  «Zip»  «Country»

Address Changes (if any):

_____

Address

_____, _____ _____

City                                        State          Zip

### NOTICE OF DEFICIENT REQUEST FOR BENEFITS FORM

«MailDate»

Dear «First1» «Last1»:

**We have received your Request for Benefits Form in the Thomas v. Lennox Industries Inc. case.**

1.  Your Request for Benefits Form was missing required information. Processing has been a delayed and is currently on hold until we receive the following information:

_____

_____

_____

2.  You must sign and date the certification below, and return this letter, along with the information requested, to the Settlement Administrator no later than **«DueDate»**.  Letters and the information they request may be submitted online at www.xxxxxxxx.com or mailed to the address on the top of this letter**.**  If you do not complete this letter, provide the requested information or submit it on time, your request for benefits will be denied.

If you have questions regarding this letter, you may send an email to _____@_____.com.

I declare under penalty of perjury under the laws of the United States that all information I provided in this Notice of Deficient Request for Benefits Form and, as applicable, in support of my request for benefits is true to the best of my knowledge and belief and that, as applicable, all documents I submitted in support of my request for benefits are valid and authentic.

Signature: _____ Date (mm/dd/yyyy): __ __ / __ __ / __ __ __ __

Sincerely,

**Thomas v. Lennox Industries Inc. Settlement Administrator**

Exhibit B-3b: Page **1** of **1**

# Exhibit B-4

Toll Free:
Test Line:
LXT– IVR Script_v01.doc

# Introduction

Thank you for calling the Thomas v. Lennox Industries Inc. information Helpline.  This Helpline is designed to provide you with information about this case.

A Settlement has been reached with Lennox Industries Inc. in a class action lawsuit about whether it manufactured and sold defective evaporator coils.  An evaporator coil is a part of an air conditioning system or a heat pump system in the cooling mode.  The evaporator coil is located inside your house and its primary function is to remove heat from the air in your house.

You may obtain more specific information by accessing the settlement website at www.xxxx.com.  That is w-w-w-dot-x-x-x-dot-c-o-m.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| Any | All Call Count | Go to Main Menu |
| None | All Call Count | Go to Main Menu |

# Main Menu

To hear General Information about the lawsuit, press 1.
To hear your Options as a Settlement Class Member, press 2.
To hear Important Dates and Deadlines related to the case, press 3.
To Request a Notice and Claim Form, press 4.
To Request a Request for Benefits Form, press 5.
For the Frequently Asked Questions Menu, press 6.

You can return to the Main Menu at any time by pressing the STAR key.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | General Information | Go to the General Information Menu |
| 2 | Class Member Options | Go to the Class Member Options Menu |
| 3 | Important Dates/Deadlines | Go to the Important Dates and Deadlines Menu |
| 4 | Notice & Claim Form Request | Go to Notice and Claim Form Request Menu |
| 5 | Request for Benefits Form Request | Go to Request for Benefits Form Request Menu |
| 6 | FAQ | Go to Frequently Asked Questions Menu |
| * | N/A | Replay Main Menu |
| None | N/A | Play 2x then go to No Response |
| Invalid | N/A | Go to Invalid Response |

# General Information Menu

You can return to the Main Menu at any time by pressing the <u>STAR</u> key.

A Settlement has been reached with Lennox Industries Inc. in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or a heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

You may be included in the Settlement Class if you are a United States resident who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty for your personal, your family, or your household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning packaged unit or heat pump packaged unit.

To return to the main menu, press the <u>STAR</u> key.
To end this call you may hang up.

| Key Press | Reporting Event | Action |
|---|---|---|
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# Class Member Options Menu

Class Members have the following options in this settlement:

- **You can submit a Claim Form**.  This is the only way you can get benefits from the Settlement.  If you submit a Claim Form, you will give up the right to sue Lennox in a separate lawsuit about the claims this Settlement resolves.
- **You can ask to be excluded**. If you decide to exclude yourself, you will keep the right to sue Lennox in a separate lawsuit about the claims this Settlement resolves, but you give up the right to get the benefits that this Settlement provides.  This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Lennox related to the legal claims in this case.
- **You can object to the settlement**. If you do not exclude yourself from the Settlement, you may object to it by writing to the Court with the reasons why you don't like it.
- **You can go to hearing**.  You may object to the Settlement and ask the Court for permission to speak at the fairness hearing about your objection.
- **You can do nothing**. If you are a Settlement Class Member, you are automatically part of the Settlement.  If you do nothing, you will not get the benefits that this Settlement provides and you will give up the right to sue, continue to sue, or be part of another lawsuit against Lennox about the legal claims in this case.

To return to the main menu press the <u>STAR</u> key.
To end this phone call you may hang up.

| Key Press | Reporting Event | Action |
|---|---|---|
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# <u>Important Dates and Deadlines Menu</u>

The following are the important dates and deadlines associated with this settlement.

If you want to file a claim, you must submit a valid and timely claim by the later of **MM DD, YYYY or 60 days after your Original Coil is replaced by installation of a Replacement Coil**.  For information on filing a claim, please listen to FAQ number 12.

If you wish to exclude yourself from the settlement, you must mail your request so that the postmark is no later than **MM DD, YYYY**.  For information on excluding yourself, please listen to FAQ number 16.

If you wish to object to the terms of the settlement, you must submit a written objection so that the postmark is no later than **MM DD, YYYY**.  For information on how to object, please listen to FAQ number 21.

The Court will hold a Final Approval Hearing at **XX:XX x.m. on MM DD, YYYY**. For more information on the Final Approval Hearing, please listen to FAQ number 23.

To return to the main menu, press the <u>STAR</u> key.
To end this phone call you may hang up.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# Notice and Claim Form Request – Record NC Last Name

To receive a copy of the Notice and Claim Form, please say your last name, followed by the spelling of your last name.  Please speak clearly and slowly. Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event Name | |
|---|---|---|
| | N/A | Key: None<br><br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded NC Last Name | Key: Recording Complete<br><br>Action: Go to NC First Name |
| | | 3 seconds of silence<br><br>End recording; Go to NC First Name |
| Count number of people who pressed STAR in this section. | Returned to Main Menu | Key *<br><br>Go to Main Menu |

# Notice and Claim Form Request – Record NC First Name

Please say your first name, followed by the spelling of your first name.  Please speak clearly and slowly. Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event First Name | |
|---|---|---|
| | N/A | Key: None<br><br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded NC Name | Key: Recording Complete<br><br>Action: Go to NC Address |
| | | 3 seconds of silence<br><br>End recording; Go to NC Address |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br><br>Go to Main Menu |

# Notice and Claim Form Request – Record NC Address

Please say your street address, followed by the spelling of your street name.  Please speak clearly and slowly.  Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event NC Address | |
|---|---|---|
| | N/A | Key: None<br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded NC Address | Key: Recording Complete<br>Action: Go to NC City |
| | | 3 seconds of silence<br>End recording; Go to NC City |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br>Go to Main Menu |

# Notice and Claim Form Request – Record NC City

Please say your city.  Please start when you hear the sound of the tone.  When you are finished, please press the POUND key or stay on the line.

| Reporting Event | Reporting Event NC City | |
|---|---|---|
| | N/A | Key: None<br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded NC City | Key: Recording Complete<br>Action: Go to NC State |
| | | 3 seconds of silence<br>End recording; Go to NC State |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br>Go to Main Menu |

# <u>Notice and Claim Form Request – Record NC State</u>

Please say your state.  Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event NC State | |
|---|---|---|
| | N/A | **Key: None**<br><br>**Action: Begin Recording** |
| Count number of audio files with noise in them | Recorded NC State | **Key: Recording Complete**<br><br>**Action: Go to NC Zip** |
| | | 3 seconds of silence<br>End recording; Go to NC Zip |
| Count number of people who pressed <u>STAR</u> in this section | Returned to Main Menu | Key *<br>Go to Main Menu |

# Notice and Claim Form Request – Record NC Zip

Please say your zip code.  Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event Name | |
|---|---|---|
| | N/A | **Key: None**<br><br>**Action: Begin Recording** |
| Count number of audio files with noise in them | Recorded NC ZIP | **Key: Recording Complete**<br><br>**Action: Go to NC Documents, Notice Request Thank You** |
| | | 3 seconds of silence<br><br>End recording; Go to NC Documents, Notice Request Thank You |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br><br>Go to Main Menu |
| Count number of people who had noise in NC Name, NC Address, NC City, NC State and NC Zip in audio files | Notice Request Complete | |
| Count number of people who had one or more audio file with no noise recorded | Notice Request Incomplete | |

# Notice and Claim Form Request – Thank You

Thank you.  If the address you provided is in the United States, the Notice and Claim Form will be mailed within two weeks. If you do not receive it within three weeks, please call back and provide your information again.

To return to the main menu, press the STAR key.
To end this phone call you may hang up.

| Key Press | Reporting Event | Action |
|---|---|---|
| | N/A | Go To Goodbye. |

# Request for Benefits Form Request – Record RB Last Name

To receive a copy of the Request for Benefits Form, please say your last name, followed by the spelling of your last name.  Please speak clearly and slowly. Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event Name | |
|---|---|---|
| | N/A | Key: None<br><br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded RB Last Name | Key: Recording Complete<br><br>Action: Go to RB First Name |
| | | 3 seconds of silence<br><br>End recording; Go to RB First Name |
| Count number of people who pressed STAR in this section. | Returned to Main Menu | Key *<br><br>Go to Main Menu |

# Request for Benefits Form Request – Record RB First Name

Please say your first name, followed by the spelling of your first name.  Please speak clearly and slowly. Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event First Name | |
|---|---|---|
| | N/A | Key: None<br><br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded RB Name | Key: Recording Complete<br><br>Action: Go to RB Address |
| | | 3 seconds of silence<br><br>End recording; Go to RB Address |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br><br>Go to Main Menu |

# Request for Benefits Form Request – Record RB Address

Please say your street address, followed by the spelling of your street name.  Please speak clearly and slowly.  Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event RB Address | |
|---|---|---|
| | N/A | Key: None<br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded RB Address | Key: Recording Complete<br>Action: Go to RB City |
| | | 3 seconds of silence<br>End recording; Go to RB City |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br>Go to Main Menu |

# Request for Benefits Form Request – Record RB City

Please say your city.  Please start when you hear the sound of the tone.  When you are finished, please press the POUND key or stay on the line.

| Reporting Event | Reporting Event RB City | |
|---|---|---|
| | N/A | Key: None<br>Action: Begin Recording |
| Count number of audio files with noise in them | Recorded RB City | Key: Recording Complete<br>Action: Go to RB State |
| | | 3 seconds of silence<br>End recording; Go to RB State |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key *<br>Go to Main Menu |

# <u>Request for Benefits Form Request – Record RB State</u>

Please say your state.  Please start when you hear the sound of the tone.  When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event RB State | |
|---|---|---|
| | N/A | **Key: None**<br><br>**Action: Begin Recording** |
| Count number of audio files with noise in them | Recorded RB State | **Key: Recording Complete**<br><br>**Action: Go to RB Zip** |
| | | 3 seconds of silence<br><br>End recording; Go to RB Zip |
| Count number of people who pressed <u>STAR</u> in this section | Returned to Main Menu | Key *<br><br>Go to Main Menu |

## Request for Benefits Form Request – Record RB Zip

Please say your zip code. Please start when you hear the sound of the tone. When you are finished, please press the pound key or stay on the line.

| Reporting Event | Reporting Event Name | |
|---|---|---|
| | N/A | **Key: None** <br><br> **Action: Begin Recording** |
| Count number of audio files with noise in them | Recorded RB ZIP | **Key: Recording Complete** <br><br> **Action: Go to RB Thank You** |
| | | 3 seconds of silence <br><br> End recording; Go to RB Thank You |
| Count number of people who pressed STAR in this section | Returned to Main Menu | Key * <br><br> Go to Main Menu |
| Count number of people who had noise in RB Name, RB Address, RB City, RB State and RB Zip in audio files | RB Request Complete | |
| Count number of people who had one or more audio file with no noise recorded | RB Request Incomplete | |

## Request for Benefits Form Request – Thank You

Thank you. If the address you provided is in the United States, the Request for Benefits Form will be mailed within two weeks. If you do not receive it within three weeks, please call back and provide your information again.

To return to the main menu, press the STAR key.
To end this phone call you may hang up.

| Key Press | Reporting Event | Action |
|---|---|---|
| | N/A | Go To Goodbye. |

# __FAQ Menu__

The following are some of the most frequently asked questions and answers about this case. You may return to the main menu at any time by pressing the <u>STAR</u> key.

To hear "Why was the Notice issued?" Press 1 and then the <u>POUND</u> key.

To hear "What is this lawsuit about?" Press 2 and then the <u>POUND</u> key.

To hear "What is a class action?" Press 3 and then the <u>POUND</u> key.

To hear "Why is there a Settlement?" Press 4 and then the <u>POUND</u> key.

To hear "How do I know whether I am part of the Settlement?" Press 5 and then the <u>POUND</u> key.

To hear, "How do I know if I am a Settlement Class Member?" Press 6 and then the <u>POUND</u> key.

To hear, "Are there exceptions to being included?" Press 7 and then the <u>POUND</u> key.

To hear, "What if I am still not sure whether I am part of the Settlement?" Press 8 and then the <u>POUND</u> key.

To hear, "What does the Settlement provide?" Press 9 and then the <u>POUND</u> key.

To hear, "Tell me more about the Replacement Coil Warranty." Press 10 and then the <u>POUND</u> key.

To hear, "Does the Settlement provide any other benefits?" Press 11 and then the <u>POUND</u> key.

To hear, "How do I get benefits?" Press 12 and then the <u>POUND</u> key.

To hear, "When would I get the Settlement benefits?" Press 13 and then the <u>POUND</u> key.

To hear, "What rights am I giving up to get benefits and stay in the Settlement Class?" Press 14 and then the <u>POUND</u> key.

To hear, "What are the Released Claims?" Press 15 and then the <u>POUND</u> key.

To hear, "How do I get out of the Settlement?" Press 16 and then the <u>POUND</u> key.

To hear, "If I exclude myself, can I still get benefits from this Settlement?" Press 17 and then the <u>POUND</u> key.

To hear, "If I do not exclude myself, can I sue Lennox for the same claims later?" Press 18 and then the <u>POUND</u> key.

To hear, "Do I have a lawyer in this case?" Press 19 and then the <u>POUND</u> key.

To hear, "How will the lawyers be paid?" Press 20 and then the <u>POUND</u> key.

To hear, "How do I tell the Court that I do not like the Settlement?" Press 21 and then the <u>POUND</u> key.

To hear, "What is the difference between objecting to the Settlement and asking to be excluded from it?" Press 22 and then the <u>POUND</u> key.

To hear, "When and where will the Court decide whether to approve the Settlement?" Press 23 and then the <u>POUND</u> key.

To hear, "Do I have to come to the hearing?" Press 24 and then the <u>POUND</u> key.

To hear, "May I speak at the hearing?" Press 25 and then the <u>POUND</u> key.

To hear, "What happens if I do nothing at all?" Press 26 and then the <u>POUND</u> key.

To hear, "How do I get more information?" Press 27 and then the <u>POUND</u> key.

To return to the main menu, press the <u>STAR</u> key.
To end this phone call you may hang up.

| Reporting Event | Reporting Event | Key and Action |
|---|---|---|
| Count Number of Callers who reached FAQ 1 | FAQ 1 | Key 1# (& 3 sec of silence)<br><br>Action: Go to FAQ 1 |
| Count Number of Callers who reached FAQ 2 | FAQ 2 | Key 2# (& 3 sec of silence)<br><br>Action: Go to FAQ 2 |
| Count Number of Callers who reached FAQ 3 | FAQ 3 | Key 3# (& 3 sec of silence)<br><br>Action: Go to FAQ 3 |
| Count Number of Callers who reached FAQ 4 | FAQ 4 | Key 4# (& 3 sec of silence)<br><br>Action: Go to FAQ 4 |
| Count Number of Callers who reached FAQ 5 | FAQ 5 | Key 5# (& 3 sec of silence)<br><br>Action: Go to FAQ 5 |
| Count Number of Callers who reached FAQ 6 | FAQ 6 | Key 6# (& 3 sec of silence)<br><br>Action: Go to FAQ 6 |
| Count Number of Callers who reached FAQ 7 | FAQ 7 | Key 7# (& 3 sec of silence)<br><br>Action: Go to FAQ 7 |
| Count Number of Callers who reached FAQ 8 | FAQ 8 | Key 8# (& 3 sec of silence)<br><br>Action: Go to FAQ 8 |
| Count Number of Callers who reached FAQ 9 | FAQ 9 | Key 9# (& 3 sec of silence)<br><br>Action: Go to FAQ 9 |
| Count Number of Callers who reached FAQ 10 | FAQ 10 | Key 10# (& 3 sec of silence)<br><br>Action: Go to FAQ 10 |
| Count Number of Callers who reached FAQ 11 | FAQ 11 | Key 11# (& 3 sec of silence)<br><br>Action: Go to FAQ 11 |
| Count Number of Callers who reached FAQ 12 | FAQ 12 | Key 12# (& 3 sec of silence)<br><br>Action: Go to FAQ 12 |
| Count Number of Callers who reached FAQ 13 | FAQ 13 | Key 13# (& 3 sec of silence)<br><br>Action: Go to FAQ 13 |
| Count Number of Callers who reached FAQ 14 | FAQ 14 | Key 14# (& 3 sec of silence)<br><br>Action: Go to FAQ 14 |
| Count Number of Callers who reached FAQ 15 | FAQ 15 | Key 15# (& 3 sec of silence)<br><br>Action: Go to FAQ 15 |
| Count Number of Callers who reached FAQ 16 | FAQ 16 | Key 16# (& 3 sec of silence)<br><br>Action: Go to FAQ 16 |
| Count Number of Callers who reached FAQ 17 | FAQ 17 | Key 17# (& 3 sec of silence)<br><br>Action: Go to FAQ 17 |

| | | |
|---|---|---|
| Count Number of Callers who reached FAQ 18 | FAQ 18 | Key 18# (& 3 sec of silence) Action: Go to FAQ 18 |
| Count Number of Callers who reached FAQ 19 | FAQ 19 | Key 19# (& 3 sec of silence) Action: Go to FAQ 19 |
| Count Number of Callers who reached FAQ 20 | FAQ 20 | Key 20# (& 3 sec of silence) Action: Go to FAQ 20 |
| Count Number of Callers who reached FAQ 21 | FAQ 21 | Key 21# (& 3 sec of silence) Action: Go to FAQ 21 |
| Count Number of Callers who reached FAQ 22 | FAQ 22 | Key 22# (& 3 sec of silence) Action: Go to FAQ 22 |
| Count Number of Callers who reached FAQ 23 | FAQ 23 | Key 23# (& 3 sec of silence) Action: Go to FAQ 23 |
| Count Number of Callers who reached FAQ 24 | FAQ 24 | Key 24# (& 3 sec of silence) Action: Go to FAQ 24 |
| Count Number of Callers who reached FAQ 25 | FAQ 25 | Key 25# (& 3 sec of silence) Action: Go to FAQ 25 |
| Count Number of Callers who reached FAQ 26 | FAQ 26 | Key 26# (& 3 sec of silence) Action: Go to FAQ 26 |
| Count Number of Callers who reached FAQ 27 | FAQ 27 | Key 27# (& 3 sec of silence) Action: Go to FAQ 27 |
| Count number of callers that returned to Main Menu in this Section | N/A | * Replay Main Menu |
| None | N/A | Play 2x then go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 1

**1. Why was the Notice issued?**

A federal Court authorized the Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. The Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, and who can get them.

To hear this question again, press 1.

For the next question, press the ZERO key.

For the Frequently Asked Questions Menu, press the POUND key.

For the main menu, press the STAR key.

To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 2

**2. What is this lawsuit about?**

The Plaintiffs claim that Lennox manufactures and sells air conditioning systems and heat pump systems, including air handlers and Packaged Units, ("Lennox ACs" or "ACs") containing defective evaporator coils that corrode and leak refrigerant. They claim that the evaporator coils, which are made using copper tubing, are susceptible to formicary corrosion (caused by a chemical reaction requiring certain volatile organic compounds, water, heat, and the copper tubes) that causes microscopic tunnels to form within the tubing and the coils to leak refrigerant. They further claim that Lennox: (1) knew or should have known about the defective evaporator coils; (2) should have informed its customers about the defective evaporator coils; (3) should have manufactured its ACs with evaporator coils made with coated copper or aluminum tubing; and (4) should have replaced the defective evaporator coils rather than the refrigerant in the unit when the coils leaked.

Lennox denies all of the claims and allegations made in the lawsuit and denies that it acted improperly.

To hear this question again, press 1.

For the next question, press the <u>ZERO</u> key.

For the Frequently Asked Questions Menu, press the <u>POUND</u> key.

For the main menu, press the <u>STAR</u> key.

To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 3

**3. What is a class action?**

In a class action, one or more people called Plaintiffs or Class Representatives sue on behalf of other people who have similar claims.  The people included in the class action are called a Class or Class Members.  One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 4

**4. Why is there a Settlement?**
The Court did not decide in favor of the Plaintiffs or Lennox.  Instead, both sides agreed to a Settlement.  This way, they avoid the cost and burden of further litigation and a trial and the people affected can get benefits.  The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|---|---|---|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 5

**5. How do I know whether I am part of the Settlement?**
The Settlement Class includes all United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil, covered by an Original Warranty, for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States

Original Coils may have been purchased separately, as part of an air handler, or they may have been included as part of a Packaged Unit.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 6

**6. How do I know if I am a Settlement Class Member?**
To confirm that you are a Settlement Class Member you may want to review the manufacturer's limited warranty or manufacturer's extended limited warranty that was provided by Lennox or Allied Air Enterprises LLC when you purchased the AC to confirm that the coil was covered by the Original Warranty. You may also want to look at your purchase or installation receipt to confirm that your AC was purchased between October 29, 2007 and [insert Preliminary Approval Date] and is one of the following brands: Lennox, Aire-Flo, Armstrong Air brand, AirEase, Concord, or Ducane.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 7

**7. Are there exceptions to being included?**
Yes.  The Settlement excludes: the judge assigned to this case and any member of her immediate family; the lawyers involved in this case and any members of their immediate families; the Honorable Richard Neville and any member of his immediate family, and the Honorable Edward Infante and any member of his immediate family; and the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 8

**8. What if I am still not sure whether I am part of the Settlement?**
If you are not sure whether you are included, go to www._____.com or write to
one of the lawyers listed in FAQ 21.


To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 9

**9. What does the Settlement provide?**

The Settlement provides an Expanded Warranty and Reimbursement Program to Settlement Class Members that submit a timely and valid Claim Form.  The Expanded Warranty and Reimbursement Program includes: a one-time $75 service rebate; an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement.

Expanded Warranty and Reimbursement Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

For more information please visit the settlement website at www._____.com.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# <u>FAQ 10</u>

**10. How do I know if I am eligible for Settlement benefits?**

All Settlement Class Members are eligible for coverage under an Expanded Warranty and Reimbursement Program. To receive any benefits the Settlement Class Member must be an Authorized Claimant, which means they have submitted a timely and valid Claim Form. The deadlines for submission of Claim Forms vary by circumstance. Each Authorized Claimant will receive a certificate describing the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 11

**11. Tell me more about the Replacement Coil Warranty.**
The Replacement Coil Warranty will be in effect for five years after the date of installation of the Replacement Coil covered by the Replacement Coil Warranty, or until you receive a coated copper or aluminum tube Replacement Coil, whichever occurs first. Although the five-year Replacement Coil Warranty may be retroactive to a previous installation date, in order to be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form and you must follow the instructions in the Certificate that will be sent to you. The Replacement Coil Warranty only applies to the covered Replacement Coil. It is not transferrable to other coils, other ACs, or heat pump systems. You are not eligible for the Replacement Coil Warranty if you receive a coated copper or aluminum tube Replacement Coil.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 12

**12. Does the Settlement provide any other benefits?**

Yes, Lennox has also agreed to prepare and disseminate information about the possible risk that formicary corrosion may occur in uncoated copper tube evaporator coils under certain conditions.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 13

**13. How do I get benefits?**

You must complete and submit a Claim Form by the later of Month __, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil to obtain coverage under the Expanded Warranty and Reimbursement Program and to request benefits for which you may be eligible as of the date you submit your Claim Form.  Follow all of the Claim Form instructions and include the required supporting documentation.  Once your Claim Form has been processed and approved, you will be sent a Certificate explaining the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits.  To redeem and obtain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms, as explained in the Certificate, with information and supporting documentation that were not already included in the Claim Form.  Claim Forms and Request for Benefits Forms are available by returning to the Main Menu and pressing the selection to request a Notice and Claim Form or Request for Benefits Form or by writing to Thomas v. Lennox Industries Inc. Settlement Administrator, PO Box _____, City, ST _____-____.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 14

**14. When would I get the Settlement benefits?**

The Court will hold a hearing at __:_0 _.m. on Month __, 2015 to decide whether to grant final approval of the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement benefits will be provided to Authorized Claimants as soon as possible, if and when approval of the Settlement becomes final.  There is one exception.  If you have become an Authorized Claimant by submitting a timely and valid Claim Form, and you become eligible for a coated copper tube or aluminum tube Replacement Coil under the Expanded Warranty and Reimbursement Program before approval of the Settlement has become final, and you notify Lennox as specified in the Certificate, Lennox will provide the Replacement Coil at that time, even though approval of the Settlement has not become final.

For more details please visit the settlement website at www._____.com.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|---|---|---|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 15

**15. I am an Authorized Claimant, how do I redeem and obtain Settlement benefits?**

To redeem and obtain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms, as explained in the Certificate, with information and supporting documentation that were not already included in the Claim Form.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 16

**16. What rights am I giving up to get benefits and stay in the Settlement Class?**
Unless you exclude yourself, you are staying in the Settlement Class.  If the Settlement is
approved and becomes final, all of the Court's orders will apply to you and legally bind you.  You
won't be able to sue, continue to sue, or be part of any other lawsuit against Lennox and related
parties about the legal issues in this case, but you will be able to submit a Claim Form to receive
benefits from this Settlement.  The specific rights you are giving up are called Released Claims.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 17

**17. What are the Released Claims?**

Generally, if and when the Settlement Agreement becomes final, Settlement Class Members will permanently release Lennox and all related people (such as retailers, distributors, and dealers) from all manner of claims (except personal injury claims) which are based upon, arise out of, or involve any matters relating to Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coils originally purchased during the Settlement Class period or any of the allegations in this lawsuit.

Definitions 41 and 42 of Section IV.B of the Settlement Agreement, available at www._____.com, describe the specific claims and parties you will be releasing, so read it carefully. If you have any questions you can talk to the law firms listed in FAQ 21 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# <u>FAQ 18</u>

**18. How do I get out of the Settlement?**
To be excluded from the Settlement Class, you must mail a written request for exclusion to the Settlement Administrator.  Your request for exclusion must include:  (1) your full name, current mailing address and current day and evening phone numbers; (2) the name of this case, Thomas v. Lennox Industries Inc., Case No. 1:13-CV-07747; (3) a statement such as "I request to be excluded from the Settlement Class in Thomas v. Lennox Industries Inc., Case No. 1:13-CV-07747 (N.D. Ill.); and (4) your signature.  Your request for exclusion must be mailed to the Settlement Administrator postmarked no later than MM DD, YYYY.  The Settlement Administrator's address is as follows: Thomas v. Lennox Industries Inc., Settlement Administrator P.O. Box _____, City, ST _____-_____.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 19

**19. If I exclude myself, can I still get benefits from this Settlement?**
No.  If you exclude yourself, you are telling the Court that you don't want to be part of the Settlement Class in this Settlement.  You can only get benefits if you stay in the Settlement Class and submit a timely and valid Claim Form.


To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 20

**20. If I do not exclude myself, can I sue Lennox for the same claims later?**
No.  Unless you exclude yourself, you are giving up the right to sue Lennox and other Released Parties for the claims that this Settlement resolves.  You must exclude yourself from this lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Lennox about the legal issues in this case.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 21

**21. Do I have a lawyer in this case?**
Yes. Judge Sara L. Ellis has appointed a number of lawyers to represent you and all other Settlement Class Members as "Class Counsel." They include the following lawyers: Jonathan Shub and Neil Glazer with Kohn Swift & Graf, P.C. Their address is One South Broad Street, Suite 2100, Philadelphia, Pennsylvania 19107. Jeff Leon with Quantum Legal Group, LLC. His address is 513 Central Avenue, Suite 300, Highland Park, Illinois 60035.

These lawyers and their firms are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 22

**22. How will the lawyers be paid?**

Class Counsel will ask the Court for up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each of the Class Representatives. If approved, all of these amounts, as well as the costs associated with administering the Settlement, will be paid separately by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

The application for an award of attorneys' fees and reimbursement of costs and expenses and for service awards will be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 no later than MM DD, YYYY. It will also be available at www._____.com.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 23

**23. How do I tell the Court that I do not like the Settlement?**
If you are a Settlement Class Member, you can object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via First Class U.S. Mail saying that you object to the Settlement of Thomas v. Lennox Industries Inc., Case No. 1:13-CV-07747 (N.D. Ill.). Your objection must also include: your full name; your current mailing address; your current day and evening telephone number; proof that you are a Settlement Class Member; the reasons why you object to the Settlement, including any documents you would like the Court to consider and any evidence you may present at the Final Approval Hearing; and your signature.

Mail your objection to the Clerk of the Court and the Settlement Administrator postmarked on or before MM DD, YYYY. The Clerk of the Court's address is as follows: Clerk of the United States District Court, Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

The Settlement Administrator's address is as follows: Thomas v. Lennox Industries Inc., Settlement Administrator P.O. Box _____, City, ST _____-_____.

If you object, you may be deposed by Class Counsel and Defense Counsel in the county of your residence.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 24

**24. What is the difference between objecting to the Settlement and asking to be excluded from it?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class and do not exclude yourself. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you cannot object because the Settlement no longer affects you.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 25

**25. When and where will the Court decide to approve the Settlement?**
The Court will hold a Final Approval Hearing at XX:XX x.m. on XXday, MM DD, YYYY at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  It will also consider whether to approve Class Counsel's application for an award of attorneys' fees, costs and expenses, as well as the Class Representatives' service awards.  If there are objections, the Court will consider them.  Judge Sara L. Ellis will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 26

**26. Do I have to come to the hearing?**
No.  Class Counsel will answer any questions Judge Sara L. Ellis may have.  However, you are welcome to come to the hearing at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but that is not necessary.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 27

**27. May I speak at the hearing?**
Yes.  You may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must file a written notice with the Court saying that it is your "Notice of Intent to Appear at the Final Approval Hearing in Thomas v. Lennox Industries Inc., Case No. 1:13-CV-07747 (N.D. Ill.)."  You must include your full name, current mailing address, current day and evening telephone number, and your signature.  If you plan to have your own attorney speak for you at the hearing, you must also include the name, address, and telephone number of the attorney who will appear.  Your written notice must be mailed to the Clerk of the Court and the Settlement Administrator postmarked on or before MM DD, YYYY.

The Clerk of the Court's address is as follows:  Clerk of the United States District Court, Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

The Settlement Administrator's address is as follows: Thomas v. Lennox Industries Inc., Settlement Administrator P.O. Box _____, City, ST _____-_____.

To hear this question again, press 1.
For the next question, press the ZERO key.
For the Frequently Asked Questions Menu, press the POUND key.
For the main menu, press the STAR key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 28

**28. What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lennox and the other Released Parties about the legal issues in this case. In addition, you will not receive any of the benefits that this Settlement provides if you do not file a valid Claim Form within the applicable time periods described above.

To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|-----------|-----------------|--------|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

# FAQ 29

**29. How do I get more information?**

Return to the Main Menu and press the selection to request the Notice and Claim Form.  This Notice summarizes the proposed Settlement.  Complete details are provided in the Settlement Agreement.  The Settlement Agreement and other related documents are available at www._____.com, by writing to the Settlement Administrator Thomas v. Lennox Industries Inc., Settlement Administrator P.O. Box ____, City, ST _____-____, or by sending an email to _____@_____.com.


To hear this question again, press 1.
For the next question, press the <u>ZERO</u> key.
For the Frequently Asked Questions Menu, press the <u>POUND</u> key.
For the main menu, press the <u>STAR</u> key.
To end this phone call, you may hang up at any time.

| Key Press | Reporting Event | Action |
|---|---|---|
| 1 | N/A | Repeat FAQ |
| Zero | N/A | Go to next FAQ |
| # | N/A | Go to FAQ Menu |
| * | N/A | Go to Main Menu |
| None | N/A | Go to No Response |
| Invalid | N/A | Go to Invalid Response |

| | | |
|---|---|---|
| **Invalid Response (max 2x)** | 99999 | I'm sorry, that was not a valid response. Please try again. |
| **No Response (max 2x)** | 99999 | I'm sorry, we did not receive a response in the time allowed. |
| **Goodbye (plays after 2 Invalid Responses or 2 No Response msgs)** | | Thank you for calling, Goodbye. |

# Exhibit B-5

## <u>CERTIFICATE FOR THE THOMAS v. LENNOX SETTLEMENT</u>
## <u>EXPANDED WARRANTY AND REIMBURSEMENT PROGRAM</u>

**IMPORTANT:** **Save this Certificate with other important papers related to your HVAC system, as you will need the information in this Certificate in order to obtain the benefits of the Thomas v. Lennox Settlement.**

Date the Certificate was issued (mm/dd/yyyy):_____

Authorized Claimant Name (the "Claimant"): _____

Address of residence where the Original Coil was installed:
Street: _____
City: _____ State: _____ Zip Code: _____

Unit Type for Original Coil: _____ [*Coil, Air Handler, or Packaged Unit*]
Model Number of Unit Type for Original Coil: _____
Serial Number of Unit Type for Original Coil: _____

(*above information to be completed by Lennox or Settlement Administrator from information in the Claimant's Claim Form before the Certificate is mailed to the Claimant*)

The named Claimant submitted a valid and timely Claim Form and is therefore authorized to receive benefits as part of the Settlement of the *Thomas v. Lennox Industries Inc*. lawsuit. This Certificate explains the terms and conditions of, and how the Claimant can receive the benefits. For more information about the Settlement and benefits, go to www.XXXXXXXXXXX.com, call 1-XXX-XXX-XXXX, or send an email to _____@_____.com. The Claimant is <u>not</u> required to be in physical possession of this Certificate to be entitled to receive any benefit to which Claimant is otherwise entitled pursuant to the terms of the Settlement.

## A. <u>$75 Service Rebate</u>

<u>Eligibility</u>. Claimant will be eligible to receive the Service Rebate if the Claimant has replaced or replaces the Original Coil:
- with a Replacement Coil;
- because of a Coil leak;
- under and in accordance with the Original Warranty; and
- within five years after installation of the Original Coil.

(1) If the Claimant replaced the Original Coil as of the time he or she submitted the Claim Form, the Claimant was required to submit with the Claim Form the information and documentation necessary for the Service Rebate Certificate to be issued. No further action by the Claimant is required for the Service Rebate Certificate to be issued.

(2) If the Claimant had not replaced the Original Coil as of the time he or she submitted the Claim Form, the Claimant must submit a Request for Benefits Form and supporting documentation **within 60 days of the date the Original Coil is replaced by installation of a Replacement Coil** to request that the Service Rebate Certificate be issued.

<u>Validity Term.</u>  The rebate is valid for *one year from the date the Service Rebate Certificate is issued.*  A Service Rebate Certificate will be mailed to Claimants on the date issued.  The Service Rebate Certificate will not be issued until the Settlement becomes final.

<u>Coverage.</u>  The Service Rebate applies to:
- service, including routine, preventive and other maintenance;
- performed by an independent Lennox dealer listed at www.lennox.com;
- after the date the rebate is issued; and
- on the Replacement Coil or on any Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand HVAC products installed in the same residence where the Replacement Coil was installed (which residence address is written above).

<u>How to Redeem the Rebate.</u>  To redeem the Service Rebate, the Claimant must submit a valid Request for Benefits Form and proof of having received the service and the date the service was received (*e.g.*, invoice or receipt) **within 60 days of the date of the service**.

<u>Payment.</u>  On timely receipt of a valid Request for Benefits Form and valid proof, Lennox will send the Claimant a check for $75.

## B.  Replacement Coil Warranty

<u>Eligibility.</u>  If the Claimant replaces or has replaced Claimant's Original Coil because of a Coil leak within five years after it was installed (the "First Replacement") with an uncoated copper tube Replacement Coil, Claimant is eligible for a five-year part and labor warranty (the "Replacement Coil Warranty") covering the First Replacement Coil.  If the Claimant had more than one replacement on or before [Preliminary Approval Date], each an uncoated copper tube Replacement Coil, the Replacement Coil Warranty covers the most recent Replacement Coil.

Until a Settlement Class Member becomes an Authorized Claimant, Settlement Class Members who have one or more Replacement Coils replaced during the period beginning the day after [Preliminary Approval Date] and ending on the date the Settlement becomes final will be treated as a Settlement Class Member with multiple Coil replacements on or before [Preliminary Approval Date].

<u>Effective Term.</u>  The Replacement Coil Warranty is in effect until the earlier to occur of (a) the date that is five years after the date the covered Replacement Coil was installed or (b) the date the Claimant receives a coated copper tube or aluminum tube Replacement Coil.

<u>Coverage.</u>  If the covered Replacement Coil leaks and requires replacement within the five-year period of the Replacement Coil Warranty, the Claimant is eligible to receive:
- a coated copper tube or aluminum tube Replacement Coil (as determined by Lennox); and
- reimbursement of up to $550 for the costs of labor and refrigerant to install the coated copper tube or aluminum tube Replacement Coil.

<u>How to Obtain the Warranty Coverage.</u>
(1) To receive an aluminum tube or coated copper tube Replacement Coil, the Claimant must arrange for installation by calling Lennox at 1-XXX-XXX-XXXX.  Installation must be

Page **2** of **4**

performed by an independent Lennox dealer listed at www.lennox.com. If the Claimant has not previously provided Replacement Coil information and supporting documentation by completing Part 3 of the Claim Form or Part 2 of a Request for Benefits Form, the Claimant must submit a valid Request for Benefits Form containing this information and documentation. For this reason, it is recommended that Replacement Coil information and supporting documentation be submitted as soon as it is available. Waiting to submit this information and documentation until the Claimant is ready to request an aluminum tube or coated copper tube Replacement Coil will delay receipt and installation of the Replacement Coil.

(2) To receive reimbursement, the Claimant must submit a valid Request for Benefits Form and proof of the amount charged and paid for labor and refrigerant to install the aluminum tube or coated copper tube Replacement Coil **within 60 days of the date the Replacement Coil is installed**.

Payment. On timely receipt of a valid Request for Benefits Form and valid proof, Lennox will send the Claimant a check for the amount paid up to $550. The check will not be sent until the Settlement becomes final.

## C. Reimbursement of Labor and Refrigerant Costs Incurred in Replacing the Original Coil

Coverage. If the Claimant has replaced or replaces an Original Coil for the first time more than one year but equal to or less than five years after the date of installation and received an uncoated copper tube Replacement Coil, and that Replacement Coil is replaced, the Claimant will be eligible to be reimbursed up to $550 for the costs of labor and refrigerant for the replacement of the Original Coil. If the Replacement Coil is replaced after the Settlement becomes final, it must be made under the Replacement Coil Warranty to be eligible for the retroactive reimbursement.

How to obtain reimbursement. To receive reimbursement, the Claimant must submit (a) proof of the date the *First Replacement Coil* was replaced; and (b) proof of the amount charged and paid for labor and refrigerant for replacement of the *Original Coil*.

(1) If the Claimant replaced both the Original Coil and the First Replacement Coil as of the time he or she submitted the Claim Form, the Claimant was required to submit with the Claim Form the information and documentation necessary for reimbursement. No further action by the Claimant is required to request reimbursement.

(2) If the Claimant had not replaced the Original Coil or the First Replacement Coil as of the time he or she submitted the Claim Form, the Claimant must submit a Request for Benefits Form and supporting documentation **by the later of (i) 60 days after the date the First Replacement Coil is replaced, or (ii) 60 days after the date on this Certificate**. If the Claimant submitted some of the required proof with his or her Claim Form or a previously submitted Request for Benefits Form, the Claimant does not need to resubmit information and documentation already submitted.

Payment. On timely receipt of valid proof and, if necessary, a valid Request for Benefits Form, Lennox will send the Claimant a check for the amount paid up to $550. Checks will not be sent until the Settlement becomes final.

Page **3** of **4**

**D. Reimbursement of Labor and Refrigerant Costs Incurred in Installing Uncoated Copper Replacement Coils After Replacement of the Original Coil**

Coverage.  If the Claimant has replaced a Replacement Coil with an uncoated copper tube Replacement Coil once or more than once, the Claimant is eligible to receive reimbursement for the costs of labor and refrigerant to replace the Replacement Coil or Replacement Coils for the completed replacements that occurred after installation of the First Replacement Coil and on or before [Preliminary Approval Date] up to $550 per replacement.

Until a Settlement Class Member becomes an Authorized Claimant, Settlement Class Members who have one or more Replacement Coils replaced during the period beginning the day after [Preliminary Approval Date] and ending on the date the Settlement becomes final will be treated as a Settlement Class Member with multiple Coil replacements on or before [Preliminary Approval Date].

How to obtain reimbursement.  Replacement Coil information and proof of the amount charged and paid for labor and refrigerant must be timely submitted for each replacement for which reimbursement is sought.

(1) For any replacements made as of the time the Claimant submitted the Claim Form, the Claimant was required to submit with the Claim Form the information and proof necessary for the reimbursement.  No further action by the Claimant is required to request reimbursement.

(2) For any replacements made after the time the Claimant submitted the Claim Form and before the date on this Certificate, the Claimant must submit a Request for Benefits Form and proof **within 60 days of the date on this Certificate** to request reimbursement.

Payment.  For each qualifying coil replacement, on timely receipt of valid proof of the amount charged and paid for labor and refrigerant and, if necessary, a valid Request for Benefits Form, Lennox will send the Claimant a check for the amount paid up to $550.  Checks will not be sent until the Settlement becomes final.

**E. Request for Benefits Forms**

To obtain a Request for Benefits Form, go to www.XXXXXXXXXXXXXXX.com or call XXX/XXX-XXXX.

Completed Request for Benefits Forms and requisite proof may be submitted online at www.XXXXXXXXXXXXXXX.com or by mailing them to _____, _____,_____ _____, _____, _____.

# Exhibit B-6

## <u>THOMAS v. LENNOX SETTLEMENT $75 SERVICE REBATE</u>

Date the Service Rebate was issued (mm/dd/yyyy):_____

Claimant Name: _____

Address of residence where the Replacement Coil was installed:
Street: _____
City: _____  State: _____  Zip Code: _____

*(above information to be completed by Lennox or Settlement Administrator before rebate is mailed to claimant)*

<u>Validity Term</u>.  This Service Rebate is valid for <u>one year from the date issued</u> (as written above).

<u>Coverage</u>:  This Service Rebate applies to:
- service, including routine, preventive and other maintenance;
- performed by an independent Lennox dealer listed at www.lennox.com;
- after the date the rebate was issued; and
- on the Replacement Coil or any Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand HVAC products installed in the same residence where the Replacement Coil was installed (at the address written above).

<u>How to Redeem the Rebate</u>.  To redeem the Service Rebate, the Claimant must submit a valid Request for Benefits Form and proof of having received the service and the date the service was received (*e.g*., invoice or receipt) **within 60 days of the date of the service**.

To obtain a Request for Benefits Form, go to www.XXXXXXXXXXXXXXX.com or call XXX/XXX-XXXX.

Completed Request for Benefits Forms and required proof may be submitted online at www.XXXXXXXXXXXXXXX.com or by mailing them to _____, _____,_____ _____, _____, _____.

<u>Payment.</u>  On timely receipt of a valid Request for Benefits Form and valid proof, Lennox will send the Claimant a check for $75.

**Exhibit C**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ROBERT THOMAS, ET AL. V. LENNOX
INDUSTRIES INC.

Case Number: 13-CV-7747
Honorable Sarah L. Ellis
United States District Judge

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT, PROVISIONALLY CERTIFYING THE**
**PROPOSED SETTLEMENT CLASS AND AUTHORIZING THE DISSEMINATION OF**
**NOTICE**

This matter is before the Court on the Plaintiffs' motion (Dkt. No. ____) for an order (the "Preliminary Approval Order") to (i) preliminarily approve the Settlement of this Action, in accordance with the Stipulation and Agreement of Settlement dated as of June XX, 2015 (collectively, including the Exhibits, the "Settlement Agreement"), which is attached to, and made a part of this Preliminary Approval Order; (ii) provisionally certify the proposed Settlement Class; (iii) appoint Settlement Class Counsel and Class Representatives; (iv) authorize dissemination of notice; and (v) set a schedule for determination of whether the proposed Settlement should be finally approved, resulting in the dismissal with prejudice of this Action. Having reviewed the motion, the Settlement Agreement, and all papers submitted in support therewith, as well as all of the pleadings and the record in this Action, the Court hereby ORDERS, ADJUDGES and DECREES as follows:

1.      The definitions in the Settlement Agreement are hereby incorporated as if fully set forth in this Order, and unless otherwise specified herein capitalized terms shall have the meanings attributed to them in the Settlement Agreement.

2.      **Preliminary Findings on the Potential for Final Approval of the Proposed Settlement:** The Court finds that the terms of the Settlement Agreement between

Defendant Lennox Industries Inc. ("Lennox" or "Defendant") and Plaintiffs should be preliminarily approved, subject to final determination by the Court following notice to the proposed Settlement Class, consideration of additional submissions of the Parties and of members of the Settlement Class, and a Final Approval Hearing, as provided for below. The Court preliminarily finds that the proposed Settlement: (a) falls within the range of possible approval and thus has potential for final approval as being fair, adequate and reasonable; (b) is the product of arm's-length non-collusive negotiations; (c) has no obvious deficiencies; and (d) does not improperly grant preferential treatment to Class Representatives. Therefore, notice of the proposed Settlement should be disseminated in accordance with the provisions of this Order.

3. **Preliminary Class Certification:** For purposes of this proposed Settlement only, and pending final approval of the Settlement Agreement after a Final Approval Hearing, the Court preliminarily finds that the prerequisites for a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure have been met, and therefore the Court provisionally certifies a Settlement Class consisting of:

> All Persons who are residents of the United States and who purchased on or after October 29, 2007 through _____, 2015 [the Preliminary Approval Date] at least one uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (whether purchased separately, as part of an air handler, or as part of a packaged unit), for their personal, their family, or their household purposes, that was purchased new, covered by an Original Warranty when purchased, and installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.

Excluded from the Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; (2) the lawyers in this Action and any members of

their immediate families; (3) the First Mediator and the Second Mediator and any members of their immediate families; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality, and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

4.     **Preliminary Class Findings:**  The Court preliminarily finds that, solely for purposes of the proposed settlement, certification of the proposed Settlement Class is warranted because: (a) the members of the proposed Settlement Class are so numerous that joinder is impracticable; (b) there are questions of law and fact common to the proposed Settlement Class; (c) Plaintiffs' claims present issues that are typical of the proposed Settlement Class; and (d) the Plaintiffs and Class Counsel (as defined below) will fairly and adequately represent and protect the interests of the proposed Settlement Class.  The Court further preliminarily finds that for purposes of this proposed Settlement issues of law and fact common to the proposed Settlement Class predominate over issues affecting only individual members of the proposed Settlement Class and that settlement of this action is superior to other means available for fairly and efficiently adjudicating the controversy.  The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues in this Action.

5.     **Class Counsel and Class Representatives:**  For purposes of these settlement approval proceedings, the Court finds that proposed Class Counsel are competent and capable of exercising their responsibilities, and that proposed Class Counsel and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class.  The Court appoints the law firms of Kohn, Swift & Graf, P.C., Quantum Legal Group, and Seeger

3

Weiss LLP as Class Counsel for the proposed Settlement Class.  Plaintiffs Robert Thomas, Scott

Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis are appointed

as the Class Representatives for the proposed Settlement Class.

6.       **Notice:**  The Court appoints Kurtzman Carson Consultants, LLC as the

Notice Expert for the Settlement Class, who will administer the Notice Plan in

accordance with the Settlement Agreement.  The Court approves the form and content of

the Long-Form Notice, Summary Notice, Postcard Notice, Dealer Notice, and Internet

Banners (the "Notices") attached as Exhibits A-1, A-2, A-3, A-4 and A-5 respectively to the

Settlement Agreement.  The Court finds that the Notice Plan, included in the Settlement Agreement

and the Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan and Notice Documents,

constitutes the best practicable notice under the circumstances as well as valid, due and sufficient

notice to all persons entitled thereto, and that the Notice Plan complies fully with the requirements

of Federal Rule of Civil Procedure 23 and provides Settlement Class Members due process under

the United States Constitution.  The Court further gives its approval to the procedures for mailing,

publication and dissemination of the Notices and related Settlement information as set forth in

the Notice Plan, which shall include the following, without limitation:

a.       Within 50 days following entry of this Preliminary Approval Order or as

soon thereafter as practicable, the Notice Expert shall cause the Postcard

Notice, substantially in the form of Exhibit A-3 to the Settlement

Agreement, to be mailed by U.S. first class mail, postage prepaid to

Settlement Class members who have been identified in Lennox's warranty

database and other records.

b.       On or before the first date the Postcard Notice is mailed to Settlement

4

Class Members, the Notice Expert shall establish a toll-free telephone number for automated telephone support, by means of which Settlement Class Members may (i) obtain general information about the Settlement, (ii) request copies of the Notice or other Settlement Documents, as well as Claim Forms and other documents that are part of the claims process, and (iii) listen to responses to frequently asked questions.

c.  Within 50 days following entry of this Preliminary Approval Order or as soon thereafter as practicable, the Notice Expert shall cause the Summary Notice, substantially in the form of Exhibit A-2 to the Settlement Agreement, to be published in consumer magazines as detailed in the Notice Plan.

d.  On or before the first date the Postcard Notice is mailed to Settlement Class Members, the Notice Expert shall establish and publish a Settlement Website at a readily accessible internet address, as described in the Notice Plan. The Summary Notice, Long-Form Notice, Settlement Agreement, Complaint, Answer, Claim Form, Request for Benefits Form, this Order, and other documents as agreed between the Parties, shall be readily accessible and downloadable through navigable and well-labeled links. The Settlement Website shall provide means by which Settlement Class Members who do not choose to exclude themselves from the Settlement Class may electronically complete and submit Claim Forms and Request for Benefits Forms, including the functionality necessary to upload any supporting documents required to submit such forms and instructions on

5

where, in the alternative, a Settlement Class Member may mail such forms and supporting documents. The Settlement Website shall provide a mailing address and email address to which Settlement Class Members may direct questions concerning the Settlement, the Notice, the Claims process or any other pertinent issue, and it shall also feature the toll-free telephone number for the automated telephone support. The Notice Expert shall identify the web address of the Settlement Website in all Notices that the Notice Expert shall cause to be mailed, provided, published or otherwise disseminated pursuant to this Order. The Settlement Website shall list important dates, including the scheduled date and time of the Final Approval Hearing.

e.      Within 50 days following entry of this Preliminary Approval Order or as soon thereafter as practicable, the Notice Expert shall cause internet banners, substantially in the form of Exhibit A-5 to the Settlement Agreement, containing an embedded link to the Settlement Website, to be posted over approximately a one-month period, as further described in the Notice Plan.

f.      No later than 10 business days after the Notice Expert publishes the Settlement Website, Lennox shall publish to the residential products section of its website information concerning the Settlement, including a live link to the Settlement Website. Nothing in this Order shall be construed to require Lennox to publish on its website the Disclosure set forth in Exhibit E to the Settlement Agreement until the Effective Date. If

6

Lennox maintains separate websites for each of the brands that are the subject of the Settlement, the provisions in this Paragraph 6.f of this Preliminary Approval Order shall apply to each such website.

g.      Within 50 days following entry of this Preliminary Approval Order or as soon thereafter as practicable, Lennox shall transmit to independent Lennox dealers then listed at www.lennox.com information concerning the Settlement Agreement, substantially in the form of Exhibit A-4 to the Settlement Agreement.  Nothing in this Order may be construed as imposing upon Lennox dealers any obligation to participate or assist in the Notice Plan, and no Lennox dealer's assistance or participation in the Notice Plan will alleviate Lennox, Class Counsel or any Class Representative of any other obligation concerning the Notice Plan, which remains solely the responsibility of Lennox, Class Counsel and the Class Representatives.  No Settlement Class Member may assert a claim under law or equity against any Lennox dealer solely on the basis that such dealer provided, or failed to provide, any information or documents relating to the Settlement.

h.      At least seven days before the date fixed by this Court for the Final Approval Hearing, Class Counsel shall cause to be filed with the Clerk of this Court an affidavit or declaration of the Notice Expert, showing that mailing and publication and all other required elements of the Notice Plan were made in accordance with this Order.

i.      At least seven days before the date fixed by this Court for the Final

7

Approval Hearing, Counsel for Lennox shall file with the Clerk of this Court an affidavit or declaration of an applicable Lennox representative, showing that those elements of the Notice Plan that are Lennox's responsibility, specifically as set forth in Paragraphs 6.f. and 6.g of this Preliminary Approval Order, were made in accordance with this Order.

    j.    Lennox shall pay the reasonable and necessary costs and expenses for administration and implementation of the Notice Plan mandated by this Order. Payment of such costs and expenses shall not be contingent upon any further action of the Court, including without limitation any decision on a Motion for Final Approval of the Settlement.

7.    **Claims Administration:** The Court appoints Kurtzman Carson Consultants, LLC as the Settlement Administrator, who will administer the Claims Administration Plan in accordance with the Settlement Agreement. In accordance with the Settlement Agreement and the Claims Administration Plan, the First Phase of the claims process will be administered by the Settlement Administrator and the Second Phase of the claims process will be administered by Lennox. The Court preliminarily finds that the proposed Claims Administration Plan, substantially in the form of Exhibit B to the Settlement Agreement, fairly and adequately addresses the matters of settlement administration, claims submission and provision of the Class Settlement Consideration to Authorized Claimants.

8.    **Final Approval Hearing:** The Court will hold a Final Approval Hearing on _____, 201_ at __:00 __.m. at the Everett McKinley Dirksen Building, 14th Floor, 219 South Dearborn Street, Chicago, IL 60604, to determine whether the Settlement on the terms and

8

conditions provided for in the Settlement Agreement is fair, reasonable and adequate to the

Settlement Class and should be finally approved and whether the Final Judgment and Order of

Dismissal, substantially in the form of Exhibit D to the Settlement Agreement, should be entered.

At the Final Approval Hearing the Court will also consider the motion of Class Counsel for an

award of attorneys' fees, reimbursement of expenses, and service awards to the Class

Representatives.  Any Settlement Class Member who follows the procedures set forth in this

Order and the Notices may appear and be heard at this Final Approval Hearing.  The date and

time of the Final Approval Hearing shall be set forth in the Notices.  The Final Approval Hearing

may be continued without further notice to the proposed Settlement Class, except that Class

Counsel shall cause any newly established date and time for the Final Approval Hearing to be

announced on the Settlement Website within five business days of entry of an order setting such

new date and time.

        9.      **Requests for Exclusion From the Proposed Class:**  All requests for exclusion

from the proposed Settlement Class, as more fully explained in the Notices, shall be mailed to the

Settlement Administrator, postmarked no later than _____, 2015 [35 days prior to the Final

Approval Hearing date], and shall otherwise comply with the requirements set forth in the

Notices.  Persons requesting to be excluded from the Settlement Class shall not file their requests

for exclusion with the Clerk of the Court.  Within 14 days after the Court-ordered deadline for

timely and properly opting out from the Settlement Class, but in no event later than seven

calendar days before the Settlement Approval Hearing, the Settlement Administrator shall

provide to the Court and Parties' Counsel the names and addresses of the Persons who timely

and properly opted out of the Settlement Class, as well as the total number of such Persons.  The

Court will exclude from the Settlement Class those who timely and validly request exclusion in

substantial compliance with the requirements of this Preliminary Approval Order, the Notices, and the Claims Administration Plan. If a timely and valid request for exclusion is made by a Settlement Class Member, then that Settlement Class Member will not be entitled to participate in the Settlement and cannot object to the Settlement. In the event the Settlement is finally approved, all Settlement Class Members (whether or not the Settlement Class Member submits a valid Claim Form) who have not validly excluded themselves from the Settlement Class shall be bound by all determinations and judgments concerning the Settlement Agreement and the Settlement contemplated thereby.

10.     **Objections to the Proposed Settlement or the Motion for Award of Attorneys' Fees, Expenses and Service Awards:** Any Settlement Class Member who wishes to object to the terms of the Settlement Agreement or to Class Counsel's request for an award of attorneys' fees, expenses, and service awards, must do so in writing. Objections shall be mailed to the Clerk of this Court and the Settlement Administrator, postmarked no later than _____, 2015 [35 days prior to the Final Approval Hearing date], and shall otherwise comply with the requirements set forth in the Notices. If the objector wishes to appear at the Final Approval Hearing either in person or through counsel, the objector must give notice of intent to appear in writing in addition to or simultaneously with their written objection. Notice of intent to appear at the Final Approval Hearing shall be mailed to the Clerk of this Court and the Settlement Administrator, postmarked no later than _____, 2015 [35 days prior to the Final Approval Hearing date], and shall otherwise comply with the requirements set forth in the Notices. All objectors shall make themselves available to be deposed by Class Counsel and Defendant's Counsel in the county of the objector's residence within seven days of service of his or her timely written objection. Any responses to objections must be filed with the Court at least 14 days prior to the

Final Approval Hearing.  Any Settlement Class Member who does not object in the manner provided in this Preliminary Approval Order, the Notices, and the Claims Administration Plan shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement as incorporated in the Settlement Agreement and to the award of attorneys' fees and expenses to Class Counsel and service awards to the Class Representatives, and shall otherwise be bound by the Final Judgment and Order of Dismissal to be entered and the releases to be given.

11.     **Motion for Final Approval and for an Award of Attorneys' Fees, Expenses, and Service Awards:**  Class Counsel shall file with the Court their motion for final approval of the proposed Settlement and their request for an award of attorneys' fees, expenses, and service awards no later than 42 days prior to the Final Approval Hearing date.

12.     The Court reserves the right to adjourn, reschedule, or extend the date or dates of the Final Approval Hearing or modify any other dates set forth in this Preliminary Approval Order without further notice to the members of the Settlement Class, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement Agreement.  The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Class.

13.     The Court further orders that (a) all proceedings in the Action are stayed, other than proceedings in furtherance of the Settlement; and (b) all Settlement Class Members and all Persons acting or purporting to act on behalf of any Settlement Class Member(s), who do not timely and properly opt-out from the Settlement Class in accordance with the court-ordered procedures, are enjoined under applicable law, including but not limited to the All Writs Act, 28 U.S.C. 1651, the Anti-Injunction Act, 28 U.S.C. 2283, and Federal Rule of Civil Procedure 65,

11

from commencing or prosecuting any action, suit, proceeding, claim, or cause of action (except those based on personal injury), in any jurisdiction, court or forum against a Released Party relating to or arising out of the subject matter of the Action.

14.      Neither the Settlement Agreement, nor the fact or any terms of the Settlement, is evidence, or an admission or concession by any Party, any Released Party or any signatory to the Settlement Agreement, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings.  The Settlement Agreement is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action or any wrongdoing by the Defendant or any damages or injury to any Settlement Class Member.  Neither the Settlement Agreement, nor any of the terms and provisions of the Settlement Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statements in connection therewith: (a) will (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of the validity or infirmity of any defense, or of any damage to any Plaintiff or any Settlement Class Member; or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Action, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any Person; or (b) will otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever.  Except in connection with consummating

12

or enforcing the Settlement Agreement, this Preliminary Approval Order, or the Final Judgment

and Order of Dismissal, including but not limited to defending any actions brought against

Lennox by Settlement Class Members or other parties, Plaintiffs and Defendant shall not offer or

attempt to offer the provisions of the Settlement Agreement, this Preliminary Approval Order, or

the Final Judgment and Order of Dismissal into evidence or use them in any manner or for any

purpose, including but not limited to claim preclusion (res judicata), issue preclusion (collateral

estoppel) or judicial estoppel, in this Action or any other actions or proceedings, whether civil,

criminal, or administrative, and Plaintiffs and Defendant intend that the provisions of the

Settlement Agreement, this Preliminary Approval Order, and the Final Judgment and Order of

Dismissal shall not be offered or received as evidence or used by any other Persons in any such

actions or proceedings.

15.     If (i) the Settlement Agreement is terminated by Defendant pursuant to Section

IV.J.1 of the Settlement Agreement, (ii) any specified condition to consummation of the

Settlement set forth in Section IV.J.3 of the Settlement Agreement is not satisfied for any reason,

(iii) the Settlement is disapproved, (iv) the Court declines to enter the Final Judgment and Order

of Dismissal in substantially the form attached as Exhibit D to the Settlement Agreement, (v)

said judgment is reversed or (vi) the Effective Date otherwise does not occur, then, in any such

event:

    a.  The Term Sheet (including any amendment(s)), the Settlement Agreement (including

        any amendment(s)), and all orders entered and releases delivered in connection with

        the Settlement, including without limitation the certification of the Action as a

        Settlement Class action, this Preliminary Approval Order, the Final Judgment and

        Order of Dismissal and the Fee and Expense Award, will be null and void and of no

13

further force or effect, without prejudice to either Party, and may not be introduced as evidence, referred to, or used as the basis for any arguments or taking any position whatsoever in any actions or proceedings by any Person or entity, in any manner or for any purpose, including but not limited to claim preclusion (res judicata), issue preclusion (collateral estoppel) or judicial estoppel; and

b. Each Party will be restored to his or its respective position as of the date the Term Sheet was circulated (January 7, 2015) and they will proceed in all respects as if the Term Sheet had not been circulated, the Settlement Agreement had not been entered into, and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action will be preserved without prejudice in any way.

c. In addition, the Released Parties shall retain all substantive and procedural rights and defenses, including but not limited to the right to take any action and take any position in opposition to certification of a litigation class action, which rights and defenses shall not be affected by the doctrines of judicial estoppel, issue preclusion (collateral estoppel) or claim preclusion (res judicata), or any other doctrine, or waived, limited, or prejudiced in any way whatsoever by the Parties' efforts to obtain approval of the certification of a Settlement Class action, the Settlement, and the Settlement Agreement.

IT IS SO ORDERED.


Dated: _____, 2015        _____

                                          SARAH L. ELLIS
                                          UNITED STATES DISTRICT JUDGE

14

# Exhibit D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ROBERT THOMAS, ET AL. V. LENNOX INDUSTRIES INC. | Case Number: 13-CV-7747<br>Honorable Sarah L. Ellis<br>United States District Judge |

## [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter came before the Court for hearing pursuant to the Order of this Court, dated

_____, 2015 ("Preliminary Approval Order"), and on the application

of the Plaintiff for a judgment finally approving the Settlement that is set forth in the Stipulation

and Agreement of Settlement dated as of June 26, 2015 (collectively, including the Exhibits, the

"Settlement Agreement").  Due and adequate notice having been given to the Settlement Class as

required in said Preliminary Approval Order, and the Court having considered all papers filed

and proceedings had for this matter and otherwise being fully informed in the premises and good

cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as

follows:

1.      This Final Judgment and Order of Dismissal incorporates by reference the

Preliminary Approval Order.  This Final Judgment and Order of Dismissal further incorporates

by reference the definitions in the Settlement Agreement, and unless otherwise specified herein

all capitalized terms contained in this Final Judgment and Order of Dismissal shall have the

meanings attributed to them in the Settlement.

2.      For purposes of effectuating this Settlement only, the Court hereby orders final

certification of the proposed Settlement Class, having found that the requirements of Rule 23 of

the Federal Rules of Civil Procedure are met.  The Settlement Class is defined as follows:

> All Persons who are residents of the United States and who purchased on or after October 29, 2007 through _____, 2015 [the Preliminary Approval Date] at least one uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (whether purchased separately, as part of an air handler, or as part of a packaged unit), for their personal, their family, or their household purposes, that was purchased new, covered by an Original Warranty when purchased, and installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.

Excluded from the Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; (2) the lawyers in this Action and any members of their immediate families; (3) the First Mediator and the Second Mediator and any members of their immediate families; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality, and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

3.      A list of those Persons who timely and validly filed requests for exclusion from the Settlement Class is attached as Exhibit ____ to this Final Judgment and Order of Dismissal and incorporated by reference as though fully set forth in this Final Judgment and Order of Dismissal.  The Persons appearing on Exhibit __ shall not be members of the Settlement Class and shall have no right to receive any Class Settlement Consideration.   All members of the Settlement Class (whether or not he, she or it submits a valid Claim Form) who have not validly excluded themselves from the Settlement Class shall be bound by all determinations and judgments concerning the Settlement Agreement and the Settlement contemplated thereby.

4.      The Court appoints Plaintiffs Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis to serve as representatives of the Settlement

2

Class ("Class Representatives").  The Court appoints the law firms of Kohn, Swift & Graf, P.C., Quantum Legal Group, and Seeger Weiss LLP as Class Counsel for the proposed Settlement Class.

5.      Solely for the purposes of effectuating the Settlement, with respect to the Settlement Class and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court further finds and concludes that:

a)   Solely for purposes of the proposed settlement, certification of the Settlement Class is warranted because: (a) the members of the Settlement Class are so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims present issues that are typical of the proposed Settlement Class; and (d) the Plaintiffs and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class.  The Court further finds that for purposes of this Settlement issues of law and fact common to the Settlement Class predominate over issues affecting only individual Settlement Class Members and that settlement of this action is superior to other means available for fairly and efficiently adjudicating the controversy.  The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues in this Action.

b)   Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby.  The Court finds that said notice and the related

3

Notice Plan provided for the best notice practicable under the circumstances to all Persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

c)  The Court finds that the proposed Claims Administration Plan fairly and adequately addresses the matters of settlement administration, claims submission and provision of the Class Settlement Consideration to Authorized Claimants.  In accordance with the Settlement Agreement and the Claims Administration Plan, the First Phase of the claims process will be administered by the Settlement Administrator and the Second Phase of the claims process will be administered by Lennox.  To become an Authorized Claimant to the Class Settlement Consideration, a Settlement Class Member must submit a claim in the manner set forth in the instructions accompanying the Claim Form.  Defendant will provide the appropriate Class Settlement Consideration to Authorized Claimants in accordance with the Claims Administration Plan, the Certificate, and the Settlement Agreement.

d)  All Settlement Class Members whose claims are not approved (including, without limitation, anyone who does not submit a Claim Form by the end of the Claims Period) will be barred from participating in the provision of Class Settlement Consideration, but in all other respects will be bound by all of the terms of the Settlement Agreement and the terms of this Final Judgment and Order of Dismissal, including without limitation, the releases provided for in the Settlement Agreement and in this order, and will be barred from bringing or

4

prosecuting any action against the Released Parties concerning the Released Claims.

e) The Court overrules any and all objections by Settlement Class Members and finds they are no impediment to approval of the Settlement.

f) The Court finds that the Settlement Agreement was arrived at in good faith following extensive arm's-length negotiations between experienced counsel, and the Settlement is fair, reasonable and adequate as to all Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure. The Court therefore approves the Settlement Agreement and the Settlement contemplated thereby in all respects, and orders the Parties to perform its terms to the extent the Parties have not already done so.

g) This Action and all of the Released Claims are dismissed with prejudice. The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement.

h) Upon the Effective Date, the Plaintiffs and the Settlement Class shall be deemed to have, and by operation of this Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished and discharged the Released Parties from all Released Claims.

i) Upon the Effective Date, the Defendant and the Released Parties shall be deemed to have, and by operation of this Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the Settlement Class and Class Counsel from all claims, known or unknown,

5

based upon or arising out of the institution, prosecution, settlement or resolution of (i) the Action or (ii) the Released Claims.

j) The Court further orders that (a) all proceedings in the Action are stayed, other than proceedings in furtherance of the Settlement; and (b) all Settlement Class Members and all Persons acting or purporting to act on behalf of any Settlement Class Member(s), who did not timely and properly opt-out from the Settlement Class in accordance with the court-ordered procedures, are enjoined under applicable law, including but not limited to the All Writs Act, 28 U.S.C. 1651, the Anti-Injunction Act, 28 U.S.C. 2283, and Federal Rule of Civil Procedure 65, from commencing or prosecuting any action, suit, proceeding, claim, or cause of action (except those based on personal injury), in any jurisdiction, court or forum against a Released Party relating to or arising out of the subject matter of the Action.

k) Neither the Settlement Agreement, nor the fact or any terms of the Settlement, is evidence, or an admission or concession by any Party, any Released Party or any signatory to the Settlement Agreement, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings. The Settlement Agreement is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action or any wrongdoing by the Defendant or any damages or injury to any Settlement Class Member. Neither the Settlement Agreement, nor any of the terms and provisions of the Settlement Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements

6

referred to therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statements in connection therewith: (a) will (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of the validity or infirmity of any defense, or of any damage to any Plaintiff or any Settlement Class Member; or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Action, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any Person; or (b) will otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever. Except in connection with consummating or enforcing the Settlement Agreement, the Preliminary Approval Order, or this Final Judgment and Order of Dismissal, including but not limited to defending any actions brought against Lennox by Settlement Class Members or other parties, Plaintiffs and Defendant shall not offer or attempt to offer the provisions of the Settlement Agreement, the Preliminary Approval Order, or this Final Judgment and Order of Dismissal into evidence or use them in any manner or for any purpose, including but not limited to claim preclusion (res judicata), issue preclusion (collateral estoppel) or judicial estoppel, in this Action or any other actions or proceedings, whether civil, criminal, or administrative, and Plaintiffs

7

and Defendant intend that the provisions of the Settlement Agreement, the Preliminary Approval Order, and this Final Judgment and Order of Dismissal shall not be offered or received as evidence or used by any other Persons in any such actions or proceedings.

l) The Court finds that a Fee and Expense Award of $_____ is fair and reasonable. The Court further finds that a service award of $_____ to each Class Representative is fair and reasonable, which service awards will be paid from the Fee and Expense Award. Therefore, pursuant to the Settlement Agreement, Defendant shall pay, within ten business days after the Effective Date, the amount of the Fee and Expense Award via wire transfer or check sent via FedEx or other overnight delivery method to Kohn, Swift & Graf, P.C., as receiving agent for Class Counsel, in full satisfaction of any claim for attorneys' fees and expenses or service awards, subject to the terms and conditions of the Settlement Agreement.

m) Pursuant to the agreement of the Parties, the Court hereby severs the above Fee and Expense Award from this Final Judgment and Order of Dismissal so that it shall immediately become a separate and independent order and not part of this Final Judgment and Order of Dismissal.

n) Without affecting the finality of this Final Judgment and Order of Dismissal in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement and the Claims Administration Plan, including without limitation, administrative determinations of the Settlement Administrator or Lennox accepting and rejecting claims and any provision of Class Settlement

8

Consideration; (b) the payment of attorneys' fees and expenses; and (c) both Parties and the Parties' Counsel for the purpose of construing, enforcing, and administering the Settlement Agreement.

o) If (i) the Settlement Agreement is terminated by Defendant pursuant to Section IV.J.1 of the Settlement Agreement, (ii) any specified condition to consummation of the Settlement set forth in Section IV.J.3 of the Settlement Agreement is not satisfied for any reason, (iii) the Settlement is disapproved, (iv) the Court declines to enter the Final Judgment and Order of Dismissal in substantially the form attached as Exhibit D to the Settlement Agreement, (v) said judgment is reversed or (vi) the Effective Date otherwise does not occur, then, in any such event:

1) The Term Sheet (including any amendment(s)), the Settlement Agreement (including any amendment(s)), and all orders entered and releases delivered in connection with the Settlement, including without limitation the certification of the Action as a Settlement Class action, the Preliminary Approval Order, this Final Judgment and Order of Dismissal and the Fee and Expense Award, will be null and void and of no further force or effect, without prejudice to either Party, and may not be introduced as evidence, referred to, or used as the basis for any arguments or taking any position whatsoever in any actions or proceedings by any Person or entity, in any manner or for any purpose, including but not limited to claim preclusion (res judicata), issue preclusion (collateral estoppel) or judicial estoppel; and

9

2) Each Party will be restored to his or its respective position as of the date the Term Sheet was circulated (January 7, 2015) and they will proceed in all respects as if the Term Sheet had not been circulated, the Settlement Agreement had not been entered into, and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action will be preserved without prejudice in any way.

3) In addition, the Released Parties shall retain all substantive and procedural rights and defenses, including but not limited to the right to take any action and take any position in opposition to certification of a litigation class action, which rights and defenses shall not be affected by the doctrines of judicial estoppel, issue preclusion (collateral estoppel) or claim preclusion (res judicata), or any other doctrine, or waived, limited, or prejudiced in any way whatsoever by the Parties' efforts to obtain approval of the certification of a Settlement Class action, the Settlement, and the Settlement Agreement.

IT IS SO ORDERED.

Dated: _____, 201_        _____
                                           SARAH L. ELLIS
                                           UNITED STATES DISTRICT JUDGE

# Exhibit E

FORMICARY CORROSION AND INDOOR AIR QUALITY

Certain conditions in the home can result in formicary corrosion, which is one type of corrosion that can damage your indoor evaporator coil and cause it to leak.  The exact incidence of formicary corrosion is not known, but it is believed to be rare.  Formicary corrosion can affect copper tubing when water and organic acids are present.  Organic acids are typically found in chemicals called volatile organic compounds ("VOCs").  Many materials used to build a home contain VOCs, including glues, paints, spackling compounds, and carpets.  Many common agents used by homeowners inside the home also contain VOCs, such as vinegars and household cleaners.  In addition, today's homes are better insulated than ever before, resulting in very high VOC concentrations in some homes.  Because a necessary component of formicary corrosion is water, homes with higher humidity levels can be more susceptible to formicary corrosion.

Due to copper's conductivity, strength and ease of maintenance, Lennox [or Allied] has traditionally used copper to make the evaporator coils in indoor HVAC systems.  Therefore, depending on the levels of VOCs and humidity in your home, your indoor evaporator coil may be exposed to the conditions that can cause formicary corrosion.  However, formicary corrosion can be hard to detect and is not visible to the naked eye.

Lennox recommends the installation of indoor air quality solutions, such as dehumidifiers, ventilation systems, and air purification systems, that help break down and remove VOCs and regulate humidity levels within the home.  Also, proper system installation and brazing techniques, adequate drainage of the indoor evaporator coil, and regular system maintenance will help maintain your HVAC system performance and help reduce instances of formicary corrosion.