**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT THOMAS, SCOTT PATRICK HARRIS, MICHAEL BELL, SANDRA PALUMBO, FRANK KARBARZ, and THOMAS DAVIS on behalf of Themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LENNOX INDUSTRIES, INC., <br><br>         Defendant. | CASE NO.:  1:13-cv-07747 <br><br> **DECLARATION OF GINA M. INTREPIDO BOWDEN ON SETTLEMENT NOTICE PLAN AND NOTICE DOCUMENTS** |

I, Gina M. Intrepido-Bowden, declare as follows:

1.      I have personal knowledge of the matters set forth herein, and I believe them to be true and correct. I am a Director of Legal Notification Services at Kurtzman Carson Consultants, LLC ("KCC"). KCC is an experienced national class action notice provider and class administrator with experience in administering 1,500 class action settlements. KCC's services include settlement funds escrow and reporting, class member data management, legal notification, call center support, and claims administration.

2.      I specialize in the design and implementation of class action legal notification campaigns, supported by evidence-based reach calculations relating to the adequacy of notice distribution to members of the class. I work with Carla A. Peak, also a Director of Legal Notification Services at KCC, who specializes in the design and implementation of plain language legal notice documents. Together, we ensure that class members are adequately reached with notices that capture their attention and are easily understood. Ms. Peak and I have been involved in

1

many of the largest and most complex class action notice programs, including all aspects of notice dissemination.

3.　　　This declaration will describe our experience, as well as the notice program (the "Notice Plan" or "Notice Program") that we propose for this case, including how the Notice Plan was developed and why we believe it will be effective. Our Notice Plan, which details all aspects of the proposed form, method and dissemination of notice, is attached as **Exhibit A**.

## OVERVIEW

1.　　　The Notice Program we developed utilizes a combination of individual notice to known Settlement Class Members and a schedule of paid notices in leading consumer magazines and on a variety of websites to effectively reach the Settlement Class. The Notice Plan will reach approximately 80.3% of likely Settlement Class Members, on average 1.5 times each.[1]

2.　　　The reach of the Notice Program is consistent with other effective court-approved settlement notice programs, and is designed to meet due process requirements. The Federal Judicial Center's (FJC) *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (the FJC Checklist) considers 70-95% reach among class members reasonable.

3.　　　We have developed various forms of notice for Court approval. All forms of notice are designed to be noticeable, clear and concise, and written in plain, easily understood language. Draft forms of Notice are included as **Exhibit A-1, 2, 3, 4, and 5**.

## EXPERIENCE RELEVANT TO THIS CASE

4.　　　Our c.v., included with our Notice Plan,[2] identifies over a hundred cases Ms. Peak and I have been involved with, including the dissemination of notice around the globe in more than 35 languages. It contains numerous judicial comments citing cases we have worked on, as well as articles we have written and speaking engagements where we have discussed the adequacy and design of legal notice efforts.

---

[1] The reach or net reach of a notice program is defined as the percentage of a class that was exposed to a notice net of any duplication among people who may have been exposed more than once. notice exposure is the average number of times that those reached by a notice would be exposed to a notice.

[2] Includes work performed by Ms. Peak and myself while employed at other firms.

5.       Ms. Peak and I have been involved in many of the largest and most significant cases in history, including *Shames v. The Hertz Corporation*, No. 3:07-cv-02174 (S.D. Cal.), a national antitrust settlement involving several million class members who rented vehicles from a variety of car rental companies; *In Re Uponor, Inc*., F1807 Plumbing Fittings Products Liability Litigation, No. 11-MD-2247 (D. Minn.), a national products liability settlement providing reimbursement, repair, and replacement of affected plumbing components; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement; *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.), one of the largest U.S. and Canadian retail consumer security breach notice programs; *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-05437 (W.D. Wash.), *Donnelly v. United Technologies Corp.* No. 06-CV-320045CP (Ont. S.C.J.) and *Wener v. United Technologies Corp.* 500-06-000425-088 (QC. Super. Ct.), product liability class action settlements involving secondary heat exchangers in high efficiency gas furnaces, affecting class members throughout the U.S. and Canada; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

6.       As noted in our c.v., we have written numerous articles, as well as presented about notice and due process. We believe notice and due process depend upon clear communication with the people affected. Our articles include: Carla Peak and Steven Weisbrot, *How to Design Your Notice to Minimize Professional Objectors*, CLASS ACTION LAWSUIT DEFENSE: CLASS ACTION DEFENSE NEWS, Developments and Commentary provided by BAKERHOSTETLER (www.classactionlawsuitdefense.com) (2012); Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011); John B. Isbister, Todd B. Hilsee, & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008); Todd B. Hilsee, Gina

M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (June 2006); Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005); and Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEO. J. LEGAL ETHICS 1359 (Fall 2005).

7.     Our speaking engagements regarding notice include: *Ethics in Legal Notification*, accredited CLE Program, presented by Carla Peak & Patrick Ivie in Philadelphia at Class Action Preservation Project (November 2014), Carla Peak & Robert DeWitte in Philadelphia at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. (August 2014), presented by Gina Intrepido-Bowden and Patrick Ivie at the St. Regis Deer Valley Resort in Utah (March 2014), presented by Gina Intrepido-Bowden, Carla Peak & Steven Weisbrot at Morgan Lewis & Bockius in New York (December 2012);  *Big Shoulders and High Standards. Can Plaintiffs Scale the Third Circuit's New Ascertainability Wall?* AMERICAN BAR ASSOCIATION 18th Annual National Institute on Class Actions, Gina Intrepido-Bowden presenter/panelist (October 2014); *The Ethics of Class Action Settlements*, Carla Peak, presenter, CHICAGO BAR ASSOCIATION, Class Action Committee (June 2014); *Pitfalls of Class Action Notice and Settlement Administration*, accredited CLE Program, presented by Carla Peak and Robert DeWitte at Harke Clasby & Bushman LLP in Miami (March 2014), Gina Intrepido-Bowden and Robert DeWitte presenters/panelists, PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013 (July 2013); *The Fundamentals of Settlement Administration*, accredited CLE Program, presented by Carla Peak and Steven Weisbrot at DLA Piper LLP in Philadelphia (August 2013), presented by Carla Peak and Robert DeWitte at Locke Lord LLP in Chicago and broadcast to offices in California, Georgia, New York, Texas and London (April 2013), presented by Gina Intrepido-Bowden and Robert DeWitte at Skadden, Arps, Slate, Meagher & Flom LLP and Wexler Wallace LLP in Chicago (January 2013), presented by Gina Intrepido-Bowden and Robert DeWitte at Hinshaw & Culbertson LLP in Chicago (October

2012), and presented by Gina Intrepido-Bowden and Rob Taylor-Manning at Spector Roseman Kodroff & Willis, P.C. in Philadelphia (December 2011); *Designing a Settlement and Notice Program to Minimize Scrutiny and Objections*, Gina Intrepido-Bowden presenter/panelist, AMERICAN CONFERENCE INSTITUTE (ACI), 16th National Conference on Consumer Finance Class Actions & Litigation (July 2013); *Class Action Settlement Administration Tips & Pitfalls on the Path to Approval*, accredited CLE program, presented by Carla Peak, Gina Intrepido-Bowden & Robert DeWitte at Jenner & Block in Chicago and broadcast to offices in Washington DC, New York and Los Angeles (October 2012); *Perspectives from Class Action Claims Administrators: Innovations in Notification*, Gina Intrepido-Bowden, presenter/panelist, CLE INTERNATIONAL, 8th Annual Class Actions Conference (May 2012); *Innovations in Notification*, Carla Peak, presenter, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar (May 2012); *Ethical Considerations in Canadian Class Actions*, accredited CLE Program, presented by Gina Intrepido-Bowden and Robert Taylor-Manning at Rochon Genova, LLP in Toronto (April 2012); *Reaching Class Members & Driving Take Rates*, Gina Intrepido-Bowden, presenter/panelist, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium (October 2011); *Legal Notice Ethics*, accredited CLE Program, presented by Gina Intrepido-Bowden, Carla Peak, and Elizabeth Grande at Heins Mills & Olson, P.L.C., Lockridge Grindal Nauen P.L.L.P., and Chestnut Cambronne in Minneapolis (January 2011), at Berger & Montague, P.C., Anapol Schwartz, Lundy Law and Dechert LLP, in Philadelphia, and broadcast to Dechert offices in California, New Jersey, New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010); *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, CLE Program, presented by Brian Christensen, Gina Intrepido, and Richard Simmons, to the KANSAS BAR ASSOCIATION (March 2009).

8.     We have been recognized by courts for our opinion as to which method of notification is appropriate for a given case and whether a certain method of notice represents the best notice practicable under the circumstances. Our judicial recognition includes notice programs targeting home/building product Class members, for example:

5

a. Honorable David O. Carter, *Cobb v. BSH Home Appliances Corp.* (December 29, 2014) No. 8:10-CV-0711 (C.D. Cal.):

> The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out..

b. Honorable Christina A. Snyder, *Roberts v. Electrolux Home Products*, Inc., (May 5, 2014) No. 8:12-cv-01644 (C.D. Cal.):

> The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects….

c. In *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation* (No. 11-MD-2247, D. Minn.), Judge Ann D. Montgomery stated on June 29, 2012:

> After the preliminary approval of the Settlement, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation

> *interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each...The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

9.    Additional court comments referencing our work are included in our c.v.

10.    In forming my opinions, I draw from my in-depth class action case experience, as well as my educational and related work experiences. I graduated *summa cum laude* with a B.A. in Advertising from Penn State University and received formal media training at one of New York's largest advertising agency media departments, BBDO. At BBDO I devised sophisticated, multi-million dollar media campaigns for large consumer clients such as Gillette, HBO, DuPont, and GE. I have applied my experience to the legal notification field for more than a decade. I have been directly responsible for all of the media planning in this case, including analysis of the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of Settlement Class Members.

11.    Ms. Peak drafted the notice documents in this case to be noticeable, concise, and well understood. With over a decade of industry experience, she has an extensive knowledge of drafting and developing class action notice documents. She also has extensive experience managing all aspects of notice dissemination, including in numerous countries and languages around the world.

## NOTICE PLAN SUMMARY

### *Class Target*

12.     The "Settlement Class" or "Settlement Class Members" include all Persons who are residents of the United States and who purchased on or after October 29, 2007 through the Preliminary Approval Date at least one uncoated copper tube Original Coil[3] (separately, as part of an air handler, or as part of a packaged unit), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Excluded from this Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; (2) the lawyers in this Action and any members of their immediate families; (3) the First Mediator and the Second Mediator and any member of their immediate families; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

13.     It is our understanding that approximately 2.9 million Original Coils were sold and that postal addresses are available for approximately 988,854 Settlement Class Members.

14.     To verify the notice program's effectiveness, GfK MediaMark Research & Intelligence, LLC (MRI)[4] data was studied among adults in the United States who own a central air conditioner for climate control ("HVAC Consumers"), because this broad target group best represents the Settlement Class.

---

[3] "Original Coil" means an uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (separately, as part of an air handler, or as part of a packaged unit) purchased new, within the time period covered by the Settlement Class, covered by an Original Warranty, and installed in its original installation site.

[4] GfK MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's Survey of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

15.     Knowing the characteristics, interests, and habits of a target group aids in the media selection process. Demographic highlights of HVAC Consumers include the following: 99.1% speak English most often; 92.9% have graduated from high school and 67.5% have attended college or beyond; 90.6% are 25 years of age or older, 74.4% are 35 years of age or older, and 56.4% are 45 years of age or older; 89.5% live in a household consisting of two or more people, 73.6% live in a household consisting of two to four people, and 54.3% live in a household consisting of three or more people; 86.4% are white; 84.4% live in a Metropolitan CBSA;[5] 84.1% own a home; 81.5% have a household income of $40,000 or more, 74.0% have a household income of $50,000 or more, and 66.1% have a household income of $60,000 or more; 72.3% own a home valued at $100,000 or more, and 64.1% own a home valued between $100,000-$499,999; 70.9% live in County Size A or B;[6] 65.9% are married; 65.1% have lived at their current address for five or more years; 52.8% are employed full time; and 51.6% are women.

16.     On average, HVAC Consumers are 48 years of age; have a household income of $93,797; and own a home valued at $251,097.[7]

17.     Also important is the fact that, compared to the general adult population, HVAC Consumers are: 43.8% more likely to have a household income of $150,000 or more, 40.1% more likely to have a household income between $100,000-$149,999, and 32.4% more likely to have a

---

[5] The Office of Management and Budget defines metropolitan and micropolitan statistical areas (metro and micro areas) as geographic entities for use by Federal statistical agencies in collecting, tabulating, and publishing Federal statistics. The term "Core Based Statistical Area" (CBSA) is a collective term for both metro and micro areas. A metro area contains a core urban area of 50,000 or more population, and a micro area contains an urban core of at least 10,000 (but less than 50,000) population. Each metro or micro area consists of one or more counties and includes the counties containing the core urban area, as well as any adjacent counties that have a high degree of social and economic integration (as measured by commuting to work) with the urban core.

[6] Nielsen County Size classifications are based on Census household counts and metropolitan proximity. "A" counties are highly urbanized areas and belong to the 21 largest Metropolitan Statistical Areas. The combined A counties contain 40% of the United States households. "B" counties are counties not defined as A counties that have more than 85,000 households. The combined B counties contain 30% of United States households. "C" counties are counties not defined as A or B counties that have more than 20,000 households or are in Consolidated Metropolitan Areas or Metropolitan Statistical Areas with more than 20,000 households. The combined C counties contain 15% of United States households. "D" counties are all counties not classified as A, B or C counties. They are considered very rural. The combined D counties contain 15% of United States households.

[7] The average age for U.S. adults is 47, the average household income is $75,616, and the average home value is $241,338.

household income between $75,000-$99,999; 35.0% more likely to own a home valued between $200,000-$499,999, 31.9% more likely to own a home valued between $100,000-$199,999, and 28.3% more likely to own a home valued at $500,000 or more; 32.8% more likely to work in management/business/finance operations and 27.7% more likely to work as a professional; 31.9% more likely to have graduated from college or beyond; 25.6% more likely to own a home; 23.5% more likely to live in the Midwest Census Region and 18.1% more likely to live in the South Census Region; 23.4% more likely to be married; 14.8% more likely to be 55-64 years of age, 5.5% more likely to be 35-44 years of age, and 4.5% more likely to be 65 years of age or older; 14.8% more likely to have lived at their current address for five or more years; 14.3% more likely to be white; 10.2% more likely to live in a household consisting of two people and 4.4% more likely to live in a household consisting of three or four people; 9.6% more likely to be employed full time; 8.2% more likely to live in County Size B; and 8.1% more likely to be working women.

### *Individual Notice*

18.     A Postcard Notice will be mailed to approximately 988,854 known Settlement Class Members. Prior to mailing, the names and addresses will be checked against the United States Postal Service (USPS) National Change of Address (NCOA)[8] database, certified via the Coding Accuracy Support System (CASS),[9] and verified through Delivery Point Validation (DPV).[10]

19.     Postcard Notices returned as undeliverable will be re-mailed to any address available through postal service information; for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but is still within the period

---

[8] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[9] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[10] Records that are ZIP + 4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses, and reports exactly what is wrong with incorrect addresses.

that the USPS returns the piece with the new address indicated. Factoring in likely undeliverables, we estimate that the individual mailing effort will reach approximately 32.7% of the Settlement Class.[11]

### *Consumer Publication*

20.     To build upon the reach base of the individual notice effort, a half-page Summary Notice will appear in *Cooking Light* and *People* magazines. *Cooking Light* reaches 5.9% of HVAC Consumers and its readers are 25.4% more likely to be HVAC Consumers, as compared to the general adult population. *People* reaches 19.2% of HVAC Consumers and its readers are 5.6% more likely to be HVAC Consumers, as compared to the general adult population. Placements will be tracked to ensure that they appear exactly as planned, as well as meet our high standards in terms of quality and positioning.

### *Internet Notice*

21.     According to MRI, 89.3% of HVAC Consumers have access to the internet at home using a computer and 87.5% have looked at or used the internet in the last 30 days. Compared to the general adult population, HVAC Consumers are 8.9% more likely to have access to the internet from home using a computer and 7.7% more likely to have looked at or used the internet in the last 30 days. As a result, to further extend reach among the Settlement Class, we recommend purchasing 127 million *unique* internet impressions over a one-month period. The banners will be targeted to adults 25 years of age or older (Adults 25+), as well as those who show an interest in home and garden websites and DIY projects. Run of Network (RON) impressions will be geographically distributed based on sales data provided by Lennox. The banners will include an embedded link to the case website.

| Tactic | Target | # of Impressions |
|---|---|---|
| Run of Network | Adults 25+; Geotargeted based on % of sales | 119,000,000 |
| Custom Channel | Adults 25+; | 5,000,000 |

---

[11] If the direct notice reach changes significantly, additional media efforts may be necessary.

| | Home and Garden sites | |
|---|---|---|
| Behavioral Targeting | Adult 25+; DIY | 3,000,000 |
| **TOTAL** | | **127,000,000** |

Sample RON sites may include:



### *Response Mechanisms*

22.     An informational website will be established to allow Settlement Class Members the ability to obtain additional information and documents about the settlement. The website address will be prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the internet banner notices.

23.     A toll-free number will be established to allow a simple way for Settlement Class Members to learn more about the settlement in the form of frequently asked questions and answers. It will also allow Settlement Class Members to request to have more information mailed directly to them. The toll-free number will be prominently displayed in all printed notice materials.

24.     An email address will be established to provide Settlement Class Members with an additional method to learn more about the settlement, as well as ask the Settlement Administrator questions. The email address will be provided in all printed notice documents.

***Reach and Frequency***

25.      The combined mailed and media efforts will reach approximately 80.3% of likely Settlement Class Members, on average 1.5 times each.

***Notice Design***

26.      The Notices have been designed to be "noticed" and understood by Settlement Class Members. They contain easy-to-read summaries of all of the key information affecting Settlement Class Members' rights and options. All information required by Federal Rule of Civil Procedure 23, as well as the *Manual for Complex Litigation, Fourth*, has been incorporated into the notice documents. The ad units are adequately sized to attract attention to the notice. Many courts, as well as the FJC, have approved notices that have been written and designed in a similar fashion.

## CONCLUSION

27.      The Notice Plan will effectively reach the Settlement Class and will deliver "noticeable" Notices to capture Settlement Class Members' attention and provide them with information necessary to understand their rights and options.

28.      In my opinion, the Notice Plan is consistent with other effective settlement notice programs. It is the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane*. It provides the same reach and frequency evidence that Courts have approved and that has withstood appellate scrutiny, other expert critiques, as well as collateral review. The Notice Plan is also consistent with the 70-95% reach guideline set forth in the FJC's Checklist.

29.      At the conclusion of the Notice Plan, we will provide a final report verifying its adequacy and effective implementation.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of June, 2015.

_____
Gina M. Intrepido-Bowden

© 2015 KCC

# Exhibit A



**Legal Notification Services**

_____

# Settlement Notice Plan

## Thomas v. Lennox Industries Inc.

## Case No. 1:13-cv-07747

United States District Court
Northern District of Illinois
Eastern Division

**Prepared: June 25, 2015**

© 2015 KCC LLC
Proprietary and Confidential

# Table of Contents

|  |  | Page |
|---|---|---|
| Legal Notification Services | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Our Experts | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Relevant Case Experience | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Expert Services | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| Media Terms | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| Media Resources | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| Program Overview | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| Notice Schedule | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| Target Analysis | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| Media Selection | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| Individual/Direct Notice | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| Consumer Magazines | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| Internet Banners | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| Response Mechanisms | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| Notice Design Strategies | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| Draft Forms of Notice | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| Conclusion | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| Legal Notice c.v. | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

## Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

### Gina Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 85 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

### Carla Peak

With over a decade of industry experience, Carla specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

© 2015 KCC LLC
Proprietary and Confidential

## Relevant Case Experience

Our experts have designed and implemented numerous notice programs targeting Home/Building product Class members, for example:

- *Cobb v. BSH Home Appliances Corp.*, No. 8:10-CV-0711 (C.D. Cal.)
    - Honorable David O. Carter (December 29, 2014): *The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

- *Roberts v. Electrolux Home Products, Inc.*, No. 8:12-CV-01644 (C.D. Cal.)
    - Honorable Cynthia A. Snyder (May 5, 2014): *The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

- *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, No. 11-MD-2247 (D. Minn.)
    - Judge Ann D. Montgomery (July 9, 2012): *The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;…*
    - June 29, 2012: *After the preliminary approval of the Settlement, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each…The California Objectors also take umbrage with the notice provided the class.*

© 2015 KCC LLC
Proprietary and Confidential

*Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

# Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television and the internet to meet due process requirements
- Develop press releases, broadcast public service announcements (PSAs), and a content-rich, case-specific website, as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

## Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (e.g., from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (e.g., subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

## Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

**Alliance for Audited Media (AAM)**

AAM is a nonprofit organization that connects North America's leading media companies, advertisers and ad agencies. Founded in 1914 as the Audit Bureau of Circulations, the AAM is the preeminent source of cross-media verification and information services, providing standards, audit services and data critical to the advertising industry. The organization independently verifies print and digital circulation, mobile apps, website analytics, social media, technology platforms and audience information for newspapers, magazines and digital media companies in the U.S. and Canada.

**GfK Mediamark Research & Intelligence, LLC (MRI)**

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer™* is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

**Telmar**

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

# Program Overview

## Objective

To design a notice program that will effectively reach Settlement Class Members and capture their attention with notice communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

## Settlement Class Definition

Settlement Class Members include all Persons who are residents of the United States and who purchased on or after October 29, 2007 through the Preliminary Approval Date at least one uncoated copper tube Original Coil[1] (separately, as part of an air handler, or as part of a packaged unit), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Excluded from this Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; (2) the lawyers in this Action and any members of their immediate families; (3) the First Mediator and the Second Mediator and any member of their immediate families; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

## Case Analysis

The following known factors were considered when determining our recommendation:

1. Approximately 2.9 million units were sold.
2. It is our understanding that postal addresses are available for approximately 988,854 Settlement Class Members; however, the majority of Settlement Class Members are unknown consumers who must be reached through a consumer media campaign.
3. Settlement Class Members are located throughout the U.S., including large cities and rural areas.
4. Effective reach and notice content is vital to convey the importance of the information affecting Settlement Class Members' rights, as well as to withstand challenge and collateral review.

## Target Audience

To verify the program's effectiveness among Settlement Class Members, MRI data was studied among adults in the United States who own a central air conditioner for climate control ("HVAC Consumers"), because this target group best represents the Settlement Class.

## Strategies

The Notice Plan utilizes a combination of individual notice to known Settlement Class Members and paid notice in consumer magazines and on a variety of websites to reach the Class.

---

[1] "Original Coil" means an uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil (separately, as part of an air handler, or as part of a packaged unit) purchased new, within the time period covered by the Settlement Class, covered by an Original Warranty, and installed in its original installation site.

© 2015 KCC LLC
Proprietary and Confidential

**Plan Delivery**

The Notice Plan will reach approximately 80.3% of likely Settlement Class Members, on average 1.5 times each.

**Notice Design**

The Notices will be designed to provide a clear, concise, plain language statement of Settlement Class Members' legal rights and options. To ease response, the toll-free number and website address will be provided in all printed notice documents and the case website will be accessible through a hyperlink in the internet banner notices. The ad units are adequately sized to attract attention to the notice:

- Half-page units in standard sized publications; and
- Standard leaderboard (728x90 pixels), medium rectangle (300x250 pixels), and wide skyscraper (160x600 pixels) banner notices.

## Notice Schedule

The notice schedule is based on preliminary approval by July 16, 2015, thereby allowing an exclusion and objection deadline of October 12, 2015 or later (approximately 30 days from the last notice appearance) and a final fairness hearing date sometime after.

| Notice Tactic | Issued | Week of 8/10/15 | Week of 8/17/15 | Week of 8/24/15 | Week of 8/31/15 | Week of 9/7/15 | Week of 9/14/15 |
|---|---|---|---|---|---|---|---|
| Individual Mailings | | ■ | | | | | |
| Consumer Magazines | | | | | | | |
| *Cooking Light* | | | | | | 9/11 | |
| *People* | | | 8/21 | | | | |
| Internet Banner Notices | Monthly | | | | | | |
| Settlement Website | Constant | | | | | | |

Blocks indicate when readers first receive publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement.

© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page **12** of **41**

# Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

## Demographic Highlights

Demographic highlights of HVAC Consumers include the following:

- 99.1% speak English most often;
- 92.9% have graduated from high school and 67.5% have attended college or beyond;
- 90.6% are 25 years of age or older, 74.4% are 35 years of age or older, and 56.4% are 45 years of age or older;
- 89.5% live in a household consisting of two or more people, 73.6% live in a household consisting of two to four people, and 54.3% live in a household consisting of three or more people;
- 86.4% are white;
- 84.4% live in a Metropolitan CBSA;[2]
- 84.1% own a home;
- 81.5% have a household income of $40,000 or more, 74.0% have a household income of $50,000 or more, and 66.1% have a household income of $60,000 or more;
- 72.3% own a home valued at $100,000 or more and 64.1% own a home valued between $100,000-$499,999;
- 70.9% live in County Size A or B;[3]
- 65.9% are married;
- 65.1% have lived at their current address for five or more years;
- 52.8% are employed full time; and
- 51.6% are women.

On average, HVAC Consumers:[4]

- are 48 years of age;
- have a household income of $93,797; and
- own a home valued at $251,097.

Also important is the fact that, compared to the general adult population, HVAC Consumers are:

- 43.8% more likely to have a household income of $150,000 or more, 40.1% more likely to have a

---

[2] The Office of Management and Budget defines metropolitan and micropolitan statistical areas (metro and micro areas) as geographic entities for use by Federal statistical agencies in collecting, tabulating, and publishing Federal statistics. The term "Core Based Statistical Area" (CBSA) is a collective term for both metro and micro areas. A metro area contains a core urban area of 50,000 or more population, and a micro area contains an urban core of at least 10,000 (but less than 50,000) population. Each metro or micro area consists of one or more counties and includes the counties containing the core urban area, as well as any adjacent counties that have a high degree of social and economic integration (as measured by commuting to work) with the urban core.

[3] Nielsen County Size classifications are based on Census household counts and metropolitan proximity. "A" counties are highly urbanized areas and belong to the 21 largest Metropolitan Statistical Areas. The combined A counties contain 40% of the United States households. "B" counties are counties not defined as A counties that have more than 85,000 households. The combined B counties contain 30% of United States households. "C" counties are counties not defined as A or B counties that have more than 20,000 households or are in Consolidated Metropolitan Areas or Metropolitan Statistical Areas with more than 20,000 households. The combined C counties contain 15% of United States households. "D" counties are all counties not classified as A, B or C counties. They are considered very rural. The combined D counties contain 15% of United States households.

[4] The average age for U.S. adults is 47, the average household income is $75,616, and the average home value is $241,338.

© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page 13 of 41

household income between $100,000-$149,999, and 32.4% more likely to have a household income between $75,000-$99,999;

- 35.0% more likely to own a home valued between $200,000-$499,999, 31.9% more likely to own a home valued between $100,000-$199,999, and 28.3% more likely to own a home valued at $500,000 or more;
- 32.8% more likely to work in management/business/finance operations and 27.7% more likely to work as a professional;
- 31.9% more likely to have graduated from college or beyond;
- 25.6% more likely to own a home;
- 23.5% more likely to live in the Midwest Census Region and 18.1% more likely to live in the South Census Region;
- 23.4% more likely to be married;
- 14.8% more likely to be 55-64 years of age, 5.5% more likely to be 35-44 years of age, and 4.5% more likely to be 65 years of age or older;
- 14.8% more likely to have lived at their current address for five or more years;
- 14.3% more likely to be white;
- 10.2% more likely to live in a household consisting of two people and 4.4% more likely to live in a household consisting of three or four people;
- 9.6% more likely to be employed full time;
- 8.2% more likely to live in County Size B; and
- 8.1% more likely to be working women.

*Source: 2014 MRI Doublebase Study*

© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page **14** of **41**

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Broad national coverage into the largest cities as well as the smallest towns throughout the nation;

- A large percentage of likely Settlement Class Members to be reached;

- A written summary of key information that may be easily referred to or passed on to others as a result of placements in well-read publications;

- A direct link to the case website through the internet banner notices; and

- Easy access to the notice documents through an established case website.

## Individual/Direct Notice

**Mailed Notice**

- Approximately 988,854 Postcard Notices will be mailed to the addresses of all known potential Settlement Class Members.

- Prior to mailing, the names and addresses will be:
    - Checked against the USPS National Change of Address (NCOA)[5] database;
    - Certified via the Coding Accuracy Support System (CASS);[6] and
    - Verified through Delivery Point Validation (DPV).[7]

- Postcard Notices returned as undeliverable will be re-mailed to any address available through postal service information; for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but is still during the period that the USPS returns the piece with the new address indicated.

- Any returned mailing that does not contain an expired forwarding order with a new address indicated may be researched through a third party look-up service, if applicable.

- It is our estimate that individual mailings alone will reach an estimated 32.7% of the Class.

---

[5] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[6] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[7] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

© 2015 KCC LLC
Proprietary and Confidential

# Consumer Magazines

To build on the individual notice reach base, a Summary Notice will be placed in leading consumer magazines among HVAC Consumers.

| Consumer Magazine | Issuance | Notice Size | # of Insertions |
|---|---|---|---|
| *Cooking Light* | Monthly | Half page | 1 |
| *People* | Weekly | Half page | 1 |
| **TOTAL** | | | **2** |

The following provides details for each of the recommended consumer magazines:



- Circulation: 1,788,528
- Adult Audience: 11,131,000
- Monthly food and healthy lifestyle magazine, including contemporary coverage of entertaining, fitness, health, beauty, travel and shelter
- Reaches 5.9% of HVAC Consumers
- Readers are 25.4% more likely to be HVAC Consumers, as compared to the general adult population
- Extends reach among health-conscious, affluent, educated adults



- Circulation: 3,537,318
- Adult Audience: 42,726,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Reaches 19.2% of HVAC Consumers
- Readers are 5.6% more likely to be HVAC Consumers, as compared to the general adult population
- Provides a large number of pass along readers

Positioning will be sought opposite articles, cover stories, or editorial features with documented high readership. All placements will be tracked to ensure that they appear exactly as planned as well as meet our high standards in terms of quality and positioning.

## Internet Banners

Internet usage is heavy among HVAC Consumers. In fact, 89.3% of HVAC Consumers have access to the internet at home using a computer and 87.5% have looked at or used the internet in the last 30 days. Compared to the general adult population, HVAC Consumers are 8.9% more likely to have access to the internet from home using a computer and 7.7% more likely to have looked at or used the internet in the last 30 days. As a result, to further extend reach among the Class, we recommend purchasing 127 million *unique* internet impressions over a one-month period. The banners will be targeted to adults 25 years of age or older (Adults 25+), as well as those who show an interest in home and garden websites and DIY projects. Run of Network (RON) impressions will be geographically distributed based on sales data provided by Lennox. The banners will include an embedded link to the case website.

| Tactic | Target | # of Impressions |
|---|---|---|
| Run of Network | Adults 25+;<br>Geo targeted based on % of sales | 119,000,000 |
| Custom Channel | Adults 25+; Home and Garden sites | 5,000,000 |
| Behavioral Targeting | Adult 25+; DIY | 3,000,000 |
| **TOTAL** | | **127,000,000** |

Sample RON sites may include:

    

  

    

     

© 2015 KCC LLC
Proprietary and Confidential

## Response Mechanisms

**Case Website**
- Will be an easy to remember domain
- Allows Settlement Class Members the ability to obtain additional information and documents including the Claim Form, Long-Form Notice, Summary Notice, Settlement Agreement, and any other information that the parties may agree to provide or that the Court may require
- Prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the internet banner notices

**Toll-Free Telephone Support**
- Provides a simple way for Settlement Class Members to obtain additional information about the settlement
- Allows Settlement Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Settlement Class Members to request to have more information mailed directly to them
- Prominently displayed in all printed notice materials

**Email Support**
- Provides a simple way for Settlement Class Members to obtain additional information about the settlement
- Allows Settlement Class Members the opportunity to ask the Settlement Administrator questions
- Included in all printed notice materials

.

© 2015 KCC LLC
Proprietary and Confidential

## Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov.

**Postcard and Publication Summary Notices**
- Bold headline captures attention and speaks directly to Settlement Class Members, alerting them that they should read the Notice and why it is important
- Prominent notice size promotes attention, readership, and comprehension
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number, case website and email address invite response, allowing Settlement Class Members the opportunity to obtain additional information

**Long-Form Notice**
- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Table of Contents and question and answer format allow Settlement Class Members to easily locate information
- Bold headline captures attention and speaks directly to Settlement Class Members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number, case website and email address invite response, allowing Settlement Class Members the opportunity to obtain additional information

**Internet Banner Notices**
- Simple rotating message alerts Settlement Class Members about the settlement
- An embedded link allows immediate access to the case website

© 2015 KCC LLC
Proprietary and Confidential

## Draft Forms of Notice

**Exhibits A 1-5** contain the draft forms of the following notice documents:

- The **Long-Form Notice** that will be mailed to Settlement Class Members who call the toll-free number to request one, as well as made available at the website.

- The **Summary Notice** as it will appear in the publications identified in this Notice Plan.

- The **Postcard Notice** that will be mailed to all identifiable Settlement Class Members.

- The **Dealer Notice** that will be sent to independent Lennox dealers.

- The **Internet Banners** that will be posted on a variety of web properties.

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review



_____

KCC's Legal Notification Services team provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been involved in more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some case examples our experts have been involved with include:

- ***Shames v. The Hertz Corporation***, No. 3:07-cv-02174 (S.D. Cal.) A national antitrust settlement involving several million class members who rented vehicles from a variety of car rental companies.

- ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, No. 11-MD-2247 (D. Minn.) A national products liability settlement providing reimbursement, repair and replacement of affected plumbing components.

- ***In re Trans Union Corp. Privacy Litigation***, MDL No. 1350 (N.D. Ill.) Perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- ***In re TJX Companies, Inc., Customer Data Security Breach Litigation***, MDL No. 1838 (D. Mass.) One of the largest U.S. and Canadian retail consumer security breach notice programs.

- ***Grays Harbor Adventist Christian School v. Carrier Corp.***, No. 05-05437 (W.D. Wash.), ***Donnelly v. United Technologies Corp.*** No. 06-CV-320045CP (Ont. S.C.J.) and ***Wener v. United Technologies Corp.*** 500-06-000425-088 (QC. Super. Ct.) Product liability class action settlements involving secondary heat exchangers in high efficiency gas furnaces, affecting class members throughout the U.S. and Canada.

- ***In re Residential Schools Litigation***, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

© 2015 KCC LLC
Proprietary and Confidential

# Our Experts

### Gina M. Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has designed more than 85 judicially approved media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As a legal notice expert, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

### Carla A. Peak

With over a decade of industry experience, Carla A. Peak specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition

Following are some judicial comments recognizing the work of our expert(s):

**Honorable Lynn Adelman, *Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.* (Indirect Purchaser–Tong Yang Settlement)**, (May 29, 2015) No. 2:09-CV-00852 (E.D. Wis.):

> *The Court approves the Notice Program set forth in the Declaration of Carla A. Peak. The Court approves as to form and content the Postcard Notice, Summary Publication Notice, and Detailed Notice in the forms attached as Exhibits 2–4, respectively, to the Declaration of Carla A. Peak. The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of*

© 2015 KCC LLC
Proprietary and Confidential

*the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

**Honorable Mitchell D. Dembin,** ***Lerma v. Schiff Nutrition International, Inc.***, (May 25, 2015) No. 11-CV-01056 (S.D. Cal.):

*The parties are to notify the Settlement Class in accordance with the Notice Program outlined in the Second Supplemental Declaration of Gina M. Intrepido-Bowden on Settlement Notice Program.*

**Honorable Lynn Adelman,** ***Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.*** **(Direct Purchaser–Gordon Settlement)**, (May 5, 2015) No. 2:09-CV-00852 (E.D. Wis.):

*The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla Peak ("Peak Decl.") at Exhibit 1 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members. The Notice Program set forth herein is substantially similar to the one set forth in the Court's April 24, 2015 Order regarding notice of the Tong Yang Settlement (ECF. No. 619) and combines the Notice for the Tong Yang Settlement with that of the Gordon Settlement into a comprehensive Notice Program. To the extent differences exist between the two, the Notice Program set forth and approved herein shall prevail over that found in the April 24, 2015 Order.*

**Honorable José L. Linares,** ***Demmick v. Cellco Partnership***, (May 1, 2015) No. 2:06-CV-2163 (D. N.J.):

*The Notice Plan, which this Court has already approved, was timely and properly executed and that it provided the best notice practicable, as required by Federal Rule of Civil Procedure 23, and met the "desire to actually inform" due process communications standard of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)… The Court thus affirms its finding and conclusion in the November 19, 2014 Preliminary Approval Order that the notice in this case meets the requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States and/or any other applicable law. All objections submitted which make mention of notice have been considered and, in light of the above, overruled.*

**Honorable Lynn Adelman,** ***Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.*** **(Direct Purchaser–Tong Yang Settlement)**, (April 4, 2015) No. 2:09-CV-00852 (E.D. Wis.):

© 2015 KCC LLC
Proprietary and Confidential

*The Court approves the forms of the Notice of proposed class action settlement attached to the Declaration of Carla A. Peak ("Peak Decl.") as Exhibit 2 (Long-Form Notice and Summary/Publication Notice). The Court further finds that the mailing and publication of the Notice in the manner set forth below and in the Peak Decl. is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class Members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members.*

**Honorable Rhonda A. Isiran Nishimura,** *Charles v. Haskeo Homes, Inc.*, (February 24, 2015) No. 09-1-1932-08 (Cir. Ct. Hawai'i):

*The Court approves, as to form and content, the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice, and the Notice Plan that are attached as Exhibits 8-9 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak…The Court finds that the Hurricane Straps Class Notice, the Hurricane Straps Repose Subclass Notice, and the Notice Plan will fully and accurately inform the potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members of all material elements of the proposed Settlement, of their right to be excluded from the Hurricane Straps Class or Hurricane Straps Repose Subclass, and of each Hurricane Straps Class Member's or Hurricane Straps Repose Subclass Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the Hurricane Straps Class Notice and the Hurricane Straps Repose Subclass Notice will (i) meet the requirements of the laws of the State of Hawai'i (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Hurricane Straps Class Members and Hurricane Straps Repose Subclass Members.*

**Honorable Gary W.B. Chang,** *Kai v. Haskeo Homes, Inc.*, (February 15, 2015) No. 09-1-2834-12 (Cir. Ct. Hawai'i):

*The Court approves, as to form and content, the PEX Class Notice and Notice Plan attached as Exhibit 10 to the Declaration of Graham B. LippSmith ("LippSmith Dec.") and in the Declaration of Carla Peak. The Court finds that the PEX Class Notice and the Notice Plan will fully and accurately inform the potential PEX Class Members of all material elements of the proposed Settlement, of their right to be excluded from the PEX Class, and of each PEX Class Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the PEX Class Notice substantially in the manner and form set forth in this Order will (i) meet the requirements of the laws of the State of Hawai'i (including Haw. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, (ii) constitute the best notice*

© 2015 KCC LLC
Proprietary and Confidential

*practicable under the circumstances, and (iii) constitute due and sufficient notice to all potential Class Members.*

**Honorable David O. Carter,** *Cobb v. BSH Home Appliances Corp.*, (December 29, 2014) No. 8:10-CV-0711 (C.D. Cal.):

*The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

**Honorable José L. Linares,** *Demmick v. Cellco Partnership*, (November 19, 2014) No. 2:06-CV-2163 (D. N.J.):

*The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*
*The Court further finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as to not be bound by the Settlement Agreement.*

**Honorable Christina A. Snyder,** *Roberts v. Electrolux Home Products, Inc.*, (September 11, 2014) No. 8:12-CV-01644 (C.D. Cal.):

*The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan…The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's*

© 2015 KCC LLC
Proprietary and Confidential

*request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement…Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects…Any objections to the notice provided to the Class are hereby overruled.*

**Honorable David O. Carter,** ***Cobb v. BSH Home Appliances Corp.****, (August 25, 2014) No. 8:10-CV-0711 (C.D. Cal.):*

*…the Court also finding that the proposed notice plan and forms of notice are the best notice practicable under the circumstances and satisfy all requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(b)(2); and for good cause shown, IT IS HEREBY ORDERED that Plaintiffs' Motion to Amend the Illinois Class Definition is GRANTED; and it is further ORDERED that Plaintiffs' Motion for Approval of Notice Plan and Proposed Forms of Notice is GRANTED.*

**Judge Gregory A. Presnell,** ***Poertner v. The Gillette Co. and The Procter & Gamble Co.****, (August 21, 2014) No. 6:12-CV-00803 (M.D. Fla.):*

*This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. See Id. The Court thus reaffirms its findings that the Notice given to the Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.*

**Honorable Curtis L. Collier,** ***In re: Skelaxin (Metaxalone) Antitrust Litigation****, (August 5, 2014) No. 1:12-md-02343 (E.D. Tenn.):*

*The proposed form of Notice to End-Payor Settlement Class Members of the pendency and proposed settlement of this action ("Settlement Notice") set forth in the Notice Plan and Declaration of Carla Peak and the proposed method of dissemination of the Settlement Notice ("Notice Plan")—first to Third-Party Payors and then to Consumers—satisfy the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, are otherwise fair and reasonable, and therefore are approved.*

**Honorable Christina A. Snyder,** ***Roberts v. Electrolux Home Products, Inc.****, (May 5, 2014) No. 8:12-CV-01644 (C.D. Cal.):*

© 2015 KCC LLC
Proprietary and Confidential

*The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement)…is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects…*

**Honorable Jose L. Linares,** *In re Hypodermic Products Antitrust Litigation*, (March 17, 2014) MDL No. 1730, No. 2:05-CV-01602 (D. N.J.):

*The Class Notice provides a description of the Indirect Purchaser Class, the procedural status of the litigation, a brief description of the plan of allocation, the court approval process for the proposed Settlement, and the significant terms of the Settlement. The Class Notice also fully informed members of the Indirect Purchaser Class of their rights with respect to the Settlement, including the right to opt out of, object to the Settlement, or otherwise be heard as to the resonableness and fairness of the Settlement. The Class Notice also informed members of the Indirect Purchaser Class of their right to object to Indirect Purchaser Plaintiffs' Lead Counsel's application for an award of attorneys' fees, an award of incentive fees, and reimbursement of expenses from the Settlement Fund.…The Class Notice met the statutory requirements of notice under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.*

**Honorable William E. Smith,** *Cappalli v. BJ's Wholesale Club, Inc.*, (December 12, 2013) No. 1:10-CV-00407 (D. R.I.):

*The Court finds that the form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of these proceedings of the proposed Settlement, and of the terms set forth in the Stipulation and first Joint Addendum, and the notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process, and all other applicable laws.*

**Judge Gregory A. Presnell,** *Poertner v. The Gillette Co. and The Procter & Gamble Co.*, (November 5, 2013) No. 6:12-CV-00803 (M.D. Fla.):

*The proposed Class Notice and Claim Form are approved as to form and content. The Court finds that the content of the Class Notice and the Claim Form satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and due process and accordingly approves them…The Court finds that compliance with the Notice Plan is the best practicable notice under the circumstances and constitutes due and sufficient notice*

© 2015 KCC LLC
Proprietary and Confidential

*of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.*

**Honorable Jose L. Linares,** *In re Hypodermic Products Antitrust Litigation*, (November 4, 2013) No. 2:05-CV-01602 (D. N.J.):

*Upon reviewing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan and the Declarations of Karin E. Fisch, Esq. and Carla A. Peak and the documents attached thereto, it is hereby ORDERED, ADJUDGED AND DECREED as follows:…Proposed forms of Notice are attached hereto as Exhibit A. The Court finds that the form fairly and adequately: (i) describes the terms and effect of the Settlement Agreement and of the Settlement; (ii) notifies the Indirect Purchaser Class concerning the proposed plan of allocation and distribution; (iii) notifies the Indirect Purchaser Plaintiffs' Lead Counsel will seek attorneys' fees not to exceed one-third of the Settlement Fund, reimbursement of expenses and incentive fees; (iv) gives notice to the Indirect Purchaser Class of the time and place of the Fairness Hearing; and (v) describes how the recipients of the Notice may submit a claim, exclude themselves from the Settlement or object to any of the relief requested.*

**Judge Marilyn L. Huff,** *Beck-Ellman v. Kaz USA, Inc.*, (June 11, 2013) No. 3:10-cv-02134 (S. D. Cal.):

*The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order. The Publication Notice was designed to provide potential class members with information about the Settlement and their rights, in easy-to-comprehend language… The Notice Plan was specially developed to cause class members to see the Publication Notice or see an advertisement that directed them to the Settlement Website. KCC identified that the class members belong to a demographic group known as "Pain Relief Users." The Heating Pads are considered a Pain Relief product. The publications that KCC's Notice Plan used are publications and websites whose viewers and readers include a high percentage of Pain Relief product users…The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.*

**Judge Tom A. Lucas,** *Stroud v. eMachines, Inc.*, (March 27, 2013) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

*The Notices met the requirements of Okla. Stat. tit. 12 section 2023(C), due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto. All objections are stricken. Alternatively, considered on their merits, all objections are overruled.*

**Judge Marilyn L. Huff,** *Beck-Ellman v. Kaz USA, Inc.* (January 7, 2013) No. 3:10-cv-02134 (S. D. Cal.):

*The proposed Class Notice, Publication Notice, and Settlement Website*

© 2015 KCC LLC
Proprietary and Confidential

Exhibit A: Page 30 of 41

*are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances… Notice is written in easy and clear language, and provides all needed information, including: (I) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their rights to opt-out or object; (5) an explanation that any claims against Kaz that could have been litigated in this action will be released if the Class member does not opt out; (6) the names of Class Counsel and information regarding attorneys' fees; (7) the fairness hearing date and procedure for appearing; and (8) the Settlement Website and a toll free number where additional information, including Spanish translations of all forms, can be obtained. After review of the proposed notice and Settlement Agreement, the Court concludes that the Publication Notice and Settlement Website are adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.*

**Judge Tom A. Lucas,** ***Stroud v. eMachines, Inc.***, (December 21, 2012) No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.):

*The Plan of Notice in the Settlement Agreement as well as the content of the Claim Form, Class Notice, Post-Card Notice, and Summary Notice of Settlement is hereby approved in all respects. The Court finds that the Plan of Notice and the contents of the Class Notice, Post-Card Notice and Summary Notice of Settlement and the manner of their dissemination described in the Settlement Agreement is the best practicable notice under the circumstances and is reasonably calculated, under the circumstances, to apprise Putative Class Members of the pendency of this action, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Certified Settlement Class and, therefore, the Plan of Notice, the Class Notice, Post-Card Notice and Summary Notice of Settlement are approved in all respects. The Court further finds that the Class Notice, Post-Card Notice and Summary Notice of Settlement are reasonable, that they constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and that they meet the requirements of due process.*

**Honorable Michael M. Anello,** ***Shames v. The Hertz Corporation***, (November 5, 2012) No. 3:07-cv-02174 (S.D. Cal.):

*…the Court is satisfied that the parties and the class administrator made reasonable efforts to reach class members. Class members who did not receive individualized notice still had opportunity for notice by publication, email, or both…The Court is satisfied that the redundancies in the parties' class notice procedure—mailing, e-mailing, and publication—reasonably ensured the widest possible dissemination of the notice…The Court OVERRULES all objections to the class settlement…*

**Judge Ann D. Montgomery,** ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (July 9, 2012) No. 11-MD-2247 (D. Minn.):

*The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;…*

**Judge Ann D. Montgomery,** *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (June 29, 2012) No. 11-MD-2247 (D. Minn.):

*After the preliminary approval of the Settlement, the parties carried out the notice
program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each…The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.*

**Honorable Michael M. Anello,** *Shames v. The Hertz Corporation*, (May 22, 2012) No. 3:07-cv-02174 (S.D. Cal.):

*The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"), and finds that the e-mailing or mailing and distribution of the Notice and publishing of the Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.*

**Judge Anthony Powell,** *Molina v. Intrust Bank, N.A.*, (May 21, 2012) No. 10-CV-3686 (18th J.D. Ct., Kan.):

*The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these*

*proceeding to all persons entitled to such notice, and said notice fully satisfied the requirements of K.S.A. § 60-223 and due process.*

**Judge Ronald L. Bauer,** ***Blue Cross of California Website Securities Litigation****,* (April 5, 2012) No. JCCP 4647 (Super. Ct. Cal.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Person entitled to such notice, and said notice satisfied the requirements of California Rules of Court, Rule 3,766(e) and (f), and due process.*

**Judge Ann D. Montgomery,** ***In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation****,* (January 18, 2012) No. 11-MD-2247 (D. Minn.):

> *The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.*

**Judge Jeffrey Goering,** ***Molina v. Intrust Bank, N.A.****,* (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

> *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Charles E. Atwell,** ***Allen v. UMB Bank, N.A.****,* (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms*

© 2015 KCC LLC
Proprietary and Confidential

*and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell,** ***Allen v. UMB Bank, N.A.***, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

*The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel,** ***Ko v. Natura Pet Products, Inc.***, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):

*The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann,** ***Billieson v. City of New Orleans***, (May 27, 2011) No. 94-19231 (Civ. D. Ct. La.):

*The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak… IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson,** ***In re Department of Veterans Affairs (VA) Data Theft Litig.***, (February 11, 2009) MDL No. 1796 (D.C.):

*The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.*

**Judge Louis J. Farina,** ***Soders v. General Motors Corp.***, (December 19, 2008) No. CI-00-04255 (C.P. Pa.):

*The Court has considered the proposed forms of Notice to Class*

> *members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.*

**Judge Robert W. Gettleman,** *In Re Trans Union Corp.*, (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.*

**Judge William G. Young,** *In re TJX Companies*, (September 2, 2008) MDL No. 1838 (D. Mass.):

> *…as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge David De Alba,** *Ford Explorer Cases*, (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Kirk D. Johnson,** *Hunsucker v. American Standard Ins. Co. of Wisconsin*, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

> *Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class*

*in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.*

# Speaking Engagements

*Ethics in Legal Notification*, accredited CLE Program, Carla Peak & Patrick Ivie, presented in Philadelphia at Class Action Preservation Project (November 2014); Carla Peak & Robert DeWitte, presented in Philadelphia at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. (August 2014); Gina Intrepido-Bowden & Patrick Ivie, presented in Utah at The St. Regis Deer Valley Resort (March 2014); Gina Intrepido-Bowden, Carla Peak & Steven Weisbrot, presented in New York at Morgan Lewis & Bockius (December 2012).

*Big Shoulders and High Standards. Can Plaintiffs Scale the Third Circuit's New Ascertainability Wall?* AMERICAN BAR ASSOCIATION 18th Annual National Institute on Class Actions, Gina Intrepido-Bowden presenter/panelist (October 2014).

*The Ethics of Class Action Settlements*, CHICAGO BAR ASSOCIATION, Class Litigation Committee, Carla Peak presenter/panelist (June 2014).

*Pitfalls of Class Action Notice and Settlement Administration,* accredited CLE Program, Carla Peak and Robert DeWitte, presented in Miami at Harke Clasby & Bushman LLP (March 2014); PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013, Gina Intrepido-Bowden and Robert DeWitte presenters/panelists (July 2013).

*Designing a Settlement and Notice Program to Minimize Scrutiny and Objections,* AMERICAN CONFERENCE INSTITUTE (ACI), 16th National Conference on Consumer Finance Class Actions & Litigation, Gina Intrepido-Bowden presenter/panelist (July 2013).

*The Fundamentals of Settlement Administration* accredited CLE Program, Carla Peak and Steven Weisbrot, presented in Philadelphia at DLA Piper LLP (August 2013); Carla Peak and Robert DeWitte, presented in Illinois at Locke Lord LLP and broadcast to offices in California, Georgia, New York, Texas and London (April 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Skadden, Arps, Slate, Meagher & Flom LLP and Wexler Wallace LLP (January 2013); Gina Intrepido-Bowden and Robert DeWitte, presented in Illinois at Hinshaw & Culbertson LLP (October 2012); Gina Intrepido-Bowden and Rob Taylor-Manning, presented in Pennsylvania at Spector Roseman Kodroff & Willis, P.C. (December 2011).

*Class Action Settlement Administration Tips & Pitfalls on the Path to Approval* accredited CLE Program, Carla Peak, Gina Intrepido-Bowden & Robert DeWitte, presented in Illinois at Jenner & Block and broadcast to offices in Washington DC, New York and California (October 2012).

*Perspectives from Class Action Claims Administrators: Innovations in Notification*, CLE INTERNATIONAL, 8th Annual Class Actions Conference, Gina Intrepido-Bowden, presenter/panelist (May 2012).

*Innovations in Notification*, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar, Carla Peak, presenter (May 2012).

*Ethical Considerations in Canadian Class Actions*, accredited CLE Program, Gina Intrepido-Bowden and Robert Taylor-Manning, presented in Canada at Rochon Genova,

LLP (April 2012).

*Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium, Gina Intrepido-Bowden, presenter/panelist (October 2011).

*Legal Notice Ethics*, accredited CLE Program, Gina Intrepido-Bowden, Carla Peak & Elizabeth Grande, presented in New York at Cohen Milstein Sellers & Toll PLLC and Milberg LLP (May 2010), in Illinois at Miller Law LLC (May 2010), in Pennsylvania at Berger & Montague, P.C., Anapol Schwartz, Lundy Law, and Dechert LLP, which was broadcast to offices in California, New Jersey, New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010), and in Minnesota at Heins Mills & Olson, P.L.C., Lockridge Grindal Nauen P.L.L.P., and Chestnut Cambronne (January 2011).

*Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, accredited CLE Program, Brian Christensen, Gina Intrepido & Richard Simmons, presented to Kansas Bar Association (March 2009).

# Articles

Carla Peak and Steven Weisbrot. *How to Design Your Notice to Minimize Professional Objectors,* Class Action Lawsuit Defense: Class Action Defense News, Developments and Commentary provided by BakerHostetler ([www.classactionlawsuitdefense.com](www.classactionlawsuitdefense.com)) (July 20, 2012).

Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011).

John B. Isbister, Todd B. Hilsee & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

# Legal Notice Case Examples

Following is a list of cases in which our expert(s) have been involved in the design and

© 2015 KCC LLC
Proprietary and Confidential

implementation of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp. (Extended Viewing Fees)* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |

© 2015 KCC LLC
Proprietary and Confidential

| | |
|---|---|
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., 1:03-md-01539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., 1:04-md-01653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |

| | |
|---|---|
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |
| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Associates, Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of Veterans Affairs (VA) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 3:08-md-1998 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| *Ko v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvarez v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn, MDL No. 2247 |
| *Shames v. The Hertz Corporation* | S.D. Cal., No. 07cv2174-MMA |
| *Stroud v. eMachines, Inc.* | D. Ct. Cleveland Cnty, Okla., No. CJ-2003-968-L |
| *Holman v. Experian Information Solutions, Inc.* | N.D. Cal., No. 4:11cv00180 |
| *Beck-Ellman v. Kaz USA Inc.* | S.D. Cal., No. 10-cv-2134 |
| *Lee v. Stonebridge Life Insurance Company* | N.D. Cal., No. 3:11-cv-00043 |
| *Steinfeld v. Discover Financial Services* | N.D. Cal., No. 3:12-cv-01118 |

| | |
|---|---|
| *Cappalli v. BJ's Wholesale Club, Inc.* | D. R.I., No. 1:10-cv-00407 |
| *Poertner v. The Gillette Co. and The Procter & Gamble Co.* | M.D. Fla., No. 6:12-cv-00803 |
| *In re Hypodermic Products Antitrust Litigation* | D. N.J., No. 2:05-cv-01602 |
| *McCrary v. The Elations Company, LLC* | C.D. Cal., No. 13-cv-00242 |
| *Lerma v. Schiff Nutrition International, Inc.* | S.D. Cal., No. 3:11-cv-01056 |
| *Charles v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2697-11 |
| *Kai v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2834-12 |
| *Roberts v. Electrolux Home Products, Inc.* | C.D. Cal., No. 8:12-cv-01644 |
| *Demereckis v. BSH Home Appliances Corporation* (Certification) | C.D. Cal., No. 8:10-cv-00711 |
| *In re Skelaxin (Metaxalone) Antitrust Litigation* | E.D. Ten., MDL 2343, No. 1:12-cv-194 |
| *Demmick v. Cellco Partnership d/b/a Verizon Wireless* | D. Ct. N.J., No. 06-cv-2163 |
| *Cobb v. BSH Home Appliances Corporation* | C.D. Cal., No. 8:10-cv-00711 |
| *Fond du Lac Bumper Exchange Inc. v. Jui Li Enterprise Co. Ltd.* | E.D. Wis., No. 2:09-cv-00852 |

Following is a list of cases in which our expert(s) were involved with a critique of the notice program and/or notices:

| | |
|---|---|
| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J., No. 02-CV-235958CP/No. 02-CV-238276 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |
| *Clark v. Pfizer, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx Office and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |
| *In re Vitamin C Antitrust Litigation* | E.D. N.Y., No. 1:06-md-1738 |

© 2015 KCC LLC
Proprietary and Confidential

# Exhibit A-1

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

# If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.

*A federal Court authorized this Notice. It is not a solicitation from a lawyer.*

- A Settlement has been reached with Lennox Industries Inc. ("Lennox") in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or a heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

- You may be included in the Settlement Class if you are a United States resident who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty ("Original Coils"), for your personal, your family, or your household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States ("Settlement Class Members"). Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning packaged unit or heat pump packaged unit ("Packaged Unit").

- Your rights are affected whether you act or don't act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way you can get benefits from the Settlement. If you submit a Claim Form, you will give up the right to sue Lennox in a separate lawsuit about the claims this Settlement resolves. |
| **ASK TO BE EXCLUDED** | If you decide to exclude yourself, you will keep the right to sue Lennox in a separate lawsuit about the claims this Settlement resolves, but you give up the right to get the benefits that this Settlement provides. This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Lennox related to the legal claims in this case. |
| **OBJECT TO THE SETTLEMENT** | If you do not exclude yourself from the Settlement, you may object to it by writing to the Court with the reasons why you don't like it. |
| **GO TO A HEARING** | You may object to the Settlement and ask the Court for permission to speak at the fairness hearing about your objection. |
| **DO NOTHING** | If you are a Settlement Class Member, you are automatically part of the Settlement. If you do nothing, you will not get the benefits that this Settlement provides and you will give up the right to sue, continue to sue, or be part of another lawsuit against Lennox about the legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

QUESTIONS? CALL 1-___-___-_____ TOLL-FREE OR VISIT www._____.com

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .PAGE 3
1. Why was this Notice issued?
2. What is this lawsuit about?
3. What is a class action?
4. Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
5. How do I know whether I am part of the Settlement?
6. How do I know if I am a Settlement Class Member?
7. Are there exceptions to being included?
8. What if I am still not sure whether I am part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4
9. What does the Settlement provide?
10. How do I know if I am eligible for Settlement benefits?
11. What benefits am I eligible for under the Expanded Warranty and Reimbursement Program?
12. Tell me more about the Replacement Coil Warranty.
13. Does the Settlement provide any other benefits?

**HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM** . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
14. How do I get benefits?
15. When would I get the Settlement benefits?
16. I am an Authorized Claimant, how do I redeem and obtain Settlement benefits?
17. What rights am I giving up to get benefits and stay in the Settlement Class?
18. What are the Released Claims?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
19. How do I get out of the Settlement?
20. If I exclude myself, can I still get benefits from this Settlement?
21. If I do not exclude myself, can I sue Lennox for the same claims later?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 8
22. Do I have a lawyer in this case?
23. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 8
24. How do I tell the Court that I do not like the Settlement?
25. What is the difference between objecting to the Settlement and asking to be excluded from it?

**THE COURT'S FINAL APPROVAL HEARING**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 9
26. When and where will the Court decide whether to approve the Settlement?
27. Do I have to come to the hearing?
28. May I speak at the hearing?

**IF YOU DO NOTHING**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 9
29. What happens if I do nothing at all?

**GETTING MORE INFORMATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .PAGE 9
30. How do I get more information?

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

# BASIC INFORMATION

### 1. Why was this Notice issued?

A federal Court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, and who can get them.

Judge Sara L. Ellis of the United States District Court for the Northern District of Illinois, Eastern Division, is overseeing this class action. The case is known as *Thomas v. Lennox Industries Inc.*, Case No. 1:13-cv-07747. The people who filed this lawsuit are called the "Plaintiffs" and the company they sued, Lennox Industries Inc. ("Lennox"), is called the "Defendant."

### 2. What is this lawsuit about?

The Plaintiffs claim that Lennox manufactures and sells air conditioning systems and heat pump systems, including air handlers and Packaged Units, ("Lennox ACs" or "ACs") containing defective evaporator coils that corrode and leak refrigerant. They claim that the evaporator coils, which are made using copper tubing, are susceptible to formicary corrosion (caused by a chemical reaction requiring certain volatile organic compounds, water, heat, and the copper tubes) that causes microscopic tunnels to form within the tubing and the coils to leak refrigerant. They further claim that Lennox: (1) knew or should have known about the defective evaporator coils; (2) should have informed its customers about the defective evaporator coils; (3) should have manufactured its ACs with evaporator coils made with coated copper or aluminum tubing; and (4) should have replaced the defective evaporator coils rather than the refrigerant in the unit when the coils leaked.

Lennox denies all of the claims and allegations made in the lawsuit and denies that it acted improperly.

### 3. What is a class action?

In a class action, one or more people called Plaintiffs or Class Representatives (in this case, Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis) sue on behalf of other people who have similar claims. The people included in the class action are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or Lennox. Instead, both sides agreed to a Settlement. This way, they avoid the cost and burden of further litigation and a trial and the people affected can get benefits. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

# WHO IS INCLUDED IN THE SETTLEMENT

### 5. How do I know whether I am part of the Settlement?

The Settlement Class includes all United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coil, covered by an Original Warranty, for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States.

Original Coils may have been purchased separately, as part of an air handler, or they may have been included as part of a Packaged Unit.

### 6. How do I know if I am a Settlement Class Member?

To confirm that you are a Settlement Class Member you may want to review the manufacturer's limited warranty or manufacturer's extended limited warranty that was provided by Lennox or Allied Air Enterprises LLC when you purchased the AC to confirm that the coil was covered by the Original Warranty. You may also want to look at your purchase or installation receipt to confirm that your AC was purchased between October 29, 2007 and [insert Preliminary Approval Date] and is one of the brands listed above.

The picture below illustrates where the evaporator coil typically is located inside the AC, although configurations vary depending on the structure and location of your home and where the AC is placed inside your home.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

3



Outside the House          Inside the House

### 7. Are there exceptions to being included?

Yes. The Settlement excludes: (1) the judge assigned to this case and any member of her immediate family; (2) the lawyers involved in this case and any members of their immediate families; (3) the Honorable Richard Neville and any member of his immediate family, and the Honorable Edward Infante and any member of his immediate family; and (4) the government of, and each department of the United States, the District of Columbia, each of the 50 States, each county, city, municipality and town within each of the 50 States, and each other political subdivision of the United States, the District of Columbia, and each of the 50 States.

### 8. What if I am still not sure whether I am part of the Settlement?

If you are not sure whether you are included, call 1-___-___-____, go to www._____.com, send an email to _____@_____.com or write to one of the lawyers listed in Question 22 below.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

### 9. What does the Settlement provide?

The Settlement provides an Expanded Warranty and Reimbursement Program to Settlement Class Members that submit a timely and valid Claim Form. The Expanded Warranty and Reimbursement Program includes: (1) a one-time $75 service rebate; (2) an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; (3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and (4) up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement. Expanded Warranty and Reimbursement Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

### 10. How do I know if I am eligible for Settlement benefits?

All Settlement Class Members are eligible for coverage under an Expanded Warranty and Reimbursement Program. To receive any benefits the Settlement Class Member must be an Authorized Claimant, which means they have submitted a timely and valid Claim Form. The deadlines for submission of Claim Forms vary by circumstance, and are explained below. Each Authorized Claimant will receive a certificate (the "Certificate") describing the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits.

### 11. What benefits am I eligible for under the Expanded Warranty and Reimbursement Program?

For each Authorized Claimant who replaced or replaces an Original Coil because of a coil leak within five years after installation of the Original Coil, the Authorized Claimant will receive the following benefits as applicable under the Expanded Warranty and Reimbursement Program:

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

4

- **$75 Service Rebate.** If you replace or have previously replaced your Original Coil due to a coil leak within five years of installation of the Original Coil, you can receive a one-time $75 Service Rebate for service, including routine maintenance, performed after the date the rebate is issued on the Replacement Coil (the evaporator coil that was installed to replace your Original Coil) or on any Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand HVAC products installed in the same residence as the Replacement Coil. Timely and valid submission of proof of replacement of your Original Coil is required before the Service Rebate Certificate will be issued. The Service Rebate will be available for one year from the date the Rebate Certificate is issued. **To redeem this rebate once it has been issued, you must provide proof of service and the date the service was received within 60 days of the date the service was performed.** On timely receipt of valid proof of service, Lennox will send the Claimant a check for $75.

- **Coil Replacements AFTER [insert the Preliminary Approval Date].** If you did <u>not</u> replace the Original Coil by [insert the Preliminary Approval Date] and subsequently experienced or experience a leak that required or requires a coil replacement:

  o **First Coil Replacement.** You will be eligible to receive a Replacement Coil at no charge for the Replacement Coil itself as part of the Original Warranty ("First Replacement Coil"). If the First Replacement Coil is installed more than one year but equal to or less than five years after the Original Coil was installed, you may also become eligible for retroactive reimbursement for labor and refrigerant for installation of that First Replacement Coil if that First Replacement Coil is later replaced (*see* Retroactive Reimbursement for First Coil Replacement below).

  o **Additional Coverage for Replacement Coil.** If you received or receive an uncoated copper tube evaporator coil as the First Replacement Coil, you will be eligible for a five-year part and labor warranty on that coil (the "Replacement Coil Warranty"). This Replacement Coil Warranty is in addition to, and may provide coverage for a longer period of time than, your Original Warranty. **To be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form and you must follow the instructions in the Certificate that will be sent to you.**

  o **Replacement Coil Leak.** If the Replacement Coil that is covered by the Replacement Coil Warranty leaks and requires replacement within the five-year Replacement Coil Warranty period, you will be eligible to receive a coated copper or aluminum tube Replacement Coil (as determined by Lennox) at no charge for the Second Replacement Coil itself <u>and</u> up to $550 as reimbursement for the costs of labor and refrigerant to install the Second Replacement Coil. **You must notify Lennox as specified in the Certificate to arrange for provision of the coated copper or aluminum tube Replacement Coil.** Reimbursement will be made only if you use an independent Lennox dealer to install the Replacement Coil <u>and</u> you provide an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant. Independent Lennox dealers are listed at www.lennox.com. **To receive reimbursement, proof of payment must be submitted online or postmarked no later than 60 days after the installation of the coated copper or aluminum tube Replacement Coil.** You may also be eligible for retroactive reimbursement for installation of the First Replacement Coil (*see* Retroactive Reimbursement for First Coil Replacement below).

- **Original Coil Replacements ON OR BEFORE [insert the Preliminary Approval Date].** If you previously replaced the Original Coil due to a coil leak within five years of its installation (and under the Original Warranty) on or before [insert the Preliminary Approval Date]:

  o **First Coil Replacement.** If you replaced the Original Coil for the first time more than one year but equal to or less than five years after the Original Coil was installed, you may be or become eligible for retroactive reimbursement for labor and refrigerant for installation of that First Replacement Coil if that First Replacement Coil was or is replaced (*see* Retroactive Reimbursement for First Coil Replacement below).

  o **Subsequent Coil Replacements.** If you replaced a Replacement Coil with an uncoated copper tube Replacement Coil once or more than once, you will be eligible to receive up to $550 as reimbursement for the costs of labor and refrigerant incurred for <u>each</u> coil replacement that occurred after installation of the First Replacement Coil and on or before [insert the Preliminary Approval Date]. **To be reimbursed you must submit a timely and valid Claim Form that includes an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant.**

  o **Additional Coverage for Most Recent Replacement Coil.** If you replaced an Original Coil or a Replacement Coil with an uncoated copper tube Replacement Coil on or before [insert the Preliminary Approval Date], you will be eligible for the five-year Replacement Coil Warranty on the most recent

Replacement Coil. The Replacement Coil Warranty is retroactive and covers the previously installed Replacement Coil for five years from the date it was installed. **To be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form <u>and</u> follow the instructions in the Certificate that will be sent to you.**

o **Replacement Coil Leak after [insert the Preliminary Approval Date].** If the Replacement Coil that is covered by the Replacement Coil Warranty leaks and requires replacement after [insert the Preliminary Approval Date] and within the five-year Replacement Coil Warranty period, you will be eligible to receive a coated copper or aluminum tube Replacement Coil (as determined by Lennox) at no charge for the Replacement Coil itself and up to $550 as reimbursement for the costs of labor and refrigerant to install the coated copper or aluminum tube Replacement Coil. **You must notify Lennox as specified in the Certificate to arrange for provision of the coated copper or aluminum tube Replacement Coil.** Reimbursement will be made only if you use an independent Lennox dealer to install the Replacement Coil <u>and</u> you provide an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant. Independent Lennox dealers are listed at <u>www.lennox.com</u>. **To receive reimbursement proof of payment must be submitted online or postmarked no later than 60 days after the installation of the coated copper or aluminum tube Replacement Coil.** You may also be eligible for retroactive reimbursement for installation of the First Replacement Coil (*see* Retroactive Reimbursement for First Coil Replacement below).

- **Retroactive Reimbursement for First Coil Replacement.** If you replaced the Original Coil for the first time over a year after the date the Original Coil was installed and received an uncoated copper tube Replacement Coil that is later replaced, you will be eligible for reimbursement up to $550 for the costs of labor and refrigerant for the replacement of the Original Coil. Reimbursement will only be made if you provide an itemized invoice or receipt, and proof of payment, or other evidence showing the amount charged and the amount paid for labor and refrigerant to replace the Original Coil. If the second coil replacement occurs after the Settlement becomes final, the second replacement must be made under the Replacement Coil Warranty for you to be eligible for this retroactive reimbursement for installation of your First Replacement Coil.

### 12. Tell me more about the Replacement Coil Warranty.

The Replacement Coil Warranty will be in effect for five years after the date of installation of the Replacement Coil covered by the Replacement Coil Warranty, or until you receive a coated copper or aluminum tube Replacement Coil, whichever occurs first. Although the five-year Replacement Coil Warranty may be retroactive to a previous installation date, in order to be covered by the Replacement Coil Warranty you must submit a timely and valid Claim Form and you must follow the instructions in the Certificate that will be sent to you. The Replacement Coil Warranty only applies to the covered Replacement Coil. It is not transferrable to other coils, other ACs, or heat pump systems. You are not eligible for the Replacement Coil Warranty if you receive a coated copper or aluminum tube Replacement Coil.

### 13. Does the Settlement provide any other benefits?

Yes, Lennox has also agreed to prepare and disseminate information about the possible risk that formicary corrosion may occur in uncoated copper tube evaporator coils under certain conditions.

## HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

### 14. How do I get benefits?

**You must complete and submit a Claim Form by the later of Month __, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil** to obtain coverage under the Expanded Warranty and Reimbursement Program and to request benefits for which you may be eligible as of the date you submit your Claim Form. Follow all of the Claim Form instructions and include the required supporting documentation. Once your Claim Form has been processed and approved, you will be sent a Certificate explaining the benefits and rights under the Expanded Warranty and Reimbursement Program and providing instructions about when and how to redeem and obtain such benefits. **To redeem and obtain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms**, as explained in the Certificate, with information and supporting documentation that were not already included in the Claim Form. Claim Forms and Request for Benefits Forms may be accessed and submitted online or downloaded for printing and submission via U.S. Mail at www._____.com. Claim Forms and Request for Benefits Forms are also available by calling 1-___-___-____ or by writing to *Thomas v. Lennox Industries Inc.* Settlement Administrator, PO Box _____, City, ST _____-____.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

6

### 15. When would I get the Settlement benefits?

The Court will hold a hearing at __:_0 _.m. on Month __, 2015 to decide whether to grant final approval of the Settlement. If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement benefits will be provided to Authorized Claimants as soon as possible, if and when approval of the Settlement becomes final. There is one exception. If you have become an Authorized Claimant by submitting a timely and valid Claim Form, and you become eligible for a coated copper tube or aluminum tube Replacement Coil under the Expanded Warranty and Reimbursement Program before approval of the Settlement has become final, and you notify Lennox as specified in the Certificate, Lennox will provide the Replacement Coil at that time, even though approval of the Settlement has not become final.

### 16. I am an Authorized Claimant, how do I redeem and obtain the Settlement benefits?

To redeem and obtain benefits under the Expanded Warranty and Reimbursement Program for which you may first become eligible after submission of your Claim Form, you must complete and submit follow-up Request for Benefits Forms, as explained in the Certificate, with information and supporting documentation that were not already included in the Claim Form. More information on when and how to submit a Claim Form and Request for Benefits Forms is provided above.

### 17. What rights am I giving up to get benefits and stay in the Settlement Class?

Unless you exclude yourself, you are staying in the Settlement Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You won't be able to sue, continue to sue, or be part of any other lawsuit against Lennox and related parties about the legal issues in this case, but you will be able to submit a Claim Form to receive benefits from this Settlement. The specific rights you are giving up are called Released Claims.

### 18. What are the Released Claims?

Generally, if and when the Settlement Agreement becomes final, Settlement Class Members will permanently release Lennox and all related people (such as retailers, distributors, and dealers) from all manner of claims (except personal injury claims) which are based upon, arise out of, or involve any matters relating to Lennox brand, Aire-Flo brand, Armstrong Air brand, AirEase brand, Concord brand, or Ducane brand evaporator coils originally purchased during the Settlement Class period or any of the allegations in this lawsuit.

Definitions 41 and 42 of Section IV.B of the Settlement Agreement, available at www._____.com, describe the specific claims and parties you will be releasing, so read it carefully. If you have any questions you can talk to the law firms listed in Question 22 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Lennox about the legal claims in this case, and you do not want to receive benefits from this Settlement, you must take steps to get out of the Settlement. This is called excluding yourself, or opting out of the Settlement.

### 19. How do I get out of the Settlement?

To be excluded from the Settlement Class, you must mail a written request for exclusion to the Settlement Administrator. Your request for exclusion must include: (1) your full name, current mailing address and current day and evening phone numbers; (2) the name of this case, *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747; (3) a statement such as "I request to be excluded from the Settlement Class in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.); and (4) your signature. Your request for exclusion must be mailed to the Settlement Administrator at the address below and underlined postmarked no later than **Month __, 2015**:

*Thomas v. Lennox Industries Inc.,* Settlement Administrator
P.O. Box ____
City, ST _____-____

### 20. If I exclude myself, can I still get benefits from this Settlement?

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Settlement Class in this Settlement. You can only get benefits if you stay in the Settlement Class and submit a timely and valid Claim Form.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE OR VISIT www._____.com

**21. If I do not exclude myself, can I sue Lennox for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue Lennox and other Released Parties for the claims that this Settlement resolves. You must exclude yourself from *this* lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Lennox about the legal issues in this case.

## THE LAWYERS REPRESENTING YOU

**22. Do I have a lawyer in this case?**

Yes. Judge Sara L. Ellis has appointed a number of lawyers to represent you and all other Settlement Class Members as "Class Counsel." They include:

| | |
|---|---|
| Jonathan Shub<br>Neil Glazer<br>Kohn Swift & Graf, P.C.<br>One South Broad Street, Suite 2100<br>Philadelphia, Pennsylvania 19107 | Jeff Leon<br>Quantum Legal Group, LLC<br>513 Central Avenue, Suite 300<br>Highland Park, Illinois 60035 |

These lawyers and their firms are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**23. How will the lawyers be paid?**

Class Counsel will ask the Court for up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each of the Class Representatives. If approved, all of these amounts, as well as the costs associated with administering the Settlement, will be paid separately by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

The application for an award of attorneys' fees and reimbursement of costs and expenses and for service awards will be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 no later than Month __, 2015. It will also be available at www._____.com.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the Settlement or any part of it.

**24. How do I tell the Court that I do not like the Settlement?**

If you are a Settlement Class Member, you can object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via First Class U.S. Mail saying that you object to the Settlement of *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.). Your objection must also include: (1) your full name; (2) your current mailing address; (3) your current day and evening telephone number; (4) proof that you are a Settlement Class Member; (5) the reasons why you object to the Settlement, including any documents you would like the Court to consider and any evidence you may present at the Final Approval Hearing (*see* Question 26); and (6) your signature. Mail your objection to the Clerk of the Court and the Settlement Administrator underlined postmarked on or before **Month __, 2015**.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the United States District Court for the<br>Northern District of Illinois, Eastern Division<br>Everett McKinley Dirksen United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 | *Thomas v. Lennox Industries Inc.,*<br>Settlement Administrator<br>P.O. Box _____<br>City, ST _____-_____ |

If you object, you may be deposed by Class Counsel and Defense Counsel in the county of your residence.

**25. What is the difference between objecting to the Settlement and asking to be excluded from it?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class (do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you cannot object because the Settlement no longer affects you.

QUESTIONS? CALL 1-___-___-_____ TOLL-FREE OR VISIT www._____.com

8

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

### 26. When and where will the Court decide to approve the Settlement?

The Court will hold a Final Approval Hearing at __:_0_.m. on ____day, Month __, 2015 at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. It will also consider whether to approve Class Counsel's application for an award of attorneys' fees, costs and expenses, as well as the Class Representatives' service awards. If there are objections, the Court will consider them. Judge Sara L. Ellis will listen to people who have asked to speak at the hearing (*see* Question 28 below). After the hearing, the Court will decide whether to approve the Settlement.

### 27. Do I have to come to the hearing?

No. Class Counsel will answer any questions Judge Sara L. Ellis may have. However, you are welcome to come to the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time and include the information set forth above (*see* Question 24), the Court will consider it. You may also pay your own lawyer to attend, but that is not necessary.

### 28. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file a written notice with the Court saying that it is your "Notice of Intent to Appear at the Final Approval Hearing in *Thomas v. Lennox Industries Inc.*, Case No. 1:13-CV-07747 (N.D. Ill.)." You must include your full name, current mailing address, current day and evening telephone number, and your signature. If you plan to have your own attorney speak for you at the hearing, you must also include the name, address, and telephone number of the attorney who will appear. Your written notice must be mailed to the Clerk of the Court and the Settlement Administrator postmarked on or before **Month __, 2015**.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the United States District Court for the Northern District of Illinois, Eastern Division Everett McKinley Dirksen United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | *Thomas v. Lennox Industries Inc.*, Settlement Administrator P.O. Box ____ City, ST _____-____ |

## IF YOU DO NOTHING

### 29. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in Question 18, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lennox and the other Released Parties about the legal issues in this case. In addition, if you do not file a valid Claim Form within the applicable time periods described above you will not receive any of the benefits that this Settlement provides.

## GETTING MORE INFORMATION

### 30. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www._____.com, by calling 1-___-___-____, or by writing to the Settlement Administrator *Thomas v. Lennox Industries Inc.*, Settlement Administrator P.O. Box ____, City, ST _____-____, or by sending an email to _____@_____.com.

# Exhibit A-2

Legal Notice

# If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.

A Settlement has been reached with Lennox Industries Inc. ("Lennox") in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

**Who's included?** United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty ("Original Coil"), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning or heat pump packaged unit.

**What does the Settlement provide?** The Settlement provides an Expanded Warranty and Reimbursement Program (the "Program") to Settlement Class Members that submit a timely and valid Claim Form. The Program includes: (1) a one-time $75 service rebate; (2) an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; (3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and (4) up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement. Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

**How do I get Settlement benefits?** You must submit a Claim Form by the later of **Month __, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil** to obtain coverage under the Program and to request benefits for which you may be eligible as of the date you submit your Claim Form. Follow all of the Claim Form instructions and include the required documentation. If your Claim Form is approved, you will be sent a Certificate explaining the benefits and rights under the Program, and instructions about when and how to redeem these benefits. To redeem benefits for which you may first become eligible after submission of your Claim Form, you must submit Request for Benefits Forms with information and supporting documentation that were not already included with the Claim Form. Claim Forms and Request for Benefits Forms may be accessed and submitted online or downloaded for submission via U.S. Mail at www._____.com. Claim Forms and Request for Benefits Forms are also available by calling 1-____-___-____ or by writing to Thomas v. Lennox Industries Inc., Settlement Administrator, PO Box _____, City, ST ____-____.

**Who represents me?** The Court has appointed Kohn Swift & Graf, P.C., Quantum Legal Group, LLC, and Seeger Weiss LLP as Class Counsel. You do not have to pay Class Counsel or anyone else to participate. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Your other options.** If you are in the Settlement Class and you do nothing, your rights will be affected and you won't get any Settlement benefits. If you don't want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **Month 00, 2015**. Unless you exclude yourself, you won't be able to sue or continue to sue Lennox for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the Settlement, you may object to the Settlement or give notice of intent for you or your own lawyer to appear at the final approval hearing—at your own expense—but you don't have to. Objections and notices of intent to appear are due by **Month 00, 2015**.

**The Final Approval Hearing.** The Court will hold a hearing on **Month 00, 2015** to consider whether to approve the Settlement, and a request of up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each Class Representative (Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis). If approved, these amounts, and the costs of administering the Settlement, will be paid by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

**Want More Information?** Call 1-____-___-____, go to www._____. com, write to Thomas v. Lennox Industries Inc., Settlement Administrator, P.O. Box _____, City, ST _____-____, or email ____@_____.com.

**1-___-___-___**          **www._____.com**

# Exhibit A-3

LEGAL NOTICE

**If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, your rights may be affected and you could get benefits from a class action settlement.**

1-___-___-____
www._____.com
_____@_____.com

**Thomas v. Lennox Industries Inc.
Settlement Administrator**
P.O. Box xxxx
City, ST xxxxx-xxxx

First-Class
Mail
US Postage
Paid
Permit #

«Barcode»
Postal Service: Please do not mark barcode

Claim #: LXT -«ClaimID» «MailRec»

«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «ST» «Zip»
«Country»

# LXT

Exhibit A-3: Page **1** of **2**

A Settlement has been reached with Lennox Industries Inc. ("Lennox") in a class action lawsuit about whether it manufactured and sold defective evaporator coils. An evaporator coil is a part of an air conditioning system or heat pump system in the cooling mode. The evaporator coil is located inside your house and its primary function is to remove heat from the air. Lennox denies all of the claims in the lawsuit, but has agreed to the Settlement to avoid the cost and risk of further litigation and trial.

**Who's included?** Warranty records show that you are likely included. Specifically, the Settlement Class includes all United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by an Original Warranty ("Original Coil"), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning or heat pump packaged unit.

**What does the Settlement provide?** The Settlement provides an Expanded Warranty and Reimbursement Program (the "Program") to Settlement Class Members that submit a timely and valid Claim Form. The Program includes: (1) a one-time $75 service rebate; (2) an aluminum tube or coated copper tube Replacement Coil after the first coil replacement; (3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and (4) up to $550 as reimbursement for labor and refrigerant charges for each coil replacement after the first replacement. Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual Settlement Class Members.

**How do I get Settlement benefits?** You must submit a Claim Form by the later of **Month __, 2015 or 60 days after your Original Coil is replaced by installation of a Replacement Coil** to obtain coverage under the Program and to request benefits for which you may be eligible as of the date you submit your Claim Form. Follow all of the Claim Form instructions and include the required documentation. If your Claim Form is approved, you will be sent a Certificate explaining the benefits and rights under the Program, and instructions about when and how to redeem these benefits. To redeem benefits for which you may first become eligible after submission of your Claim Form, you must submit Request for Benefits Forms with information and supporting documentation that were not already included with the Claim Form. Claim Forms and Request for Benefits Forms may be accessed and submitted online or downloaded for submission via U.S. Mail at www._____.com. Claim Forms and Request for Benefits Forms are also available by calling 1-___-___-____ or by writing to Thomas v. Lennox Industries Inc., Settlement Administrator, PO Box _____, City, ST _____-____.

**Who represents me?** The Court has appointed Kohn Swift & Graf, P.C., Quantum Legal Group, LLC, and Seeger Weiss LLP as Class Counsel. You do not have to pay Class Counsel or anyone else to participate. If you want to be represented by your own lawyer, you may hire one at your own expense.

**Your other options.** If you are in the Settlement Class and you do nothing, your rights will be affected and you won't get any Settlement benefits. If you don't want to be legally bound by the Settlement, you must exclude yourself from the Settlement by **Month 00, 2015**. Unless you exclude yourself, you won't be able to sue or continue to sue Lennox for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the Settlement, you may object to the Settlement or give notice of intent for you or your own lawyer to appear at the final approval hearing—at your own expense—but you don't have to. Objections and notices of intent to appear are due by **Month 00, 2015**.

**The Final Approval Hearing.** The Court will hold a hearing on **Month 00, 2015** to consider whether to approve the Settlement, and a request of up to $1,250,000 to pay for attorneys' fees, costs and expenses, which includes $2,500 service awards to each Class Representative (Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis). If approved, these amounts, and the costs of administering the Settlement, will be paid by Lennox and will not reduce the amount of Settlement benefits available to Settlement Class Members.

Exhibit A-3: Page **2** of **2**

# Exhibit A-4

## **Dealer Notice**

As you may be aware, Lennox Industries Inc. has agreed to settle a class action lawsuit about whether it manufactured and sold defective evaporator coils. Some of your customers may be entitled to benefits if the settlement is approved.

The lawsuit claims that the evaporator coils made using copper tubing are defective because they are susceptible to formicary corrosion (the result of a chemical reaction requiring copper, water, and organic acids). Lennox denies all of the claims and allegations made in the lawsuit. Lennox maintains that the occurrence of formicary corrosion is rare, and when it does occur, it is typically the result of concentrations of various chemicals found and used in homes, including construction materials and household cleaners. No one has found that Lennox has done anything wrong. However, Lennox opted to settle the lawsuit to avoid further expense, burden and business distraction.

The parties to the lawsuit have jointly sought court approval of the settlement. On [Month] XX, 2015, the Court preliminarily approved the settlement. The parties now will notify potential settlement class members of their rights under the settlement. These rights include the right to make a claim, object to the settlement, or opt out of the settlement. Notice will be made through a variety of methods, including direct mail to potential settlement class members whose names and addresses are known to Lennox, publication in magazines, and banners on websites.

Generally, with some exceptions, the settlement class includes United States residents who, between October 29, 2007 and [insert Preliminary Approval Date], purchased at least one new uncoated copper tube Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand evaporator coil, covered by a manufacturer's limited warranty ("Original Coils"), for their personal, their family, or their household purposes, that was installed in a house, condominium unit, apartment unit, or other residential dwelling located in the United States. Original Coils may have been purchased separately, as part of an air handler, or as part of an air conditioning packaged unit or heat pump packaged unit.

The Court will hold a final hearing on [Month] XX, 2015, to consider whether to finally approve the settlement. If it is approved, the settlement provides an Expanded Warranty and Reimbursement Program to settlement class members who submit a timely and valid claim form. The Expanded Warranty and Reimbursement Program includes:

(1) a one-time $75 service rebate;
(2) an aluminum tube or coated copper tube replacement coil after the first replacement;
(3) up to $550 as a retroactive reimbursement for labor and refrigerant charges for the replacement of the Original Coil in the event there is more than one coil replacement; and
(4) up to $550 as reimbursement for labor and refrigerant charges for each uncoated copper tube coil replacement after the first replacement.

Expanded Warranty and Reimbursement Program benefits require replacement of an Original Coil due to a coil leak within five years after installation and will vary by individual settlement class members.

If a consumer contacts you regarding the settlement, please refer them to (XXX) XXX-XXXX or www.XXXXXXX.com, where more detailed information about the settlement is available. It is important that consumers receive information through the Court-approved processes, so please do not refer consumers directly to Lennox.

We are pleased that this matter is nearing resolution. If you have any questions, please contact [ADD].

# Exhibit A-5

## Internet Banners

1. Leaderboard—728 x 90 pixel

If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.



www.SettlementWebsite.com

2. Medium Rectangle—300 x 250 pixel

If you own a Lennox, Aire-Flo, Armstrong Air, AirEase, Concord, or Ducane brand residential air conditioning or heat pump system, you could get benefits from a class action settlement.



www.SettlementWebsite.com

3. Wide Skyscraper—160 x 600 pixel