IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT THOMAS, SCOTT PATRICK HARRIS, MICHAEL BELL, SANDRA PALUMBO, FRANK KARBARZ, and THOMAS DAVIS on behalf of Themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>LENNOX INTERNATIONAL, INC.,<br><br>    Defendant. | Case No. 1:13-cv-07747<br><br>Hon. Sara L. Ellis<br><br>Class Action |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
<u>COSTS, AND INCENTIVE AWARDS</u>**

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................... 1

**ARGUMENT** ...................................................................................................................... 2

    I.    **CLASS COUNSEL'S UNOPPOSED FEE REQUEST IS REASONABLE AND SHOULD BE GRANTED** ............................................................................. 2

        A.    The Fee Requested Was the Product of Negotiation Which is Strongly Encouraged in This Circuit. ....................................................................... 4

        B.    The Parties Negotiated the Process From Which the Fee Resulted Was Proper As It Was Negotiated at Arms-Length and Only After the Negotiation of the Class Benefit Had Been Concluded .......................... 5

        C.    The Requested Fee is Reasonable Under Either the Lodestar or Common Value Approaches. ...................................................................... 6

            1.    Class Counsel Performed Substantial Work on Behalf of the Class, and The Requested Fee Actually Results in a Negative Multiplier. ........................................................................................ 6

            2.    The Requested Fees Represent Only a Small Percentage of the Common Benefit Provided to the Class — Well Below Market and the Range that has Been Found Reasonable by the Courts. ............................................................................................... 10

        D.    Class Counsel Should Be Reimbursed For Their Reasonably Incurred Litigation Expenses. ................................................................................ 12

    II.    **THE REQUESTED INCENTIVE AWARDS TO THE REPRESENTATIVE PLAINTIFFS ARE MODEST AND PROPER.** ............................................... 13

**CONCLUSION** ................................................................................................................ 14

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Robert Thomas, Scott Patrick Harris, Michael Bell, Sandra Palumbo, Frank Karbarz, and Thomas Davis, by their counsel, respectfully submit the following as their Motion for Attorneys' Fees, Costs, and Incentive Awards.

## **INTRODUCTION**

Plaintiffs' Counsel ("Class Counsel") in the above-entitled matter (the "Class Action") respectfully submit this Memorandum in Support of Their Joint Petition for an Award of Attorneys' Fees and Reimbursement of Costs and Expenses (the "Joint Petition") in the amount of $1.25 million and for an order making a service award of $2500 to each of the six Class Representative Plaintiffs. The award sought here is justified as Class Counsel, through arduous negotiation, have secured for the Class an important settlement that provides substantial benefits to each and every member of the proposed Settlement Class. Notably, the Class is not in any way paying for the requested fee, as the settlement requires Lennox itself to pay the fees without any reduction in Class benefits. Indeed, the fees were negotiated *only* after first reaching agreement on the terms of the underlying Class relief, and the fee negotiation occurred at arms length under the supervision and assistance of Retired Federal Magistrate Judge Edward Infante, formerly of the United States District Court for the Northern District of California.

As discussed herein, the proposed fee is small in relation to the $35,118,311 million value of the settlement achieved here. In comparison to this valuation, the $1.25 million fee and expense award Class Counsel seek is reasonable under the law in this Circuit governing fee petitions. Class Counsel undertook a significant risk in undertaking this litigation, expending thousands of hours of effort and tens of thousands of dollars in expenses, all without any guarantee that they would be reimbursed.

Given the course of this litigation, the terms of the Settlement achieved, and the risk taken over the course of the case, Class Counsel have earned the fee requested in this case, which would give Class Counsel a *negative* multiplier of 0.78 and would represent as little as two or three percent, and no more than thirty-five percent, under Class Counsel's valuation of certain quantifiable components of the Settlement and in consideration of other highly valuable benefits that were not precisely quantified.[1]  Regardless of which measure is used to determine a reasonable fee – either the "lodestar" or the "percentage of recovery" method - the fee sought is in full compliance with applicable Seventh Circuit and other relevant precedent, and the fee is particularly consistent with the Seventh Circuit's directive that "court[s] must [] be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably contingent basis."  *Florin v. NationsBank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).

## ARGUMENT

**I.      CLASS COUNSEL'S UNOPPOSED FEE REQUEST IS REASONABLE AND SHOULD BE GRANTED.**

It is well-settled that attorneys who achieve a benefit for class members are entitled to compensation for their services.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").  This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs."  *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir.2007) (citing *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001)). Attorney fee awards are committed to the sound discretion of the court.  *See* Fed. R. Civ. P. 23(h) (courts "may award

---

[1] Class Counsel's methodology is supported by the declaration of Lisa Snow, an experienced economist with the consulting firm of Duffy & Phelps. Ms. Snow's declaration is attached to the Plaintiffs' Memorandum in Support of the Motion for Certification of Settlement and Class and Final Approval of the Settlement as Ex. C.

-2-

144348

reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement").

In determining a reasonable fee, "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel…" *Redman v. RadioShack Corp.,* 768 F.3d 622, 629 (7th Cir. 2014). Courts in this Circuit and elsewhere evaluate the reasonableness of Class Counsel's petition for fees using either the "percentage of recovery" approach or the "lodestar" approach. *See Florin v. Nation's Bank of GA, NA*. 60 F.3d 1245, 1247, n.2 (7th Cir. 1995). Under the lodestar approach, a "lodestar" figure is calculated by multiplying the number of reasonable hours expended by each individual attorney's hourly rate. This base "lodestar" may be adjusted upward via a "multiplier" to reflect the benefit of the settlement to the Class as well as the contingent nature of the attorney's undertaking based on the likelihood of success in obtaining a judgment or settlement measured at the time the attorney began work on the case. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988) (citations and quotations omitted). Under the percentage approach, a flat percentage of the settlement fund is awarded as fees. *Id.* However, under either approach, the court's task is to do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market" at the outset of the litigation when the risk of loss still existed. *Sutton v. Bernard,* 504 F.3d at 692 (7th Cir. 2007).

The decision of which method to apply is left to the discretion of the court. *See Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.,* 743 F.3d 243, 247 (7th Cir. 2014) (*quoting Florin,* 34 F.3d at 566 ("[W]e are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances ... The decision whether to use a percentage method or a lodestar method remains

in the discretion of the district court."). In cases like this one, where there is no actual "common fund," courts often opt to apply the lodestar method to determine Class Counsel's reasonable fee. *See, e.g*, *Dewey v. Volkswagen of Am.*, 728 F. Supp 2d 546, 593 (D.N.J. 2010). The Seventh Circuit has further explained that a district court "must set a fee by approximating the terms that would have been agreed to *ex ante,* had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.,* 743 F.3d 243, 246–47 (7th Cir. 2014) (citations omitted.) The Seventh Circuit has nevertheless recognized, however, that "[s]uch estimation is inherently conjectural." *In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 744 (7th Cir. 2011).

In any event, as Class Counsel explain below, under any method of evaluation, Class Counsel's request is reasonable and should be granted.

### A. The Fee Requested Was the Product of Negotiation Which is Strongly Encouraged in This Circuit.

Before analyzing the reasonableness of the request, it is important to note that courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."). Accordingly, negotiated fee awards should be given particular deference. *See Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026*,* 1027 (9th Cir. 1997) (noting specifically that the attorneys' fees were negotiated in coming to the conclusion that the fee request was fair); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 106 F.Supp. 2d 721*,* n.1 (D.N.J. 2000) (giving deference to the negotiated attorneys' fees and noting that "if such agreements are likely to be subject to further reduction by the Court notwithstanding the absence of any collusion or opportunity for collusion, and notwithstanding the absence of any impact on the class recovery, then future plaintiffs' counsel will have little incentive to make such agreements"); *Manners v. Am. Gen. Life Ins. Co.*,

144348

1999 WL 33581944, *28 (M.D. Tenn 1999) ("the Court gives great weight to the negotiated fee in considering the fee and expense request."). This is particularly true when, as is the case here, a neutral mediator was involved in the negotiations.

> **B. The Parties Negotiated the Process From Which the Fee Resulted Was Proper As It Was Negotiated at Arms-Length and Only After the Negotiation of the Class Benefit Had Been Concluded.**

The fee was negotiated only after all class compensation was agreed upon. (Shub Decl., ¶7.); (Infante Decl., ¶4). This approach is expressly endorsed by the *Manual for Complex Litigation. See* Manual, at 21.7 (4th ed. 2004) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable."). Put simply, once the material terms of the settlement were agreed upon, Lennox had every incentive to negotiate as low a fee as possible to decrease its overall costs. Throughout the fee negotiations, Class Counsel remained ready to litigate the attorneys' fees issue if the parties did not reach an agreement. (Shub Decl., ¶7.) In the end, the negotiated fee reflects an arm's length compromise, in which both parties measured and attempted to manage risk.

Importantly, *the fee award does not in any way diminish the consideration each class member receives*. In a traditional common fund recovery, an awarded attorney fee is withdrawn from the fund before claims are paid to class members, thus reducing the amount available to the class. Here, however, the fee requested by Class Counsel will in no way reduce the amount available for payment to the Class. Rather, the fees will be paid separately from the class benefit. This additionally bolsters the request for fees. *See In re Vitamin Antitrust Litig.*, 2004 WL 6080000, *5 (D.D.C. Oct. 22, 2004) ("The fact that "the proposed fee [did] not diminish the Plaintiffs' recovery was an important factor supporting this Court's approval of the first fee petition.") (citations omitted).

144348

### C. The Requested Fee is Reasonable Under Either the Lodestar or Common Value Approaches.

#### 1. Class Counsel Performed Substantial Work on Behalf of the Class, and The Requested Fee Actually Results in a Negative Multiplier.

Class Counsel expended tremendous effort in bringing about this settlement on behalf of class member. Lennox's skilled attorneys mounted a hard defense at every stage, first in litigation context, and then through months of mediation. Following the agreements reached at the mediation, the formal settlement agreement itself took several additional months to negotiate and finalize. (Shub Decl, ¶6.)

The hours Class Counsel expended in battling Lennox, which total more than 2,359.7 (*See* Class Counsel Fee Declarations, Attached as Exhibits 1, 2, and 3 herein), included the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2013 to determine whether there was a cause of action against Lennox. This involved working with potential clients and gathering factual background and the analysis and testing of coils.

- **Pre/Post-Complaint Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research were concluded, Class Counsel began: (1) formulating the consumer fraud and breach of contract claims; (2) drafting, preparing, and filing the Complaint; and (3) engaged in ongoing correspondence with clients regarding the complaint and the case in general. Throughout this process, there were strategic conferences amongst Class Counsel to present the most viable Complaint on behalf of the plaintiffs and putative class.

- **Discovery**. The Parties engaged in significant formal and informal discovery. Class Counsel engaged in an extensive survey of the cause of the alleged defect at issue here. Class Counsel collected and analyzed leaks in dozens of Lennox coils and retained two experts to assist them. Lennox produced documents to Class Counsel, and Class Counsel reviewed and analyzed them.

> Furthermore, Class Counsel deposed a senior Lennox official to confirm the basis for the settlement terms.

- **Interactions With Clients and the Members of the Class**. This case generated significant publicity. During the course of the past 24 months, Class Counsel have received hundreds of inquiries Class Members, which has required Class Counsel to take the time to communicate with each individual, collect data to help investigate the case, and regularly keep Class Members updated with progress in the case.

- **Settlement**. This court is already well-aware of the substantial and protracted settlement negotiations Class Counsel conducted with Defendants that spanned more than a year. The parties first hired a well-respected mediator, retired Judge Richard E. Neville, to assist with negotiations. The parties reached an impasse in the settlement negotiation. They then hired another well-respected mediator, retired Judge Edward Infante. Class Counsel researched and drafted many memoranda regarding potential settlement structures, analyzed settlements in similar cases, consulted with experts, reviewed discovery provided on an informal basis, and attended several in-person mediation sessions as well as numerous follow-up telephone conferences and E-mail exchanges. After several more months of negotiations, the parties were able to reach an agreement on substantive terms that would provide immediate and direct benefits to the Class. After the class benefit and fees were agreed to, the parties next spent several months finalizing all the details of the settlement.

The affidavits from the three petitioning law firms detail the hours each firm expended in the prosecution of this litigation (this does not include any costs or fees associated with preparing this submission). There was little or no duplication of effort and Class Counsel efficiently and productively litigated this case.

To arrive at the base lodestar figure of $1,420,539.00, Class Counsel multiplied the total hours by the current hourly rates[2] of the attorneys and paralegals who worked on this Class Action. A reasonable hourly rate should be in line with the prevailing rate in the "community for

---

[2] Current hourly rates are generally applied in calculating the lodestar figure. *See Skelton*, 860 F.2d at 255 n.5. Moreover, Class Counsel's rates vary appropriately between attorneys and between paralegals, depending on the position and experience level. The rates for each individual attorney and paralegal are set forth in the Declarations and in the charts and exhibits to the Declarations.

144348

similar services by lawyers of reasonably comparable skill, experience and reputation." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs,* 553 F.3d 487, 489 (7th Cir. 2009). Exhibits to each petitioning firm's affidavit also detail the calculation of hours for each attorney and paralegal that worked on the case, as well as provide a summary describing the services performed.[3] The hours reported were compiled from contemporaneous time records maintained by each attorney and paralegal. Class Counsel respectfully submit that the hours expended on this litigation were reasonable and necessary in this case.

Nor is the work of class Counsel in this case complete. Because Class Counsel is filing this Petition for Attorneys' Fees prior to final approval, the lodestar calculation and description of work set forth above does not account for all of the time Class Counsel will spend on this Class Action. Inclusion of this additional time will raise Class Counsel's lodestar thereby further demonstrating the reasonableness of the fees requested.[4]

Indeed, the work yet to be performed by Class Counsel in this case is likely to be significant. Unlike other class action settlements where the efforts of counsel end when final approval is obtained, counsel in this case must continue their efforts to monitor and administer

---

[3] Class Counsel's detailed reports provide the specific services performed in this Class Action, and have been prepared in accordance with guidelines set forth in previous fee decisions. *See, e.g., Williams v. State Board of Elections*, 696 F.Supp.2d 1561 (N.D. Ill. 1988).

[4] There is no doubt that time spent to achieve a benefit for the class is compensable. *Boeing*, 444 U.S. at 478. Here, the class will receive no benefit if the Settlement Agreement does not receive final approval. Thus, any time spent on obtaining final approval, including time spent on the final approval petition should be included in any lodestar calculation. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) (while district court calculated lodestar, it examined detailed billing data for three sample periods of the fee petition, including "final settlement approval").

144348

the Settlement for years to come because the Settlement provides numerous future benefits which could extend the benefit for some class members until the year 2025.

With the base lodestar in mind, the Court may in its discretion adjust the base lodestar depending on certain factors. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton,* 860 F.2d at 255. These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Here, Class Counsel's request for a $1.25 million fee results in a *negative* multiplier meaning that request will *not* compensate Class Counsel for each hour that they expended.

The risk taken by Class Counsel on a contingent basis also supports the request, as Class Counsel faced a significant risk of nonpayment, not only for their time, but of unreimbursed out-of-pocket costs. *See Sutton*, 504 F.3d at 694 ("We recognized that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.") (citations omitted); *see also Florin I*, 34 F.3d at 565 ("A court must assess the riskiness of the litigation by measuring the probability of success of this type of case at the outset of the litigation."). As the Seventh Circuit has emphasized, "court[s] must also be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably contingent basis." *Florin,* 60 F.3d 1245 at 1247.

Class Counsel also advanced the public interest in a significant manner in this case. They were able to extend warranties and provide additional warranty benefits and hold accountable a company that manufactured and allegedly sold a sub-standard product. As Justice Brandeis once

144348

said, "Sunlight is the best disinfectant." Brandeis, L. D. (1933). *Other people's money: And how the bankers use it*. Washington: National Home Library Foundation.

### 2. The Requested Fees Represent Only a Small Percentage of the Common Benefit Provided to the Class — Well Below Market and the Range that has Been Found Reasonable by the Courts.

Class Counsel's fee request is also reasonable under the percentage of recovery approach. In deciding the appropriate fee under the percentage of recovery method, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case").

The fee agreements between Class Counsel and Plaintiffs are contingent in nature. (Shub Decl., ¶2.) Courts have found that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements for a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, *4 (N.D. Ill. Dec. 10, 2001) (*citing Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases).

The same is equally true in the class action context, including in the Seventh Circuit. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 2004 WL 287902, *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at

362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"). *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit"), *citing In re Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 572; *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."). A Federal Judicial Center Study further supports the norm in attorney fee awards, finding that, in federal class actions, median attorney fee awards were in the range of 27% to 30%. Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Center 1996).

Here, Plaintiffs are requesting – and Lennox has agreed to pay – $1.25 million in attorneys' fees and costs.[5] As explained above, the potential value of those components of the Settlement quantified by Plaintiffs' expert is more than $35 million, and thus even if only ten percent of Class Members submit claims for the Settlement's very substantial benefits, the

---

[5] The Seventh Circuit recently held that in calculating the attorney's fee percentage in a class action settlement a court should compare the attorney's fee with the total amount recovered by plaintiffs, exclusive of administrative costs. *See Redman v. RadioShack Corp.,* 768 F.3d 622, 630 (7th Cir. 2014).

-11-

Settlement is still worth more than $3.5 million.[6] Thus, at the most, the requested attorneys' fees equate to just over thirty-five percent of the total benefit the Class will receive over the ten year life span of the Settlement program, and very likely substantially less, potentially as low as two or three percent. While the going rate in the market for class action legal fees clearly suggests a fee substantially in excess of the fee requested here, Class Counsel specifically agreed to limit their fee and cost reimbursement request to $1.25 million in the interests of compromise. This compromise is well within the presumptive benchmarks set by the Seventh Circuit (and the market) and should be approved.

### D. Class Counsel Should Be Reimbursed For Their Reasonably Incurred Litigation Expenses.

Courts regularly award reimbursement of those expenses that are reasonable and were necessarily incurred. *See Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993). In the prosecution of this Class Action, Class Counsel have advanced litigation costs and expenses in the amount of $138,767.34. These costs and expenses are supported in the affidavits provided by each petitioning firm, and Class Counsel respectfully submit that the costs and expenses were reasonable and necessary to obtain the Settlement Agreement. Class Counsel anticipate additional costs and expenses will be incurred up to the time of final approval and after, and these expenses are included in the $1.25 million fee request. Again, the costs and expenses awarded to Class Counsel will be paid by Lennox and not to the detriment of the Settlement Class.

---

[6] Indeed, and as explained more completely in the accompanying Memorandum of Law in Support of Class Certification and Final Approval of the Settlement, taking into account the Settlement's broad protective value to all Class Members, who are in effect receiving an automatic enhancement of their existing Original Warranty coverage that consumers ordinarily pay considerable money for in the form of extended warranties, the overall value of the Settlement to the Class would be tens of millions of dollars higher than the conservative $35 million valuation provided by Plaintiffs' expert. Even a nominal $5 per Class Member would result in more than $15 million in added value, bringing the total to more than $50 million.

## II. THE REQUESTED INCENTIVE AWARDS TO THE REPRESENTATIVE PLAINTIFFS ARE MODEST AND PROPER.

The Settlement Agreement calls for the payment of $2,500 to each of the Six Class Representatives as "incentive" or "special" awards. Incentive awards are common in class action litigation such as this case, and they serve to encourage class members to serve as class representatives and to reward individual efforts that they take on behalf of the class(es) they seek to represent. *See, e.g., Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million); *In re Domestic Air Trans. Antitrust Litig.*, 148 F.R.D. 297, 348 (N.D. Ga. 1993) ($142,500 awarded from settlement fund of $50 million); *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) ($215,000 awarded from settlement fund of $18 million); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 37 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving $50,000 incentive awards). Such awards compensate class representatives for actual costs in time, money and the disruption of life incurred in the prosecution of the litigation.

The requested incentive awards here are reasonable. Plaintiffs were actively involved in the litigation and devoted material time and effort to the case. (Shub Decl., ¶9). These Plaintiffs, through their counsel, sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow Settlement Class Members. Plaintiffs participated in all aspects of written discovery. Additionally, each Plaintiff consulted with counsel on a regular basis; provided and reviewed a wide variety of documents related to these matters; and offered advice and direction at critical junctures, including the Settlement of the litigation. *Id.*

Most importantly, Plaintiffs were prepared to litigate this action through trial to properly represent the Class and fight for significant class relief. *Id.* Their actions, input, and participation

-13-

have conferred a significant benefit on the millions of individuals that comprise the Settlement Class. Furthermore, as with attorneys' fees, the parties negotiated this payment only *after* all substantive relief to the Class was agreed to in its principal form. (Shub Decl. ¶7.)

Therefore, the $2,500.00 incentive award provided to each Class Representative is entirely reasonable and appropriate and should be approved.

## CONCLUSION

Class Counsel's request for an award of attorneys' fees and costs in the amount of $1.25 million, and the award of a $2,500 incentive fee to each of the named Plaintiffs, is fair, appropriate, and reasonable. As such, Class Counsel and Plaintiffs respectfully request that the Court grant this request for relief and any other further relief that the Court deems just and appropriate.

Dated: November 4, 2015                                  Respectfully submitted,

                                                                  ROBERT THOMAS, et al., Class Representative Plaintiffs

                                                                  /s/ Jeffrey A. Leon
                                                                  Jeffrey A. Leon
                                                                  Jamie E. Weiss
                                                                  Zachary A. Jacobs
                                                                  QUANTUM LEGAL LLC
                                                                  513 Central Avenue, Suite 300
                                                                  Highland Park, Illinois 60035
                                                                  (847) 433-4500
                                                                  jeff@qulegal.com
                                                                  Jamie@qulegal.com
                                                                  Zachary@qulegal.com

                                                                  Richard J. Burke
                                                                  QUANTUM LEGAL LLC
                                                                  1010 Market Street, Suite 1310
                                                                  St. Louis, MO 63101
                                                                  richard@qulegal.com

144348

                                Jonathan Shub
                                KOHN SWIFT & GRAF, P.C.
                                One South Broad Street, Ste. 2100
                                Philadelphia, PA 19107
                                Phone: (215) 238.1700
                                Fax: (215) 238.1968
                                jshub@kohnswift.com

                                *Attorneys for Plaintiffs and the Class*

**144348**